Darryl T. Coggins

Plaintiff,

versus

County of Nassau, Nassau County Police Department, Police Officer James Vara, in his individual and official capacity, Police Officer Craig Buonora, in his individual and official capacity, and John Does 1-10, in their individual and official capacity,

Defendants.

MEMORANDUM AND ORDER
June 20, 2008

Joseph F. Bianco, District Judge:

On August 27, 2007, plaintiff Darryl T. Coggins ("plaintiff" or "Coggins") brought the instant action against defendants County of Nassau ("Nassau County"), Nassau County Police Department (the "Police Department"), Police Officer James Vara, in his individual and official capacity ("Vara"), Police Officer Craig Buonora, in his individual and official capacity ("Buonora"), and John Does 1-10, in their individual and official capacity (collectively, "defendants"), pursuant to 42 U.S.C. §§ 1981 and 1983 and New York State tort law. The complaint alleges that, on March 17, 2005, a grand jury empaneled by the Nassau County District Attorney's Office (the "DA's Office") indicted Coggins on charges of which he was innocent. According to the complaint, the defendants – including Buonora – knew Coggins was innocent and, nevertheless, actively encouraged his prosecution. The complaint further alleges – *inter alia* – that Officers Vara and Buonora conspired to commit perjury during plaintiff's grand jury proceedings. Indeed, the complaint states that, after dismissing all charges against plaintiff, the DA's Office indicted Buonora for perjury. Buonora pleaded guilty.

Buonora now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 or, in the alternative, to dismiss the complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6). In particular, Buonora argues that (1) he is entitled to absolute witness immunity from suit; (2) four of plaintiff's causes of action are time-barred under New York State law; (3) plaintiff fails to state a claim for negligence under New York State law; and (4) plaintiff has failed to plead special damages with sufficient specificity. For the reasons set forth below, Buonora's motion is granted in part and denied in part. Specifically, the Court dismisses without prejudice plaintiff's claims for malicious prosecution and abuse of process under New York State law on the grounds that he has failed to plead the requisite special damages with specificity.[1] The motion is denied on all other grounds.

I. FACTS

The following facts are taken from the complaint and are not findings of fact by the Court. The Court assumes these facts to be true for the purpose of deciding the motion to dismiss and construes them in the light most favorable to plaintiff, the non-moving party.[2]

A. Coggins's Arrest and Incarceration

The complaint alleges that, on or about October 9, 2004, Coggins was "falsely arrested, falsely seized and falsely detained, deprived of his freedom, unlawfully imprisoned and maliciously prosecuted" by defendants, including Buonora. (Compl. ¶ 42.) Specifically, on or about that date, Coggins was arrested and charged in Nassau County with two counts of Criminal Possession of a Weapon in the Third Degree, in violation of Penal Law §§ 265.02(3) and (4). (Compl. ¶ 19.) Bail was posted on plaintiff's behalf on October 11, 2004. (Compl. ¶ 20.) Thus, Coggins spent two days in jail. (Compl. ¶ 31.)

According to the complaint, Coggins was innocent of the crimes with which he was charged. (Compl. ¶ 20.) Plaintiff also alleges that defendants knew that Coggins was innocent. (Compl. ¶ 42.)

B. Alleged Role of Buonora in Plaintiff's Arrest and Prosecution

Coggins alleges that defendants, including Buonora, "actively instigated and encouraged the prosecution of plaintiff." (Compl. ¶ 43; *see also* Compl. ¶ 46 ("Upon information and belief, each of the Defendants took an active role in creating and manufacturing the charges against Plaintiff, solely for the purposes of effecting an arrest and conviction, and not to effectuate justice.").) Specifically, the complaint states that Buonora and the other defendants "ordered and directed" plaintiff's arrest and detention (Compl. ¶ 43), and "withheld information which would have exonerated Plaintiff of the criminal charges with which he was charged" (Compl. ¶ 44; *see also* Compl. ¶ 48 ("The Defendants individually and collectively knew at the time of Plaintiff's arrest, and at all times since then, that the evidence they had in connection with the charges brought against Plaintiff were [sic] false. . . .")).

According to the complaint, Buonora and the other defendants "further deprived the plaintiff of his due process rights; specifically

---

[1] As set forth *infra*, however, the Court also grants plaintiff leave to replead these claims within sixty days of this Memorandum and Order.

[2] As set forth *infra*, with respect to defendant's request for summary judgment, the Court concludes such application is premature under Rule 56(f) of the Federal Rules of Civil Procedure.

by attempting to prolong the Defendant's unlawful detainment without probable cause, investigation, rule of law and by further denying the plaintiff his Fifth Amendment rights via an attempt to cover up the misconduct of said officers and officials and to prevent plaintiff from being compensated for his wrongful arrest, detainment, and other physical and emotional harm incurred." (Compl. ¶ 32.) Coggins claims that "in furtherance of said conduct, the Defendant officers prolonged the plaintiff's custody by failing to investigate plaintiff's protests that he was not the alleged perpetrator and by conspiring to set bail at an unreasonable amount." (Compl. ¶ 33.) Thus, according to plaintiff, Buonora and the other defendants "acted with the shared purpose of denying plaintiff his rights. . . ." (Compl. ¶ 35.)

The complaint further alleges that Vara and Buonora "negligently and recklessly breached their duty under the United States Constitution to prevent the commission of the civil rights violations perpetrated against" Coggins. (Compl. ¶ 73.)

(1) The Grand Jury

On March 17, 2005, the DA's Office presented Coggins's case to the Grand Jury, which voted to indict plaintiff not only on the charges for which he was arrested, but also for Resisting Arrest in violation of Penal Law § 205.30 (the "indictment"). (Compl. ¶ 22.)

Plaintiff alleges that the indictment "was based primarily on the testimony" of Vara and Buonora. (Compl. ¶ 6.) Specifically, according to the complaint, "Vara falsely testified that while he was chasing [plaintiff], he saw an object fall from Plaintiff as Plaintiff was jumping over a fence. Vara testified that he continued his pursuit of Plaintiff, but later returned to determine that the object that had fallen was a 9-millimeter handgun." (Compl. ¶ 6.) Further, plaintiff alleges that Buonora "falsely testified that he saw a 9-millimeter handgun fall from [plaintiff] as he jumped the fence and that Buonora stayed with the handgun until he was relieved by a Floral Park Officer." (Compl. ¶ 24.)

