UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

―――――――――――――

№ 07-CV-3624 (JFB) (AKT)

―――――――――――――

DARRYL T. COGGINS

Plaintiff,

VERSUS

COUNTY OF NASSAU, NASSAU COUNTY POLICE DEPARTMENT, POLICE OFFICER
JAMES VARA, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, POLICE OFFICER CRAIG
BUONORA, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, AND JOHN DOES 1-10, IN
THEIR INDIVIDUAL AND OFFICIAL CAPACITY,

Defendants.

―――――――――――――

**MEMORANDUM AND ORDER**
January 5, 2009

―――――――――――――

JOSEPH F. BIANCO, District Judge:

Plaintiff Darryl T. Coggins ("Coggins" or "plaintiff") brings the instant action against defendants County of Nassau ("Nassau County" or "County"), Nassau County Police Department ("Police Department"), Police Officer James Vara ("Vara"), in his individual and official capacity, Police Officer Craig Buonora ("Buonora"), in his individual and official capacities, and John Does 1-10, in their individual and official capacities (collectively, "defendants"), pursuant to 42 U.S.C. §§ 1981 and 1983 and New York State tort law. On March 17, 2005, a grand jury empaneled by the Nassau County District Attorney's Office (the "DA's Office") indicted Coggins on charges of unlawful possession of a weapon,

and the complaint alleges that defendants actively prosecuted Coggins on those charges despite their knowledge that he was innocent. The complaint further alleges that Officers Vara and Buonora conspired to commit perjury during the grand jury proceedings. After dismissing all charges against plaintiff, Buonora was indicted for perjury and subsequently pled guilty to a misdemeanor charge of perjury.

On November 26, 2007, Buonora received a determination from the Nassau County Police Officer Indemnification Board ("Board") holding that his actions were not within the proper discharge of his duties or within the scope of his employment and, therefore, he was not entitled to representation by the County

Attorney of Nassau County ("County Attorney"). However, Buonora was provided with an opportunity to challenge that determination before the Board. While challenging that determination, Buonora retained other counsel in this case. On March 14, 2008, after Buonora's presentation to the Board, the Board changed its position and made a determination that Buonora's actions were within the proper discharge of his duties and within the scope of his employment and, therefore, he would be entitled to legal representation and indemnification by the County for any judgment against him. On June 26, 2008, the County Attorney advised Buonora by letter that the County Attorney was prepared to resume representation of Buonora in this lawsuit based on the March 14, 2008 determination by the Board.

Buonora now moves for an Order or Declaratory Judgment to the effect that the County Attorney is estopped from resuming her role as counsel for Buonora, on the grounds that the County Attorney has already abandoned his defense or waived her right to represent Buonora. Alternatively, within the context of such motion, Buonora asserts that the County Attorney should be disqualified from representing Buonora on conflict of interest grounds. Specifically, Buonora contends that the County Attorney's proposed representation of him presents a conflict of interest with both co-defendant Nassau County and co-defendant Vara. Under either theory of relief, Buonora claims to be statutorily entitled to private counsel of his own choosing at the County's expense. For the following reasons, Buonora's motion is denied in its entirety.

## I. BACKGROUND

### A. Facts

The underlying facts giving rise to this litigation are comprehensively described by this Court in a prior Memorandum and Order addressing Buonora's motion to dismiss and for summary judgment, dated June 20, 2008. Thus, the Court presumes the parties' familiarity with the underlying lawsuit brought by Coggins and only describes the facts to the extent that they are relevant to resolution of the instant motion.

This lawsuit arises out of criminal proceedings against Coggins, during which he was arrested and charged in Nassau County with two counts of Criminal Possession of a Weapon in the Third Degree, in violation of Penal Law §§ 265.02(3) and (4). (Complaint ("Compl.") ¶ 19.) According to the complaint, Coggins was innocent of the crimes with which he was charged, and defendants knew that Coggins was innocent. (Compl. ¶¶ 20, 42, 48.) The complaint alleges that defendants "actively instigated and encouraged the prosecution of plaintiff" and, *inter alia*, manufactured the charges against plaintiff, withheld information that would have exonerated him, and deprived plaintiff of his due process rights. (Compl. ¶¶ 32, 33, 35, 43, 46.) Coggins now asserts claims of civil rights violations, conspiracy, and New York state intentional torts against defendants.

Following the dismissal of the criminal charges against plaintiff, Buonora was indicted for perjury in connection with the testimony that he gave to the grand jury in the underlying criminal action against plaintiff. (Buonora Memorandum of Law ("Buonora Mem."), at 2.) Buonora claims that Vara was granted

transactional immunity in exchange for his testimony in the grand jury proceedings considering perjury charges against Buonora. (Buonora Affidavit ("Buonora Aff.") ¶ 13; Buonora Mem., at 2.) Buonora subsequently pled guilty to one count of misdemeanor perjury and was disciplined by the Police Department. (Buonora Mem., at 2.)

Buonora was served with the complaint in this case in September 2007. The complaint alleged that Buonora "was a police officer employed by the County, under the direction of the Nassau Police and County and was acting in furtherance of the scope of his employment . . . ." (Compl. ¶ 13.) The County Attorney at that time acted on his behalf in seeking and receiving two extensions of time in which to respond to the complaint. (Buonora Mem., at 2, Exs. A and B; Buonora Aff. ¶ 4; County Defendants' Memorandum of Law in Opposition ("County Def. Mem."), at 6.) In September 2007, after the filing of the complaint by Coggins, the law offices of Mr. Laurence Jeffrey Weingard ("Mr. Weingard" or "counsel for Buonora"), current counsel for Buonora, was "retained by Buonora to monitor his defense . . . and encourage the County Attorney to undertake his defense, assert various issues including the defense of absolute immunity." (Weingard Affidavit ("Weingard Aff.") ¶ 5.)

On November 27, 2007, Buonora received notice of a determination by the Board, which had voted on November 26, 2007, holding that his actions were not within the proper discharge of his duties or within the scope of his employment. (Buonora Aff. ¶ 5; Buonora Mem., at Exs. C, E and F.) Buonora was given the opportunity to present additional facts and personally appear before the Board prior to the determination becoming final, which, had he failed to appear before the Board, would occur within fifteen days of his receipt of the determination. (Buonora Mem., at 4 and Ex. E.) Buonora also was notified by a letter dated November 26, 2007 from the County Attorney that the County Attorney's Office would not be defending him in this matter.[1] (Buonora Aff. ¶ 5; Buonora Mem., at 3 and Ex. E.)

At that point, Buonora fully engaged the services of Mr. Weingard, who had previously represented him in connection with the criminal charges against him, as well as the Police Department's disciplinary charges, to represent Buonora's interests in this action. (Buonora Aff. ¶ 6.) In connection with these services, Buonora claims to have paid substantial sums of money for legal fees and expenses. (Buonora Aff. ¶ 6.)

On December 5, 2007, the County Attorney filed an answer in this case on behalf of the County of Nassau, the Nassau County Police

---

[1] As Buonora correctly notes, the Deputy County Attorney's letter refers to the November 26, 2007 determination as an "initial determination" and states that "before the final determination is made you may request an opportunity to appear before the Board and present additional facts. . . . The Board will consider any additional facts and arguments you may make prior to making its final determination." (Buonora Mem., at Ex. E.) However, as noted *infra*, there are no statutory provisions regarding an "initial" determination by the Board, as opposed to a "final" determination. Moreover, there are no procedures codified in the law at all, including the procedures described in the Deputy County Attorney's letter, for challenging a determination by the Board. Finally, there is language in the November 26, 2007 determination, below the signature line, that suggests that it is a "final decision of the Board," contrary to the description in the Deputy County Attorney's letter. (Buonora Mem., at Ex. F.)

