```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF NEW YORK
 2     -----------------------------------
       DARRYL T. COGGINS,               |   Docket 07-cv-03624-JFB-AKT
 3                                      |
                           Plaintiff,   |   United States Courthouse
 4                                      |   Central Islip, New York
                    v.                  |
 5     COUNTY OF NASSAU et al,          |   June 26, 2012
                                        |   11:17 a.m. - 12:55 p.m.
 6                         Defendants.  |
       -----------------------------------
 7                  TRANSCRIPT FOR CIVIL CAUSE MATTER
           ORAL ARGUMENT ON DEFENDANT'S MOTION AND OPINION OF THE COURT
 8               BEFORE THE HONORABLE A. KATHLEEN TOMLINSON
                      UNITED STATES MAGISTRATE-JUDGE
 9
       A P P E A R A N C E S :
10
       For the Plaintiff:        GREGORY CALLISTE, ESQ.
11                               Law Offices of Frederick K. Brewington
                                 556 Peninsula Boulevard
12                               Hempstead, New York 11550-5428
                                 (516) 489-6959; (516) 489-6958 fax
13
14     For County of Nassau:     DIANE C. PETILLO, ESQ.
                                 Office of the Nassau County Attorney
15                               One West Street
                                 Mineola, New York 11501
16                               (516) 571-3056; (516) 571-3058 fax

17     For Police Officer        LAURENCE JEFFREY WEINGARD, ESQ.
       Craig Buonora:            Hayt, Hayt & Landau
18                               600 Northern Boulevard
                                 Great Neck, New York 11554-1576
19                               (212) 974-5200; (212) 977-7035 fax

20                               MITCHELL F. SENFT, ESQ.
21                               250 West 57th Street, Suite 401
                                 New York, New York 10107
22                               (845) 667-6517; (914) 455-4288 fax

23     Transcriber:             AAA Electronic Sound Reporters
                                 (888) 866-5135; (888) 677-6131 fax
24                               electronicsound@court-transcripts.net

25          (Proceedings recorded by electronic sound recording)
```

*Coggins v. County of Nassau et al - 6/26/12*                    2

1          COURTROOM DEPUTY:  Calling 07-3624, Coggins v. County

2    of Nassau et al.  Please state your appearances for the record.

3          MR. CALLISTE:  For the Plaintiff, the Law Offices of

4    Frederick K. Brewington, by Gregory Calliste.  Good morning,

5    Your Honor.

6          THE COURT:  Good morning.

7          MS. PETILLO:  Good morning, Your Honor; for the Nassau

8    County Defendants, Diane C. Petillo, with the Nassau County

9    Attorneys' Office.

10          THE COURT:  Good morning.

11          MR. WEINGARD:  For the Defendant Buonora, Your Honor,

12    Laurence Jeffrey Weingard.

13          THE COURT:  Good morning.

14          MR. SENFT:  And associated with Mr. Weingard, Mitchell

15    F. Senft.

16          THE COURT:  Good morning.  All right.  Mr. Weingard,

17    this is your motion, so if you'd like to start the oral

18    argument, you --

19          MR. WEINGARD:  You want me at the podium, ma'am?

20          THE COURT:  It would be helpful for us in terms of

21    picking this up on the record, yes.  Because these are all --

22    these conferences are recorded.

23          MR. WEINGARD:  Judge, before we even start on any

24    legal argument with regard to the motion, I wonder if the Court

25    is familiar with the *Rehberg* case.

*Coggins v. County of Nassau et al - 6/26/12*                    3

1      THE COURT:  Yes, very familiar, and I'm --

2      MR. WEINGARD:  I would have assumed as much, ma'am.

3      THE COURT:  And I am certain that you're going to make

4  various applications, which frankly for today's purposes, don't

5  involve me.  You're going to wind up going back to Judge Bianco,

6  I'm sure.

7      MR. WEINGARD:  Well, that's the point.  Let me tell

8  you what my position should be at the moment in my view.  I

9  think the right way to proceed since we are asking for grand

10 jury minutes, and there are observations in *Rehberg* that are

11 very appropriate to that, it seems as though the Court in

12 dealing with the function of the grand jury in *Rehberg* made

13 specific points that it would create a situation, which parties

14 in the 1983 proceeding would be asking for and obtaining

15 transcripts of the grand jury testimony, which may have been

16 had.  And as you may recall, there were actually two separate

17 grand jury proceedings.  There was one against the Plaintiff --

18     THE COURT:  Yes.

19     MR. WEINGARD:  -- and then of course one against my

20 client as a Defendant.

21     THE COURT:  Yes.

22     MR. WEINGARD:  And we know that we have been supplied

23 with some of that material --

24     THE COURT:  Yes.

25     MR. WEINGARD:  -- during discovery, but we have not

*Coggins v. County of Nassau et al – 6/26/12*                4

1    been supplied with all of the material, including several

2    independent police witnesses from other jurisdictions, as well

3    as the persons who were in the Plaintiff's car at the time of

4    the stop.

5            It's my position, and it always has been my position

6    that this case requires dismissal on the basis of absolute

7    immunity.  Straight dismissal on the basis of absolute immunity

8    in a summary judgment proceeding.  That's the way I proceeded

9    initially, and as you will undoubtedly recall, we went all the

10   way up on petitions for certiorari for the Supreme Court.

11           THE COURT:  Yes.

12           MR. WEINGARD:  That petition was denied just before

13   the petition in *Rehberg* was granted.

14           THE COURT:  Mm-hm.

15           MR. WEINGARD:  I would think, and I'm speculating

16   here; but I would think it's highly likely that the Court felt

17   that *Rehberg* was an appropriate vehicle for deciding these

18   issues.  And as part of *Rehberg*, as you know, they point out not

19   only that the grand jury minutes could be obtained, and that

20   that could cause all sorts of problems vis-à-vis the secrecy of

21   the grand jury proceedings, but in addition to that, they

22   eviscerated, for all intensive purposes, the complaining witness

23   rule and the extra-judicial conspiracy exception to *Briscoe*,

24   which this circuit had had in place for a number of years.

25           Given all of those things, I would suggest that this

*Coggins v. County of Nassau et al - 6/26/12*                    5

1   matter ought to be adjourned without date; meaning this motion,

2   put over without date.  During the course of which, we would

3   attempt, if I could find the correct vehicle to get there, and I

4   will, I just don't know it as I stand here today; we will

5   attempt to get before Judge Bianco, and to in some way renew the

6   application for absolute immunity predicated on the *Rehberg*

7   decision, which I believe is all encompassing and deals with

8   each and every issue I raised I guess four years ago when this

9   case first started.  So, if the Court would listen to that

10  application; that is an application for just the continuance

11  without date, I would appreciate that.  I don't believe there's

12  any prejudice to anybody in doing that.

13         I know the Plaintiff's counsels have joined in our

14  application and filed their own papers.  I have not seen

15  anything from the county attorney, except objections to our

16  application, but it would seem logical to me, even though the

17  County Attorney's Office never participated in the summary

18  judgment application for absolute immunity, that they may well

19  choose to at some point join in that application at this

20  juncture since it will involve at least another police officer,

21  Officer Vara, who was the Nassau County Police Officer who

22  testified against my client under a grant of immunity, and whose

23  testimony I must have in order to properly proceed in this case.

24         Rather than violate the secrecy provisions of the

25  grand jury now, and I would think the Court may feel obliged to

*Coggins v. County of Nassau et al - 6/26/12*                    6

1    do that based on my application; rather than do that and so that

2    it does not appear inappropriate for us to make that application

3    at this moment, we would suggest adjourning it and getting

4    before Judge Bianco or yourself or whoever where appropriately

5    to be, and really stressing what the Supreme Court has

6    accomplished in determining that the conflict of circuits, and I

7    would remind you that there were eight circuits, which favor the

8    position that I was advancing.

9            THE COURT:  And the second circuit was the odd man

10   out.  Yes, I'm well aware of that.

11           MR. WEINGARD:  And they have it.

12           THE COURT:  Go ahead.

13           MR. WEINGARD:  I notice how they frame that in the

14   opinion.  They don't identify circuits, except for the 11th

15   circuit.  And my own feeling is that it might have been easier

16   to take an 11th circuit case, so they could have a nine-judge

17   court as opposed to one of the judges having to possibly excuse

18   herself from hearing that case.  And I would remind you that

19   *Rehberg* was a nine/zero decision.  It was a unanimous court.

20   So, given those circumstances and even though it's a relative

21   long drive for me to come out here, I would think it's

22   appropriate to adjourn this *sine die*.

23           THE COURT:  All right.  Does the Plaintiff wish to be

24   heard?

25           MR. CALLISTE:  Judge, only insofar as to state that

1   even if the Court makes a determination with respect to whether

2   Defendant Buonora was absolutely immune regarding his testimony

3   there are still actions, the actions, the actual physical

4   actions taken Defendant Buonora that are not subject to

5   immunity.  And I don't believe that that would be -- that

6   argument before Judge Bianco would be dispositive in terms of

7   the Defendants in this case.  So, I think that the right cause

8   of action would be to proceed here and to make the appropriate

9   application to Judge Bianco if Defendant Buonora believes that

10   that's the right thing to do.  But at this point the parties

11   have already convened here and I don't think that adjourning it

12   would be -- I don't think it would lead to any sort of different

13   outcome.

14        THE COURT:  All right.  You want to respond to that?

15        MR. WEINGARD:  I do.  There are no actions that were

16   taken by Buonora.  He did not physically assault; he did not

17   make an arrest; this individual surrendered with his lawyers the

18   next day as I recall.  The investigation was conducted by

19   detectives; there were various people on the scene, specifically

20   Vara, as the arresting officer.  Buonora did nothing but show up

21   and give chase when the Defendant, now Plaintiff, ran away.  And

22   in addition to that, they lost him.  He was gone.

