```
          UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF NEW YORK
```

```
----------------------------X
                            :
DARRYL T. COGGINS,          :
                            :   07-CV-3624 (JFB)(AKT)
              Plaintiff,    :
                            :   August 24, 2012
                            :
         V.                 :   Central Islip, NY
                            :
COUNTY OF NASSAU, et al.,   :
                            :
              Defendant.    :
----------------------------X
```

```
       TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
        BEFORE THE HONORABLE JOSEPH F. BIANCO
            UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

For the Plaintiff:        VALERIE M. CARTRIGHT, ESQ.


For the Defendant:        DIANE C. PETILLO, ESQ.
                          LAURENCE J. WEINGARD, ESQ.
                          MITCHELL F. SENFT, ESQ.


Court Transcriber:        ARIA SERVICES, INC.
                          c/o Elizabeth Barron
                          102 Sparrow Ridge Road
                          Carmel, NY 10512
                          (845) 260-1377


Proceedings recorded by electronic sound recording,
transcript produced by transcription service

1          THE CLERK:  Calling case 07-CV-3624, Coggins

2     v. County of Nassau.

3          Counsel, please state your appearance for

4     the record.

5          MS. CARTRIGHT:  Good morning, your Honor.

6     Valerie Cartright from the law office of Frederick K.

7     Brewington, representing the plaintiff in this matter.

8          THE COURT:  Good morning, Ms. Cartright.

9          MS. PETILLO:  Good morning.  This is Diane

10    C. Petillo, representing the Nassau County defendants,

11    which is defendants Vara, DeLargi (ph) and Pickering,

12    with respect to this matter, your Honor.

13         THE COURT:  Good morning.

14         MS. PETILLO:  Good morning, your Honor.

15         MR. WEINGARD:  Your Honor, this is Laurence

16    Jeffrey Weingard, representing the defendant Buonora.

17    I have with me my associate, Mitchell Senft.

18         THE COURT:  Okay.

19         MR. SENFT:  Good morning, your Honor.

20         THE COURT:  Good morning, gentlemen.

21         As you know, I scheduled this conference to

22    address -- there's a couple of issues pending.  First,

23    there's an appeal of Judge Tomlinson's ruling with

24    respect to the grand jury materials and her

25    unwillingness to stay discovery pending another summary

judgment motion.  Then obviously, this is, I guess,

also a pre-motion conference with respect to a proposed

summary judgment motion on the issue of immunity, in

light of the Supreme Court decision in Reburg (ph).  I

think I want to take up that issue first.  I think it

will inform some of the other issues that we have to

address.

I did want to have a brief discussion about

that because I obviously read the letters.  I went back

and I read the transcript of the proceeding before

Judge Tomlinson.  I guess I wanted Ms. Petillo and Mr.

Weingard -- the bottom line is, I'm not going to

prevent you from making the motion again.  We'll talk

about discovery in a moment.  But under the rules, if

you want to make the motion, you can.

Obviously, I ruled previously that it was

premature under the circumstances and given the

allegations, but I understand that there is obviously a

significant development in the case law.  The issue is

that I want you to focus on, and I don't know if you've

given this any thought but it was highlighted in Ms.

Cartright's July 13th letter, and I have obviously read

the Reburg decision.

Certainly a lot of the law that I cited, the

Second Circuit law in that decision, is no longer

applicable pursuant to that decision, the <u>Reburq</u>

decision, because it's clear that anything that

happened in the grand jury in terms of perjured

testimony, any conspiracy with respect to perjured

testimony, the whole extra-judicial conspiracy concept

is essentially gone, as well as the idea of complaining

witnesses in connection with that type of testimony.  I

think all the law on that obviously has changed as a

result of the <u>Reburq</u> decision.

However, as Ms. Cartright points out in her

papers, in a letter, the allegations in the complaint

-- and I went back and looked at the complaint -- go

well beyond simply that defendants Buonora and Vara

testified in the grand jury and perjured themselves in

the grand jury.  Obviously, any malicious prosecution

claim or other claim that's in any way based upon that

would now clearly fail, I think, under <u>Reburq</u>.

But they allege other conduct that is

unconnected to the grand jury.  Obviously, there was an

arrest months prior to the grand jury proceeding.  They

allege that both defendants were involved in

instigating and encouraging -- involved in that arrest

itself.  With respect to Vara, in paragraph 38, it's

alleged that Vara submitted a false official report in

October of 2004 with respect to what had occurred.

