```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK


------------------------------X
                              :
DARRYL T. COGGINS,            :
                              :    07-CV-3624 (JFB)(AKT)
            Plaintiff,        :
                              :    September 19, 2012
                              :
        V.                    :    Central Islip, NY
                              :
COUNTY OF NASSAU, et al.,     :
                              :
            Defendant.        :
------------------------------X


        TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
          BEFORE THE HONORABLE JOSEPH F. BIANCO
             UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

For the Plaintiff:        VALERIE M. CARTRIGHT, ESQ.



For the Defendant:        DIANE C. PETILLO, ESQ.
                          LAURENCE J. WEINGARD, ESQ.
                          MITCHELL F. SENFT, ESQ.



Court Transcriber:        ARIA SERVICES, INC.
                          c/o Elizabeth Barron
                          102 Sparrow Ridge Road
                          Carmel, NY 10512
                          (845) 260-1377



Proceedings recorded by electronic sound recording,
transcript produced by transcription service

```
 1              THE CLERK:  Calling case 07-CV-3624, Coggins
 2   v. County of Nassau.
 3              Counsel, please state your appearance for
 4   the record.
 5              MS. CARTRIGHT:  Good afternoon.  Valerie
 6   Cartright from the law office of Frederick K.
 7   Brewington, representing the plaintiff, Darryl Coggins.
 8              THE COURT:  Good afternoon, Ms. Cartright.
 9              MS. PETILLO:  Diane C. Petillo from the
10   Nassau County Attorney's office, representing the
11   Nassau County defendants, your Honor.
12              THE COURT:  Good afternoon.
13              MS. PETILLO:  Good afternoon, your Honor.
14              MR. WEINGARD:  Laurence Jeffrey Weingard,
15   representing the defendant Buonora and with me is
16   Mitchell F. Senft.
17              THE COURT:  Okay, good afternoon, gentlemen.
18              I scheduled this conference for a couple
19   reasons:  The first is, I want to revisit the issue of
20   the stay of discovery, because after we had the
21   conference, I guess it was a couple weeks ago, I went
22   back, with respect to some of Mr. Weingard's arguments,
23   and looked at some of the applicable case law.
24              The thing I focused on is his argument,
25   which is that to the extent that Judge Tomlinson had
```

```
 1   ordered I guess not only that his client's deposition
 2   go forward but that all the depositions go forward,
 3   that the difference between his client being a
 4   defendant as opposed to a witness, which he would be,
 5   at a minimum, that the cost to him, the litigation
 6   costs if he were to prevail on his renewed motion with
 7   respect to the qualified immunity is something that he
 8   should not have to burden.  In other words, if it were
 9   just a witness, then he would not have to decide
10   whether or not Mr. Weingard should attend these other
11   depositions that would take place while this is being
12   briefed.
13               So I am going to revisit that issue and I am
14   going to stay the discovery.  The case law is clear
15   that on this -- on the issue of immunity, that the
16   Supreme Court has made clear in a case called Behrens
17   v. Pelletier, 516 U.S. 299 at page 306 (1966), that
18   immunity provides an entitlement not to stand trial or
19   face the burdens of the litigation conditioned on the
20   resolution of the immunity question.
21               Then the Supreme Court, on this issue of
22   stay or no stay, has made clear in a case called
23   Crawford El v. Britton, 523 U.S. 574 at pages 597 and
24   98, that although the trial court has substantial
25   discretion in discovery matters, "The trial court must
```

exercise its discretion in a way that protects the substance [in this case, it was the qualified immunity defense]. It must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings."

Again, although a couple of weeks ago, when I was balancing out obviously the delay in the case to date, I think these cases made clear that if there is an immunity question that is still being briefed, that the defendant should not have undue expense. There are cases that have ordered a defendant's discovery to go forward or other defendants' discovery to go forward. But here, I think the burden would be too great to warrant, given the briefing.

There is an exception to that, obviously, if the motion for immunity -- if the Court -- if this Court were to determine that the motion for immunity is frivolous, then it would not warrant a stay of discovery, and that's been made clear in a number of cases, including a case called <u>Bilnco v. Greentree Servicing, LLC</u>, an Eleventh Circuit case, 366 F.3d 1249, that if the motion is deemed to be frivolous, then a stay of discovery would not be appropriate.

Although I indicated after extensive dialogue with Mr. Weingard that I believe that although

1  -- obviously, the law has changed, so I don't think
2  it's frivolous to the extent that they're making the
3  motion again, because I think there has been a
4  significant change in the law as a result of the
5  Supreme Court decision.  However, notwithstanding my
6  belief that there are other allegations in this case
7  beyond what the Supreme Court addresses in the opinion,
8  he hasn't filed the motion so I certainly have not
9  reached the conclusion that it would be frivolous for
10 him to file the motion.
11             So for those reasons, I am going to stay
12 discovery.  I thought about allowing at least the
13 deposition of Mr. Buonora to go forward but in light of
14 the fact that that the other deposition would have to
15 be stayed anyway, I don't think there's any purpose in
16 doing that, so I'm going to stay all the discovery
17 while he files the motion with the Court.
18             I will order, however, again, because I am
19 obviously concerned about how old this case is, that it
20 be done on an expedited basis.  I don't see any reason
21 why there needs to be an extended briefing schedule.
22 It was clear to me that Mr. Weingard has researched the
23 issue already, so I'm hopeful -- I had asked you guys
24 to submit a proposed schedule, which I did not see on
25 ECF, but my intention was to set an expedited schedule