C. The Floral Park Officer

Coggins alleges that, in June 2005, a Floral Park Officer informed plaintiff's counsel that "the story that [Vara and Buonora] was telling was inaccurate." (Compl. ¶ 25.) Specifically, the Floral Park Officer "informed counsel that he was the Officer who initially found the gun approximately forty minutes after the foot pursuit began. He further indicated that radio transmissions of October 9, 2004 would substantiate his claim." (Compl. ¶ 25.) Coggins alleges that the "Floral Park Officer's version of the events directly contradicted the sworn testimony of Vara and Buonora at the Grand Jury proceeding." (Compl. ¶ 25.)

According to the complaint, Coggins's counsel reviewed the radio transmissions in question and found that they corroborated the claim of the Floral Park Police Officer. (Compl. ¶ 26.) Counsel referred plaintiff's case to the Special Investigations Division of the DA's Office. (Compl. ¶¶ 4, 26.)

D. Dismissal of Charges Against Coggins and Institution of Perjury Charge Against Buonora

Coggins alleges that fifteen months after his arrest – on August 12, 2005 – "in the face of clear perjury and manufactured evidence, the charges filed against Plaintiff were dismissed

3

on motion of the" DA's Office. (Compl. ¶ 27.) Further, the complaint states that

> [t]hroughout all of these proceedings, Plaintiff never wavered in declaring his innocence and made that fact unequivocally known to Defendants. Significantly, no statements were signed by Plaintiff that can be construed as an admission of guilt. Plaintiff always maintained his innocence and that Vara and Buonora were not being truthful about the underlying facts.

(Compl. ¶ 27.)

The complaint states that Buonora was subsequently indicted for perjury and pleaded guilty to that charge. (Compl. ¶ 28.)

II. PROCEDURAL HISTORY

Coggins filed his complaint on August 28, 2007. On December 5, 2007, the County, the Police Department, and Vara answered the complaint. On January 24, 2008, Buonora submitted the instant motion. Plaintiff submitted his opposition on February 29, 2008. Buonora submitted his reply on March 10, 2008. By letter dated April 17, 2008, Buonora supplemented his prior submissions with additional case citations.[3] By letter dated April 23, 2008, plaintiff responded to Buonora's supplemental submission. The Court held oral argument on May 30, 2008.

---

[3] In particular, Buonora submitted citations to cases stating that a district court's denial of immunity at the motion to dismiss stage is subject to interlocutory appeal. The Court is aware of this procedure.

III. PREMATURITY OF SUMMARY JUDGMENT

In his opposition papers, Coggins argues that the Court should review Buonora's motion solely pursuant to Rule 12(b)(6) – and not as a motion for summary judgment pursuant to Rule 56 – on the grounds that discovery has not commenced and, therefore, Buonora's motion for summary judgment is premature. For the reasons set forth below, the Court agrees with plaintiff and, pursuant to Federal Rule of Civil Procedure 56(f), denies Buonora's motion for summary judgment without prejudice to Buonora's renewing it at the close of discovery.

As a threshold matter, the Second Circuit has held that district courts should grant summary judgment only "[i]f *after discovery*, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.'" *Berger v. United States*, 87 F.3d 60, 65 (2d Cir. 1996) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (alteration in original and emphasis added). In particular, "[t]he nonmoving party must have 'had the opportunity to discover information that is essential to his opposition' to the motion for summary judgment." *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)). Consequently, "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (reversing district court's grant of summary judgment because plaintiff had not been able to conduct discovery).

Indeed, the Supreme Court has explained that in instances where a plaintiff has not had the opportunity to conduct discovery, Rule 56(f) of the Federal Rules of Civil Procedure "allows a summary judgment motion to be denied, or the hearing on the motion to be continued, if the nonmoving party has not had an opportunity to make full discovery." *Celotex*, 477 U.S. at 326; *see also Comm. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 386 (2d Cir. 2001) ("Fed. R. Civ. P. 56(f) provides, as interpreted by court opinions, that when a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion.").

Rule 56(f) specifically states:

> Should it appear from the affidavits of a party opposing the [summary judgment] motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f). Further, the Second Circuit has outlined the procedure by which a party may obtain relief under Rule 56(f):

> [A] party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing '(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.'

*Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999) (quoting *Meloff v. N.Y. Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995)).

Here, Coggins submitted an affidavit in compliance with Rule 56(f), specifically explaining that the information he seeks through discovery would create genuine issues of material fact for trial. For instance, Coggins states:

> 9. I believe that through discovery I will be able to obtain the necessary evidence to show that defendants, including Defendant Craig Buonora, were working together to deprive me of my constitutional rights.
> 10. I believe that through discovery I will be able to obtain the necessary evidence to show that Defendant Craig Buonora was intimately involved in my arrest and prosecution.
> 11. I believe that through discovery I will be able to obtain the necessary evidence to show that Defendant Craig

5

> Buonora not only participated in the plan to deprive me of my rights but that he had the ability to stop the other Defendants from continuing to violate my rights and that he failed to do so.
>
> \*\*\*
>
> 14. [I] believe that through discovery I will be able to obtain the necessary evidence to show that despite knowing that I was innocent, Defendant Craig Buonora worked with the other Defendants to cover up their lies and had no regard for my life and liberty.

(Coggins Aff. ¶¶ 9-11, 14.) Plaintiff also explained the efforts he had made to obtain the information and the reason why he was unsuccessful. Specifically, Coggins stated: "I was informed by my attorneys that they have made every effort to commence the discovery process, however, they are prevented from properly doing so as it is too early in the case." (Coggins Aff. ¶ 15.)