Department and Officer Vara ("County Defendants"). In their answer, the County Defendants claimed that Vara "performed [his duties] in good faith, without malice and with reasonable and proper cause in the ordinary course of [his] duties" (County Def. Answer, at 8 ¶ 4), and that "if the plaintiff sustained the damages as alleged in the Complaint, such damages were sustained through and by virtue of the conduct of parties other than the County Defendants, over whom the County Defendants exercised no control, without any negligence on the part of the County defendants, its agents, servants or employees contributing thereto." (County Def. Answer, at 9 ¶ 13.) Buonora alleges that these defenses asserted by the County Defendants imply that Buonora did not act in good faith in the ordinary course of his duties and that Buonora was responsible for the damages, if any, sustained by Coggins. (Buonora Mem., at 20.)

On December 6, 2007, Buonora notified the Board that he wanted to appear before it to present additional information to challenge the November 26, 2007 determination, and, in the intervening time period, Buonora filed in this case a motion to dismiss the complaint and for summary judgment. Buonora, along with his current counsel, appeared at a hearing before the Board on March 14, 2008. (Buonora Aff. ¶ 7-8; Buonora Mem., at Ex. G.) Also present at this hearing were representatives of the County Attorney's office. (Buonora Mem., at 5; County Def. Mem., at 7.) On that date, the Board changed its position and issued another determination that Buonora's actions were within the proper discharge of his duties and within the scope of his employment and, as a result, he would be indemnified for any judgment by the County. (Buonora Aff. ¶ 9; Buonora Mem., at Ex. J.)

On March 28, 2008, counsel for Buonora sought a determination in writing from the County Attorney that it would be inappropriate for her to undertake Buonora's representation "given [the County Attorney's] prior conduct and the fact that a conflict of interest exists between Officer Vara and Officer Buonora that precludes the County Attorney from representing both individuals." (Buonora Mem., at 6 and Ex. L.) On April 14, 2008, the County Attorney stated in a letter to Buonora's counsel that he should submit his billing records to the County Attorney and that he could continue to represent Buonora until the completion of the oral argument for Buonora's motions to dismiss and for summary judgment. (Buonora Mem., at 6 and Ex. M.)

On June 26, 2008, Buonora received a letter from the County Attorney stating that (1) Buonora was entitled to representation by the County Attorney, although he was free to decline it and pay his own legal fees going forward, (2) the County Attorney did not believe that there was any conflict of interest with the County representing all defendants, (3) Buonora had four days to accept the County Attorney's offer of representation, and (4) if "at any time during the litigation, the County Attorney or a court of competent jurisdiction determines that, because of a conflict of interest with the County or another defendant, it would not be appropriate for the County Attorney to represent [him] in this lawsuit, [he] will be entitled to be represented by private counsel chosen by the County Attorney, and such counsel will be paid reasonable attorney's fees and costs as determined by the County Attorney, so long as the alleged act or omission occurred while [he was] acting within the scope of [his] public employment or duties." (Buonora Aff. ¶ 10; Buonora Mem., at Ex. O.)

### B. Procedural History

Coggins filed his complaint on August 28, 2007. On December 5, 2007, an answer was filed on behalf of the County Defendants. Buonora submitted a motion to dismiss and motion for summary judgment on January 24, 2008, and on June 20, 2008, the Court granted the motion to dismiss with respect to Coggins' claims for malicious prosecution and abuse of process under New York State law and denied the motion on all other grounds.[2] Upon receiving the Court's Memorandum and Order, Buonora filed his answer with a cross-claim against Nassau County and filed a notice of appeal to the United States Court of Appeals for the Second Circuit.

Buonora filed the instant motion on August 19, 2008. The County submitted its opposition papers on September 19, 2008, and Buonora replied on October 2, 2008. The Court held oral argument on this motion on December 23, 2008.

### II. Discussion

### A. Ripeness

The Court first addresses the County Attorney's argument that subject matter jurisdiction is lacking in this Court because Buonora's motion for declaratory judgment – which seeks to disqualify the County Attorney based upon, among other things, a conflict of interest theory – is not "ripe" for adjudication. (County Def. Mem., at 9.) As a threshold matter, the Court finds that Buonora's motion for the County Attorney's disqualification does present an "actual case or controversy" within the meaning of Article III and, therefore, is ripe for adjudication before this Court.[3]

Pursuant to the Declaratory Judgment Act, Section 2201 of Title 28:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201. The ripeness doctrine relates to whether the "actual controversy" requirement is met, and it "has as its source the Case or Controversy Clause of Article III of the Constitution, and hence goes, in a fundamental way, to the existence of jurisdiction." *Simmonds v. I.N.S.*, 326 F.3d 351, 357 (2d Cir. 2003).

---

[2] The Court dismissed the claims for malicious prosecution and abuse of process on the grounds that plaintiff had failed to plead the requisite special damages with specificity. Plaintiff was granted leave to amend the complaint within sixty days of the Memorandum and Order, and an amended complaint was filed on August 19, 2008. The Court also denied Buonora's motion for summary judgment as premature, without prejudice to it being renewed at the close of discovery.

[3] In any event, even if the Court were to find that the conflict of interest issue is not ripe, Buonora's motion on estoppel and waiver grounds would still merit a decision by this Court. The County Attorney does not argue that these issues are also not ripe for adjudication.

"A party seeking a declaratory judgment bears the burden of proving that the district court has jurisdiction." *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177 (2d Cir. 2001) (citing *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993)). Jurisdiction exists only if there is an "actual controversy," *id.*, defined as one that is "real and substantial . . . admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993) (internal citation and quotation marks omitted); *see also Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005) ("The standard for ripeness in a declaratory judgment action is that 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'") (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 313 U.S. 270, 273 (1941)); *U.S. Underwriters Ins. Co. v. Kum Gang, Inc.*, 443 F. Supp. 2d 348, 352 (E.D.N.Y. 2006) ("A court cannot adjudicate conjectural or hypothetical cases or controversies. A controversy cannot be a mere possibility or probability that a person may be adversely affected in the future.") (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)) (additional citation omitted); *Georgia-Pacific Consumer Products, LP v. Int'l Paper Co.*, 566 F. Supp. 2d 246, 256 (S.D.N.Y. 2008) (stating that relief should only be granted where it can be "of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.") (citing *E.R. Squibb & Sons, Inc.*, 241 F.3d at 177). "Whether a real and immediate controversy exists in a particular case is a matter of degree

and must be determined on a case-by-case basis." *Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir. 1991). "Several courts have acknowledged the difficulty of line-drawing between those cases in which a controversy is of a hypothetical or speculative nature, and those that present issues of 'sufficient immediacy and reality' to warrant declaratory relief." *M.V.B. Collision, Inc. v. Allstate Ins. Co.*, No. 07 Civ. 0187 (JFB)(JO), 2007 WL 2288046, at *7 (E.D.N.Y. August 8, 2007) (quoting *Duane Reade, Inc.*, 411 F.3d at 388); *see also Reichhold Chem., Inc. v. Travelers Ins. Co.*, 544 F. Supp. 645, 650 (E.D. Mich. 1982) ("The difference between an abstract question and a controversy contemplated by the Declaratory Judgment Act is necessarily one of degree and, as such, it is extremely difficult to fashion a precise test for determining the existence, or non-existence, of an actual controversy in every fact situation.").