23        And then what occurred with regard to the securing of

24   the vehicle, the locating of the 357 Magnum pistol at the scene

25   of a particular fence where the Plaintiff jumped off, and the

*Coggins v. County of Nassau et al - 6/26/12*                    8

1    materials also found alongside the car, which consisted, as I

2    recall, of a fully loaded 357 Magnum -- the Magnum cylinder with

3    bullets, I should have said.  So, a Magnum was found at one

4    location where the Plaintiff jumped over a fence.  Not by my

5    client, who lied to the grand jury as to that and was tried --

6    not tried -- and was charged, and eventually pleaded guilty to

7    misdemeanor perjury.

8            With respect to all of the issues, my client could not

9    conceivably, even if we were using the standards, the *Malley*

10   Standard and various other standards, could not conceivably, in

11   light of *Rehberg*, have been a complaining witness, no affidavit,

12   did nothing, never pressed a charge, and was sent home from the

13   scene at 7:40 in the morning.  [He] didn't know anything about

14   this case, other than the fact that he was called to the grand

15   jury.

16           So I don't understand Plaintiff's position.

17   Plaintiff's position would undercut the concept of absolute

18   immunity, as I read the case law, requires not to defend,

19   because then it's not absolute immunity.  The concept is you

20   have to dispose of it at the earliest possible time and you have

21   to dispose of it in such a way so as not to incur expense to the

22   client, which would also kill absolute immunity, which would

23   include additional time on the part of the individual.  And if

24   everybody who was entitled to absolute immunity had to go

25   through those proceedings, it wouldn't be absolute.

*Coggins v. County of Nassau et al - 6/26/12*                    9

1          THE COURT:  All right.  I have your point.  Thank you.

2          MR. WEINGARD:  Thank you.

3          THE COURT:  Ms. Petillo, you want to be heard?

4          MS. PETILLO:  I join in the request to adjourn this

5    matter.  In light of the subsequent case law, I would like to

6    review it with respect to Officer Vara, because there is an

7    issue of the malicious prosecution, which factors into the grand

8    jury testimony.

9          THE COURT:  All right.  Well, let me explain this.

10   There are separate issues here.  One has to do what this request

11   for the release of the grand jury minutes, the other has to do

12   with the coming of the *Rehberg* decision, which as I indicated

13   really is not before me.  That issue is going to have to be

14   resolved before Judge Bianco.

15         Based on my reading of --

16         MR. WEINGARD:  I'm sorry, Judge, who?

17         MS. PETILLO:  Bianco.

18         THE COURT:  Bianco.

19         MR. WEINGARD:  Did you say Bianco?

20         THE COURT:  Yes.

21         MR. WEINGARD:  I thought I -- I must have misheard.  I

22   thought you said a different name.

23         THE COURT:  My reading of *Rehberg* is such that I am

24   going to stay any further discovery with regard to your client,

25   Mr. Weingard, with one exception.  That is at some point, he's

*Coggins v. County of Nassau et al - 6/26/12*          10

1   going to be, I assume, called as witness in this case regardless

2   of whatever else happens here.  And so at a point in time where

3   it would be necessary to take his deposition from a factual

4   standpoint, I'm not going to preclude any of the parties from

5   calling him as a witness in that regard.

6           He's not going to -- the scope of his testimony,

7   obviously in that setting, would be limited, and certainly

8   impacted by the other actions you're planning to undertake on

9   his behalf.  But we're not even at that point just yet.

10          MR. WEINGARD:  May I just address that last thought,

11  Judge?

12          THE COURT:  Go ahead.

13          MR. WEINGARD:  Again, conceptually, the whole reason

14  for absolute immunity is so that as a party defendant currently,

15  he not be put through depositions, discovery and various other

16  items.  There are cases --

17          THE COURT:  You missed my point, Mr. Weingard.

18          MR. WEINGARD:  Okay.

19          THE COURT:  I just said I'm staying all discovery with

20  regard to your client with the one exception --

21          MR. WEINGARD:  But that's the important exception.

22          THE COURT:  -- and that is as a fact witness.  If he's

23  a fact witness here, he's a fact witness.  It's got nothing to

24  do with his being sued as a Defendant in this case.

25          MR. WEINGARD:  Will that --

*Coggins v. County of Nassau et al - 6/26/12*          11

1      THE COURT:  They may not call him at this point

2   depending on what happens.

3      MR. WEINGARD:  Will that await a determination on my

4   application for dismissal predicated on absolute immunity?

5      THE COURT:  Well, you can ask Judge Bianco for that,

6   all right?  That you want everything stayed as regards to your

7   client.  I'm not inclined to do that.  I think if he's called as

8   a witness here to the facts of this case to support the claims

9   or defenses that are raised by co-defendants, frankly the issue

10   of his testimony in the grand jury is a separate issue here than

11   what he may know of the underlying facts that occurred in this

12   case.  And I don't think one -- I don't think he's precluded and

13   absolved once and forever from this case even if your

14   application is granted.

15      MR. WEINGARD:  Well, assuming that's true and assuming

16   he has to be called as a fact witness at some point, and

17   assuming further that absolute immunity doesn't prevent that

18   from occurring, and I'm not sure it doesn't, but let's make the

19   assumption for the purpose of our discussion, that should not go

20   on while he's still a party defendant in the action, because

21   that would preclude absolute immunity for sure.  That would

22   impact absolute immunity for sure.

23      THE COURT:  All right.  Well, as I said, you're going

24   to make an argument anyway to Judge Bianco, you can make that

25   one as well, all right?

*Coggins v. County of Nassau et al - 6/26/12*                    12

1          MR. WEINGARD:  Okay.

2          THE COURT:  All right.

3          MR. WEINGARD:  We certainly will.

4          THE COURT:  All right.

5          MR. WEINGARD:  So in the meantime if I get a notice of

6    deposition, may we agree that that notice of deposition to my

7    client not become effective until we understand what Judge

8    Bianco's determination is?

9          THE COURT:  That's fine.  And I have no problem with

10   that solution for the time being.

11         MR. WEINGARD:  That's fine.

12         THE COURT:  All right?

13         MR. WEINGARD:  Yes.

14         THE COURT:  But I do want to get to this issue of the

15   grand jury minutes.  So, if there's anything further you want to

16   add in that regard, now is your chance.

17         MR. WEINGARD:  Well, I think if my memory serves in

18   *Rehberg* --

19         THE COURT:  Yeah, I think my reading of *Rehberg* about

20   the grand jury minutes and yours are not the same.

21         MR. WEINGARD:  Well, let me try mine then.

22         THE COURT:  Go ahead.

23         MR. WEINGARD:  Okay.  Hopefully I can persuade.  May

24   not, but I'll try.

25         THE COURT:  No, I think with regard to the rest of

*Coggins v. County of Nassau et al - 6/26/12*                    13

1  this decision, I certainly think it obviously provides you with

2  grounds to go back to Judge Bianco, all right?

3         MR. WEINGARD:  Yes.

4         THE COURT:  As to what Judge Alito said about the

5  secrecy of the grand jury proceedings, I don't think I'm reading

6  the same way you are.

7         MR. WEINGARD:  Well, what he seems to be saying when

8  he talks about one of the reasons that absolute immunity should

9  apply with regard to grand jury witnesses, and let me just pull

10 the -- he says that if you don't give absolute immunity in 1983

11 litigation, it -- and I'm quoting now -- "subverts the grand

12 jury secrecy."  And then he goes onto observe that all a

13 defendant, now plaintiff, would have to do is to start a 1983

14 and then seek the transcripts of the grand jury.

15         The reason I'm suggesting that we put this over and

16 hold is so that we don't have to meet that issue face to face

17 right now, but rather we can hold that in abeyance, see whether

18 or not I'm right, and I can get my client's absolute immunity

19 taken care of.  And see whether or not he then has to be subject

20 to a party defendant EBT deposition.

21         I think if we argue this case now.  Look, it's my

22 pleasure; I'm here.  But if we argue this case now, and for

23 whatever the reason, Judge Bianco concludes that I'm correct I

24 would think that that could impose additional problems on the

25 parties.  I think that the approach that I would suggest makes a

*Coggins v. County of Nassau et al - 6/26/12*                    14

1  lot of sense and that's why I'm advancing it.  And as you know

2  the County is also taking a position in the adjournment.

3          THE COURT:  All right.  And I'm denying the

4  adjournment, so my question is do you wish to argue the motion

5  further.

6          MR. WEINGARD:  Sure.

7          THE COURT:  Okay.  Go ahead.

8          MR. WEINGARD:  Thank you.  These cases turn on

9  particularized need.  And this case is a particularly simple

10 case factually as it relates to what occurred.  We know that a

11 number of police witnesses testified against my client during

12 the course of a grand jury proceeding obtained transactional

13 immunity and were never charged with any crimes.  It was only my

14 client who was charged with a crime.

15         And the nature of that crime is that he did not tell

16 the truth when he claimed that he had safeguarded a gun that he

17 had found.  But rather the correct statement should have been

18 that he was sent back to the car where the other occupants of

19 the car were still located, and he stayed there while a

20 different police officer from a different department located the

21 gun.  That was the nature of the perjury.  I'm not minimizing

22 it, but that was the nature of the perjury.

23         The fact, as I mentioned to you before, was that my

24 client pleaded guilty to that perjury, which in all of the cases

25 I've read starting with *Briscoe* and coming all the way up to

1   *Rehberg* indicates that the safeguards placed in those cases is

2   the perjury safeguard.  You can always bring the grand jury

3   witness or any other witness who testifies under oath before a

4   court, charge him with perjury.  That was done here.

5          What has happened is that we know that a bunch of

6   police officers came in from Nassau County Police Department; we

7   know that the other police department involved had a number of

8   witnesses testify in connection with that.  The only thing that

9   we have access to, according to Judge Kase's decision under

10  comity, as you will recall the way these cases work is that we

11  have to go back to Nassau County, which we did.

12          THE COURT:  Yes.

13          MR. WEINGARD:  And Judge Kase has released -- not

14  released.  Judge Kase has told us that we are entitled to

15  receive copies of our client's testimony only.