1          <u>Reburq</u> is clear -- there's actually a

2    footnote, footnote one, I think it was, that that

3    decision does not -- alleged actions outside the grand

4    jury context that are unrelated to the grand jury

5    testimony or even I think any prep for the grand jury

6    testimony would also be immune.  But to the extent that

7    defendant Vara filed a false report in October --

8    actually, it makes reference to filing a false

9    affidavit as one of the things that would obviously not

10   be immune in the <u>Reburq</u> decision.

11          But to the extent here there's an allegation

12   of a false report filed by Vara that both of them were

13   involved in, and it's instigating and encouraging the

14   arrest itself, which occurred months before the

15   indictment, I don't understand how you're going to

16   argue that <u>Reburq</u> should apply to that alleged conduct.

17   That's really, I think, what the issue will be.  I just

18   was curious whether you thought of that and what your

19   response to that would be.

20          Mr. Weingard, do you want to go first?

21          MR. WEINGARD:  Yes, please.  I have thought

22   about that.  I've thought about it a lot, and I still

23   think that <u>Reburq</u> controls because at the end of the

24   day, anytime you seek to use the testimony of a witness

25   before the grand jury in order to substantiate part of

1   your claim, not necessarily all of it but part of your

2   claim, that would be covered completely, in my view, by

3   Reburg.  I don't believe that that can serve in any way

4   to justify the types of claims that the plaintiff is

5   making.

6          Also, if you take a look at Reburg, it's not

7   just the testimony before the grand jury.  I know

8   you've identified the conspiracy issues.  It would seem

9   to me that this would be part of the penumbra of all of

10  the conspiracy allegations that they're claiming

11  occurred.  You know of course we've denied a lot of

12  that.  I understand your prior decision.

13         And if you also look at the documents that

14  were attached to our prior motion, which included our

15  56.1 Local Rule affidavit, and also the 56(f) affidavit

16  put in by the parties, there is nothing that the

17  parties have -- I'm sorry, that the plaintiff has said

18  which is in any way refutation of anything that we are

19  saying.

20         I do not understand how this would not

21  violate Reburg's proscription to the courts that you

22  can't do indirectly that which you couldn't do

23  directly.  You can't come through the back door.  And

24  it would seem to me that that's this case.

25         Obviously, any pending claims would have to

be dismissed.  The malicious prosecution claim would have to be dismissed.  I don't believe that there is anything left after you take a look at the 56(f) and our Local Rule 56.1 affidavits.  There are no disputes that are alleged.

So to allow discovery, for example, to go forward or to allow this case to go forward in the face of absolutely nothing but bald-faced allegations contained in the complaint, in my view, would both violate general procedures but specifically would also impact on the holding in <u>Reburg</u>.

I think <u>Reburg</u> is significantly broader as it relates to a claim exactly like this, where the kitchen sink is placed into the complaint and the parties cannot show any basis upon which -- I'm sorry, I said the parties again.  The plaintiff cannot show any basis upon which there's anything other than assumptions or surmise or whatever you want to call it. I believe that that's part of what we're saying here. <u>Reburg</u> has, for all intents and purposes, eviscerated any claims that the plaintiff may have concerning these secondary issues.

THE COURT:  But that's only true with respect to a malicious prosecution claim and what happened in the grand jury.  I don't understand how you

1  could even argue that <u>Reburg</u> would have any application

2  to an individual -- to Mr. Coggins' and your client's

3  potential involvement in encouraging that arrest in

4  some way, or in the period between his arrest and his

5  indictment, in terms of any of his involvement in

6  concealing or otherwise being involved in the fact that

7  he was falsely charged in October of 2004 with criminal

8  possession of a weapon.  What would <u>Reburg</u> -- <u>Reburg</u>

9  doesn't speak to that.

10          MR. WEINGARD:  Well, if I may.  First of

11  all, our position is radically different than Vara's

12  position.  Whatever Vara may have done in either filing

13  an affidavit or something of that nature, we had

14  nothing to do with.  My client, as you will undoubtedly

15  recall, was an assistant officer called to the scene

16  after the arrest was effectuated.

17          The only participation he had was to try to

18  assist Vara when Coggins ran away.  And then he came

19  back to the car and yes, he did not find the gun, a

20  Floral Park officer found the gun and a magazine.  But

21  my client was not involved in anything other than that

22  on-the-scene event.

23          For example, Officer Vara had sought a

24  commendation on the grounds that he found the gun.  My

25  client never did any such thing.  There were no written

reports prepared by Buonora whatsoever.  He did

absolutely nothing other than the assistance at the

scene.  He was sent home by a supervisory officer at

about 4:50 that morning, and he next -- his next and

only involvement was to show up at the grand jury to

testify.