```
 1  right now, so that there's not too much delay, at least
 2  in the district court.
 3              Are there any questions regarding that, Ms.
 4  Cartright?
 5              MS. CARTRIGHT:  No, I have no questions,
 6  your Honor.
 7              THE COURT:  Any questions from the
 8  defendants?
 9              MS. PETILLO:  No, your Honor.
10              THE COURT:  Ms. Petillo, I didn't include
11  you but, obviously, whatever schedule I set here,
12  you're free to file it as well, okay?
13              MS. PETILLO:  Thank you, your Honor.
14              THE COURT:  Mr. Weingard?
15              MR. WEINGARD:  No questions, Judge.
16              THE COURT:  Okay.  When do you think you
17  could file the motion by, Mr. Weingard and Ms. Petillo?
18              MR. WEINGARD:  Quite honestly -- Judge, may
19  I be completely candid with you on this subject?
20              THE COURT:  Sure.
21              MR. WEINGARD:  In light of your Honor's last
22  discussion with us, which I was able to review after
23  receiving a copy of the transcript on September 12th, so
24  we hadn't had that -- we had an order from you, which
25  is why my associate attempted to reach someone in
```

```
 1  chambers last week.
 2              THE COURT:  Since you raise that, I want to
 3  speak to Mr. Senft about that because --
 4              MR. WEINGARD:  It's me, Judge.  It has
 5  nothing -- I just asked him to place the call.
 6              THE COURT:  No, I'm not upset at the call.
 7  I don't mind.  As long as it's not a substantive
 8  matter, if you're just asking for something procedural
 9  or for scheduling, I do permit the lawyers to call
10  chambers.  But that is now the second time and it
11  involves two separate clerks, who did not communicate
12  with each other.  They told me separately, not
13  realizing the other one had complained, too.
14              I've had two separate law clerks come to me
15  that he has been rude and abrasive and unprofessional
16  in his tone when calling chambers.  I've never had
17  that, where two clerks have come with respect to a
18  lawyer, not a pro se litigant, because we do get that
19  sometimes with pro se litigants calling.
20              I can't tolerate that.  I can't have someone
21  calling chambers who is being -- you know, my clerks
22  are instructed by me to be helpful to anyone who calls
23  chambers, but I don't expect them to be abused in the
24  way they're treated, so I don't want that to happen
25  again.  And it happened -- I let it go the first time
```

because I assumed it was a bad day, but the second clerk came in saying the same thing, so I don't want that to happen again.

Is that understood?

MR. SENFT: Sure, Judge.

THE COURT: Go ahead.

MR. SENFT: It was my understanding that I was polite, so I'm not sure exactly how this characterization came about, but whatever. If that's how they felt, that's how they felt.

THE COURT: I can tell you they've been working with me for a year. They handle calls every day and they do not come into my chambers complaining lightly. And the fact that they separately came in and complained, not even knowing that the other one had complained, leads me to believe that what they told me in terms of the tone and the substance of what was said was accurate.

There's no reason to engage in -- you know, to be abrupt and rude. I'm not suggesting that you used inappropriate language or anything like that, but there's a certain tone when people call chambers that should not be used, and they both felt the same way. But in any event, I think you understand what I'm saying.

1          Go ahead, Mr. Weingard, what were you going
2  to say?
3          MR. WEINGARD:  I will take the opportunity
4  to apologize.  I know that Mitchell was merely trying
5  to get some indication as to when your order might be
6  forthcoming so that we could examine it and give
7  thought to how we wanted to proceed, in light of your
8  comments during the August 24th, 2012 conference.  But,
9  again, on behalf of my office, I will apologize, and I
10 know Mitchell feels the same way.  It won't happen
11 again, I give you my assurance.
12         THE COURT:  Okay.  Go ahead, what were you
13 going to say before that?
14         MR. WEINGARD:  What I was about to say is
15 that, in light of the position that your Honor was
16 taking with regard to causes of action which may have
17 -- which may have arisen at the time of the purported