Coggins's affidavit, therefore, wholly complies with the standard the Second Circuit has set forth for compliance with Rule 56(f); he has particularized the discovery required –the materiality of which, as established *infra*, is beyond dispute – and has explained why he has not obtained this discovery to date. Under similar circumstances – including in cases where, as here, the proposed basis for summary judgment is absolute immunity and the complaint alleges a conspiracy to commit perjury – courts routinely deny summary judgment motions as premature when they are raised prior to plaintiff's being provided with the opportunity for discovery. *See, e.g., Safeco Insurance Co. of Am. v. Discover Property and Casualty Insurance Co.*, No. 05 Civ. 8625, 2008 U.S. Dist. LEXIS 10626, at \*10 (S.D.N.Y. Feb. 6, 2008) ("The parties' pending cross-motions for summary judgment are denied as premature and without prejudice to refiling after discovery closes...."); *Peele v. Mattingly*, No. 06 Civ. 13423, 2007 U.S. Dist. LEXIS 65310, at \*4 (S.D.N.Y. Sept. 5, 2007) (holding summary judgment motion in abeyance pursuant to Rule 56(f) where defendant moved on qualified immunity grounds and "facts sought by plaintiffs through deposition discovery promise to fill in material gaps in the chronology of events; illuminate the defendants' knowledge at each phase of the investigation; reveal a more complete picture of the investigative steps taken; and disclose the rationale underlying certain decisions made by the defendants"); *Gabel v. Bd. of Educ. of the Hyde Park Cent. Sch. Dist.*, 368 F. Supp. 2d 313, 336 (S.D.N.Y. 2005) ("Here, there has been no discovery, so the factual record remains to be fleshed out. The District's motion for summary judgment is at best premature."); *Sheff v. City of New York*, No. 03 Civ. 708, 2004 U.S. Dist. LEXIS 4819, at \*22 (S.D.N.Y. Mar. 24, 2004) ("While prosecutors have absolute immunity not just for the presentation of testimony, but for all actions related to their advocacy, police officers are not immune for extra-judicial actions such as an alleged conspiracy to present false testimony. [Defendant police officer's] motion for summary judgment on this single, remaining claim against him is premature.") (citations and quotation marks omitted).

In sum, after carefully reviewing both the complaint in this case and Coggins's Rule 56(f) affidavit, and in light of plaintiff's inability to conduct any discovery to date, the Court concludes that Buonora's motion for summary judgment is premature and dismisses it without prejudice to refile at the close of discovery. As set forth below, therefore, the

Court reviews Buonora's motion pursuant to the standard of review for motions to dismiss under Rule 12(b)(6).

IV. STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The plaintiff must satisfy "a flexible 'plausibility' standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007). The Court does not, therefore, require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* at 1974.

Further, in reviewing a motion to dismiss, "the district court is normally required to look only to the allegations on the face of the complaint," *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007), as well as any documents appended thereto. However, the Second Circuit has also established two exceptions to this rule. First, courts may consider a document not appended to the complaint if the document is "incorporated in [the complaint] by reference." *Id.* at 509 (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (emphases in original). Second, courts "'take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in other litigation, but rather to establish the fact of such litigation and related filings.'" *Crews v. County of Nassau*, No. 06-CV-2610 (JFB), 2007 U.S. Dist. LEXIS 6572, at *5 n.2 (E.D.N.Y. Jan. 30, 2007) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

Here, plaintiff did not append any documents to the complaint. Moreover, neither Coggins nor Buonora has asked the Court to take judicial notice of documents appended to their motion papers. Nevertheless, the Court has independently reviewed these documents in order to determine whether they fall into either of the exceptions stated above. After such review, and as set forth below, the Court has determined that the transcripts of Coggins's grand jury proceedings, portions of which were submitted by each party, fall into both of the aforementioned exceptions and, therefore, are properly subject to consideration on the instant motion to dismiss.[4]

---

[4] Specifically, Buonora submitted his own grand jury testimony, and Coggins submitted his own grand jury testimony, as well as Buonora's and Vara's. The remainder of the exhibits proffered – which largely consist of police reports – do not fall within any of the above-referenced exceptions and, thus, the Court should not consider them at this juncture. *See, e.g., Lyn v. Incorporated Vill. of Hempstead*, No. 03-CV-5041, 2004 U.S. Dist. LEXIS 30545, at *5 (E.D.N.Y. June 25, 2004) (refusing to consider police reports appended to police officers' motion to dismiss case on immunity grounds); *see generally Jarmon v. Pacific Rail Servs.*, No. 06-CV-01372, 2007 U.S. Dist. LEXIS 14393, at *5 (D. Colo. Mar. 1, 2007) (refusing to consider police report at motion to dismiss stage); *Ferranti v. Martin*, No. 3:06cv1694, 2007 U.S. Dist. LEXIS 3981, at *7 n.1 (M.D. Pa. Jan. 19, 2007) (same). In any event, those additional documents would not change the Court's analysis at this stage of the litigation.

7

In particular, with respect to the first exception, courts routinely take judicial notice at the motion to dismiss stage of transcripts – including those of testimony provided in related criminal proceedings – which are incorporated into the complaint by reference. *See, e.g., Jovanovic v. City of New York*, No. 04 Civ. 8437, 2006 U.S. Dist. LEXIS 59165, at *15 (S.D.N.Y. Aug. 17, 2006) (holding, in Section 1983 case involving allegations of false arrest and malicious prosecution, that where complaint "refers to what happened at the arraignment, the grand jury indictment, the trial and the appeal . . . [t]he Court will therefore take judicial notice of these documents and proceedings"); *SEC v. Siebel Sys., Inc.*, 384 F. Supp. 2d 694, 699 n.6 (S.D.N.Y. 2005) ("The Court previously granted defendants' request to take judicial notice of the transcripts that the complaint relies upon. The Court, based on the allegations in the complaint, takes judicial notice of what was said at the April 4th, 23rd, and 28th conferences."). In addition, with respect to the second exception, courts routinely take judicial notice – at the motion to dismiss stage – of transcripts of related judicial proceedings, including criminal proceedings. *See, e.g., Reynolds v. Blumenthal*, No. 3:04cv218, 2006 U.S. Dist. LEXIS 68970, at *9 n.5 (D. Conn. Sept. 26, 2006) ("[I]t has been held that courts may take judicial notice of transcripts from judicial proceedings in related cases."); *Browdy v. Karpe*, No. 3:00-CV-1866, 2004 U.S. Dist. LEXIS 19299, at *5 n.3 (D. Conn. Sept. 20, 2004), *aff'd* 2005 U.S. App. LEXIS 9329 (2d Cir. May 16, 2005) ("The Court takes judicial notice of the judgment mittimus and the transcript of the plea and sentencing in Browdy's state criminal case. . . ."); *UCAR Int'l v. Union Carbide Corp.*, No. 00-CV 1338, 2004 U.S. Dist. LEXIS 914, at *43 (S.D.N.Y. Jan. 26, 2004), *aff'd* 2004 U.S. App. LEXIS 24927 (2d Cir. Dec. 2, 2004) (taking judicial notice of plea agreement, sentencing transcript, and arraignment transcript in related criminal case).