Even if a matter satisfies the "actual controversy" requirement, "[t]he decision to grant declaratory relief rests in the sound discretion of the district court." *M.V.B. Collision, Inc.*, 2007 WL 2288046, at *7 (additional internal citations omitted); *Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003) ("Courts have consistently interpreted [the Declaratory Judgment Act's] permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear."). In using its discretionary power to decide whether to entertain an action for declaratory judgment, the Second Circuit has long instructed district courts to ask: (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty. *See Broadview*

*Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969). As set forth by the Second Circuit in *Dow Jones*, 346 F.3d at 359-60, district courts may also consider: "(1) whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata'; (2) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (3) whether there is a better or more effective remedy." *Id.* Therefore, "[t]he ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Ehrenfeld v. Mahfouz*, 489 F.3d 542, 542 (2d Cir. 2007) (quoting *Nat'l Park Hospitality Ass'n v. DOI*, 538 U.S. 803, 808, (2003)) (internal quotation marks omitted); *see also Simmonds*, 326 F.3d at 356-57 ("'Ripeness' is a term that has been used to describe two overlapping threshold criteria for the exercise of a federal court's jurisdiction.") (distinguishing between Constitutional and prudential ripeness). In this case, the County Attorney argues that the conflict of interest issue presented by Buonora is not Constitutionally ripe. The doctrine of Constitutional ripeness "prevents courts from declaring the meaning of the law in a vacuum and from constructing generalized legal rules unless the resolution of an actual dispute requires it." *Simmonds*, 326 F.3d at 357.

With respect to the instant motion, there is no difficult "line-drawing," *M.V.B. Collision, Inc.*, 2007 WL 2288046, at *7, distinguishing this case from others failing to meet the standard for ripeness. The County Attorney asserts that this Court lacks jurisdiction because the conflict of interest issue fails to present an actual "case or controversy." (County Def. Mem., at 10.) However, the Court disagrees. Because the issue presented to the Court concerns Buonora's current legal representation rights vis-à-vis his co-defendants and the County Attorney, the standard for ripeness – that "there is a substantial controversy . . . between [the] parties," *Maryland Cas. Co.*, 312 U.S. at 273 – is plainly satisfied. *See Duane Reade, Inc.*, 411 F.3d at 384 (additional internal citation omitted). Moreover, there is no basis for this Court to dismiss this motion based on its discretionary or prudential power, since the "judgment will serve a useful purpose in clarifying or settling the legal issues involved." *Broadview Chem. Corp.*, 417 F.2d at 1001.

Simply put, the controversy at issue here is not speculative. Buonora claims, among other things, that conflicts of interest between the County Defendants and him warrant disqualification of the County Attorney as counsel for Buonora. A decision by the Court is thus necessary at this juncture for the proper resolution of any proposed joint representation by the County Attorney. A resolution by the Court is also required to give Buonora the opportunity to accept the terms of the County Attorney's representation or decline it, understanding that he will either be indemnified by the County for his legal expenses (if the instant motion by Buonora is granted) or will not (if the instant motion is denied). The Court's decision on this matter will undoubtedly affect the parties' representation by specific counsel, as well as the allocation of fees and costs of counsel, and, in this respect, the decision will have a concrete effect that is neither hypothetical nor advisory in nature. Indeed, "the judgment will serve a useful purpose in clarifying or settling the legal issues involved" and would "offer relief from uncertainty." *Broadview Chem. Corp.*, 417 F.2d at 1001.

Moreover, the County Attorney's argument that such a conflict of interest may not exist goes to the merits of the dispute, and not to whether or not this Court lacks the jurisdiction to resolve it. Indeed, the County Attorney's line of reasoning is circular and simultaneously posits that (1) the Court cannot decide the issue of whether or not there exists a conflict of interest because the issue is not ripe, and (2) the Court should recognize that a conflict does in fact not exist. (County Def. Mem., at 11.) In other words, if the Court is able to determine – in the face of assertions to the contrary by one of the parties – that a conflict of interest does not exist at this juncture, then that itself is the resolution of a substantial controversy over which it has jurisdiction, since the Court would not be able to decide the conflict of interest issue in the first place if no jurisdiction exists. The Court disagrees, therefore, that it lacks the power to decide the instant motion based on conflict of interest grounds because the issue is not ripe. This matter presents a "concrete dispute affecting cognizable current concerns of the parties within the meaning of Article III," *id.*, and, therefore, is ripe for declaratory adjudication.

## B. Equitable Estoppel and Waiver

Buonora's first argument is that the County Attorney wrongly abandoned his defense at the time of the November 26, 2007 determination by the Board and, thus, is estopped from now assuming his representation. (Buonora Mem., at 8.) Buonora also argues that the County Attorney has waived her right to assume Buonora's defense by voluntarily relinquishing the right to represent him. (Buonora Mem., at 15.) The Court addresses these related issues in turn and, for the reasons set forth below,

denies Buonora's motion on both equitable estoppel and waiver grounds.

### 1. Equitable Estoppel

#### a. Legal Standard

"Equitable estoppel is grounded on notions of fair dealing and good conscience and is designed to aid the law in the administration of justice where injustice would otherwise result." *In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996) (internal citations omitted). "'Estoppel' generally means that one party in a dispute should not be permitted to reap any benefit from its own misrepresentations." *U.S. v. Schmitt,* 999 F. Supp. 317, 360 (E.D.N.Y. 1998); *see also Airco Alloys Div. v. Niagara Mohawk Power Corp.*, 76 A.D.2d 68, 81 (N.Y. App. Div. 1980) ("Equitable estoppel prevents one from denying his own expressed or implied admission which has in good faith been accepted and acted upon by another."). "Equitable estoppel is an equitable remedy, and its application turns upon a close examination of the facts and the equities." *Halifax Fund, L.P. v. MRV Commc'ns, Inc.*, No. 00 Civ. 4878 HB, 2001 WL 1622261, at *3 (S.D.N.Y. December 18, 2001).

In order to prevail on the theory of equitable estoppel under New York law, the party seeking estoppel must demonstrate, with respect to himself, a lack of knowledge of the true facts; reliance upon the conduct of the party estopped; and a prejudicial change in position." *River Seafoods Inc.v. J.P. Morgan Chase Bank,* 19 A.D.3d 120, 122 (N.Y. App. Div. 2005) (citing *BWA Corp. v. Alltrans Express U.S.A. Inc*., 112 A.D.2d 850, 853 (N.Y. App. Div. 1985) and *Airco Alloys Div.*, 76 A.D.2d at 81-82). The party seeking estoppel must also show, by clear and

convincing evidence, with respect to the party being estopped, "(1) [c]onduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently seeks to assert; (2) intention, or at least expectation, that such conduct will be acted upon by the other party; (3) and, in some situations, knowledge, actual or constructive, of the real facts (21 N.Y.Jur., Estoppel, § 21)." *BWA Corp.*, 112 A.D.2d at 853 (also citing *Matter of Carr*, 99 A.D.2d 390, 394); *see also Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 302 (2d Cir. 1996); *MCI LLC v. Rutgers Cas. Ins. Co.*, No. 06 Civ. 4412 (THK), 2007 WL 2325867, at *16 (S.D.N.Y. August 16, 2007) (citing *Gen. Elec. Capital Corp. v. Armadora*, 37 F.3d 41, 45 (2d Cir.1994)); *Halifax Fund, L.P.*, 2001 WL 1622261, at *3; *Longview Equity Fund LP v. McAndrew*, 2007 WL 186769 , at *4. "Any misrepresentation [] need not be intentional; '[i]t is sufficient that the party being estopped knew or had reason to believe that their acts or inaction might prejudice the party asserting the estoppel.'" *MCI LLC*, 2007 WL 2325867, at *16 n.17 (quoting *Sterling v. Interlake Indus., Inc.*, 154 F.R.D. 579, 585 (E.D.N.Y. 1994)); *see also One Beacon Ins. Co. v. Old Williamsburg Candle Corp.*, 386 F. Supp. 2d 394, 401 (S.D.N.Y. 2005) ("An innocent misleading of another party may estop one from claiming the benefits of his or her deception.") (citing *State Farm Ins. Co. v. Lofstad*, 278 A.D.2d 224, 225 (N.Y. App. Div. 2000)).