16          THE COURT:  Mm-hm.

17          MR. WEINGARD:  We have that.  Not because we got it

18  now, but because it was provided to us previously by the County

19  Attorney's Office as I recall.  We don't know whether or not the

20  transcript has yet been prepared in connection with this.

21  Because if it has, I would suggest that one way to deal with

22  this might be for the judge, yourself, to examine this, and make

23  a determination as to whether or not it would assist us in

24  taking the depositions of all of the other witnesses who will be

25  scheduled here.  And this again assumes that my client -- and

*Coggins v. County of Nassau et al - 6/26/12*          16

1   I'm not conceding this; my client would not be entitled to

2   absolutely immunity.  Or it may be that the County Attorney

3   would want at some point to have that type of information.  I

4   know the Plaintiff now has asked for it.

5         I don't know how you can conceivably prepare this case

6   without knowing what the testimony was before the grand juries,

7   both grand juries.  How could we prepare with regard to Coggins?

8   And if indeed his passengers came before the grand jury under

9   transactional immunity, which we believe occurred here, we would

10  be entitled to explore that with them.  And we'd have to know

11  what they said before that grand jury.

12        I don't know if they were called.  I know Coggins

13  himself was called.  And I do know that at some point or another

14  all the police witnesses that I've identified to you were called

15  before the second of the two grand juries involved.

16        My feeling here, and I don't know, I'm trying cases

17  for 40 -- since 1965.  I know what it takes for me to prepare a

18  case, to ask witnesses appropriate questions.  It seems logical

19  to me that we have a particularized need to obtain those

20  documents.  And more importantly the Coggins matter has been

21  dismissed; my client has pleaded guilty to perjury; there could

22  be no retribution in connection with that.  Vara has obtained

23  and has complete transactional immunity.

24        Turning to the Coggins matter -- I'm sorry, to the

25  Buonora matter, that has been over since '04 as I recall.  And

*Coggins v. County of Nassau et al – 6/26/12*          17

1   there are things that went on.  My client's reinstated to the

2   police department, and there is no harm that can be done to

3   anyone.  And given the nature of the particularized need here, I

4   cannot understand how anybody would be harmed by a release by

5   this court of the grand jury testimony to which we're addressing

6   ourselves.

7         We're missing -- Mitchell, do you remember the number

8   of -- excuse me, Judge.  Do you remember the number of pages

9   that we were missing?  It was about 140 pages, and there were a

10  bunch of pages?

11        MR. SENFT:  I don't remember the numbers, but with the

12  County discovery, there was an internal affairs report that

13  included or I should say refers to the complete set of

14  transcripts in the Coggins grand jury matter.  And it showed

15  page numbers whatever.  There are at least a couple of thousand

16  pages that were not provided.  They provided the Coggins,

17  Buonora and Vara transcripts, but clearly that was a fraction.

18  The numbers are in their memo of law -- referenced in their memo

19  of law.

20        THE COURT:  Yes, I recall.

21        MR. SENFT:  But it was a significant number.  So, it

22  was a significant number with heavy players and main players

23  added up to whatever.  There had to be a number of witnesses

24  involved.

25        MR. WEINGARD:  Thank you, Mitch.

*Coggins v. County of Nassau et al - 6/26/12*          18

1      MR. SENFT:  None of which were identified.

2      MR. WEINGARD:  Thank you, Mitchell.  So, we needed to

3  prepare.  No one gets harmed.  Coggins is no longer a defendant;

4  that case was dismissed.  Buonora pleaded guilty to perjury.

5  There is no harm that can conceivably be done.

6          And, yes, if my client is not granted absolutely

7  immunity, I believe, and I know you read it differently, Judge,

8  but I believe that I would be correct in saying that under those

9  circumstances we're not organized crime to which that particular

10  bench made reference; Judge Alito, as you pointed out, made

11  reference, to what kind of harm can come from that secrecy if

12  you violate.  But this is not that case.  This is not a case

13  where we will harm anybody, anybody will be harmed.  They know

14  what they testified to.  We're not asking for anything besides

15  that particular grand jury information.

16          If Your Honor has no further questions?

17      THE COURT:  No, I do not.  Thank you.  Mr. Calliste,

18  do you want to be heard?

19      MR. CALLISTE:  Yes, Your Honor, please.  Briefly.

20      THE COURT:  Excuse me?

21      MR. CALLISTE:  Just briefly, Your Honor.

22      THE COURT:  Go ahead.

23      MR. CALLISTE:  We did join in the application of Mr.

24  Weingard's office, and I believe that he essentially stated what

25  my position would been in a nutshell.  I just wanted to add to

*Coggins v. County of Nassau et al - 6/26/12*          19

1    that, however, that as far as Plaintiff's case is concerned the

2    central issue in the complaint is whether these Defendant

3    officers subjected to Plaintiff to malicious prosecution under

4    state law and under federal law.

5          And among other things, the complaint alleges that

6    false statements were made to the grand jury and other things.

7    We know that those issues have now been supported by the fact

8    that there was an indictment against one of the police officers

9    in this case and the actions that the police officer defendants

10   actually took in both of the grand jury proceedings we believe

11   are, for lack of a better word or way to describe it, is *res*

12   *gestae*, Your Honor.

13         Because their actions before the grand jury are the

14   central issue, we believe that there is now way for a jury or

15   for a court to properly or intelligently evaluate anything that

16   went on within the grand jury even though that was placed in

17   issue with the complaint without actually having seen the grand

18   jury testimony or evidence given to the grand jury.  And I

19   believe that that -- I'm sorry, Your Honor.

20         THE COURT:  Sorry, go ahead.  Finish.

21         MR. CALLISTE:  And I believe that the supports our or

22   at least Plaintiff's position for a particularized need because

23   I believe that the grand jury testimony would actually be

24   different than the testimony offered in this civil case.

25         THE COURT:  And how is that?  I mean just to play

*Coggins v. County of Nassau et al - 6/26/12*                    20

1    devil's advocate for a moment; why can't you get what you need

2    from deposing these witnesses?

3           MR. CALLISTE:  Well, Your Honor, the thing is that we

4    don't necessarily know that at this point.  We can't say that

5    the Defendants will testify consistently or inconsistently.  But

6    what we do know is that applications have been made to the Court

7    from the Defendants which at least state to some degree that

8    their positions are not adverse to each other.  And we know that

9    applications were made to the Court by the Defendant Buonora

10   where the County Attorney also supported the fact that there are

11   conflicts with respect to testimony and things given.

12          THE COURT:  So, you're not answering my question,

13   though.  Why can't you get that from taking depositions of these

14   witnesses?

15          MR. CALLISTE:  Your Honor, I mean obviously as I stand

16   here, I can't say for sure one way or the other that we can't

17   get that from these witnesses in deposition testimony.  But to

18   date we know that there's been some denial to some degree as to

19   the allegations that Plaintiff made in his complaint, and we

20   believe, as I stated, that because these statements are *res*

21   *gestae* or what is contained in the grand jury proceedings,

22   including statements by these Defendant officers, does qualify

23   as *res gestae* I believe that that is the proper testimony to be

24   before the jury for evaluation.

25          Whether there is testimony given in this case from the

1   Defendants or not, if it's consistent to what they testified to

2   in the grand jury, I'm pretty sure we can make an application to

3   the Court for some sort of --

4           THE COURT:  But if I adopt your theory then there's no

5   need to bring any witnesses in here.  You just get the grand

6   jury testimony and give it over to a new jury.

7           MR. CALLISTE:  Well, no, Your Honor, because I mean

8   that doesn't -- from a procedural standpoint, that's not

9   something that we can do, number one.  And number two, I believe

10  that, you know, whether it be for trying to prove out case on

11  direct or for impeachment purposes that the grand jury testimony

12  will actually be important for both purposes.  So, we don't

13  intend to offer the transcripts to the jury.

14          And I don't even think that that would be allowed

15  under procedural rules/evidentiary rules for the federal court.

16  But we do believe that it will be necessary not only with

17  respect to our investigation -- with respect to asking questions

18  during depositions, but in addition, we don't necessarily know

19  what these officers testified to in the grand jury one way or

20  the other.  And --

21          THE COURT:  Well, you know what Mr. Buonora testified

22  to.

23          MR. CALLISTE:  To a degree, Your Honor, yes, we do.

24          THE COURT:  Okay.  Anything else?

25          MR. CALLISTE:  Your Honor, given -- well, we know that

*Coggins v. County of Nassau et al - 6/26/12*                    22

1   the Court places heavy reliance on the *Rehberg* decision, but I

2   don't believe that there are other decisions that the Court

3   should reference with respect to what our position is.  For

4   example, there's a case that we cited in our brief, the matter

5   *Palmer v. the Estate of Walwyn Stewart*.

6         And that, Your Honor, was a Southern District case

7   from the year 2004.  The cite of that case we have as -- well,

8   it's a Lexis cite.  We have 2003 Lexis 9214.  And against that's

9   Southern District of New York from 2003.  And in that case, the

10  Court did actually allow -- by the way that case with facts

11  similar to the allegations alleged by Plaintiff in this

12  complaint.  The Court it hat case allowed the grand jury minutes

13  to be disclosed -- to be released and unsealed because the

14  allegations that plaintiff made particularly in his case dealt

15  with statements and actions that took place before the grand

16  jury in that case with respect to Defendant police offices.  And

17  the Court in that case citing to the case of *Dale v. Bartels*,

18  532 F. Supp. 973, it's a case from '81, the Court --

19        THE COURT:  No, I'm very familiar with that case.  Go

20  ahead.