THE COURT:  That's all fantastic if that in

fact is what the record shows, but that goes back to my

-- that's great for your client in terms of Reburg if

that's ultimately what the facts in the case show.

But as you might be aware, when they allege

not that but a much broader involvement by your client

in activities prior to the -- including the involvement

in the arrest, and they could also proceed on a failure

to intervene theory with respect to that arrest.  Even

if he wasn't personally involved in it, if he was aware

of unconstitutional activities related to it and failed

to intervene, they could proceed on that theory with

respect to a false arrest.

And your client -- in order for you to make

a summary judgment motion and argue what you just said

to me, which is, my client, from the night of what

transpired to the moment he appeared in the grand jury,

he had absolutely no involvement whatsoever in the

case, how are you going to make a motion for summary

1  judgment on that when Ms. Cartright would say, we

2  didn't get a chance to -- we allege otherwise and we

3  didn't get a chance to depose your client and ask him

4  under oath, were you involved in this, were you

5  involved in that, what was your knowledge of this, what

6  was your knowledge of that?  That's what they're

7  entitled to before you move for summary judgment.  That

8  was the whole point of my decision four years ago.

9          MR. WEINGARD:  Judge, there is a point that

10  I wish to make, which is that they had to file a 56(f)

11  affidavit.  Your Honor, in deciding the last motion,

12  pointed out there were four paragraphs related to that

13  56(f) affidavit, which you thought allowed them to

14  proceed forward.

15          I understand what your Honor said, believe

16  me I do, but if you take a look at it and allow us to

17  argue that and deal with that 56(f) affidavit, you will

18  see that there is absolutely not a scintilla of

19  evidence which suggests that any of the claims other

20  than the perjury claim, which is out of the case, was

21  in any way substantiated by fact.

22          The only fact that they could prove was that

23  my client committed perjury before grand jury.  Nothing

24  else, none of the requirements under the 56(f) were

25  actually met, not a single one.  They say -- for

1  example, I'll take a look at --

2          THE COURT:  They could file another

3  affidavit that focuses on, in light of <u>Reburq</u>, some of

4  the things that I just discussed with you.  Why

5  couldn't they file another 56(f) affidavit that says,

6  we can't --

7          MR. WEINGARD:  If --

8          THE COURT:  Let me finish.

9          MR. WEINGARD:  Sure, of course.

10         THE COURT:  We can't oppose the motion at

11 this point because we want to ask defendant Buonora,

12 was he involved in their client being arrested?  What

13 was his knowledge of defendant Vara's alleged false

14 report in October?  Did he fail to intervene in

15 connection with the arrest or the false report?  Why

16 wouldn't they be entitled to put in another 56(f)?  You

17 want to focus on the one that they were filing before

18 <u>Reburq</u> but in light of <u>Reburq</u>, they're permitted to

19 say, this is now going to be our focus.

20         MR. WEINGARD:  Yeah, I do understand that

21 thought but the case law in the Second Circuit is very

22 clear that they can't operate on what their hope is as

23 to what anybody would say or speculation or surmise.

24 They have to have done their homework before discovery.

25 They have to have done whatever it is they could have

 1  done to establish that they have a valid basis for so

 2  claiming.

 3      If they can do that, then perhaps an issue

 4  is drawn which requires some sort of discovery.  But

 5  otherwise, it's just hope, surmise, conjecture, and

 6  they cannot get away with that.  The simple fact is, to

 7  deny the absolute immunity claims in this case on that

 8  type of thin affidavit would cause tremendous problems

 9  in connection with absolute immunity.  It would

10  literally defeat -- it would literally defeat Reburg.

11      Look, we all know that in virtually every

12  1983 claim, there are these types of allegations.

13  They're considered boiler plate.  And unless they're

14  backed up by something else, you can't drag a guy in to

15  defend.  It violates the immunity from suits and

16  certainly the defense.

17      And what they're asking you to do, I

18  believe, is to say, look at our complaint, this is what

19  the complaint says.  Forget about our 56(f), forget

20  about anything else we may have done to properly

21  investigate this case, and just to deny summary

22  judgment.  I don't believe that that's the standard of

23  the law, certainly not after Reburg.  Whatever it may

24  have been before, it's not the state of the law after

25  Reburg, in my view.

1          THE COURT:  Okay.  Ms. Cartright --

2          Ms. Petillo, is there anything else you want

3   to add on this issue?

4          MS. PETILLO:  I believe Attorney Weingard

5   has pretty much covered it all.