18 arrest, although I would remind the Court that while
19 there was a stopping at that time, the plaintiff ran
20 away and was surrendered by his own lawyer the next
21 day.
22         And with regard to anything that happened
23 between that period of time and the period of time
24 leading into the grand jury presentation, we were
25 thinking here -- and I actually have in front of myself

1  because I haven't had the time to take a look at all of
2  this until today -- I was thinking here that if
3  everybody was going to be deposed, that I might refrain
4  from filing my motion until the completion of discovery
5  myself.
6         That would not be -- I would not refrain
7  from doing that if you had singled out my client, but
8  if there was going to be full depositions, I was -- I
9  was debating. I had not yet made up my mind and
10 continue not to have an answer because I must confer
11 with my client, but I was debating whether or not it
12 might be appropriate for us to permit depositions to go
13 forward before we filed our motion. I apologize for
14 not having communicated that to anybody else but I
15 hadn't spoken to my client and wish to speak to him
16 before I make a firm decision on that.
17         THE COURT: Okay. Well, look, I'm all in
18 favor of you giving additional thought to that because,
19 as I said, I don't want to -- it obviously costs your
20 client time and money to file these motions and
21 litigate the issue. And if that's the conclusion you
22 reach, that I think would be fine.
23         The thing that -- this goes to your point
24 because I was thinking about this a little bit, and you
25 are referring to it again as a summary judgment motion,

1  I think in your letter to me. But really, because
2  discovery hasn't been complete, it would really be more
3  along the lines -- it would be along the lines of a
4  motion to dismiss that as a result of the Supreme Court
5  case, there's no way they could prevail in this case
6  because if in fact -- if you were going to try to argue
7  that they can't win because my client only had
8  involvement in the grand jury, as you were, I think,
9  alluding to when we discussed this a couple weeks ago,
10 again, under the rules, they can put in some type of
11 affidavit or declaration saying, that's the discovery
12 we need. We've alleged more involvement by him. And
13 that's, I think the situation we were in previously.
14          So I think your thinking along those lines
15 makes sense because if the argument here is that he did
16 nothing other than grand jury and therefore should
17 prevail under the new legal standard, that would make
18 more sense when all the depositions are complete, so I
19 would have a full record on that, because otherwise,
20 I'm really just going to be looking at the allegations.
21          I was thinking even I should give Ms.
22 Cartright a chance, if you were going to refile this
23 motion, if she wanted to, to amend the complaint to
24 clarify or address exactly some of the issues that are
25 raised in the Supreme Court decision, because they were

```
 1  obviously drafting the complaint before the new law
 2  came out as well.  So I was thinking of giving her an
 3  opportunity, if she wanted, to do that as well.
 4            But in any event, I'm happy to give you --
 5  if you want another week or so to consider that issue
 6  with your client, I'm happy to give you that.  Is that
 7  what you want?
 8            MR. WEINGARD:  Yes, Judge.  I would think
 9  that we should have an answer by next Thursday, if
10  that's agreeable.
11            THE COURT:  Okay, that's fine.  So submit a
12  letter that says one of two things in it:  That you've
13  decided to just wait until summary judgment and then I
14  would just ask that you speak with -- I could send to
15  Magistrate Judge Tomlinson then to try to agree upon a
16  new discovery deadline, but if you want to try to talk
17  about that in advance, if you can agree on a new
18  deadline, then I will -- assuming it's reasonable and
19  everybody agrees with it, I'll so order that new
20  deadline.  This way, Judge Tomlinson won't even have to
21  deal with that aspect.
22            To the extent there are other issues, I may
23  send it back to her.  But if everyone is in agreement
24  on the new deadline, I'm not sure that she's going to
25  need to have another conference before you go forward
```