Here, the complaint explicitly refers to Vara's and Buonora's grand jury testimony. (*See, e.g.,* Compl. ¶¶ 6, 24.) In addition, the grand jury testimony took place in a criminal proceeding that is not merely related, but central to the complaint in this action. Under these circumstances, the Court finds it appropriate to consider all the grand jury testimony submitted, including Vara's and Buonora's – not for the truth of the facts asserted therein, but solely for the purpose of determining what Vara and Buonora said. *Cf. Global Network Comm'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (finding that district court should not have taken judicial notice of testimony where his "testimony as a government witness in an unrelated criminal proceeding was neither mentioned nor relied upon by appellant in drafting its complaint").

V. DISCUSSION

A. Absolute Immunity

Buonora moves to dismiss the complaint in its entirety on the grounds that he is entitled to absolute witness immunity. However, after carefully reviewing the complaint, accepting all of its allegations as true, and drawing all reasonable inferences in favor of plaintiff, the Court declines to rule – at this juncture – that Buonora is entitled to absolute immunity as a matter of law. Specifically, as set forth below, the Court concludes that each of the following reasons suffices independently to defeat Buonora's claim of absolute immunity at the motion to dismiss stage: (1) the Court cannot determine at this juncture, as a matter of law, whether Buonora served as a "complaining witness" in Coggins's prosecution; and (2) the complaint alleges an extra-judicial conspiracy to commit perjury. Thus, the Court denies

Buonora's motion to dismiss the complaint on absolute immunity grounds without prejudice to his reasserting such immunity at the summary judgment stage – after the parties have had the opportunity to conduct discovery.[5]

(1) The "Complaining Witness" Rule

Buonora argues that he is entitled to absolute immunity from suit because he was not a "complaining witness" in Coggins's case according to the Supreme Court's holding in *Briscoe v. LaHue*, 460 U.S. 325 (1983). As set forth below, however – after carefully reviewing the complaint, accepting each of its allegations as true, and drawing all reasonable inferences in plaintiff's favor – the Court cannot determine at this juncture whether Buonora was a complaining witness and, thus, whether he is entitled to absolute immunity on this ground.

"In *Briscoe*, the Supreme Court answered in the negative the question 'whether 42 U.S.C. § 1983 authorizes a convicted person to assert a claim for damages against a police officer for giving perjured testimony at his criminal trial.'" *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (quoting *Briscoe*, 460 U.S. at 326). The Second Circuit subsequently extended such "*Briscoe* grants" of immunity for perjurious trial testimony to grand jury testimony. *See San Filippo v. U.S. Trust Co. of N.Y.*, 737 F.2d 246, 254 (2d Cir. 1984), *cert. denied* 470 U.S. 1035 (1985). However, the Second Circuit has also clarified the "subtle yet crucial distinction between two categories of witnesses with respect to their immunity for false testimony. Those whose role was limited to providing testimony enjoyed immunity; those who played a role in initiating a prosecution – complaining witnesses – did not enjoy immunity." *White v. Frank*, 855 F.2d 956, 958-59 (2d Cir. 1988). "The question of whether a witness is a complaining witness is a factual one, resting on the determination of whether the witness played such a role in initiating the proceedings that it can be said the witness commenced or continued proceedings against the plaintiff within the meaning of the law of malicious prosecution." *Cipolla v. Rensselaer*, 129 F. Supp. 2d 436, 451 (N.D.N.Y. 2001) (citations and quotation marks omitted); *see also Mejia v. City of New York*, 119 F. Supp. 2d 232, 272 (E.D.N.Y. 2000) ("Whether a witness is a complaining witness a fact-based question that coincides with the determination of whether the witness played such a role in initiating the proceedings that it can be said the witness commenced or continued proceedings against the plaintiff within the meaning of the law of malicious prosecution.").

Here, Buonora argues that his role in Coggins's prosecution was limited to providing grand jury testimony and, therefore, he was not a complaining witness. As set forth below, however, the particular factual circumstances of this case preclude the Court from agreeing with Buonora at this juncture as a matter of law.

---

[5] The Court is aware that "district courts are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery. . . . This is because '[a]n absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity.'" *Deronette v. City of New York*, No. 05-CV-5275, 2007 U.S. Dist. LEXIS 21766, at *12 (E.D.N.Y. Mar. 27, 2007) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) and quoting *Imbler*, 424 U.S. at 419 n.13). However, as set forth *infra*, the Court cannot determine whether Buonora's actions were "within the scope of the immunity" at this juncture. Thus, it would be inappropriate to grant such immunity at this time under the particular circumstances of this case.

Specifically, the Court has carefully reviewed the complaint and finds that it alleges acts by Buonora – separate and apart from perjury – that served to initiate and continue Coggins's prosecution. For instance, the complaint alleges, *inter alia*, that (1) defendants, including Buonora, "actively instigated and encouraged the prosecution of plaintiff" (Compl. ¶ 43); (2) Buonora and the other defendants "ordered and directed" plaintiff's arrest and detention (Compl. ¶ 43), and "withheld information which would have exonerated Plaintiff of the criminal charges with which he was charged" (Compl. ¶ 44); (3) Buonora and the other defendants "further deprived the plaintiff of his due process rights; specifically by attempting to prolong the Defendant's unlawful detainment without probable cause, investigation, rule of law and by further denying the plaintiff his Fifth Amendment rights via an attempt to cover up the misconduct of said officers and officials and to prevent plaintiff from being compensated for his wrongful arrest, detainment, and other physical and emotional harm incurred" (Compl. ¶ 32); (4) "Defendant officers prolonged the plaintiff's custody by failing to investigate plaintiff's protests that he was not the alleged perpetrator and by conspiring to set bail at an unreasonable amount" (Compl. ¶ 33); and (5) Vara and Buonora "negligently and recklessly breached their duty under the United States Constitution to prevent the commission of the civil rights violations perpetrated against" Coggins. . . ." (Compl. ¶ 73).