The Appellate Division has clearly expressed New York's "rather restrictive" view of equitable estoppel:

> This doctrine precludes a party at law and in equity from denying or asserting the contrary of any material fact which he has induced another to believe and to act on in a particular manner. It 'rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury.' (*Triple Cities Constr. Co. v. Maryland Cas. Co.*, 4 N.Y.2d 443, 448, quoting *Metro. Life Ins. Co. v. Childs Co.*, 230 N.Y. 285, 292). Parties are estopped to deny the reality of the state of things which they have made to appear to exist and upon which others have been made to rely. It does not operate to create rights otherwise nonexistent; it operates merely to preclude the denial of a right claimed otherwise to have arisen (21 N.Y. Jur., Estoppel, §§ 17-18).

*Holm v. C.M.P Sheet Metal, Inc.*, 89 A.D.2d 229, 234 (N.Y. App. Div. 1982); *accord Wilson v. Hevesi*, No. 96 Civ. 1185 (SAS), 1998 WL 351861, at *6 (S.D.N.Y. 1998) ("New York courts have consistently held that the doctrine of equitable estoppel cannot be invoked to create a right where one does not otherwise exist."); *McLaughlin v. Berle*, 71 A.D.2d 707, 418 (N.Y. App. Div. 1979) (estoppel should be applied only "when failure to do so would operate to defeat a right legally and rightfully obtained. It cannot operate to create a right."). "[T]he doctrine of equitable estoppel is to be invoked sparingly and only under exceptional circumstances." *Tang v. Jinro America, Inc.*, No. 03 Civ. 6477 (CPS), 2005 WL 2548267, at *5 (E.D.N.Y. October 11, 2005) (citing *Badgett v. N.Y.C. Health &*

*Hosps. Corp.*, 227 A.D.2d 127, 128 (N.Y. App. Div. 1996)); *Morgan Stanley High Yield Sec., Inc. v. Seven Circle Gaming Corp.*, 269 F. Supp. 2d 206, 220 (S.D.N.Y. 2003) (quoting same).

### b. Application

Under the circumstances of this case, the elements of equitable estoppel have not been satisfied. First, Buonora has not shown, with respect to the actions of the County Attorney, "[c]onduct which amounts to a false representation or concealment of material facts." *BWA Corp.*, 112 A.D.2d at 853. "As the cases make clear, the doctrine of equitable estoppel requires proof that the defendant made an *actual misrepresentation* or committed some other *affirmative wrongdoing*." *Powers Mercantile Corp. v. Feinberg*, 109 A.D.2d 117, 193 (N.Y. App. Div. 1985) (emphasis added). Buonora argues that the misrepresentation at issue was the County Attorney's assertion "that she would not defend him in this action and that he was not entitled to a defense at County expense." (Buonora Mem., at 15.) The Court disagrees, however, that this statement by the County Attorney constituted a misrepresentation or affirmative wrongdoing for the purposes of estoppel. *See Powers Mercantile Corp.*, 109 A.D.2d at 193; *accord Drozd v. I.N.S.*, 155 F.3d 81, 90 (2d Cir. 1998) *(*"Based on this record, there is no evidence that any United States official committed any wrongdoing. Accordingly, Drozd's claim falls short of the "affirmative misconduct" that is a prerequisite to estoppel."); *Readco, Inc. v. Marine Midland Bank,* 81 F.3d 295, 302 (2d Cir. 1996) ("Under any of these theories, plaintiffs cannot make out a claim for equitable estoppel because they cannot satisfy the first element, a false representation or concealment of material facts. As we discussed above,

nothing in § 6(r) required that Marine and Eagle Rock complete an audit prior to the closing."); *Jofen v. Epoch Biosciences, Inc*., No. 01 Civ. 4129 (JGK), 2002 WL 1461351, at *8 (S.D.N.Y. July 8, 2002) ("These allegations fail to state a claim because there is no allegation of a false representation or concealment of material facts"). To the extent that the County Attorney was following the Board's November 26, 2007 determination in declining to represent Buonora, the Court finds that no misrepresentation or wrongdoing on the part of the County Attorney occurred.[4]

The basis of Buonora's estoppel claim is his assertion that Buonora had a statutory entitlement to counsel up until the time of the Board's "final" determination, and the County Attorney was fully aware of this fact when she told him that she was unable to represent him in this case following the Board's November 26, 2007 determination. According to Buonora, since the County Attorney's refusal to represent Buonora on these grounds constituted a knowing misrepresentation upon

---

[4] Moreover, this statement by the County Attorney is not a misrepresentation of *fact*, as required by the elements of equitable estoppel, to the extent that the County Attorney declined Buonora's representation based on an interpretation of the statutory law. *See Gen. Auth. for Supply Commodities, Cairo, Egypt v. Ins. Co. of N. Am.*, 951 F. Supp. 1097, 1111 (S.D.N.Y. 1997) (internal citations and quotations omitted). If this issue is simply a dispute over the legal interpretation of the relevant state statutes, then equitable estoppel is inapplicable. *See id.* at 1112 ("In each of the documents upon which plaintiff claims to have relied, the representations contained therein express opinions regarding the Bonds' compliance with the Contract, not facts regarding the Bonds themselves."). In any event, the County Attorney made no misrepresentation that is legally cognizable for purposes of equitable estoppel.

which Buonora, in seeking outside counsel, detrimentally relied, she should be estopped from claiming that she is now able to represent Buonora. In particular, Buonora claims that his statutory entitlement to legal representation by the County Attorney was triggered by the allegations in the complaint, and that "[t]he County Attorney, by her arbitrary decision to rely upon a preliminary finding by the Nassau County Police Officer Indemnification Board, to deny him a defense and require him to obtain his own counsel, at his own expense, to defend his interests, violated Officer Buonora's due process rights." (Buonora Mem., at 9.)

The Court is not persuaded, however, that Buonora had such a legal entitlement to the County Attorney's representation following the Board's November 26, 2007 determination that his actions were not within the proper discharge of his duties or within the scope of his employment. Buonora asserts that the County had "an absolute duty to defend Officer Buonora from the time the plaintiff filed his complaint until such time as there was a 'final determination' that Officer Buonora's conduct was outside the scope of employment." (Buonora Mem., at 12.) More specifically, Buonora contends that "there was a statutory scheme in place by which Officer Buonora could defend this property right (the right to appear and present additional information before there was a final determination by the Nassau County Police Officer Indemnification Board pursuant to Municipal Law § 50-l) . . . ." (Buonora Mem., at 10.) However, there is nothing in the statutory language that supports this claim. General Municipal Law Section 50-l ("Section 50-l") does not provide Nassau County police officers with any right to "appear and present additional information"

before a "final determination." The text of the statute reads:

> *Notwithstanding the provisions of any other law*, *code or charter*, the county of Nassau shall provide for the defense of any civil action or proceeding brought against a duly appointed police officer of the Nassau county police department and shall indemnify and save harmless such police officer from any judgment of a court of competent jurisdiction whenever such action, proceeding or judgment is for damages, including punitive or exemplary damages, arising out of a negligent act or other tort of such police officer committed while in the proper discharge of his duties and within the scope of his employment. *Such proper discharge and scope shall be determined by a majority vote of a panel* consisting of one member appointed by the Nassau county board of supervisors, one member appointed by the Nassau county executive, and the third member being the Nassau county police commissioner or a deputy police commissioner.

N.Y. Gen. Mun. Law § 50-l (emphases added). Thus, there is no language in this provision, nor in any other statutory provision, that confers a right to appear and present additional information to the Board preceding a "final" determination provided to Nassau County

police officers.[5]  In fact, there is no reference at all in Section 50-l or any other statute to an "initial" and then "final" determination by the Board; rather, it simply refers to the issue being "determined" by the Board.