21        MR. CALLISTE:  Right.  The Court in that case --

22  essentially in the *Dale* case, the plaintiff requested grand jury

23  minutes to show that false testimony provided by federal agents

24  and officers in that case resulted in an indictment.  And

25  similar in this case -- well, in that case, the *Dale* case, the

*Coggins v. County of Nassau et al - 6/26/12*          23

1   District Court granted the request, noting that the grand jury

2   testimony, just as I said today, is *res*, or Your Honor, it's *res*

3   evidence.  And we believe that that is actually synonymous with

4   this case here.  Because as we allege once again, 50 percent of

5   at least the central issue in this case involve actions that

6   took place before the grand jury.  We believe that those, just

7   for that purpose alone, or at least the testimony of the police

8   officers in this case, should be disclosed as there's a

9   particularized need for it given the fact that the jury would

10  not be able to make an intelligent decision in the event that

11  this case goes to trial without having evaluated what the police

12  officers testified to here in court during depositions, as well

13  as, what they testified to at the grand jury, which is the

14  central issue in this case.

15          THE COURT:  All right.  Thank you.  Ms. Petillo, you

16  want to be heard?

17          MS. PETILLO:  Yes, please, Your Honor.  At this point

18  it's clear to the Court that you know what Defendant Buonora

19  testified to, as there was the result of a perjury plea

20  resulting from his testimony.  With respect to other witnesses,

21  Officers Okochino (ph) and Barnage (ph) testified on February 25

22  of 2010, were specifically asked if they testified at the grand

23  jury to which they said no.  It is our position that this is

24  premature.  All I'm hearing so far is we need it according to

25  Defendant Buonora and according to the Plaintiff to refresh

1    recollection; to impeach witnesses.  There's been no indication

2    at this point that anyone's recollection needs to be refresh.

3            Until such time as someone comes in and says I can't

4    remember what I testified to; I don't remember if I testified;

5    you know what the subject matter was; or until such time there's

6    a reason to impeach someone -- if someone comes in and says no,

7    I never testified, then they may raise an issue as to whether or

8    not the grand jury minutes should be unsealed.  But until such

9    time as that occurs, they are statutorily sealed for a reason.

10   And I don't believe that the showing of impeachment or

11   refreshing recollection is a valid reason at this juncture to

12   unseal the grand jury minutes.  There's been no showing that

13   that's necessary.  Any information that needs to be obtained

14   regarding what someone testified to can be obtained through

15   depositions.

16           Plaintiff also makes an argument that because the

17   passengers in the vehicle were noticed or their information

18   given out in initial disclosures, that they don't have an

19   expectation of secrecy.  Our position is that that is ludicrous.

20   When they testified before the grand jury, it was under the

21   assurance that it would be secret.  To turnaround and out them

22   for the purposes of a federal civil rights claim that they have

23   no connection with, they're not parties to, I think is improper.

24   I think it defeats the grand jury, and I think it's a dangerous

25   precedent to set at this moment.

*Coggins v. County of Nassau et al - 6/26/12*                    25

1          THE COURT:  Thank you.

2          MR. PETILLO:  Thank you.

3          MR. WEINGARD:  May I have a moment to respond just to

4   that?

5          THE COURT:  Yes.

6          MR. WEINGARD:  And to one other thing, please.  The

7   Plaintiff was claiming that there's a malicious prosecution

8   aspect of all of this as it relates to the grand jury proceeding

9   and that *Rehberg* doesn't deal with that.  You will recall that

10  Judge Alito or Justice Alito in making his determination

11  specifically went through all of the secondary issues that can

12  arise --

13         THE COURT:  Yes.

14         MR. WEINGARD:  -- as a result of the testimony before

15  the grand jury.  And that they would all be subject to immunity,

16  absolute.  And the reason for that is that you could very easily

17  just skirt absolute immunity by making these secondary claims

18  under a civil rights' case.  And for that reason -- I know I'm

19  arguing *Rehberg* back to you again, but I think it's important as

20  it relates to the question of where that particular decision

21  went; how broad it was.

22          I've read a lot of these over the course of the last

23  six years.  I want to tell you something; I've never seen a

24  broader case than this particular one dealing with all of the

25  conflicts in the circuits and the reasons that the Court went

*Coggins v. County of Nassau et al – 6/26/12*          26

1   into this in such detail, the definition of complaining witness

2   and so forth.  I will raise all of this of course at the

3   appropriate time, but I didn't think it appropriate, even though

4   we're on the same side in trying to get these records, to use

5   secondary issues, which would also be called quelled if absolute

6   immunity is granted as a theory upon which to get the records.

7   And that is why I sought an adjournment *sine die* until we could

8   get this resolved.

9          THE COURT:  All right.  Thank you.  I'm going to take

10  a very short five minute recess, and I will be right back.  All

11  right?

12         MS. PETILLO:  Thank you, Your Honor.

13         MR. WEINGARD:  Thank you.

14         (Off the record.)

15         THE COURT:  As to the pending motion.  Presently

16  before the Court is Defendant Craig Buonora's motion for an

17  order pursuant to Rule 26(b)(1) of the Federal Rules of Civil

18  Procedure directing the unsealing and production of the grand

19  jury minutes with respect to the cases *People v. Coggins* and

20  *People v. Buonora*.  That motion has been joined in by

21  Plaintiff's counsel in this action.

22         The incident giving rise to this case occurred October

23  9 of 2004 when Darryl T. Coggins was pulled over while driving

24  his car by Nassau County Police Officer, James Vara.  Both

25  parties acknowledged that after Vara radioed for assistance

*Coggins v. County of Nassau et al - 6/26/12*          27

1    Nassau County Police Officer, Craig Buonora, arrived at the

2    scene.  Shortly after Buonora arrived at the scene, Coggins fled

3    on foot.  Although Coggins was not apprehended after he fled, he

4    later surrendered at the Nassau County Police Department Third

5    Precinct and was subsequently arrested.

6           On March 17, 2005, a grand jury indicted Coggins on

7    two counts of criminal possession of a weapon in a third degree,

8    and also for resisting arrest.  However it was later revealed

9    that Defendant Buonora falsely testified before the grand jury

10   that he had located a pistol near the fence Coggins jumped over

11   and that he secured the gun until he was relieved by a Floral

12   Park police officer.  As a result of this false testimony, the

13   case against Coggins was voluntarily dismissed by the Nassau

14   County District Attorney's Office on August 9 of 2005.  After

15   being indicted Defendant Buonora pled guilty to perjury on

16   October 11, 2005.

17          On August 27 of 2007, Coggins commenced this action

18   against Defendants Nassau County, the Nassau County Police

19   Department, Vara, Buonora, Sergeant Pickering, Lieutenant

20   Dilargi (ph), and John Does 1 through 10, pursuant to 42 U.S.C.

21   Sections 1981 and 1983, alleging violations of his

22   constitutional rights under the Fourth, Fifth, Sixth and

23   Fourteenth Amendments.  The Plaintiff also has brought various

24   New York State claims, including fraudulent misrepresentation,

25   malicious prosecution, false arrest and negligence.  The

*Coggins v. County of Nassau et al - 6/26/12*              28

1   complaint was twice amended by the Plaintiff, first on August 19

2   of 2008 and then again on April 14 of 2011.  The second amended

3   complaint filed on April 14, of 2011, is the operative pleading

4   now in this action.

5          According to the Plaintiff, from October 9, 2004

6   through August 12 of 2005, he was "falsely accused, falsely

7   charged, falsely arrested, falsely detained, falsely jailed, and

8   abusively prosecuted by the Defendants."  Significant to the

9   present motion is the Plaintiff's allegations that Defendants

10  Vara and Buonora "actively instigated and encouraged the

11  baseless prosecution of the Plaintiff" and that the indictment

12  "was based primarily on the testimony" of Vara and Buonora "as

13  complaining witnesses."

14         On January 24, 2008, Defendant Buonora moved for

15  summary judgment under Rule 56, or in the alternative to dismiss

16  the complaint under Rule 12(b)(6).  Finding Defendant Buonora's

17  motion for summary judgment premature, Judge Bianco dismissed

18  the motion without prejudice and with the right to renew at the

19  close of discovery.  Judge Bianco also denied Defendant

20  Buonora's motion to dismiss the complaint on the grounds that he

21  is entitled to absolute immunity.

22         Specifically, Judge Bianco determined that one, the

23  Court cannot determine at this juncture, as a matter of law,

24  whether Buonora served as a "complaining witness" in Coggins'

25  prosecution; and two, the complaint alleges an extra-judicial

*Coggins v. County of Nassau et al - 6/26/12*                    29

1   conspiracy to commit perjury.

2          On March 30, 2012, Defendant Buonora filed the instant

3   motion seeking to have the grand jury materials of *People v.*

4   *Coggins* and *People v. Buonora* unsealed and produced.  It is

5   undisputed that Buonora was provided during prior motion

6   practice in this action with portions of the transcript from the

7   Coggins' grand jury, including the full testimony of himself,

8   Coggins and Officer Vara.

9          Defendant Buonora is now seeking additional testimony

10  from the Coggins' grand jury, as well as the full minutes from

11  the Buonora grand jury.  Defendant Buonora represents that the

12  testimony from Coggins, Buonora, and Vara from the Coggins grand

13  jury consists of approximately 72 pages.  However, Defendant

14  Buonora contends that the index to the internal affairs' report

15  indicated that the grand jury transcript from *People v. Coggins*

16  consisted of at least 130 pages.  Therefore Defendant Buonora

17  seeks the 60 or so additional pages that constitute the full

18  grand jury transcript.

19         Comparing the rules which apply here, when a party

20  requests disclosure of matters that occurred before a federal

21  grand jury Rule 6(e) of the Federal Rules of Criminal Procedure

22  protects disclosure of grand jury minutes and governs the

23  circumstances under which grand jury material may be released.

24  *See In re Grand Jury Subpoena*, 103 F.3d 234 at 239 (2nd Circuit,

25  1996).