6          THE COURT:  Okay.  I would just point out

7   that on this issue, I obviously mentioned defendant

8   Vara and I think in addition to the issues that I've

9   raised with respect to defendant Buonora that I think

10  apply to both defendants, paragraph 38 creates an

11  additional problem for defendant Vara, I think, in

12  terms of, again, moving for summary judgment based upon

13  Reburg because there is this allegation of a false

14  report that was filed in October of 2004, months before

15  the grand jury testimony and indictment.  So, again, I

16  don't think Reburg provides any type of immunity to

17  that type of activity.  Ms. Petillo?

18         MS. PETILLO:  Yes, your Honor.  We would ask

19  at this point that we be given the opportunity to make

20  the motion and to flesh out these issues, and then for

21  the Court to determine it at that point.

22         THE COURT:  Okay.  Ms. Cartright, do you

23  want to respond?

24         MS. CARTRIGHT:  Yes, your Honor.

25         As stated in the letter and as we argued

years ago with respect to the other summary judgment
motion that was filed by Mr. Buonora's counsel, we
believe that the summary judgment motion would be
premature at this time.

We do understand that given Reburg, there
are some serious concerns related to any allegations
that we made solely based on the grand jury testimony.
However, there are other -- and as indicated by your
Honor, based on our letter, we've made allegations to
things at the beginning of the arrest up until the time
of the grand jury presentation. They're clearly
alleging that there was probable cause that was
established before the grand jury proceeding.

So we believe Reburg, contrary to what Mr.
Weingard has stated, does not stand for the proposition
that it is an all-purpose shield against malicious
prosecution claims at all. We are not basing our
malicious prosecution claim solely on the grand jury
presentation. In fact, there is a wide array of facts,
at least that we believe are facts, that would support
our false arrest, malicious prosecution and other
claims under the Fourth Amendment.

Now, with respect to the information that we
have on hand, we have not yet deposed Mr. Buonora as it
relates to any of the claims here. So whatever we've

1   included -- and I don't have any affidavits or any of

2   the documentation related to the prior summary judgment

3   motion in front of me.  However, we have clearly

4   indicated all that we knew based on the investigation

5   that we did up until that point.  We believe that after

6   deposing the defendants in this case and some of the

7   other witnesses, we will have the additional

8   information to defeat any type of summary judgment

9   motion.

10         I wanted to call your attention, also, your

11   Honor, to a decision that was rendered July 18th, 2012

12   in the Eastern District.  And I understand that it is

13   not something that is binding on your Honor but it

14   should be persuasive.  It's Sankar, S-a-n-k-a-r.

15         THE COURT:  Yeah, I read that one, Judge

16   Dearie's decision, right?

17         MS. CARTRIGHT:  Yes.

18         THE COURT:  Right.  I'm aware of that.

19         MS. CARTRIGHT:  In that decision, it's very

20   clear -- it's made very clear that Reburg does not

21   alter the control of Second Circuit and New York law

22   that the filing of a sworn complaint is sufficient to

23   satisfy the initiation prong of a malicious prosecution

24   claim.  Based on our complaint, we are claiming that

25   both Vara and Buonora instigated the arrest and were

1  players, were key players with respect to prosecuting

2  this case.

3          I understand that the defendants may have

4  some viable claims -- I'm not refuting that with

5  respect to the grand jury testimony, as far as absolute

6  immunity.  However, I think that this is something that

7  should be held off until after discovery is completed,

8  and the defendants can make their argument based on

9  Reburg at the normal course, after discovery, for

10  summary judgment.

11          MR. WEINGARD:  Judge, the entire concept

12  that I discussed a moment ago relates to how you get to

13  summary judgment when you have an absolute immunity or

14  any other claim.  The whole purpose of 56(f) is to put

15  in materials that are factual on the part of the

16  plaintiff, so that when we say there are no issues of

17  fact except my client perjured himself before the grand

18  jury, which is a conceded fact by everybody here --

19          THE COURT:  Say that -- what's the conceded

20  fact by everybody?  Say that again.

21          MR. WEINGARD:  That my client perjured

22  himself before the grand jury.

23          THE COURT:  Okay, go ahead.

24          MR. WEINGARD:  There's no doubt about that,

25  but that's not what I'm talking about.  What I'm saying

1  to you now is that in order to get to the point where

2  you allow the plaintiff to conduct discovery in the

3  face of an absolute immunity objection, which seems to

4  vibrate through Reburg, at least they have to put in

5  actual facts, not conjecture, not surmise.  The Circuit

6  is clear on it.  They have to factually make

7  allegations.