```
 1  with the depositions.  Or if your client decides that
 2  he does want to pursue this at this point, then again,
 3  I would ask that you consult with your adversaries.  I
 4  don't want to have to have another conference call, but
 5  I want you to understand that when you're trying to set
 6  the schedule, that I want to try to do it on an
 7  expedited basis, so please keep that in mind when
 8  you're proposing the various dates, if you're going to
 9  file the motion, okay?
10            MR. WEINGARD:  Yes, that's perfectly
11  reasonable.  Judge, I just -- I know this is a touchy
12  point.  Just on Mr. Senft's call to you, to chambers,
13  may we receive the original August 24th -- an order
14  related to the original August 24th material?
15            THE COURT:  I guess I don't understand.
16  When you say -- the minute entry, the order?  What are
17  you asking for?  I guess I don't understand.  You want
18  an order that says what?
19            MR. WEINGARD:  I understood that there was
20  an order that, for example, would deny our applications
21  subject to renewal at a later point in time --
22            THE COURT:  Are you talking about on the
23  grand jury issue?
24            MR. WEINGARD:  No, I'm talking about on the
25  magistrate's determination.
```

```
 1              THE COURT:  Right, on the appeal of her --
 2              MR. WEINGARD:  The appeal, yes, that's
 3   correct.
 4              THE COURT:  I will -- sure, I'll issue an
 5   order.  The reason we hadn't issued an order -- I guess
 6   we were waiting -- I thought I was going to get a
 7   letter with a revised briefing schedule and I was going
 8   to issue an order all at once.
 9              MR. WEINGARD:  I was thinking exactly the
10   opposite, that we'd first get an order and have an
11   opportunity to review it and get the transcript and
12   have an opportunity to review that.
13              THE COURT:  Okay.  Well, I guess I'll issue
14   an order as to the appeal.  I don't know how I'm going
15   to handle the fact that I've now basically changed my
16   mind on the stay, but I'll make one order that deals
17   with both that conference and today's conference, okay?
18              MR. WEINGARD:  That would be fine, Judge.
19              THE COURT:  Okay.
20              MR. WEINGARD:  Again, I do apologize for any
21   opinions that were taken away from Mr. Senft's trying
22   to get a copy of that order.  We do apologize.
23              THE COURT:  That's fine, the apology is
24   accepted.  Again, I don't have a problem -- I
25   understand why you called chambers and I consider that
```

```
 1  to be an administrative matter, that you can call
 2  chambers if you're just asking whether there's going to
 3  be an order issued or not.  My problem was what we've
 4  already discussed and I won't rehash it, okay?
 5           Anything else?
 6           MS. CARTRIGHT:  No, your Honor.
 7           MR. SENFT:  The letter from us next week, is
 8  there a deadline on that letter?
 9           THE COURT:  Yeah, I think a week from today,
10  right?
11           MR. SENFT:  Judge, I'm sorry.  We're just
12  going into the Jewish holidays, so if we could have a
13  few business days added there, I'd appreciate it.
14           THE COURT:  What day do you want?
15           MR. SENFT:  Whatever a week from Monday is.
16           MR. WEINGARD:  The following Monday?
17           MR. SENFT:  I think October 1$^{st}$, whatever
18  that Monday is.
19           THE COURT:  That's fine.
20           MS. CARTRIGHT:  October 1$^{st}$.
21           THE COURT:  Okay, October 1$^{st}$, okay?
22           MR. SENFT:  That's a letter about proceeding
23  with depositions or a briefing schedule, as the case
24  may be.
25           THE COURT:  Correct.
```

```
 1              MR. WEINGARD:  Okay, Judge, that --
 2              THE COURT:  Anything else, Ms. Petillo or
 3  Ms. Cartright?
 4              MS. CARTRIGHT:  No, nothing from us, thank
 5  you.
 6              MR. WEINGARD:  No, your Honor, thank you.
 7              THE COURT:  Okay, thank you.  Have a good
 8  day.
 9                     *  *  *  *  *  *  *  *
```

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18       I certify that the foregoing is a correct
19   transcript from the electronic sound recording of the
20   proceedings in the above-entitled matter.
21
22
23   *[signature]*
24
25   ELIZABETH BARRON                      September 26, 2012