In the face of these allegations, the Court cannot determine as a matter of law at this stage in the proceedings whether Buonora served as a complaining witness under *Briscoe*. Indeed, in arguing that he was not a complaining witness, Buonora relies solely on exhibits and information extraneous to the complaint that, as stated *supra*, the Court cannot consider in the context of a motion under Rule 12(b)(6).[6] Therefore, although the Court is sensitive that the availability of absolute immunity should be decided at the earliest possible juncture, the Court declines to rule as a matter of law at this stage, given the allegations of misconduct in the complaint separate from Buonora's perjury, that absolute immunity shields him from any alleged misconduct that took place during Coggins's prosecution. *White*, 855 F.2d at 961 ("Clearly, the plaintiff has alleged a claim of malicious prosecution and appears to have a factual basis that will defeat a claim of immunity from liability for this tort. Whether that turns out to be the case cannot be determined at this stage. Since the availability of immunity cannot now be determined as a matter of law, we lack jurisdiction over this interlocutory appeal and are obliged to dismiss so that the matter may proceed in the trial court.").

### (2) The Extra-Judicial Conspiracy Exception to Absolute Immunity

As described *supra*, the complaint alleges that Vara and Buonora conspired to commit perjury during Coggins's grand jury proceedings. As set forth below, these allegations of conspiracy provide an additional, independent obstacle to Buonora's assertion of absolute immunity at this juncture. Specifically, the Court finds that the "extra-judicial conspiracy exception" established by

---

[6] The Court notes that, even if such documents submitted by defendant were considered, it would not warrant absolute immunity prior to plaintiff's conducting discovery, including depositions (Buonora, Vara, and the Floral Park Officer), to determine whether the information contained in these police reports and other documents is accurate or whether there is other evidence that may place the accuracy of these reports in dispute.

the Second Circuit in *San Filippo* prevents Buonora from successfully invoking absolute immunity at the motion to dismiss stage, under the circumstances of this case.

As noted above, in *San-Filippo*, the Second Circuit extended "*Briscoe* grants" of immunity to witnesses testifying before the grand jury. 737 F.2d at 254. However, the Second Circuit also held that *Briscoe* "was expressly limited to immunity for testimony given in judicial proceedings, and its rationale – to encourage witnesses to come forward with all they know – does not justify extending that immunity to cover extra-judicial conspiracies between witnesses and the prosecutor to give false testimony." *Id.* at 255. Subsequently, in *Dory v. Ryan*, the Second Circuit confirmed that this so-called "extra-judicial conspiracy exception" applied to police officer defendants. 25 F.3d 81, 84 (2d Cir. 1994) ("*San Filippo* did not involve police officers, and has not subsequently been applied to police officers. There is no reason, however, to distinguish police officers from other witnesses with regard to the 'extra-judicial conspiracy exception'. . . ."); *see also Brown v. Adsit*, No. 95-CV-29, 1996 U.S. Dist. LEXIS 16863, at *8 (N.D.N.Y. Nov. 6, 1996) ("Where a plaintiff alleges an extra-judicial conspiracy to present false testimony, police officers are not entitled to absolute immunity."). In *Dory*, therefore, because the complaint alleged not merely perjury, but also contained allegations of conspiracy, the Second Circuit reversed the district court's grant of absolute immunity to the police officer defendant in question. *Id.* at 84.

Here, the Court has carefully examined the complaint in order to determine whether it alleges facts sufficient to invoke the extra-judicial conspiracy exception at this juncture. In conducting this examination, the Court has been mindful of the Second Circuit's admonition in *San Filippo* that "it is imperative for courts to examine with great care any suit charging" a conspiracy to give false testimony and to "dismiss on pre-trial motion those that are clearly baseless." 737 F.2d at 256. However, accepting all allegations in the complaint as true, and drawing all reasonable inferences in plaintiff's favor, the Court finds that the allegations of an extra-judicial conspiracy in Coggins's suit are sufficient to overcome Buonora's claim of absolute immunity at the motion to dismiss stage. *See Blount v. N.Y. Unified Court Sys.*, No. 03-CV-0023, 2005 U.S. Dist. LEXIS 44013, at *21 (E.D.N.Y. Mar. 17, 2005) ("This Court . . . is bound by Second Circuit precedent, which has expressly rejected absolute witness immunity in the context of extra-judicial conspiracies to give false testimony. Therefore, this is not a case where the Plaintiff is impermissibly circumventing the absolute witness immunity doctrine. Rather, the State Defendants are attempting to circumvent the Second Circuit's holding in *Dory* and *San Filippo*. The Court is not persuaded.") (citations omitted); *Cipolla v. County of Rensselaer*, 129 F. Supp. 2d 436, 451 (N.D.N.Y. 2001) ("But for Plaintiffs' allegations of conspiracy, the absolute immunity analysis would end here. In this Circuit, however, absolute witness immunity does not extend to allegations of conspiracy.").

Specifically, the complaint alleges at various points that Vara and Buonora conspired to violate Coggins's rights. (*See, e.g.,* Compl. ¶¶ 16, 33, 35, 48, 50, 52, 66.) In the particular factual context of this case – including, *inter alia*, Coggins's allegations that (1) Buonora and Vara provided false testimony before the grand jury (Compl. ¶¶ 23-25); (2) Vara and Buonora provided mutually consistent testimony (Compl. ¶¶ 23, 24, 67); and (3) Buonora, in fact, pleaded guilty to perjury (Compl. ¶ 28) – the Court concludes that plaintiff has alleged facts adequate to

11

invoke the extra-judicial conspiracy exception and defeat Buonora's claim of absolute immunity at this stage of the proceedings.