Buonora directs the Court's attention to a provision in the Nassau County Administrative Code ("Administrative Code" or "Code") to support his claim that he was in fact entitled to legal representation by the County Attorney until the Board's final determination.  The relevant part of the Nassau County Administrative Code provides that:

> The County shall provide for the defense of an employee in any civil action or proceeding in any state or federal court arising out of any alleged act or omission which occurred or is alleged in the complaint to have occurred while the employee was acting within the scope of his public employment or duties, or which is brought to enforce a provision of section nineteen hundred eighty-one or nineteen hundred eighty-three of title forty-two of the United States code.

Nassau County Admin. Code § 22-2.8(2)(a).  Buonora's position with respect to the Administrative Code, however, is equally untenable.  First, the Code also does not mention any right of employees to appear and present additional information prior to any determination by any governmental body.  Moreover, even though Buonora argues that the Code applies to his case, he concedes that General Municipal Law Section 50-l gives the Board the authority to determine whether or not to defend or indemnify an officer's actions, based on whether the officer acted within the scope of his employment.  (*See* Buonora Reply Memorandum, at 4) ("While it is true that General Municipal Law Section 50-l supercedes any other statute, its provisions are not applicable until such time as the Board reaches a final determination.")  Indeed, the County Attorney's letter informing Buonora of the Board's November 26, 2007 determination made clear that "[p]ursuant to General Municipal Law § 50-l, it is the function of the Nassau County Police Indemnification Board ("the Board") to determine whether the act or omission complained of was committed while in the proper discharge of your duties and within the scope of your public employment."  (Buonora Mem., at Ex. E.)  Buonora fails to explain, however, the relationship between the two statutes and why both apply to his case, but purportedly at different time periods.  It is inconsistent for Buonora to claim that his legal representation rights are governed by the Code before a "final determination" by the Board,

---

[5]  As discussed *infra,* the Court recognizes that Buonora was afforded an opportunity to challenge the November 26, 2007 determination within fifteen days and to request an opportunity to appear before the Board to present additional facts.  However, as confirmed at oral argument, those additional procedures are not codified in any law and appear to have developed as a matter of practice over time.  Thus, although Buonora argues that (under Section 50-l) this November 26, 2007 determination by a majority vote of the Board was insufficient to trigger the County Attorney's denial of his defense because Buonora was provided with  an additional opportunity to challenge it, there is nothing in Section 50-l that suggests that the County should ignore or put on hold any determination (which conforms with the requirement of Section 50-l) while such a challenge is taking place.

but that his rights following the Board's decision are governed by General Municipal Law Section 50-l. There is no support in the statutory language or in any case law applying these statutes to support the contention that one statute applies in the time period up until a "final" Board determination, while the other statute applies afterwards. In fact, Buonora's argument is belied by the fact that there is no reference to a "final determination" used in the statutory language at all.

It is clear from the language of the statutes that Municipal Law Section 50-l specifically applies to Nassau County Police Officers "notwithstanding any other law." *Id.* Consistent with that provision, it is clear that the Board was acting pursuant to its authority under Section 50-l in issuing the November 26, 2007 determination. (*See* Buonora Mem., at Ex. E.) Therefore, just as there exists no statutory language limiting the Board's authority to a "final determination," there is no basis in Buonora's claim that the November 26, 2007 determination lacked the authority pursuant to which the County Attorney could decline Buonora's defense. (Buonora's Mem., at 13.) The Board did subsequently allow Buonora the opportunity to appear and present information relating to his defense and indemnification, Buonora did appear before the Board, and the Board ultimately changed its determination. However, Buonora is unable to point to any specific language or cases requiring the Board to make its determination binding on the County Attorney only after allowing the officer in question to present facts on his behalf. In fact, the express language of Section 50-l suggests otherwise – that the Board is vested with the complete authority to make its own determination in deciding whether or not to indemnify or represent any police officers. In other words, a

"determination" (even if it can be later be reconsidered) is sufficient, since Section 50-l makes no reference to "initial" or "final" determinations. The language of the County Attorney's letter of November 26, 2007, also makes this clear: "If the Board determines the acts were committed while in the proper discharge of your duties and within the scope of your employment, the County would indemnify you for any award of damages against you." (Buonora Mem., at Ex. E.) If the Board makes a subsequent good faith determination that Buonora was entitled to legal representation by the County Attorney, it has the right to amend its determination in light of new facts or evidence. In fact, had the Deputy County Attorney's letter referred to the November 26, 2007 determination as a "final" determination which Buonora could appeal and challenge, then this issue may not have been raised at all; in fact, contrary to the November 26, 2007 letter, the County Attorney now describes the second determination as an "appeal" of the first, (County Def. Mem., at 6-7). *Cf. Dun & Bradstreet Corp. Found. v. U.S. Postal Serv.*, 946 F.2d 189, 193 (2d Cir. 1991) (stating that in the federal agency context, "[i]t is widely accepted that an agency may, on its own initiative, reconsider its interim or even its final decisions, regardless of whether the applicable statute and agency regulations expressly provide for such review") (internal citations omitted). However, regardless of the particular words used to describe these determinations, it is clear that a determination by a majority vote of the Board, even if it can be subsequently amended or revised based on a challenge by the police officer or new facts, is a determination under the plain language of Section 50-l, upon which the County Attorney can properly act in agreeing or declining to provide a defense in a civil action.

To the extent that Buonora further contends that any such interpretation of Section 50-l by the County violates his due process rights, the Court disagrees. In particular, Buonora argues that due process is violated by stripping him of his defense and indemnification based upon a determination made by the Board on November 26, 2007, without him being present and before he is given an opportunity to challenge that determination. However, in order to assert a violation of procedural due process rights, the plaintiff must "first identify a property right, second show that the [government] has deprived him of *that* right, and third show that the deprivation was effected without due process." *Local 342, Long Island Public Serv. Employees, UMD, ILA, AFL-CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (citation omitted) (emphasis in original). Thus, as the Supreme Court noted in *Board of Regents v. Roth*, procedural due process requirements "apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and *property*." 408 U.S. 564, 569 (1972) (emphasis added). Such property interests are determined and created by state laws that "secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577. Thus, "to have a legally cognizable property-type interest in a governmental benefit, an applicant 'must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Colson v. Sillman*, 35 F.3d 106, 108 (2d Cir. 1994) (quoting *Roth*, 408 U.S. at 577). "Whether the benefit invests the applicant with a 'claim of entitlement' or merely a 'unilateral expectation' is determined by the amount of direction the disbursing agency retains." *Colson*, 35 F.3d at 108 (citation omitted). In other words, if the governmental entity is given full discretion to deny the benefit, no property interest can exist. *See Natale v. Town of Ridgefield,* 170 F.3d 258, 263 (2d Cir. 1999); *Walz v. Town of Smithtown,* 46 F.3d 162, 167-68 (2d Cir. 1995); *Plaza Health Laboratories, Inc. v. Perales,* 878 F.2d 577, 581 (2d Cir. 1989). Here, because Section 50-l gives the Board full, unfettered discretion to make the "discharge and scope" determination, there is no constitutionally protected "property interest" in such a determination that can be the foundation for a procedural due process claim. *See, e.g., Perez v. City of New York,* No. 97 Civ. 4162 (JSR), 1997 WL 742536, at \*2 (S.D.N.Y. Dec. 2, 1997) ("Since [General Municipal Law Section 50-k] therefore vests the City with full discretion to deny representation and indemnification to persons in plaintiff's situation, plaintiff lacks the entitlement necessary to create a constitutionally protected interest. Moreover to the extent that plaintiff alleges that his procedural due process rights were violated because he was not given notice of the reasons for the City's decision, the short answer is that he is not entitled to notice and an opportunity to be heard unless he has a protected interest and, as discussed above, no such interest is created for him by this statute.") (citations omitted). Therefore, Buonora's claim – that the denial of indemnification based upon the November 26, 2007 determination by the Board (which was prior to Buonora being provided with an opportunity to be heard and to challenge the determination) violated his procedural due process rights – is without merit.