*Coggins v. County of Nassau et al - 6/26/12*                    30

1          Rule 6(e) states that "The Court may authorize
2    disclosure at a time in a manner and subject to any other
3    conditions that it directs of a grand jury matter preliminary to
4    or connection with a judicial proceeding."  Under this rule
5    grand jury proceedings receive a rebuttal presumption of
6    secrecy.  *See again*, *In re Grand Jury Subpoena* at Page 239.
7          The burden is on the party seeking the grand jury
8    material to show a "particularized need" for the information in
9    the grand jury minutes that outweighs the need for secrecy of
10   grand jury proceedings.  *See Ruther v. Boyle*, 879 F.Supp 247 at
11   250, (E.D.N.Y., 1995), stating that because of the time honored
12   policy and strong public interest in maintaining grand jury
13   secrecy, the United States Supreme Court has consistently held
14   that a strong showing of particularized need is required before
15   any grand jury materials can be disclosed.
16          In order to show a particularized need, the moving
17   party must demonstrate that the materials sought "is needed to
18   avoid a possible injustice in another judicial proceeding; that
19   the need for disclosure is greater than the need for continued
20   secrecy; and that its request is structured to cover only
21   materials so needed."  That's from *Douglas Oil Company of*
22   *California v. Petrostops NW*, 441, U.S. 211, a Supreme Court case
23   from 1979.  *See also Cullen v. Margiotta*, 811 F.2d 698 at 715, a
24   Second Circuit case from 1987 with which people I assume are
25   very familiar which is overruled on other grounds in *Agency*

*Coggins v. County of Nassau et al - 6/26/12*                    31

1   *Holding Corp. v. Malley Duff & Associates*, 483 U.S. 143, a 1987

2   decision of the Supreme Court.

3          "Analysis of the need for disclosure of grand jury

4   materials must necessarily take into account the specific needs

5   of a given case."  That's from *Zomber v. Village of Garden City*,

6   2011 WL 3511011, at *3 (E.D.N.Y. Aug. 10, 2011).

7          Moreover a Court is "infused with substantial

8   discretion" when balancing the interest of a particularized need

9   with the importance of secrecy in grand jury proceedings.

10  That's from *Douglas Oil* at 441 U.S. at 223.  Although both grand

11  juries at issue here were conducted in state court, New York

12  State Law does not govern discoverability and confidentiality in

13  federal civil rights actions.  *See King v. Conde*, 121 F.R.D. 180

14  at 187 E.D.N.Y. 1988).

15         The Court notes, however, that the same tests which

16  evaluates whether a particularized need outweighs the importance

17  of grand jury secrecy in federal grand jury proceedings has also

18  been applied with respect to state grand jury proceedings.  See

19  for example *Cherry v. Rodenberg*, 2008 WL 4610302 at *2, an

20  October 15, 2008 decision from the Eastern District; *Myers v.*

21  *Phillips*, 2007 WL 2276388 at *2, an August 7, 2007 decision from

22  the East District; and *Palmer v. Estate of Stewart*, 2004 WL

23  2429806 at *3, (S.D.N.Y., November 1, 2004).

24         As a matter comity, however, the movant must first

25  make an application to unseal the grand jury minutes to the

*Coggins v. County of Nassau et al - 6/26/12*                    32

1    State Court which oversaw the proceedings of the relevant grand

2    jury.  *See* *Felmine v. City of New York*, 2009 WL 3526486, at *1

3    (E.D.N.Y. Oct. 29, 2009), in which the court found that refusing

4    to decide whether plaintiff had presented a particularized need

5    until the plaintiff made an application to have the grand jury

6    minutes unsealed.  And the same court was the appropriate

7    method.  *See* *Ruther* 879 F.Supp at 250-51, which stands for the

8    same proposition, as well as *Douglas Oil*, 441 U.S. at 226.  In

9    *Douglas Oil*, the court stated "in general requests for

10   disclosure of grand jury transcripts should be directed to the

11   court that supervised the grand jury's activities."  *See also*

12   *Cherry*, 2008 WL 4610302 at *2.

13        Before a federal court can consider whether a

14   particularized need has been established, the movant must first

15   make an application to unseal the grand jury minutes in the

16   state court that supervised the grand jury at issue.  Prior to

17   making the present motion, Defendant Buonora moved in the Nassau

18   County Supreme Court for an order directing the unsealing of the

19   minutes of the grand jury proceedings in both *People v. Coggins*

20   and *People v. Buonora*.  On November 4, 2011, Judge Kase granted

21   the motion in part and denied it in part.

22        Judge Kase found that Defendant Buonora "failed to

23   demonstrate how the disclosure of the grand jury testimony is

24   necessary so as to present a compelling and particularized

25   need."  However, Judge Kase ruled that Defendant Buonora's own

*Coggins v. County of Nassau et al – 6/26/12*                    33

1   testimony in the Coggins grand jury "may be disclosed as the

2   very words as well as the substance of his testimony constitutes

3   the *res* of the perjury charge."  With this one exception, the

4   grand jury testimony from the Coggins grand jury and the Buonora

5   grand jury remains sealed.

6           One of the arguments proffered by the Nassau County

7   Defendants against unsealing the remaining minutes is that this

8   Court should take judicial notice under federal rule of evidence

9   201(a) of the state court's decision denying Buonora's request

10  to unseal the grand jury minutes.  As an initial matter, Rule

11  201(a) allows the Court to take judicial notice of a fact that

12  is not subject to reasonable dispute, but not legal conclusions.

13          In any event, this argument runs contra to particular

14  case law which specifically allows for a party challenge the

15  state court's decision in federal court.  *See* <u>Ruther</u> 879 F.Supp

16  251 in which the court stated "If after reviewing a parties'

17  application, the state court supervising the grand jury decides

18  that secrecy of the grand jury proceedings is still warranted

19  the party may challenge the state court's decision before this

20  court."

21          *See also* <u>Palmer</u> 2004 WL 2429806 at *2 stating that

22  "the requirement that plaintiffs first seek disclosure through

23  the avenues available to them in the state court does not give

24  the state courts a veto over disclosure in a federal civil

25  rights case."  Since Defendant Buonora was denied access to the

*Coggins v. County of Nassau et al - 6/26/12*                    34

1   requested grand jury materials by the state court, he may now

2   challenge the state court's decision here in federal court.  To

3   demonstrate a particularized need, Defendant Buonora must first

4   demonstrate that the materials sought are needed to avoid an

5   injustice in this action.

6        As was the case in the motion before the state court,

7   Defendant Buonora essentially asserts three grounds for

8   unsealing the grand jury materials.  Defendant Buonora first

9   argues that disclosure of the grand jury materials is necessary

10  to establish that he is entitled to absolute immunity and

11  thereby avoid the injustice that would result if he had to

12  defend himself in a civil law suit.  In particular, Defendant

13  Buonora maintains that the grand jury materials will demonstrate

14  that he was not a complaining witness in this procedure, nor was

15  he involved in an extra-judicial conspiracy to commit perjury.

16       In *Briscoe v. LaHue*, 460 U.S. 325, a 1983 decision of

17  the Supreme Court, the Court held that 42 U.S.C. Section 1983

18  does not authorize a convicted individual to assert a claim for

19  damages against a police officer for giving perjured testimony

20  at his criminal trial.  That's *Briscoe* at Page 326.

21       The second circuit subsequently broadened "*Briscoe*

22  grants of absolute immunity" to cover perjurious testimony

23  during grand juries.  *See* *San Filippo v. U.S. Trust Co*., 737

24  F.2d 246, 254 (2d Cir. 1984).  However, the second circuit also

25  elucidated an important distinction between two categories of

*Coggins v. County of Nassau et al - 6/26/12*          35

1  witnesses with respect to the immunity afforded to them when

2  false testimony is offered.  *See White v. Frank*, 855, F.2d, 956,

3  958 (2d Cir. 1988) in which the court stated "Those witnesses

4  whose role was limited to providing testimony enjoyed immunity,

5  while those who played a role in initiating prosecution, i.e.

6  complaining witnesses, did not enjoy immunity."  That's from

7  pages 958 and 959 of the *Frank* case.

8         *See also Manganiello v. City of New York*, 2008 WL

9  2358922 at *7 (S.D.N.Y., June 10, 2008) in which the court

10  stated "A complaining witness is one who actively investigated

11  or encouraged the prosecution of the plaintiff."  Therefore, "an

12  officer who participates in initiating a baseless prosecution by

13  testifying to the grand jury is encompassed by the exclusion for

14  complaining witnesses and therefore cannot receive absolute

15  immunity but may receive qualified immunity."  That's from

16  *Zomber* 2011 WL 3511011 at *3 (citing *Sclafani v. Spitzer*, 734

17  F.Supp.2d 288, 296 (E.D.N.Y. 2010).

18         While broadening the scope of absolute immunity in

19  certain instances, the second circuit also qualified the

20  "*Briscoe* grants" of absolute immunity with respect to those

21  witnesses who engage in extra-judicial conspiracies to provide

22  false testimony.  *See San Filippo*, 737 F.2d at 255 in which the

23  court stated "*Briscoe v. LaHue* was expressly limited to immunity

24  for testimony given in judicial proceedings and it's rationale

25  to encourage witnesses to come forward with all they knew, does

1    not justify extending that immunity to cover extra-judicial

2    conspiracies between witnesses."  The second circuit explicitly

3    confirmed that the "extra-judicial conspiracy exception" applies

4    to police officer defendants.  *See* <u>Dory v. Ryan</u>, 25 F.3d 81 at

5    Page 84 (2d Cir. 1994) in which the Court said there's reason to

6    distinction police officers from other witnesses with regard to

7    the extra-judicial conspiracy exception.

8         Having looked at the <u>Rehberg v. Paulk</u> case from the

9    Supreme Court, which was handed down on April 2, cited at 132

10   Supreme Court 1497, there is a real issue as to the second

11   circuit's delineations here being called into question.  The

12   Defendant argues that first of all that <u>Rehberg</u> has eviscerated

13   these two exceptions.  Whether that is the case, is something

14   that will be played out now before Judge Bianco in counsel's net

15   application.  Whether Defendant Buonora ultimately is dismissed

16   from this law suit, actually has no relevance to why the grand

17   jury materials are needed to support his defenses as they are

18   presently articulated.