8        For example, they make an allegation that

9  Vara signed the complaint.  That's a valid allegation,

10  or signed an affidavit.  That's a valid allegation.  No

11  such thing can be said of my client, except to surmise

12  it or conjecture it.  They've had years within which to

13  get records from the police department in Nassau

14  County.  They have had discovery.  There's nothing here

15  but that Buonora showed up at the scene and then

16  Buonora went home and Buonora showed up at the grand

17  jury.

18        That's this case as it relates to Buonora,

19  not as it relates to Vara.  As I told you, Vara did

20  request a commendation for finding this guy.  My client

21  didn't.  My client didn't do anything except show up at

22  two locations, one of which was the crime scene and the

23  other of which was the grand jury.  That's it.  That's

24  what he did.

25        I don't believe that's speculation on my

1   part.  We've made those allegations in our 56.1 Local

2   Rule document.  There's been no refutation of any of

3   this in the 56(f)'s.  We don't see anything that would

4   permit this case to go beyond -- let me say it a

5   different way.

6           We don't see anything which would require

7   this Court to deny an absolute immunity defense and

8   dismiss this suit so that my client does not have to

9   endure the costs and the other associated stuff that

10  relates to defense.

11          THE COURT:  Well, I --

12          MR. WEINGARD:  Otherwise, why is it absolute

13  immunity from suit.

14          THE COURT:  Well, the absolute immunity is

15  to protect officers from the activities in the grand

16  jury process.  But there is -- obviously, there's

17  qualified immunity for other types of situations,

18  including false arrest claims.  But you're alleging

19  that he had nothing to do during this other time

20  period.  They're alleging otherwise.

21          You're saying it's only based on speculation

22  but, obviously, they get the benefit of inferences from

23  the record as well, reasonable inferences that could be

24  drawn from the allegations.  And you want me to

25  basically cut off this suit without allowing them to

1  depose your client, to have him state under oath what

2  you just stated, which is that he had zero to do and he

3  wasn't aware of any unconstitutional activity by Vara

4  with respect to the arrest or any other false reports

5  that were being filed during the months between the

6  arrest and the grand jury.

7        You want me to cut the suit off and not

8  allow them to question your client under oath, to

9  question him regarding whether what you're saying is

10 true or not, and that's --

11       MR. WEINGARD:  I believe that's what -- I'm

12 sorry, Judge.

13       THE COURT:  That, to me, would be quite

14 extraordinary to do.  Reburg does not say that when you

15 have an officer who, in addition to -- it's undisputed

16 he perjured himself in the grand jury, is alleged to

17 have been involved in the arrest and the detention of

18 the plaintiff for a period of time well prior to the

19 indictment, not based upon the indictment, that he

20 doesn't have to face -- he gets absolute immunity for

21 that.

22       There's no cases that suggest that, there's

23 no possible reading, no possible reading of Reburg that

24 would suggest that.  To me, I can't even believe we're

25 talking about that.  Your only response to that is that

1  their allegation that he was involved in these

2  activities prior to the indictment or failed to

3  intervene in the unconstitutional acts of Vara prior to

4  the indictment, you're saying is speculation, that they

5  have to come forward with facts, but that's not the way

6  it works.  If they make those allegations, then they're

7  entitled to discovery on those allegations, and then

8  you make a motion for summary judgment.

9         If there were no allegations at all that

10 your client did anything other than appear in the grand

11 jury, then we would be having a different conversation.

12 Then all my questions would be to Ms. Cartright.  Ms.

13 Cartright, your only allegation here is what he did in

14 the grand jury; you're going to lose under Reburg, but

15 that's not what their complaint is.

16        Their complaint is that he was involved in

17 what happened at the scene, he was involved in the

18 arrest and in the detention prior to the grand jury.

19 Your only response to that is, they're not going to be

20 able to prove that, they don't have any facts to back

21 that up.

22        But they make the allegation and then

23 they're permitted to have discovery in order -- before

24 they have to respond to a summary judgment motion.

25 That's what I ruled in 2008 and although the analysis

has changed with respect to the grand jury aspect of
the case, the analysis hasn't changed with respect to
the arrest and what transpired well before the grand
jury indictment.

So that's really -- we can go in circles on
this all morning.  I understand your position but I'm
hoping you understand what -- if you're going to make
the motion --

MR. WEINGARD:  Believe me, I understand
exactly what you're saying, Judge.