In particular, with respect to these factual allegations, counsel for Buonora did not dispute at oral argument for purposes of this motion (as alleged in the complaint) that (1) Vara and Buonora provided false testimony before the grand jury;[7] and (2) Buonora pleaded guilty to perjury. However, counsel claimed that Vara's and Buonora's grand jury testimony was inconsistent and therefore, could not provide a basis for conspiracy. As set forth below, after carefully reviewing this testimony, the Court wholly disagrees. Specifically, one could reasonably infer from this testimony that Vara and Buonora testified consistently regarding the very issue about which Buonora perjured himself, *i.e.,* the actions he took during the period that Vara was chasing Coggins, especially with respect to Buonora's purported retrieval of the gun in question.

For instance, Buonora testified as follows:

> Q: What, if anything, attracted your attention during the course of the chase?
> A: As we got up the side street on Holland, the subject went in an alleyway and went to jump a fence. I heard a noise as he went to jump the fence, which sounded like metal hitting the ground. Officer Vara was in front of me, because he's a little lighter than me, I guess. And he kept after the subject. And I looked down to see what it was and found the gun there.
> ***
> Q: You said you detected a metal sound hitting concrete?
> A: Yes.
> Q: Did you immediately look down?
> A: Once I got up there, I immediately looked to see what it was.
>
> ***
> Q: When the other officer returned back to the vehicle, where did you go?
> A: I stayed with the gun until, I believe, a Floral Park police officer relieved me so I could assist that officer.
> ***
> Q: And at any time, did you move the gun while you were, I guess, safeguarding the weapon?
> A: You would just safeguard it. You didn't touch it. You wait for crime scene.

(Buonora Testimony at 42, 44, 49.)

Similarly, Vara testified as follows:

> Q: What, if anything, attracted your attention during the chase?
> A: He came to a fence at the driveway. He jumped over the fence, and as he jumped over the fence, I heard a metal noise hitting concrete, and I looked down, and I saw an object

---

[7] Counsel for the County, the Police Department, Vara, and John Does 1-10, however, has made clear that the other defendants make no such concession regarding Vara's testimony.

laying on the driveway. My focus was still towards him, towards the defendant. My assisting officer stayed there at the scene, and I had run around, because I thought he was going to go back to the car.

\*\*\*

Q: After the chase was suspended, you said you returned to the driveway and actually observed now the gun on the driveway floor?
A: Yes.
Q: And was Officer Buonora there at that time?
A: Yes, he was.

(Vara Testimony at 20-21, 29.) Taken in the context of this case as a whole – including the complaint's allegations that (1) Coggins never possessed a gun and, thus, no such gun fell from him during the chase (Compl. ¶¶ 67-68); and (2) the Floral Park Officer, and not Buonora, "initially found the gun approximately forty minutes after the foot pursuit began" (Compl. ¶ 25) – the Court concludes that Coggins has alleged facts sufficient to invoke the extra-judicial conspiracy exception to immunity at this juncture. *See, e.g., Pearl v. City of Long Beach*, 296 F.3d 76, 87 (2d Cir. 2002), *cert. denied* 538 U.S. 922 (2003) (explaining that "it was a reasonable inference that the officers had agreed to present their allegedly false" testimony where officers provided identical testimony); *cf. Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (affirming district court's grant of summary judgment to police officer defendants on conspiracy claim where district court had noted that "it would seem more conspiratorial if

all of the defendants' stories matched up in the details") (quotation marks omitted).[8]

In sum, after carefully reviewing the complaint, assuming all of its allegations are true, and drawing all reasonable inferences in plaintiff's favor, the Court concludes that each of the following reasons is independently sufficient to defeat Buonora's claim of absolute immunity at the motion to dismiss stage: (1) the Court cannot determine at this juncture as a matter of law whether Buonora served as a "complaining witness" in Coggins's prosecution; and (2) the complaint alleges an extra-judicial conspiracy to commit perjury.[9]

---

[8] The Court notes that in response to the Court's inquiry at oral argument, counsel for Buonora was unable to cite any case where a court granted absolute immunity to a police officer at the motion to dismiss stage – thereby refusing to permit the parties to conduct any discovery – where the plaintiff alleged an extra-judicial conspiracy among officers to commit perjury and one of the police officers actually pleaded guilty to perjury. Instead, counsel repeatedly cited cases such as *Mitchell v. Forsyth*, where the Supreme Court emphasized that courts should resolve questions of immunity as early in judicial proceedings as possible. *See* 472 U.S. 511, 526 (1985). As stated *supra*, the Court is aware of the holding in *Mitchell* and is sensitive to its dictate. The Court has concluded, however, in light of the particular factual circumstances of this case, that dismissing Coggins's case on immunity grounds at this juncture is inappropriate under Second Circuit law. Again, the Court reaches this conclusion without prejudice to Buonora arguing that he is entitled to immunity at the summary judgment stage, after the parties have had the opportunity to conduct discovery.

[9] Buonora does not argue that he is entitled, in the alternative, to qualified immunity. Nevertheless, the Court has considered whether Buonora is entitled to qualified immunity and, for the reasons set forth below, has determined that he is not

13

## B. Statute of Limitations

Buonora moves to dismiss Coggins's causes of action under New York State law for Fraudulent Misrepresentation (Count Four), Abuse of Process and Malicious Prosecution (Count Five), False Arrest and False Imprisonment (Count Six), and Intentional Infliction of Emotional Distress (Count Eight) on statute of limitations grounds. For the reasons set forth below, and under the particular circumstances of this case, the Court cannot conclude at this juncture that these causes of action are time-barred as a matter of law. As with the immunity issue, therefore, Buonora may renew his statute of limitations defense at the summary judgment stage, after the parties have had the opportunity to conduct discovery.