Buonora's reliance on *Galvani v. Nassau County Police Indemnification Board*, 242 A.D.2d 64 (N.Y. App. Div. 1998) is similarly misplaced. In *Galvani*, the Appellate Division held that an injured party who was awarded damages in a civil rights action against a

Nassau County police officer did not have standing to challenge the decision by the Nassau County Police Indemnification Board not to indemnify that officer. That holding is inapposite to this case and provides no support for Buonora's position. Moreover, the fact that, in *Galvani*, the Board did not make that determination until after the trial (and therefore the County defended the officer during the trial) does not suggest that, when the Board makes a determination prior to the trial, the County cannot discontinue the defense at that time. In this case, the Board made a determination before trial, but it is in the complete discretion of the Board to make that determination whenever it so chooses. There is nothing in the administrative code or municipal law that directs the Board to do otherwise. Therefore, the applicable statutory law makes clear that Buonora was not entitled to a defense by the County Attorney following the Board's determination that his actions were outside the scope of his employment. Because Buonora did not possess a right to representation by the County Attorney under Municipal Law Section 50-l under such circumstances, he cannot look to the doctrine of estoppel to create one.[6] *See Peterson v. City of New York*, No. 97 Civ. 4505, 1998 WL 247530 at * 7 (S.D.N.Y. May 14, 1998).

In sum, the Court is not persuaded that in following the November 26, 2007 determination by the Board, the County Attorney made an "erroneous determination" under Section 50-l not to represent Buonora (Buonora Mem., at 9), even though the Board was going to provide Buonora with the opportunity to appear and challenge that determination. The County Attorney did not act inappropriately in not appearing on behalf of Buonora under such circumstances, since, as Mr. Weingard attests himself, there is no dispute that "the County Attorney's decision was based upon the preliminary determination of the Nassau County Police Indemnification Board that Officer Buonora [sic] actions were not within the proper discharge of his duties and outside the scope of his employment." (Weingard Aff. ¶ 7.) By following the Board's determination, the County Attorney did not "arbitrarily supercede[] the statutory authority and render[] her decision denying Officer Buonora a defense at county expense." (Buonora's Mem., at 10.) She did not "voluntarily disqualif[y] herself" nor "chose . . . to determine that it would be inappropriate to defend him in this action." (Buonora Mem., at 14.) Instead, it was the Board's determination that resulted in the County Attorney's communications to Buonora and his counsel, and the County Attorney simply followed the determination of the Board, as statutorily directed. Even though Buonora claims that the County Attorney acted "in violation of the law," he does not point to any part of the administrative code or municipal law stating that she had to wait for any challenges by Buonora to the Board's determination (or a "final determination") before informing Buonora to seek private counsel. Importantly, as noted previously, there is no mention of "final determination" in any part of the statutory language, nor is there a distinction between a "preliminary" or

---

[6] Buonora's references and comparisons to the New York State Public Officer's Law Section 18 are also inapposite, because the Board is given specific statutory authority in Nassau County to determine whether to defend or indemnify an officer under Municipal Law Section 50-l. As asserted by Buonora, the provision analogous to New York State Public Officer's Law Section 18 is the Nassau County Administrative Code, not Municipal Law Section 50-l. (Buonora Mem., at 13.).

"initial" and "final" determination by the Board in its rulings. In fact, the documents reflecting the Board's November 26, 2007 and March 14, 2008 determinations reveal that their formats were identical. (*See* Buonora Mem., at Exs. F and I.) Not only is there no label or identifier on the documents indicating that one determination was "preliminary" and the latter "final," but the bottom of both pages states that "[t]he signature of each Board member participating in the decision attests only to the *final* decision of the Board and should not be construed as being necessarily reflective of the individual's vote on the final decision." (Buonora Mem., at Exs. F and I) (emphasis added).

Not only has Buonora failed to show that the County Attorney made a misrepresentation of material fact for the purposes of equitable estoppel, he has also failed to show that he has suffered any prejudice as a consequence of her actions. *See, e.g., River Seafoods Inc.*, 19 A.D.3d at 122. Buonora argues that he had "to retain his own counsel to fully defend this matter and assume the costs of his own defense," but any costs that he had to assume in the time between the November 26, 2007 determination and the County Attorney's offer to assume Buonora's representation following the March 14, 2008 determination will now be reimbursed by the County. (*See* Buonora Mem., at Ex. O.) There was also no prejudice to Buonora in terms of adequate legal representation, since Buonora was able to immediately retain the services of private counsel, who was already familiar with his case and who had already been retained by Buonora beforehand to "monitor his defense." (Weingard Aff. ¶ 5.) Accordingly, because Buonora has plainly failed as a matter of law to satisfy the elements of equitable estoppel required under New York law, the Court

denies his motion on equitable estoppel grounds.[7]

_____

[7] Moreover, even assuming *arguendo* that Buonora could meet his burden regarding the elements of equitable estoppel, the law of equitable estoppel against a governmental body would likely bar any such claim of estoppel against the Board or Nassau County. *Petrelli v. City of Mount Vernon*, 9 F.3d 250, 256 (2d Cir. 1993); *see also, e.g., New York State Med. Transporters Assoc. v. Perales*, 77 N.Y.2d 126, 130 (N.Y. 1990) (estoppel against a governmental agency foreclosed "'in all but the rarest cases.'" (citation omitted)); *City of New York v. City Civil Serv. Comm'n*, 60 N.Y.2d 436, 470 (N.Y. 1983) ("estoppel may not be applied to preclude a State or municipal agency from discharging its statutory responsibility."); *Hamptons Hosp. & Med. Ctr., Inc. v. Moore*, 52 N.Y.2d 88, (N.Y. 1981) ("In principle it would be unthinkable that [a government agency] through mistake or otherwise could be estopped from discharging the responsibility vested in it by legislative enactment."); *Schmitt*, 999 F.Supp. at 360 ("The New York Court of Appeals has repeatedly held that estoppel will not lie against municipalities, public agencies or governmental subdivisions."); *Drozd*, 155 F.3d at 90 ("The doctrine of equitable estoppel is not available against the government 'except in the most serious of circumstances,' *United States v. RePass*, 688 F.2d 154, 158 (2d Cir.1982), and is applied 'with the utmost caution and restraint,' *Estate of Carberry v. Comm'r of Internal Revenue*, 933 F.2d 1124, 1127 (2d Cir.1991) (internal quotation marks and citations omitted)."); *Shelton v. Wing*, 256 A.D.2d 1143, 1144 (N.Y. App. Div. 1998) (distinguished by, *Bd. of Educ. of N. Tonawanda City Sch. Dist. v. Mills*, 693 N.Y.S.2d 271 (N.Y. App. Div. 1999)) (holding that estoppel cannot be invoked against county Department of Social Services); 28 Am. Jur. 2d Estoppel and Waiver § 150 ("In general, courts do not distinguish among state and its political subdivisions (such as counties, municipal corporations, and towns) with respect to the availability of estoppel."). The Court sees no such extraordinary circumstances in the

### 2. Waiver

#### a. Legal Standard

Under New York law, "[t]o establish waiver, it is necessary to show that there has been an intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it." *Airco Alloys Div.*, 76 A.D.2d at 81(internal quotations and citation omitted); *see also Jordan v. Can You Imagine, Inc.*, 485 F. Supp. 2d 493, 499 (S.D.N.Y. 2007) ("Waiver requires the voluntary and intentional abandonment of a known right which, but for the waiver, would have been enforceable.") (internal citations omitted); *LaGuardia Assoc. v. Holiday Hospitality Franchising, Inc.*, 92 F. Supp. 2d 119, 129-30 (E.D.N.Y. 2000) (same). Waiver may be established by affirmative conduct or by a failure to act that evinces the intent to abandon the right. *Jordan v. Can You Imagine, Inc.*, 485 F. Supp. 2d at 499 (internal citations omitted).