19        The Court finds that Defendant Buonora's conclusory

20   statement that the grand jury materials are necessary to prove

21   his entitlement to absolute immunity falls short of the

22   particularized need, a party seeking to unseal grand jury

23   minutes must demonstrate.  And really I see these as two

24   separate issues.  *See* <u>United States v. Cusmage</u>, 2008 WL 4561603

25   at *5 (W.D.N.Y., October 10, 2008) in which the court stated

1  "Merely stating the desire to make a vigorous defense in

2  general, does not show a particular need for a given portion of

3  the grand jury testimony."

4          Defendant Buonora fails to proffer even a single

5  example of how the grand jury materials not already in his

6  possession are necessary for proving his defense of absolute

7  immunity.  *See Rex Shaffer v. City of New York*, 2009 WL 773351

8  at *4 (S.D.N.Y., March 18, 2009) case in which the court stated

9  "A mere possibility of benefit does not satisfy the required

10  showing of particularized need."

11          For example, the complaint alleges that Officers Vara

12  And Buonora conspired to commit perjury during Coggins grand

13  jury proceeding.  No one other than Vara and Buonora are

14  asserted as participants in the alleged extra-judicial

15  conspiracy.  The Court does not see, and Buonora does not

16  explain how the grand jury testimony of anyone other than Vara

17  and Buonora is necessary.  Likewise, the Court fails to see how

18  Buonora's ability to show that he is not a complaining witness

19  is somehow contingent on the full grand jury transcript,

20  particularly now in light of *Rehberg*.  *See Zomber* 2011 WL

21  3511011 at *5 in which the court found no particularized need

22  where the parties, who already had access to the grand jury

23  testimony of the Defendant officer, as well as two other

24  officers, asserted that the full grand jury minutes were needed

25  to determine whether the Defendant officer was a complaining

*Coggins v. County of Nassau et al - 6/26/12*                    38

1   witness.

2          Defendant Buonora next argues that notwithstanding his

3   perjury, other grand jury witnesses testified dishonestly

4   against him and therefore the grand jury materials are

5   "essential and indispensible" for demonstrating that fact.

6   Aside for alleging this purported need, Defendant Buonora does

7   not explain how the fact that the grand jury witnesses may have

8   testified dishonestly, has any impact on his ability defend

9   himself in this case.  Even if the Court accepts as true,

10  Defendant Buonora's contention that others testified dishonestly

11  against him during the Buonora grand jury the Court fails to see

12  its impact in this action since Buonora pled guilty to perjury

13  notwithstanding what may or may not have occurred in the grand

14  jury.

15         The Court finds Defendant Buonora's assertion that the

16  grand jury witnesses testified dishonestly to be lacking in

17  foundation since the Defendant has no factual basis to even

18  ascertain who the witnesses were who testified at the Buonora

19  grand jury.  Moreover, Defendant Buonora's rationale that Vara

20  and possibly other witnesses were granted transactional immunity

21  means that they necessarily testified falsely against him is a

22  faulty and unsupported premise.  At most such information may

23  arguably relevant to this action, but a showing of relevance

24  itself is not enough.  *See Rex Shaffer*, 2009 WL 773351 at *2 in

25  which the court stated "A particularized need for grand jury

*Coggins v. County of Nassau et al - 6/26/12*                    39

1    testimony must be demonstrated by more than a mere showing that

2    such material is relevant".

3         Lastly, Defendant Buonora contends that the grand jury

4    testimony of all of the witnesses is needed to question them

5    fully and to refresh their recollections and/or impeach their

6    testimony.  "A desire to use grand jury transcripts to refresh a

7    witness' recollection or to impeach or otherwise test the

8    credibility of witnesses in subsequent proceeding can under

9    certain circumstances rise to the particularized need required

10   for disclosure."  That's from Velasquez v. City of New York,

11   1997 WL 736698 at *1, (S.D.N.Y., November 28, 1997).

12        *See also In re Federal Grand Jury Proceeding*, 760 F.2d

13   436 at 439 (2d Cir. 1985) in which the court states that

14   impeachment can rise to the level of particularized need.  The

15   second circuit has cautioned that "an asserted desire to cross

16   examine effectively however, should not give a Petitioner

17   license to page through grand jury minutes.  A much more

18   particularized more discreet showing of need is necessary."

19   That's from *In re Federal Grand Jury Proceedings*, 760 F.2d 439

20   (quoting United States v. Procter and Gamble, 356 U.S. 677).

21        *See also Waterman v. City of New York*, 1998 WL 23219

22   at *2 (S.D.N.Y., January 13, 1998) in which the court found that

23   "Mere invocation of impeach needs" does not automatically

24   demonstrate a particularized need.  Therefore, "district courts

25   have repeatedly declined to permit disclosure of grand jury

*Coggins v. County of Nassau et al - 6/26/12*                    40

1   material without a showing of a witness' inability to remember

2   events at a subsequent proceeding or actual inconsistencies

3   between the grand jury testimony and subsequent testimony."

4   That's from *Velasquez*, 1997 WL 736698 at *1.  Accord *Waterman*

5   1998 WL 23219 at *2.

6          Defendant Buonora claims that since the subject

7   incident occurred in October 2004 and the respective grand

8   juries occurred in March 2005 and September 2005, recollection

9   of the events at issue were fresher and more complete at the

10  time of the grand jury proceedings then they necessarily would

11  be at the time of depositions in this case.  It is Defendant

12  Buonora's position therefore that the use of the grand jury

13  minutes for refreshing recollections and impeaching witnesses

14  can result in more accurate fact finding.

15         The Court notes that the speculative nature of the

16  Defendant Buonora's argument is evident from his own papers as

17  he argues that the grand jury minutes can result in more

18  accurate fact finding.  Other than the mere passage of time,

19  Defendant Buonora has not shown or even suggested that there is

20  any reason to expect that any of the witnesses to be deposed

21  will not testify accurately or be able to recall material facts

22  of this case.

23         *See Rex Shaffer v. City of New York*, 2009 WL 773351 at

24  *5 finding no particularized need where the Plaintiffs "have

25  failed to specify precisely why they need the prior testimony

1   for impeachment or for refreshing recollection."  *See also*

2   *Waterman* 1998 WL 23219 at *2, holding no particularized need

3   demonstrated where Plaintiff "offers only his speculation that

4   impeachment materials might be found in the grand jury minutes."

5        Since depositions have not yet been conducted in this

6   action, Defendant Buonora has not articulated any basis for the

7   assertion that impeachment materials will be found in the

8   minutes of the grand jury proceedings.  Defendant Buonora's

9   reliance in addition on of *Dale v. Bartels*, 532 F. Supp. 973,

10  Southern District 1982, is misplaced.  In *Dale*, the Plaintiff

11  alleged that certain unknown Defendants through false statements

12  to a grand jury caused an indictment to issue against the

13  plaintiff.  The Court in granting the plaintiff's motion to

14  obtain the grand jury testimony noted that "This is not a case

15  where the ultimate facts testified to before the grand jury,

16  although relevant to a law suit, can be obtained by a litigant

17  from the same original source, i.e. witnesses having knowledge.

18  In this case the grand jury testimony is the *res* itself, the

19  subject matter of this part of the law suit.  What is relevant

20  here is not the underlying facts testified to, but the content

21  of the testimony itself.  The grand jury testimony itself is

22  what this case in this aspect is all about."  That's at *Dale*,

23  pages 976, 977.

24        The present circumstances differ substantially from

25  *Dale* in that the additional grand jury testimony sought by

*Coggins v. County of Nassau et al – 6/26/12*                    42

1  Defendant Buonora is not the *res* itself.  While the testimony of

2  Vara and Buonora during the Coggins grand jury could arguably be

3  considered the *res* of this law suit since the Plaintiff's claims

4  are premised in part on the Defendant's false testimony, the

5  same cannot be said for the remaining grand jury testimony.

6          Again, as I've already stated, the parties here have

7  the testimony of Coggins, Buonora and Vara in the Coggins grand

8  jury.  The facts that were testified to before the grand juries

9  from the other witnesses, such as, other police officers and

10  plaintiff's passengers, can be obtained from these individuals

11  at their depositions.  Therefore, unlike the movant in *Dale*

12  Buonora has not shown that he is seeking something other than

13  the underlying facts testified to during the grand juries.

14          Based on the above information, the Court finds that

15  such speculation and generalizations do not suffice to establish

16  the more discreet showing of need required for disclosure.

17  Going to the balancing of needs here, in order to demonstrate a

18  particularized need for grand jury materials a plaintiff must

19  also show that his need for disclosure outweighs the need for

20  grand jury secrecy.

21          In balancing those needs, the Supreme Court has

22  identified several interests that are preserved by grand jury

23  confidentiality.  Looking at *Douglas Oil* in particular the court

24  stated "First, if pre-indictment proceedings were made public,

25  many perspective witnesses would be hesitant to come forward

*Coggins v. County of Nassau et al – 6/26/12*                    43

1    voluntarily knowing that those against whom they testified would

2    be aware of that ,testimony.

3         Moreover, witnesses who appear before the grand jury

4    would be less likely to testify fully and frankly as they would

5    be open to retribution, as well as to inducements.  There also

6    would be the risk that those about to be indicted would flee or

7    would try to influence individual grand jurors to vote against

8    indictment.

9         Finally, by preserving the secrecy of the proceedings,

10   we assure that persons who are accused but exonerated by the

11   grand jury will not be held up to public ridicule."

12        In this case, the Court is cognizant of the fact that

13   the need for grand jury secrecy is somewhat less, because "there

14   is no ongoing criminal investigation or prosecution, and because

15   the witnesses are public servants who appear regularly before

16   grand juries and in court.  As that statement has been defined

17   in *Al Herado v. the City of New York*, 2009 WL 510813 at *2 note

18   2.  (E.D.N.Y., February 27, 2009).  *See also Palmer* 2004 WL

19   2429806 at *5 concluding that the officer's interest in secrecy

20   is at its lowest giving that testifying before a grand juries is

21   part of their regular job duties as public servants.