THE COURT:  Okay, so then I think --

MR. WEINGARD:  I understand exactly what
you're saying.  Believe me, I don't have my head tucked
under my wing.  I want you to just understand one
thing:  Based on what they're saying now, everything
they're claiming, since my client is not a complaining
witness, since he did not sign any sort of affidavit,
since he didn't do anything of that nature, and they
have that information, what you're actually saying is
that Reburg's analysis about extra-judicial
conspiracies was either incomplete or wrong.

They say you can't go back before the grand
jury and get through the back door that which you
couldn't get through the front.  You can't have an
extra-judicial conspiracy here, because if you do, he's

1  still absolutely immune.

2          THE COURT:  I know, but that, again, applies

3  to perjury in the grand jury.

4          MR. WEINGARD:  I don't believe that's --

5          THE COURT:  They're saying that if you can't

6  bring a suit against the officer for his perjury in the

7  grand jury, you can't back-door it by saying, well, he

8  was in a conspiracy with other officers to commit

9  perjury.  That's what they say.  The idea that there

10 are no conspiracies whatsoever and that can't be a

11 conspiracy with respect to a false arrest or a false

12 detention independent of the grand jury, I mean, that's

13 crazy, in my view.  It's absolutely crazy to pull that

14 from Reburg.

15          Reburg is talking about the grand jury and

16 conspiracies that are allegedly arising from testimony

17 in the grand jury.  It speaks zero and there's no logic

18 that could argue that it should be extended to an

19 arrest.  It just -- that has nothing to do with the

20 grand jury.  It deals with grand jury -- it's nothing

21 to do with a false arrest claim or a false detention

22 claim unrelated months prior to the grand jury.  You

23 can argue that but I don't know what that would be

24 based on.

25          MR. WEINGARD:  Judge, there's a quote

1 directly in <u>Reburg</u>, and you'll forgive me, I'm working

2 off a West Law page.  It's on page 9 of <u>Reburg</u> and it

3 says:  "In addition, as the Court of Appeals held, the

4 rule may not be circumvented by claiming that a grand

5 jury witness conspired to present false testimony or by

6 using evidence of the witness' testimony to support any

7 other 1983 claim concerning the initiation or the

8 maintenance of the prosecution."

9                 So I don't think I'm crazy.  I think that's

10 what it says.  At least that's what it says to me.

11                 THE COURT:  But, again -- I read that line

12 but that all has to do with the grand jury and the

13 indictment.  They're talking about the initiation and

14 the prosecution in terms of the indictment.  They're

15 not talking about the arrest.

16                 MR. WEINGARD:  They're saying the initiation

17 or maintenance of the -- of a prosecution, which I

18 assume starts from the time of arrest.

19                 THE COURT:  Okay, but that would only apply

20 to the use of the grand jury testimony itself.  It

21 doesn't apply to other things that would go to a false

22 arrest and other evidence that might prove a false

23 arrest claim independent of what happened in the grand

24 jury.  It has nothing to do with that, and that's what

25 they're arguing here.  They're arguing here that in

1   addition to perjuring himself in the grand jury, that

2   he was involved long before the grand jury in allowing

3   the plaintiff -- encouraging, instigating and

4   potentially failing to intervene in the

5   unconstitutional acts of others with respect to the

6   arrest.

7            MR. WEINGARD:  By using evidence of -- I'm

8   quoting, obviously.  "Or by using evidence of the

9   witness' testimony to support any other 1983 claim

10  concerning the initiation or maintenance of a

11  prosecution."

12           I don't think that's crazy.  You'll forgive

13  me, I honestly don't think that my reading of that is

14  crazy.  I may be wrong but crazy, I'm not.

15           THE COURT:  I don't want to keep going

16  around on this.

17           MR. WEINGARD:  Okay.  Allow me --

18           THE COURT:  You could put his testimony

19  completely aside and they could still have a false

20  arrest claim against him, if they can prove that he was

21  involved in the arrest or detention of him months

22  before the grand jury.  They don't have to use his

23  grand jury testimony, they don't have to refer to the

24  grand jury.  They would have a claim and they could

25  recover damages for that, completely apart from the

1　grand jury.  They don't have to even reference that

2　there was a grand jury and they could win that case, if

3　they can prove that --

4　　　　　MR. WEINGARD:  (Ui) any extra-judicial

5　conspiracy, which takes place purportedly in every

6　case, certainly in the cases that the Second Circuit

7　had to deal with when they thought it was appropriate

8　to do so.  How does that differ from any other extra-

9　judicial conspiracy?  That's what I'm saying.  It's

10　exactly the same thing.