In particular, Buonora argues that all of the above-referenced claims are governed by New York Civil Practice Law and Rules § 215(3), which establishes a one-year statute of limitations for intentional torts. *See Green v. City of New York*, 465 F.3d 65, 86 (2d Cir. 2006) ("New York Civil Practice Law and Rules § 215(3) provides a one-year statute of limitations for intentional torts."); *see also Brewton v. City of New York*, No. 05-CV-3574, 2008 U.S. Dist. LEXIS 36455, at 38 n.13 (E.D.N.Y. May 5, 2008) ("New York Civil Practice Law and Rules § 215(3) fixes a one-year statute of limitations for intentional torts.")[10]

---

entitled to such immunity at this juncture. The Second Circuit has held that

> [a] defendant is entitled to qualified immunity on a motion to dismiss if the allegations of the complaint fail to state a claim of violation of clearly established law. Qualified immunity shields officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. A right is clearly established when the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . The unlawfulness must be apparent. Even where a right is clearly established, an official is entitled to qualified immunity nevertheless if it was objectively reasonable for the public official to believe that his acts did not violate that right[].

*Connell v. Signoracci*, 153 F.3d 74, 80 (2d Cir. 1998) (citations and quotation marks omitted). It is beyond cavil that, *inter alia*, conspiring to commit perjury before the grand jury violates a clearly established right of which Buonora should have known, and that no public official would think it was objectively reasonable to violate that right. Thus, at this stage of the proceedings, Buonora could not sustain a claim of qualified immunity under the circumstances in this case.

---

[10] As a threshold matter, the Court notes that fraudulent misrepresentation claims are not governed by Section 215(3). Instead, "[i]ntentional misrepresentation claims are governed by the six-year statute of limitations for actual frauds." *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 51 F. Supp. 2d 457, 470 (S.D.N.Y. 1999). Specifically, "a party must commence an action for actual fraud within either six years of the commission of the fraud or two years from the time that the party discovered or should have discovered the fraud with reasonable diligence, whichever is longer." *Id.* (citing CPLR §§ 203(g), 213(8)); *see also Raul v. Am. Stock Exchange, Inc.*, No. 95 Civ. 3154, 1996 U.S. Dist. LEXIS 5914, at *25-*26 (applying six-year statute of limitations – as well as two-year exception for discovery of the fraud – to

Plaintiff, on the contrary, argues that the appropriate limitations period under the circumstances of this case is set forth in CPLR § 213-b, which establishes a seven-year statute of limitations for suits by crime victims. Specifically, Section 213-b provides that

> an action by a crime victim, or the representative of a crime victim . . . may be commenced to recover damages from a defendant . . . convicted of a crime which is the subject of such action, for any injury or loss resulting therefrom within seven years of the date of the crime.

NY CPLR § 213-b. Essentially, Coggins argues that Section 213-b applies to his lawsuit because he was the victim of Buonora's crime of perjury. In response, Buonora claims that Section 213-b is inapplicable because his victim was the justice system – not Coggins. For the reasons set forth below, the Court cannot determine at this juncture – prior to the parties' having the opportunity to conduct any discovery – whether Section 213-b is applicable.

The New York State courts have affirmed that "CPLR 213-b being a procedural statute is to be liberally construed. Its purpose, to extend the time a crime victim has to pursue a defendant responsible for the crime, is designed to provide a meaningful remedy to the victim and the statute should, therefore, be read expansively." *Cavanaugh v. Watanabe*, 806 N.Y.S.2d 848, 849 (N.Y. Sup. Ct. Dec. 19, 2005) (slip op.). As such, the statute "does not specifically define 'crime,' does not limit the crimes to which it is applicable, and does not limit the term 'crime victim'. . . . Since [the legislature] did not do so,

---

fraudulent misrepresentation claim).

it follows that the terms 'crime' and 'crime victim' were not intended to be restricted as they are in the Executive Law." *Elkin v. Cassarino*, 680 N.Y.S.2d 601, 603 (App. Div. 1998). Thus, courts have applied Section 213-b to a range of crimes. *See, e.g., Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 153 n.6 (2d Cir. 1999) (noting that district court had applied Section 213-b to claim for breach of fiduciary duty, although reversing district court in part on other grounds). For these reasons, "[r]esearch discloses that the benefit of CPLR 213-b has been denied only in those cases where there was no causal connection between the crime for which defendant was convicted and the damages sought." *Cavanaugh*, 806 N.Y.S.2d at 849; *see also Elkin*, 680 N.Y.S.2d at 604 (noting that plaintiff must demonstrate that his injury "resulted from [defendant's] crime" in order to invoke Section 213-b).

Here, the complaint reflects that the DA's Office continued to prosecute Coggins – for crimes of which he was allegedly innocent – for nearly five months after Buonora committed perjury. (Compl. ¶ 4.) Further, the complaint states that as a "direct result" of defendants' alleged misconduct, including Buonora's perjury, Coggins "has suffered and continues to suffer loss of income, loss of other employment benefits, loss of career opportunities, and has suffered and continues to suffer repeated, severe and permanent psychological, emotional and physical trauma and damage, including distress, humiliation, embarrassment, great financial expense and damage to his reputation. . . ." (Compl. ¶ 38.) In light of the New York State courts' expansive interpretation of Section 213-b – and assuming all of the allegations in the complaint are true, and drawing all reasonable inferences in favor of plaintiff – the Court declines to determine as a matter of law that no causal

15

connection exists between Buonora's crime of perjury and the physical, emotional, and financial damage Coggins allegedly suffered. The Court finds, therefore, that discovery is warranted in order to determine the applicability of Section 213-b. Thus, the Court denies Buonora's motion to dismiss these causes of action on the grounds that they are time-barred, without prejudice to Buonora's renewing the statute of limitations defense at the summary judgment stage, after the parties have had the opportunity to conduct discovery on the factual issues that relate to the application of Section 213-b.

### C. Negligence

For the reasons set forth below, the Court rejects Buonora's assertion that the Court should dismiss Coggins's cause of action for negligence under New York State law.