The doctrines of waiver and estoppel are closely akin, but there are some important distinctions. "[A] waiver is a voluntary and intentional abandonment or relinquishment of a known right, whereas an equitable estoppel may arise even though there was no intention on the part of the party estopped to relinquish or change any existing right . . . . Among other distinctions, waiver involves the act and conduct of only one of the parties . . . ." 28 Am. Jur. 2d Estoppel and Waiver § 36.

#### b. Application

The Court determines in this case that there is no "known right" that the County Attorney has relinquished. Thus, Buonora's motion on waiver grounds also fails. As discussed *supra*, the County Attorney's decision to deny Buonora representation after the Board's November 26, 2007 determination was not a relinquishment of a right, but rather the implementation of the language of Section 50-l, which does not provide for such defense and indemnification in a civil action once a determination is made by the Board that the officer was acting outside the scope of employment. For these reasons, the Court denies Buonora's motion on the ground that the County Attorney waived her right to represent Buonora between the November 26, 2007 determination by the Board and the reversal of its position on March 14, 2008.

### C. Disqualification of Counsel

Disqualification is viewed "with disfavor in this circuit," *In re Bohack Corp.*, 607 F.2d 258, 263 (2d Cir. 1979), because it "impinges on parties' rights to employ the attorney of their choice." *United States Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985) (citation omitted). In particular, the Second Circuit has noted the "high standard of proof" required for disqualification motions because, among other things, they are "often interposed for tactical reasons, and that even when made in the best of faith, such motions inevitably cause delay." *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983); *accord Gov't India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978).

---

present case to warrant equitable estoppel against a governmental body. Indeed, as noted *supra*, Buonora's claim does not even satisfy the ordinary elements of the doctrine of equitable estoppel.

Nevertheless, the disqualification of counsel "is a matter committed to the sound discretion of the district court." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990). A federal court's power to disqualify an attorney derives from its "inherent power to 'preserve the integrity of the adversary process,'" *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)), and "is only appropriate where allowing the representation to continue would pose a significant risk of trial taint." *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981) (internal quotation marks omitted). In exercising this power, courts look for "general guidance" to the American Bar Association ("ABA") and state disciplinary rules, although "not every violation of a disciplinary rule will necessarily lead to disqualification."[8] *Hempstead Video Inc.*, 409 F.3d at 132.

### 1. Conflict of Interest Between Officer Buonora and Officer Vara

Buonora argues that a conflict of interest exists between himself and co-defendant Vara, one that Buonora is unwilling to waive. (Buonora Mem., at 8.) Specifically, Buonora argues that the County Attorney should be disqualified pursuant to Ethical Consideration 5-15 of the ABA Code of Professional Responsibility, which provides that:

> If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation. A lawyer should never represent in litigation multiple clients with differing interests, and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests.

ABA Code of Prof. Resp. EC 5-101. At this stage, the Court disagrees with Buonora and does not find that the joint representation of Officers Buonora and Vara poses a "significant risk of trial taint," *Glueck*, 653 F.2d at 748, that, if not remedied, would "undermine[] the [C]ourt's confidence in the vigor of the attorney's representation of his client[s]." *Nyquist*, 590 F.2d at 1246.

As evidence of the conflict between his and Vara's interests, Buonora argues that "it is very likely that the testimony of both officers will differ with respect to the events that are the subject of this action – testimony on behalf of Officer Vara that can not be gauged at present . . . .'" (Buonora Mem., at 22) (footnote omitted.) As previously discussed by this Court in its Memorandum and Order ruling on Buonora's motion to dismiss and motion for

---

[8] The Court also notes that Civil Rule 1.5(b)(5) of the Local Rules of the U.S. District Courts for the Southern and Eastern Districts of New York binds attorneys appearing before those courts to the New York State Lawyer's Code of Professional Responsibility. Local Civ. R. 1.5(b)(5); *see, e.g., United States v. Hammad*, 846 F.2d 854, 857-58 (2d Cir. 1988); *Polycast Tech. Corp. v. Uniroyal, Inc.*, 129 F.R.D. 621, 625 (S.D.N.Y. 1990) ("[I]n this Court federal law incorporates by reference the Code of Professional Responsibility.").

summary judgment, it is far from clear that the testimony of Vara will be inconsistent with that of Buonora. In arguing his previous motion, counsel for Buonora claimed that Vara's and Buonora's grand jury testimonies were inconsistent and, therefore, could not provide a basis for conspiracy. As set forth in this Court's prior Memorandum and Order, after carefully reviewing this testimony, the Court wholly disagreed. The Court pointed to specific testimony to show that "one could reasonably infer from this testimony that Vara and Buonora testified consistently regarding the very issue about which Buonora perjured himself, *i.e.,* the actions he took during the period that Vara was chasing Coggins, especially with respect to Buonora's purported retrieval of the gun in question." Memorandum and Order, dated June 20, 2008, 07 Civ. 3624 (JFB)(AKT). Even plaintiff alleges in his complaint that Vara and Buonora provided mutually consistent testimony. (Compl. ¶¶ 23-24, 67). Moreover, Buonora himself insists that the sole content of his false testimony regarded "who had discovered a handgun found at the location where Coggins had fled police." (Buonora Mem., at 1). The Court concludes that the evidence is far from clear that Vara's likely testimony conflicts with that of Buonora, especially in light of Buonora's guilty plea, and that separate counsel for Buonora and Vara is either prudent or necessary at this juncture.

Importantly, even though counsel for Buonora did not dispute at oral argument for purposes of his motions to dismiss and for summary judgment that Buonora provided false testimony before the grand jury, this is not necessarily inconsistent with Vara's having provided truthful testimony during the grand jury proceedings. Thus, the fact that Buonora pled guilty to perjury and was disciplined by the Police Department is not sufficient to warrant disqualification of the County Attorney from representing both Buonora and Vara. Also, because Buonora has already been disciplined by the Department for his perjurious testimony, the Court is not persuaded that sheer speculation by Buonora about the possibility of further disciplinary actions resulting from potential conflicting testimony by Vara and Buonora is cause for disqualification of the County Attorney. (*See* Buonora Mem., at 22.)

In addition, Buonora refers to the answer filed by the County Attorney on behalf of the County Defendants, stating that "[b]y appearing on behalf of Officer Vara and refusing to do so on Officer Buonora's behalf, the County has explicitly demonstrated that it views the position, and, importantly, the defense of these Officer's [sic] differently." (Buonora Mem., at 20). However, as discussed *supra*, the Court has determined that the County Attorney's appearance on behalf of only the County Defendants did not necessarily imply any position with respect to Buonora; rather, her failure to appear on behalf of Buonora was simply the result of following the Board's November 26, 2007 determination. Thus, any references to Vara's actions or those of the County defendants (and concomitant omissions with respect to Buonora's actions) did not suggest that the County Attorney was taking any opposing, negative position with respect to Buonora. Thus, based on this record, the Court declines to disqualify the County Attorney on the basis of any purported potential or actual conflict of interest between Officers Buonora and Vara.