22        While these facts reduce the need associated with

23   grand jury secrecy, the need is never eliminated in its

24   entirety.  *See Zomber* 2011 WL 3511011 at *3 and *Myers* 2007 WL

25   2276388 at *4.  Therefore Defendant Buonora is still responsible

*Coggins v. County of Nassau et al - 6/26/12*                    44

1   for coming forward with some necessity for having the grand jury

2   materials disclosed.

3        As noted here he has not articulated why the grand

4   jury materials are necessary to avoid an injustice in this

5   action.  Therefore the Court concludes that plaintiff's alleged

6   need for the grand jury materials is outweighed by the

7   presumption of secrecy afforded to grand jury proceedings.

8        And I know that Defendant Buonora's counsel is relying

9   on the *Rehberg* case as a support for his argument that the

10  minutes should be released.  And as I've indicated, I

11  respectfully disagree with the reading in *Rehberg* to that

12  affect, particularly where Justice Alito states the following:

13       We have consistently recognized that the proper

14  functioning of our grand jury system depends upon the secrecy of

15  grand jury proceedings.  Allowing Section 1983 actions against

16  grand jury witnesses would compromise this vital secrecy.  If

17  the testimony of witnesses before a grand jury could provide the

18  basis for or could be used as evidence, supporting a Section

19  1983 claim, the identities of grand jury witnesses could be

20  discovered by filing a Section 1983 action and moving for the

21  disclosure of the transcript of grand jury proceedings.

22  Especially in cases involving violent criminal organizations or

23  other subjects who might retaliate against adverse grand jury

24  witnesses, the threat of such disclosure might seriously

25  undermine the grand jury process.

1          In my mind looking at that section, although the judge

2   is -- the justice is giving several examples, this was certainly

3   not exclusive of the field that I believe supports the court's

4   position that the these minutes should remain secret.

5          For the reasons discussed here, Defendant Buonora has

6   not demonstrated a particularized need for the grand jury

7   testimony and the motion therefore to unseal the grand jury

8   minutes is hereby denied.

9          Counsel, you certainly have your appeal rights to

10  Judge Bianco under the rules.  All right?

11         MR. WEINGARD:  Judge, may I just make one other

12  suggestion?  I raised it very briefly.  While I understand Your

13  Honor's decision in not releasing the grand jury testimony to

14  any of the parties at the present time, I suggested earlier that

15  perhaps you could review that in-camera and make your decision

16  based upon what you actually will see.  And you know enough

17  about this case to determine whether or not we will have

18  particularized needs if that's the case.

19         THE COURT:  Well, I think to some extent that

20  substitutes my doing your job, and with all due respect, I'm

21  going to decline that.  All right?  And once again, you can

22  certainly take that issue up if you wish to with Judge Bianco.

23         MR. WEINGARD:  Thank you.  And I just want to make

24  clear one other thing.  When you said you were staying all

25  discovery, I think I heard you say when I asked you about

*Coggins v. County of Nassau et al - 6/26/12*                    46

1   Buonora, that you would stay it until Judge Bianco has had the

2   opportunity to pass on my application?

3            THE COURT:  Well, I certainly will stay it until he's

4   had a chance to hear your application.

5            MR. WEINGARD:  Okay.

6            THE COURT:  And to get his response to that.  All

7   right?  I don't necessarily intend to wait until he renders a

8   formal decision.  All right?  But you certainly should address

9   that with him.

10            MR. WEINGARD:  I assume that would involve a

11   conference between yourself and Judge Bianco at some moment?

12            THE COURT:  It may at some point.

13            MR. WEINGARD:  Understood.  And the last thing is,

14   will we get a copy of your decision.  My intention at this point

15   is just to put up a short order saying for the reasons I've

16   stated in the record today.  You're certainly free to get a

17   transcript if you wish to.  All right?

18            MR. WEINGARD:  Thank you, Your Honor.

19            MR. CALLISTE:  Your Honor?  Your Honor?

20            THE COURT:  we're not finished yet, so just bear with

21   me.

22            MR. CALLISTE:  All right.

23            THE COURT:  All right.  And just so the record is

24   clear, when we had this earlier conversation about stays vis-à-

25   vis Defendant Buonora, what I've said essentially is based on my

*Coggins v. County of Nassau et al - 6/26/12*          47

1   reading of the *Rehberg* case, I certainly believe you have the

2   right to go back to raise the issues that you're raising to

3   Judge Bianco with regard to the absolute immunity defense.  What

4   I said was I was prepared to stay discovery against Defendant

5   Buonora with the exception of any fact deposition that other

6   parties wish to take here, because notwithstanding what happens

7   to him even if he's out of the suit on absolute immunity

8   grounds, I still do not see how he could not be a fact witness

9   at a deposition if indeed the other parties decide to call him.

10          You're certainly free to bring that up to Judge

11   Bianco.  But I think what you've requested is a full stay.  I'm

12   not granting you a full stay --

13          MR. WEINGARD:  Well, no.  I --

14          THE COURT:  -- but you can certainly address the full

15   stay to Judge Bianco.

16          MR. WEINGARD:  Yes.

17          THE COURT:  All right?

18          MR. WEINGARD:  Yes, I understand that.  But for the

19   moment, nothing will happen until I've had the opportunity to

20   make that --

21          THE COURT:  To bring that --

22          MR. WEINGARD:  -- application.

23          THE COURT:  -- That's right.  To make that application

24   to Judge Bianco.  All right?

25          MR. WEINGARD:  I understand.

*Coggins v. County of Nassau et al - 6/26/12*                    48

1          THE COURT:  All right.

2          MR. WEINGARD:  And I appreciate the clarification.

3          THE COURT:  All right.  We have some other issues to

4    resolve here, so let me get to that now.

5          MR. WEINGARD:  Judge, with whom shall I make the

6    arrangements to get a copy of your decision?

7          THE COURT:  You can speak to my courtroom deputy, all

8    right?  When we conclude here.  All right?

9          All right.  As far as discovery in this case is

10   concerned, and the flurry of materials that were submitted here,

11   at one point I had directed the parties to have a meet and

12   confer to try to work out the issues here.  And apparently that

13   may or may not have -- it may have been successful on some

14   counts, but certainly not on others.  The problem I have here is

15   the manner in which these requests were submitted.  And here's

16   what I'm going to do.

17          First of all with regard to claims that people didn't

18   respond thoroughly, sufficiently or appropriately to discovery

19   demands, whether they're interrogatories or document demands,

20   you can't just submit a letter that says these folks didn't

21   respond to 6, 7, 8, 10 and 14 correctly.  We have a local rule

22   that governs here.  The local rule is 37.1.  That means if you

23   want a ruling from me on a discovery dispute, you've got to give

24   me the original demand that was made, the verbatim response that

25   you got from the other side and underneath that, your objections

*Coggins v. County of Nassau et al - 6/26/12*                    49

1  and why you think you're entitled to relief.  If I don't get it

2  in that format, I'm not ruling on it.  So, whatever submissions

3  have been made in the form up until now as motions, I'm denying

4  them without prejudice.  And you'll resubmit them if you wish to

5  in compliance with Rule 37.1.  That is the one area in which

6  I've granted people and exception to my three page limitation on

7  letter motions.  So if you need to make such a motion, you'll

8  have whatever room you need to encompass those specifics.  All

9  right?  That's number one.

10         MR. WEINGARD:  But of course that is subject to the

11  stay you currently have in affect?

12         THE COURT:  That's correct.  With regard to the other

13  parties in this case and carving out Defendant Buonora for the

14  moment, if you intend to re-file, if anybody here intends to re-

15  file any of these disputes that you haven't been able to resolve

16  with regard to discovery responses, you've got three weeks to

17  put them in.  That's all the time I'm giving you.  If they're

18  not in by then, they're waived.  Because we're not going to keep

19  rehashing old territory here.  And this case is five years old

20  at the moment.  And we're going to get discovery to a conclusion

21  to a conclusion.

22         MR. WEINGARD:  But, Judge, that is -- maybe I

23  misunderstood.  Isn't that also stayed?

24         THE COURT:  Isn't what also stayed?

25         MR. WEINGARD:  This is also stayed, and then the three

*Coggins v. County of Nassau et al - 6/26/12*                50

1   weeks would be from when to when?

2          THE COURT:  I'm not sure you understand what I'm

3   staying to you.  There are other parties here who have

4   complaints about each other's responses.  I know you have

5   complaints about various responses you got as well.  I've said

6   to you, you're discovery with regard to your client, anybody

7   coming after to you for discovery is stayed.  All right?  If you

8   want to pursue on behalf of your client what information you

9   haven't gotten, I'll leave that up to you.  I'm not requiring

10  you to do that at this point.  I'm focusing on the other parties

11  who are involved here and their submissions.  All right?

12          MR. WEINGARD:  Thank you, Your Honor.

13          THE COURT:  All right.  So, with regard to everyone

14  else, you've got three weeks.  If it's not resolved, I certainly

15  hope you speak to each other.  But if it's not resolved, you've

16  got three weeks to make your motions for intervention from the

17  Court.  I'll give you a specific date.  If they're not made by

18  that time I'm telling you now, they will be waived and that will

19  go in the order that goes up from today's conference.  That

20  means you have until July 18.

21          I'm also not staying depositions with the exception of

22  Defendant Buonora's depositions until that issue is brought up

23  to Judge Bianco's attention.  And it's my understanding that no

24  depositions have been taken in this case thus far, correct?

25          MR. WEINGARD:  No, that's incorrect.

*Coggins v. County of Nassau et al - 6/26/12*                    51

1            MS. PETILLO:  No.  That's incorrect, Your Honor.

2            THE COURT:  I'm sorry.

3            MS. PETILLO:  Officer's Okochino and Barnage --

4            THE COURT:  Okay.

5            MS. PETILLO:  -- have been deposed.  And that was back

6    in February of 2010.

7            THE COURT:  All right.  And approximately how many

8    other witnesses do you have to depose, Mr. Calliste?