11　　　　　THE COURT:  So your argument is -- let me

12　just flip your argument around.  Your argument is that

13　if an officer testifies in the grand jury, falsely or

14　otherwise, let's say falsely, then no conspiracy claims

15　can be brought because he's now under Reburg.  He

16　testified in the grand jury, testified falsely.  Now

17　he's got the Reburg umbrella that protects him from any

18　potential claim of false arrest that occurred months

19　before the grand jury or any type of unconstitutional

20　conduct because he testified falsely in the grand jury

21　about it.  That's essentially what you're telling me.

22　　　　　MR. WEINGARD:  Because this is in essence no

23　different from any other pre-grand jury testimony which

24　constitutes an extra-judicial conspiracy, which (ui) I

25　believe throughout.

1          THE COURT:  Well, that's not -- if their

2   argument was that he met with the prosecutor before

3   testifying and gave false statements to the prosecutor,

4   that's different.  That, I agree, would be covered by

5   Reburg.  But this is an arrest that occurred months

6   before the grand jury.

7          But I think we've spent enough on this.  As

8   I said, you can make the motion but I just wanted to

9   focus you on what I think the relevant issues would be.

10  So that's the first issue.

11         The second issue is in terms of the --

12         MR. WEINGARD:  I think somebody was just

13  trying to --

14         MR. SENFT:  Judge, I just want to point out

15  that there's been extensive paper discovery from the

16  County.  All the records except -- we'll get to it in a

17  second, I think.  All the records, except for part of

18  the grand jury testimonies, were provided by the

19  County, demonstrating what was going on from the time

20  of incident up to that point.  So there is some

21  documentation.

22         THE COURT:  There is -- there is

23  documentation of what went on between the arrest and

24  the indictment?  Is that what you're saying?

25         MR. SENFT:  Correct.  The County has

produced literally hundreds of pages of records.

THE COURT:  Okay, but that doesn't -- that doesn't talk about what conversations there were.  That obviously is what depositions are for.  In a normal case, they're entitled to ask defendant Buonora, did you speak to any officers before they arrested Mr. Coggins?  Were you aware that Vara was filing a false report in October of whatever year it was?  You know, those may not be documented in paperwork from the County.  That's why they're entitled to have depositions on that issue.

If after those depositions, there's no evidence that would support any involvement by defendant Buonora, then it's a different argument and a different situation than we have here now, where Ms. Cartright is saying, I haven't gotten to depose him regarding his involvement.  We allege that he was involved in the arrest and the unconstitutional acts that preceded the indictment and we haven't had a chance to question him.  That's the bottom line.

But I think we've spent enough time on this. I want to move to the issue of a stay of discovery, which is the subject of part, I guess, of the appeal of Judge Tomlinson's ruling.  It is my view that discovery should not be stayed pending this renewed motion, and

1   there are a couple of reasons for that:

2         First, the first reason is based upon the

3   discussion that we just had.  Notwithstanding the fact

4   that the renewed motion is going to be made based upon

5   Reburg, I believe based upon my long involvement in

6   this case, including having gone back and reviewed the

7   complaint, read Reburg, that there is a substantial

8   portion of this case that is unrelated to the grand

9   jury and that the renewed motion, at least before

10   discovery is complete, is going to have a difficult

11   time addressing, if the plaintiff files another

12   declaration that again points out why they need these

13   depositions to occur.

14         I understand there is the potential

15   additional costs and expense of discovery if the

16   defendant were ultimately to prevail on this renewed

17   motion, but I have to balance that out versus what I

18   just said about my view of the likelihood of success of

19   that motion, in light of my reading of the cases, as

20   well as the fact that this is a 2007 case.  This case

21   has been pending for five years and I'm unwilling to

22   have any additional delays in this case while yet

23   another motion is being made.

24         Judge Tomlinson pointed out, and I think

25   it's accurate, that even if he were dismissed as a

1   party, his deposition would be taken, for obvious

2   reasons, in connection with this case.  I understand

3   Mr. Weingard's argument that, well, maybe he wouldn't

4   have counsel present and it would be less expensive,

5   and I understand that argument.

6           But, again, I have to balance out all of the

7   factors, including what I view as the likelihood of

8   success of the renewed motion, without the completion

9   of discovery and with the fact that this case is five

10  years old and was delayed significantly by the first

11  motion, when discovery was stayed for a long period of

12  time.  So I'm not going to overrule Judge Tomlinson's

13  ruling with respect to the discovery going forward.