In particular, Buonora objects to Coggins's negligence claim on the grounds that plaintiff also brought causes of action under Sections 1981 and 1983, which involve intentional misconduct. (Buonora Reply at 10 ("Not only has the plaintiff offered no theory as to how Officer Buonora might have been 'negligent,' plaintiff has argued strenuously as to how Officer Buonora's intentional acts damaged plaintiff. As a matter of law, Officer Buonora can not [sic] be found to be negligent.").) However, Federal Rule of Civil Procedure 8, which sets forth the legal standard for pleadings, explicitly states that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). Thus, "[w]hile it is true that the same factual predicate cannot support both a finding of liability based on reckless or intentional conduct and a finding of liability based on negligent conduct, plaintiff is free to plead alternate theories of liability, even if those theories are inconsistent." *Brown v. City of New York*, No. 02-CV-6337, 2005 U.S. Dist. LEXIS 5512, at *12-*13 (E.D.N.Y. Mar. 30, 2005) (citing Rule 8 and *Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49, 55 n.3 (2d Cir. 2004)). Because Coggins's alternate theories of liability comply fully with Rule 8, the Court declines to dismiss plaintiff's cause of action for negligence on the grounds that he also brought causes of action pursuant to Sections 1981 and 1983.

In addition, the Court rejects Buonora's related assertion that the Court should dismiss Coggins's cause of action for negligence on the grounds that Buonora's sole involvement in Coggins's prosecution consisted of Buonora's perjury – a crime of intent. As set forth in detail *supra*, the complaint contains various allegations against Buonora in addition to perjury. For instance, the complaint states, *inter alia*, that he "fail[ed] to investigate plaintiff's protests that he was not the alleged perpetrator" (Compl. ¶ 33), and "withheld information which would have exonerated Plaintiff of the criminal charges with which he was charged" (Compl. ¶ 44). Under these circumstances, the Court declines to conclude as a matter of law that Coggins's cause of action for negligence is insufficient to withstand a motion to dismiss.

In sum, the Court denies Buonora's motion to dismiss plaintiff's cause of action for negligence under New York State law.[11]

---

[11] Buonora also moves to dismiss Coggins's cause of action for negligence – as well as his causes of action for malicious prosecution, abuse of process, and for violations of Sections 1981 and 1983 – on the grounds that Coggins has failed to plead special damages with specificity. As set forth below, the Court agrees with Buonora in part. Although plaintiff need not plead special damages in order to state a claim for negligence and for violations of Sections 1981 and 1983, *see, e.g., Bisson v. United*

*Nations*, No. 06 Civ. 6352, 2008 U.S. Dist. LEXIS 9723, at *4-*5 (S.D.N.Y. Feb. 11, 2008) (analyzing negligence claim where plaintiff claimed general damages); *Day v. Morgenthau*, 909 F.2d 75, 77 (2d Cir. 1990) (explaining that special damages need not be alleged in Section 1983 case); *Shelter Inc. Realty v. City of New York*, No. CV-01-7015, 2007 U.S. Dist. LEXIS 305, at *38 (E.D.N.Y. Jan. 4, 2007) (explaining that Section 1983 provides "the exclusive damages remedy for violations of § 1981 when the claim is against state actors"), the Court agrees with Buonora that "special damages are a necessary element" of claims for malicious prosecution and abuse of process. *Hawkins v. City of New York*, No. 99 Civ. 11704, 2005 U.S. Dist. LEXIS 15898, at *53 (S.D.N.Y. Aug. 8, 2005); *see also Brown v. Brown*, 343 F. Supp. 2d 195, 198 (E.D.N.Y. 2004) (explaining that plaintiff must plead special damages for abuse of process and malicious prosecution claims). The Court also agrees that "round numbers . . . may not qualify as special damages." *Kirby v. Wildenstein*, 784 F. Supp. 1112, 1118 (S.D.N.Y. 1992) (finding "plaintiff's allegations of special damages are still too generalized to survive dismissal" where plaintiff "'has not submitted the itemized proof of damages the law requires. . . .'"); *see also Daniels v. Alvarado*, No. 03-CV-5832, 2004 U.S. Dist. LEXIS 3893, at *19 (E.D.N.Y. Mar. 12, 2004) ("Round numbers and general allegations of dollar amounts are insufficient as special damages.") (citation and quotation marks omitted). Here, because plaintiff has provided round dollar figures in conjunction with his causes of action for abuse of process and malicious prosecution, he has failed to state these claims with sufficient specificity. The Court, therefore, dismisses these claims without prejudice. However, because Coggins may be capable of remedying this pleading failure, the Court grants plaintiff leave to replead. Specifically, plaintiff shall submit any such amended pleading within sixty days of this Memorandum and Order. Failure to submit an amended pleading will result in dismissal of these causes of action with prejudice.

## VI. CONCLUSION

For the foregoing reasons, the Court determines, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, that Buonora's motion for summary judgment is premature at this juncture. The Court thus denies this motion without prejudice to Buonora's renewing it after the completion of discovery. Further, the Court grants in part and denies in part Buonora's motion to dismiss the complaint pursuant to Rule 12(b)(6). Specifically, the Court dismisses without prejudice Coggins's claims for abuse of process and malicious prosecution under New York State law on the grounds that he has failed to plead the requisite special damages with sufficient specificity. The Court, however, grants plaintiff leave to replead these causes of action and affords plaintiff sixty days from the date of this Memorandum and Order to submit an amended complaint. Failure to do so shall result in dismissal of these causes of action with prejudice. Buonora's motion to dismiss the complaint is denied on all other grounds.

The parties shall begin discovery under the direction of Magistrate Judge Tomlinson. Although Buonora is concerned that discovery will be a fishing expedition by plaintiff, the Court is confident that Magistrate Judge Tomlinson will monitor the discovery process to ensure that the nature and scope of discovery is consistent with the factual issues relevant to this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: June 20, 2008
Central Islip, NY

\* \* \*

The attorney for plaintiff is Frederick K. Brewington, Esq. of the Law Offices of Frederick K. Brewington, 50 Clinton Street, Suite 501, Hempstead, New York, 11550. The attorney for defendant Buonora is Laurence Jeffrey Weingard, Esq. of the Law Offices of Laurence Jeffrey Weingard, 250 West 57th Street, New York, New York, 10107. The attorney for defendants Nassau County, the Police Department, Vara, and John Does 1-10 is Donna Napolitano, Esq. of the Nassau County Attorney's Office, One West Street, Mineola, New York, 11501.