## 2. Conflict of Interest Between Officer Buonora and the County

Buonora also argues that a conflict of interest exists between himself and the County such that the County Attorney should be disqualified from assuming his representation. The Court disagrees, however, and also denies Buonora's motion for the County Attorney's disqualification on these grounds.

Buonora first asserts that "the County Attorney had an absolute statutory obligation to defend Officer Buonora in this action pursuant to the Nassau County Administrative Code" and that she "arbitrarily and summarily acted on her own accord to deprive Officer Buonora of a defense at County expense." (Buonora Mem., at 19-20). The Court has already rejected this argument, however, as discussed *supra*.

As further evidence of this conflict with the County, Buonora states that the County Attorney's answer on behalf of the County Defendants implicitly attributed guilt to Buonora for any harm to Coggins. In particular, he alleges that the answer stated "that the plaintiff's damages, if any, were as a result of conduct of parties other than the parties they were appearing for. In other words, . . . the County Attorney has previously alleged that [Buonora is] responsible for plaintiff's alleged damages." (Buonora Aff. ¶ 16.) The Court finds that this is insufficient evidence to suggest that the County or County Attorney views the defense of Buonora in a way that conflicts with the defense of the County Defendants. As discussed *supra*, the Court finds that the County Attorney merely followed the Board's initial determination not to defend Buonora, and this accounts for any omitted references to Buonora in the answer.

In fact, the interests of the County, Buonora, and Vara appear to be aligned following the Board's March 14, 2008 determination. Even Buonora concedes, "at the end of the day, due to the final determinations of the Nassau County Police Officer Indemnification Board that both Officer Vara and Officer Buonora acted within the proper discharge of their duties and within the scope of their employment, the County of Nassau, her employer and a party to the action is financially responsible for any verdict or judgment entered against both officers." (Buonora Mem., at 22.) Thus, any judgment against Buonora will effectively be one against the County. Thus, the Court rejects as unlikely the contention that "the County Attorney may, perhaps unconsciously, seek to create distance between [Officer Buonora] and the County [or Officer Vara]." (Buonora Mem., at 21-22) (quoting *Death v. Salem*, 111 A.D.2d 778, 781 (N.Y. App. Div. 1985).) Moreover, the Second Circuit has made clear that automatic disqualification does not result where there is joint representation of the County and its employees. *See Norton v. Town of Islip*, 2006 WL 2465031, at *5 (E.D.N.Y. 2006) ("the Second Circuit has been clear that 'in *Dunton* . . . this Court declined to create a per se rule requiring disqualification whenever a municipality and its employees are jointly represented in a Section 1983 case. Rather a case-by-case determination is required.'") (quoting *Patterson v. Balsamico*, 440 F.2d 104, 114 (2d Cir. 2006)). The Court is unable to conclude that, based upon the current record, the County Attorney's multiple representation of Buonora and the County Defendants requires disqualification because of any potential or actual conflicts of interest.

Buonora refers repeatedly to *Death v. Salem*, 111 A.D.2d 778, 780 (N.Y. App. Div. 1985) as a situation analogous to the one at

hand. However, unlike the attorney in *Death*, there is no indication that the County Attorney has clearly shown disparate treatment toward Buonora. *See Death v. Salem*, 111 A.D.2d 778, 780 (N.Y. App. Div. 1985); *cf. Dunton v. Suffolk County, State of N.Y.*, 729 F.2d 903, 909 (2d Cir. 1984) (finding disqualification where "the County Attorney would take a basic position throughout the litigation which was adverse to Pfeiffer's interest."); *Baker v. Gerould,* 2005 WL 2406003, at *4 (W.D.N.Y. 2005) (rejecting the argument that "the Attorney General's office--as the entity statutorily charged with representing the State's interests, has a built-in incentive to argue against the employee's interest, namely, by seeking to prove that if a constitutional violation in fact occurred, the employee committed it outside the scope of his employment.") In *Death*, the county attorney had submitted a joint answer on behalf of *all* of the defendants, and answered differently with respect to one of the defendants. *See Death*, 111 A.D.2d at 779.[9] Here, there is no "unusual treatment" that has been accorded Buonora, either in the answer or in the County Attorney's decision not to join in his prior motion or appeal. Rather, the County Attorney was simply not representing him at that time. Although Buonora argues otherwise, the County Attorney's failure to join in Buonora's motion or appeal with respect to his defense of absolute immunity (Buonora Mem., at 21), is not evidence of a conflict of interest. Because the County

Attorney has taken the same position with respect to all of the County Defendants, this is no indication that she views the defense of Buonora any differently than that of the other defendants.

Finally, Buonora's bald assertions and speculation as to what actions were attributable to the County Attorney when she or representatives of her office appeared before the Board at the time of its November 26, 2007 determination are also insufficient to warrant disqualification by the Court. (*See* Buonora Mem., at 21.) ("While we are . . . not in possession of the transcript of the prior meeting(s) where evidence was presented to the Board which led to the Board's preliminary determination . . . it is not a stretch to believe that the evidence presented to the Board *ex parte* at the earlier meeting(s) was presented in a manner less than favorable to Officer Buonora's interests.") Not only are such actions speculative at best, the County Attorney has fervently denied presenting Buonora in a negative light at that time, (County Def. Mem., at 24), and Buonora has provided no evidence to the contrary.

In light of the possibility that a potential conflict of interest may arise between Buonora and the County and/or Vara, the Court, while declining to disqualify the County Attorney at this juncture based upon the current record, denies Buonora's motion to request separate counsel with no prejudice to his renewing the motion at a later date if necessary. *See, e.g., Dunton*, 729 F.2d at 909 ("[a] court is under a continuing obligation to supervise the members of its Bar."). Thus far, there is no reason for disqualification of the County Attorney in her representation of Buonora – which again is an extreme and disfavored action in this Circuit – where the Board's March 14, 2008 determination is that Buonora did in fact act

---

[9] The County Attorney correctly points out that *Death* analyzed New York State Public Officer's Law Section 18(3)(b), which is analogous to Administrative Code Section 22-2.8(2)(b) and not General Municipal Law Section 50-1. Nonetheless, its analysis regarding a potential conflict of interest among co-defendants is instructive and not tied to any particular statute.

within the scope of his employment. The County Attorney never attempted to shift any culpability to Buonora and recognizes "[m]ore importantly, now that the Board has determined that Buonora was acting within the scope of his employment and voted to indemnify and defend him, the County Attorney cannot now or anytime in the future, make any representation with regard to Buonora that would create a conflict of interest." (County Def. Mem., at 24.) Moreover, as confirmed at oral argument, after discussing the facts of the instant case with Officer Vara and having reviewed the grand jury testimony of Buonora and Vara from the Coggins grand jury proceeding, the County Attorney does not believe there is a basis to conclude that the factual and/or legal positions of the three named defendants in this litigation are such that a conflict of interest exists and the Court has no basis, given the current record, to conclude otherwise.

Accordingly, having considered the applicable ethical rules to guide the Court's discretion as well as all other relevant factors, the Court concludes that, based upon the current record, disqualification under the circumstances of this case is not warranted.

### III. CONCLUSION

For the foregoing reasons, Buonora's motion for a declaratory judgment is denied in its entirety.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 5, 2009
      Central Islip, NY

* * *

The attorney for plaintiff is Frederick K. Brewington, Esq. of the Law Offices of Frederick K. Brewington, 50 Clinton Street, Suite 501, Hempstead, New York, 11550. The attorney for defendant Buonora is Laurence Jeffrey Weingard, Esq. of the Law Offices of Laurence Jeffrey Weingard, 250 West 57th Street, New York, New York, 10107. The attorney for defendants Nassau County, the Police Department, Vara, and John Does 1-10 is Donna Napolitano, Esq. of the Nassau County Attorney's Office, One West Street, Mineola, New York, 11501.