9            MR. CALLISTE:  Your Honor, that I don't currently

10   know.

11           THE COURT:  Well, how about an approximation?  I'm not

12   asking for an exact number.

13           MR. CALLISTE:  All right.  Approximately, I believe

14   around four.

15           THE COURT:  All right.

16           MR. CALLISTE:  Including the two -- the defendants.

17           THE COURT:  All right.  And what about on the County's

18   side, Ms. Petillo?

19           MS. PETILLO:  Obviously we would want to depose the

20   plaintiff in this matter.  And I don't know at this time if we

21   would be deposing the passengers in Mr. Coggins vehicle.  That

22   is an issue that I have to look into.

23           THE COURT:  All right.

24           MR. WEINGARD:  Your Honor, I can tell you that if the

25   application is denied, if Judge Bianco denies my application, I

*Coggins v. County of Nassau et al - 6/26/12*                     52

1    will depose those people.

2              THE COURT:  That's fine.  All right.  I'm giving you

3    until September 24 to get these depositions done.  And then

4    we're going to have a telephone conference immediately after

5    that.  I'm going to put a telephone conference on for October 2.

6    That's a Tuesday at 2:00 p.m.

7              MS. PETILLO:  Is Plaintiff to organize that, Your

8    Honor?

9              THE COURT:  Yes.  All right, Mr. Calliste?

10             MR. CALLISTE:  Yes, Your Honor.

11             THE COURT:  All right.

12             MR. WEINGARD:  Judge, am I required to participate to

13   those depositions?

14             THE COURT:  I'm leaving that up to you.  I'm hopeful

15   that you're going to have an answer from Judge Bianco one way or

16   another before that time.  All right?

17             MR. WEINGARD:  The problem is that again --

18             THE COURT:  I understand what the problem is.  Believe

19   me; Mr. Weingard, I get the problem.  All right?  You're going

20   to see him right away.  Let's see where this is going.  If this

21   becomes an issue more for you than what I'm anticipating then

22   you can contact the court and ask me for further relief.

23             MR. WEINGARD:  That's certainly fair.

24             THE COURT:  All right.  The one issue with regard to

25   discovery I did want to address and this seems to be a response

*Coggins v. County of Nassau et al - 6/26/12*          53

1   from both sets of Defendants; Mr. Calliste, that somehow your

2   client didn't identify all of his healthcare providers and

3   provide those records.

4          MR. CALLISTE:  Your Honor?

5          THE COURT:  Since he's making a claim for emotional

6   distress damage here.

7          MR. CALLISTE:  Right.  I do understand our obligations

8   in that regard.  If we could just get another -- I'm not sure

9   that that has been advised to our office, but if it hasn't a

10  letter can be made to me and I can --

11         THE COURT:  Well, it's in the papers that were

12  submitted to me, so I'm assuming that's the case, otherwise I

13  got that from both Mr. Buonora's counsel and I believe from the

14  County Defendants as well.

15         MR. CALLISTE:  Your Honor, we have no intention of

16  trying to hide any healthcare providers.  We'll provide any --

17         THE COURT:  No, no, I get all of that.  And I'm not

18  saying -- I'm not getting into an argument with you about it.

19         MR. CALLISTE:  Certainly.

20         THE COURT:  But this issue was brought up early on in

21  the case.  HIPPA forms were directed to be sent to the

22  Defendants.  They're telling me they didn't get anything.  And

23  that his healthcare providers haven't been fully disclosed.  So,

24  I'm telling you now, you got ten days to get this resolved.  All

25  right?  And you talk to Defendants' counsel.  If it's your

*Coggins v. County of Nassau et al - 6/26/12*                                54

1   contention that you served HIPPA forms, then you need to talk to

2   them.

3            MR. CALLISTE:  Yes, Your Honor.

4            THE COURT:  And if not, as I said you've got ten days

5   to get this resolved.  That means HIPPA forms in ten days if

6   they haven't been granted or if they haven't been disclosed

7   already or provided.

8            MS. PETILLO:  Your Honor?

9            THE COURT:  Yes.

10           MS. PETILLO:  May I address one additional issue with

11  the Court?

12           THE COURT:  Yes.

13           MS. PETILLO:  There is the matter of the passengers in

14  the vehicle.  We have been provided with the names, but we

15  haven't been provided with last known addresses to the extent

16  that the Plaintiff knows it as they were obviously friends of

17  the Plaintiffs since they were in his vehicle.  So, to prevent

18  my office having to expend time, energy and expense to try and

19  track these people down, I would ask that Plaintiff be directed

20  to provide a last known address for those individuals.

21           THE COURT:  Were they in your Rule 26 disclosures?

22           MR. CALLISTE:  Their names were, Your Honor.  I don't

23  believe their addresses were --

24           THE COURT:  Okay.

25           MR. CALLISTE:  -- because I don't believe we knew them

*Coggins v. County of Nassau et al - 6/26/12*                    55

1   at that time.

2            THE COURT:  All right.

3            MR. CALLISTE:  I'll take another look, Your Honor.

4   And I don't even think that the Court needs to order that.

5            THE COURT:  You've got the same ten days to get that

6   resolved.

7            MR. CALLISTE:  Absolutely.

8            MR. SENFT:  Judge, my recollection is that all

9   together there were two responses identifying witnesses

10  combined.  This is the requirements of Rule 26.  We're entitled

11  to full names, addresses, phone numbers, (indiscernible).

12           MR. CALLISTE:  Insofar as we know them, Your Honor, we

13  have to disclose that.

14           THE COURT:  That's right.  And if you don't know them,

15  you have to tell them you don't know them.  So, one way or the

16  other, they've got to have at least one or the other.  All

17  right?

18           MR. CALLISTE:  Absolutely, Your Honor.

19           THE COURT:  All right.

20           MR. WEINGARD:  Would that constitute a particularized

21  need, Judge, if we can't get the addresses?

22           THE COURT:  No comment.

23           MR. WEINGARD:  It would be in the grand jury notes,

24  you know.

25           THE COURT:  Well, I suspect that Mr. Calliste is going

1    to be very helpful in getting that issue resolved, all right?

2              MR. CALLISTE:  Yes, Your Honor.

3              THE COURT:  All right.  What else?  There is also

4    apparently a request for a release for employment information

5    going to, I believe, mitigation issues.

6              Based on a letter I got, and this is going back a ways

7    now, from Plaintiff's counsel; an October 28, 2011 letter.  It

8    says it was counsel's understanding that all items were resolved

9    at the parties' October 14 meet and confer.  And counsel

10   represented that as to the Nassau County Defendants.  According

11   to what I have here, it says Plaintiffs agree to provide and/or

12   reissue a number of authorizations for medical, psychological,

13   employment and licensing information.  These were served on all

14   parties via U.S. mail under separate cover.

15             The County Defendants agreed to allow the Plaintiff to

16   serve additional interrogatories on them solely related to the

17   new claims and parties that were added in the Plaintiff's second

18   amended complaint.  And as for Defendant Buonora, Plaintiff's

19   counsel indicated that the Plaintiff went through each one of

20   Defendant Buonora's responses to the Plaintiff's interrogatories

21   to which the Plaintiff had a concern, some of which Mr.

22   Buonora's counsel agreed to rectify while on a conference call.

23             In additional the concerns were followed up  in

24   writing by letter dated October 24, 2011.  And based on the

25   Plaintiff's letter it appears that issues still remain with

*Coggins v. County of Nassau et al - 6/26/12*          57

1  regard to Defendant Buonora's responses to interrogatories 1

2  through 4, 6 and 20.  And then Plaintiff's counsel also

3  indicated that counsel for Defendant Buonora went through every

4  concern raised regarding Plaintiff's responses.  Some of these

5  items were resolved, insofar as the Plaintiff agreed to

6  supplement the responses to make it more responsive, which the

7  Plaintiff is in the process of supplementing.  Other items were

8  resolved insofar as Plaintiff agreed to continue the search for

9  certain documents requested which the Plaintiff is currently in

10  the process of doing.

11      And then we get the October 28 letter from Defendant

12  Buonora's counsel saying nothing was resolved during that phone

13  conference and that there are all of these still outstanding

14  issues.  So, again there's an issue here with regard to whether

15  the information on employment, licensing, and medical and

16  psychological records were provided.  So, again as I said, that

17  I need to get that resolved in the next ten days.

18      MR. CALLISTE:  Yes, Your Honor.

19      THE COURT:  All right?  All right.  Anything further

20  anybody needs to address before we conclude?

21      MR. CALLISTE:  Your Honor, just a date certain with

22  respect to the ten days.

23      THE COURT:  How's your math today?

24      (Laughter.)

25      MR. WEINGARD:  We're lawyers, Judge.

*Coggins v. County of Nassau et al – 6/26/12*                    58

1              THE COURT:  That would be put you at --

2              MR. WEINGARD:  The word is lousy.

3              THE COURT:  -- literally at July 6.  Because of the

4    holiday, you can have until July 9.  All right?

5              MR. CALLISTE:  Thank you, Your Honor.

6              THE COURT:  All right.  Anything further, Ms. Petillo,

7    on behalf of the County?

8              MS. PETILLO:  No, Your Honor.  Thank you.

9              THE COURT:  All right.  Mr. Weingard, anything

10   further?

11             MR. WEINGARD:  No, ma'am.

12             THE COURT:  All right.  All right.  Mr. Senft, I take

13   it you speak as one?

14             MR. SENFT:  Exactly, Judge.

15             MR. WEINGARD:  We do.

16             THE COURT:  All right.  Very good.  We're concluded

17   then.  Thank you.

18                           - o0o -

19

20

21

22

23

24

25

1                               CERTIFICATION

2

3          I, Rochelle V. Grant, certify that the foregoing is a

4     correct transcript from the official electronic sound recording

5     of the proceedings in the above-entitled matter.

6     Dated:  July 9, 2012

7

8                              _____

9                              Signature of Approved Transcriber

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25