14          And on the grand jury materials, again, I'm

15  adhering to Judge Tomlinson's ruling.  I read the

16  transcript.  She accurately cited the law in terms of a

17  particularized need being shown.  She correctly pointed

18  out that several -- obviously, defendant Buonora's

19  testimony and Vara and Coggins, I think, were the three

20  who were provided, and there has not been a

21  particularized needed shown with respect to the other

22  witnesses in this case who testified in the grand jury,

23  at least at this point.

24          Obviously, that can be renewed at some

25  future time.  But essentially, what has been argued by

1 the parties here, including plaintiff, is that for

2 impeachment purposes, to develop I guess the absolute

3 immunity issue for purposes of a summary judgment

4 motion after discovery is complete. I don't believe

5 that those reasons are sufficient to demonstrate a

6 particularized need at this point.

7      In fact, I think it runs contrary to

8 everything that Mr. Weingard just said to me regarding

9 his renewed motion under <u>Reburg</u>. In other words, if in

10 fact <u>Reburg</u> is as it states it is, then that other

11 grand jury material would be completely useless in

12 terms of the application of <u>Reburg</u>.

13      And even in what the Court has said

14 regarding the fact that discovery may need to go

15 forward on Buonora in terms of his deposition, again,

16 if the discovery bears out that he had no involvement

17 and no knowledge of the unconstitutional acts of other

18 officers where he could intervene from the date of the

19 incident to the time he went in the grand jury, then

20 <u>Reburg</u> is going to apply and he certainly would not

21 need any grand jury material to make that argument.

22 The grand jury material, the testimony of others or

23 even himself, for that matter, although he has that

24 already, would be completely immaterial to that. And

25 if I were to order disclosure of that, notwithstanding

1  all the reasons not to do that in terms of grand jury

2  secrecy, I'd be requiring the production of grand jury

3  materials that may ultimately not be necessary, if in

4  fact the facts turn out to be what Mr. Weingard

5  believes they are, because the case at the summary

6  judgment stage, after the completion of discovery,

7  would be dismissed under Reburg.

8          So I adhere to her ruling with respect to

9  that, although I want to make clear that it can be

10 renewed at a subsequent time, if the circumstances

11 should change, okay?

12         MR. WEINGARD:  Thank you, your Honor.

13         THE COURT:  Okay.  Is there anything else,

14 Ms. Cartright?

15         MS. CARTRIGHT:  No, nothing else at this

16 time, your Honor.  Thank you so much.

17         THE COURT:  Okay.  Ms. Petillo?

18         MS. PETILLO:  Nothing else, your Honor.

19 Just so we're clear, Judge Tomlinson had indicated that

20 depositions had to be completed by September 24th, based

21 on the fact that depositions hadn't been conducted

22 pending the hearing and determination of this

23 particular motion.  I was wondering if we could extend

24 that date out because we still have quite a few other

25 individuals that need to be deposed and it's already

1  the end of August, and I know people may have vacation
2  time.
3         THE COURT:  I'll speak to Judge Tomlinson
4  about that.  I saw that September 24th date.  Obviously,
5  part of the problem is that I didn't act on these
6  letters immediately when they were filed in July.  So
7  I'm going to ask her -- why don't you speak to all
8  counsel and try to figure out what you think a
9  realistic date would be and write a letter to her,
10  asking for a new deadline.  I'm going to tell her that,
11  assuming that that's a reasonable one -- I'm certainly
12  going to ask her to move it.  In terms of what is a
13  reasonable date, I'll leave that to her after receiving
14  a letter from you, okay?
15         MS. PETILLO:  Very good, your Honor, thank
16  you.
17         THE COURT:  And then in terms of the -- Mr.
18  Weingard, do you want me to set a briefing schedule for
19  the renewed motion or do you want to discuss a schedule
20  with everybody and submit me a letter to me with a
21  proposed schedule?  What do you want to do?
22         MR. WEINGARD:  Is that okay with you, Judge?
23         THE COURT:  Yeah.
24         MR. WEINGARD:  We'll discuss it first and --
25         THE COURT:  And just submit a letter.

1            MR. WEINGARD:  -- submit a letter to you.

2            THE COURT:  That's fine.

3            MR. WEINGARD:  Okay?

4            THE COURT:  Okay, thank you.  Have a good

5    weekend.

6            MR. WEINGARD:  Thank you very much, Judge.

7            MS. PETILLO:  Thank you, your Honor.

8                    * * * * * * * *

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18     I certify that the foregoing is a correct

19 transcript from the electronic sound recording of the

20 proceedings in the above-entitled matter.

21

22

23

24

25 ELIZABETH BARRON                    September 21, 2012