INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 34 - 2005                                        PAGE 1

## SUMMARY:

On July 12, 2005, ADA Francis D. Quigley Jr. Chief, Special Investigations Bureau, notified the Internal Affairs Unit that his office had received information which indicated that two Nassau County police officers may have falsified the paperwork in the arrest of Darryl Coggins on October 9, 2004, and that the two officers committed perjury when they testified before the Grand Jury, concerning the circumstances of the arrest, in that they claimed to have found a 9mm semi-automatic pistol that Coggins supposedly dropped away during a foot pursuit.

ADA Quigley requested that the Internal Affairs Unit conduct an investigation concerning this allegation. A copy of the Inter-Departmental memo is attached and made a part of this investigation.

On July 12, 2005, Deputy Chief William F. Gutersloh assigned Detective Lieutenant John W. Feil and Detective Sergeant Bruce Duryee to investigate. IAU Case Number 34-2005 was assigned. D/Sgt Vincent Quigley, Serial Number 6203, of Internal Affairs, prepared a Civilian Complaint Report. Complaint Tracking Number 410-2005 was assigned. A copy of the report is attached.

A review of the Arrest Report (PDCN Form 85a) of Darryl Coggins, 56 Woods Avenue, Roosevelt, New York, indicates that on October 9, 2004, at Jericho Turnpike and Holland Avenue, Floral Park, New York, P.O. James Vara, Serial Number 8204, Third Precinct, while on routine patrol at approximately 0430 hours observed a vehicle westbound on Jericho Turnpike, New Hyde Park, New York, operating at a high rate of speed (55mph in a 35mph zone). A car stop was conducted and the vehicle was stopped at Holland Avenue, Floral Park. Upon approaching the vehicle, P.O. Vara observed Darryl T. Coggins was in ██████ of the vehicle. Passenger ████████████ was in the front seat and passenger ████ ██████ was in the rear seat directly behind the driver. P.O. Vara detected a strong

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 34 - 2005                                               PAGE 2

odor of an alcoholic beverage on the operator's (Coggins) breath, impaired motor skills and glassy bloodshot eyes. The subject (Coggins) was asked to exit the vehicle and a SFST (Standardized Field Sobriety Test) and a PBT (Portable Breath Test) was conducted.

The subject began to get agitated and while P.O. Vara attempted to place the subject (Coggins) into custody, he (Coggins) fled on foot eastbound on Jericho Turnpike to Holland Avenue. He (Coggins) then fled northbound on Holland Avenue.

It is reported "While the subject (Coggins) was running, he was holding his left hand to his side as if he was holding something. The subject (Coggins) then ran into the rear yard at 6 Holland Avenue and jumped over a 4' chain link fence." It was reported further "From the beginning of the foot pursuit up until this point, P.O. Vara was no more than 3-4 feet from the subject (Coggins). As the subject jumped over the fence, P.O. Vara heard a noise similar to metal hitting the ground. P.O. Vara took his eyes off the subject (Coggins) to look down (at the direction of the noise) and observed a black object laying on the ground on the subject's (Coggins) side of the fence."

P.O. Vara reported that the black object was a loaded, Hi-Point 9mm. automatic handgun. The weapon was later observed to have its serial number obliterated.

It was reported on the crime report that Darryl Coggins fled through the rear yards of Holland Avenue, and P.O. Vara lost sight of him. P.O. Vara reported that he safeguarded the weapon and that he broadcast a radio description of Coggins.

Further investigation recovered a loaded .380 mm. magazine clip near the front passenger door of the vehicle Coggins was driving. A search of the area of the

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 34 - 2005                                                  PAGE 3

pursuit recovered a yellow metal multi-stoned men's ring. A search for the weapon that went with the recovered clip was negative.

A man's wallet and photo of Darryl Coggins showing him wearing the yellow metal multi-stone ring were recovered from the auto. Coggins gave a NYS Drivers License in the name of Darryl Coggins to P.O. Vara at the time of the stop.

On March 17, 2005, P.O. Vara testified before the Grand Jury 3rd Term Part B. People of the State of New York against Darryl Coggins. A copy of the transcript is attached and made a part of this case. P.O. Vara testified that on the night of October 9 2004, as he completed administering a standardized Field Sobriety test to Darryl Coggins, P.O. Craig Buonora, Serial Number 8097, arrived at the scene in a marked patrol car. P.O. Vara had determined that Mr. Coggins was driving while intoxicated and advised him that he was under arrest. Mr. Coggins became agitated and started to run eastbound on Jericho Turnpike. P.O. Vara pursued Mr. Coggins on foot. P.O. Vara testified, ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ P.O. Vara testified further that as Coggins was running, he was holding both of his hands to his left side and that at Coggins was ████████████ ████████████

P.O. Vara testified that Coggins came to a fence at the driveway, and as he jumped over the fence, ████████████████████████████████████████, ████████████████████████████ NASSAU COUNTY ████████████████████████████ 00 0 2 4 8 P.O. Vara testified that his assisting officer P.O. Buonora, ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 34 - 2005                                              PAGE 4

███████████████████████████████████████████████████████
██████

When ADA Mindy Plotkin attempted to clarify the chase by asking, ████████████
█████████████████████████████████████████████████████████
███████████████████████████████████████████████████████" P.O.
Vara responded by saying, "████████████████." When asked, ██████████████
████████████████████████ P.O. Vara replied, "██████████████████
████████████████████████████████████████████████████

When asked if he had the opportunity to look down at all, P.O. Vara replied, ████
████████████████████████████████████████████████████████████
████████████████████████████████████

When asked by ADA Plotkin where was the metal object in relation to the
fence, P.O. Vara replied, ███████████████████████████████████████████
██████████

P.O. Vara testified that there came a time when he returned to the fenced
area and actually observed the object. He observed a 9mm handgun.

P.O. Vara was shown crime scene photos and identified all of them as being
fair and accurate photos of the pursuit route, fence subject jumped over, and
weapon on the ground. He was asked if the photo of the weapon was a fair and
accurate photo and replied, "████████████████████████████████████████
████████████████████████████."

P.O. Vara testified that after the chase was suspended, he returned to the
driveway and actually observed the gun on the driveway floor and that P.O. Buonora
was there at the time.

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 34 - 2005                                                    PAGE 5

On March 17, 2005, P.O. Craig Buonora, Serial Number 8097, Third Precinct, testified before the same Grand Jury. A copy of the transcript is attached and made a part of this case. P.O. Buonora testified that on October 9, 2004, he was working a 1900 to 0700 tour of duty in single person patrol unit in uniform. At about 0440 hours, he went to assist " ████████████████████████████████████████ ████████████████████ "

As P.O. Buonora pulled his car behind P.O. Vara's car, he observed P.O. Vara with a male black in his twenties on the sidewalk. The person was later identified as Darryl Coggins. P.O. Buonora observed Mr. Coggins ████████ ███████████████████████████████████████████████████████████

P.O. Buonora testified that he got out of his vehicle and started running up Holland to catch up. He caught up to P.O. Vara but not the subject. P.O. Buonora testified that he was, ████████████████████████████████████████ ████████████ " He testified further, " ████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

When ADA Plotkin clarified the statement, she asked P.O. Buonora if he was able to observe it as a gun immediately. P.O. Buonora replied, ████████████ ██████ " P.O. Buonora was shown crime scene photos and identified the fence the subject jumped over and the gun that he observed that day.

000250

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 34 - 2005                                                         PAGE 6



When asked by a juror, "████████████████████████████████████████" P.O. Buonora replied, "████████████████████"

When asked by a juror, "████████████████████████████████████?" P.O. Buonora replied, "████████████████████"

On March 17, 2005 Darryl Coggins appeared before the same Grand Jury. A copy of the transcript is attached. Mr. Coggins concurred that he was stopped by P.O. Vara and administered Field Sobriety tests. He denied that he was intoxicated and testified that he only had one beer. He denied that he was told he was under arrest by P.O. Vara. He knew P.O. Vara was a police officer.

Mr. Coggins testified that he observed police assistance arrive as he started to run away from the scene of the stop. He denied being in the possession of a weapon and alleged that as he started to run because he was afraid, he heard the police officer shout, "Shoot him in the back," so he did not stop.

On August 17, 2005, D/Sgt. Duryee met with ADA James Clarke of Special Investigations Bureau. Interviews were conducted with members of the Floral Park Police Department. No written statements or recordings of the interviews were made at the ADA's request.

P.O. █████████ of the Floral Park Police Department stated that he responded to assist Nassau County Police when a subject they had stopped as he drove fled the scene on foot. Two other occupants of the auto were left at the scene with the car. P.O. ████████ found a clip to what he thought was a 25 caliber automatic handgun. He had shined his flashlight on the inside of the auto and observed the clip on the passenger side between the seat and the door. Nassau Police Officer Craig

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 34 - 2005                                                    PAGE 7

Buonora, Serial Number 8097 of the Third Precinct was standing near the corner of Jericho Turnpike, about 25 feet away, when the clip was found.

P.O. Vara came back to the car and the subjects were taken out. A wallet belonging to the driver, Darryl Coggins, was found.

P.O. ██████ stated that he believes that it was P.O. Buonora who told him the direction the foot pursuit went and P.O. ██████ followed the route. He started walking and he searched for about 7-8 minutes and found a 9mm. automatic handgun in the driveway of 6 Holland. He stated that it was dark out and the weapon could not be seen without a flashlight. He notified his command that he recovered a weapon and stayed with the weapon alone for about 5-10 minutes. P.O. ██████ of his department joined him and later P.O. ██████ was relieved by P.O. ██████

P.O. ██████ requested Nassau officers to respond and was told that a unit was responding. No unit ever responded to relieve him. Two uniformed officers did come by to look at the gun but they did not stay.

Crime Scene responded and their paperwork indicated that the weapon was recovered by P.O. ██████ of Floral Park Police Department. The names of the officers did not appear on any other Nassau County Paperwork including the Arrest Report (PDCN Form 85a)

P.O. ██████ overheard Nassau officers at the scene tell Detective Barnych that they recovered the weapon. P.O. ██████ stated that he tried to tell Detective Barnych what really had happened but Detective Barnych "brushed him off".

NASSAU COUNTY

0 0 0 2 5 2

COPY

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 34 - 2005                                                                  PAGE 8

It was not until P.O. ▇▇▇▇ went to the DA office to testify at trial that Detective Barnych learned about P.O. ▇▇▇▇ recovering the weapon. He asked P.O. ▇▇▇▇ if he was able to get his department's radio tape recording for that night.

P.O. ▇▇▇▇ Shield Number ▇▇, stated that on the night of October 9, 2004, he was working and joined P.O. ▇▇▇▇ of his department to safeguard a weapon that ▇▇▇ had found after a pursuit of a subject by Nassau County Police officers from the Third Precinct.

P.O. ▇▇▇▇ reported that no Nassau police officers were present for the hour or so that was there with P.O. ▇▇▇▇. He was relieved by P.O. ▇▇▇▇ of his department at about 0700 hours.

P.O. ▇▇▇▇ Shield Number ▇▇, reported that he relieved P.O. ▇▇▇▇ in assisting P.O. ▇▇▇▇ of his department, safeguard a weapon and was present when a Nassau police officer he believes to be P.O. Vara, tell a Nassau detective how he recovered the weapon. He heard the officer state that he chased the subject, had trouble with his radio, and as he went over a fence, he heard a metallic sound, looked down and observed a weapon. P.O. ▇▇▇▇ stated that P.O. Vara never mentioned that his partner was with him when he found the weapon.

P.O. ▇▇▇▇ stated that a Nassau County Sergeant came later but never spoke to either him or P.O. ▇▇▇▇. They safeguarded the weapon until 0900 hours when Crime Scene arrived.

NASSAU COUNTY

Floral Park Police Sergeant ▇▇▇▇ stated that in the beginning of the incident, three Nassau units responded and, that at the end, 6-7 units were at the location. No supervisor responded even after he requested if one was in the area.

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 34 - 2005                                        PAGE 9

Sergeant ███ was aware that there was a discrepancy and wanted to clear it up at the time with a Nassau supervisor. He did not tell anyone from Nassau about his officer finding the weapon. He did follow up and make sure all of his department's paperwork was correct with regard to the incident.

On August 23, 2005, D/Sgt. Duryee interviewed Sgt. ███ as a subject of this investigation. A written report was submitted and is attached.

Sgt. ███ reported that he did not have any independent knowledge of the incident on October 9, 2004 without referring to his memo book. After referring to his memo book, Sgt. ███ could only report from what was recorded. That he signed on duty at 1800 hours on October 8. At 1900 hours, he responded and assisted RMP 330 with underage liquor sales. At 2040 he responded into the Station House for administrative paperwork, and at 2155 hours he was back in service.

At 2250 hours, Sgt. ███ responded to the Third Precinct substation to review arrest paperwork and prepare PDCN Form 79 (Physical Fitness Questionnaire).

At 0100 hours, he responded along with RMP 322, to Rita Drive for a fight involving two Pit Bulls. He was back in service at 0200.

Sergeant ███ reported that at 0310 hours he monitored data transmissions and did a booth check at Booth F (New Hyde Park). He does not recall how long he was at that location.

At 0520 hours, Sgt. ███ responded to the Third Precinct Station House to complete administrative paperwork. And at 0630 he signed off duty.

NASSAU COUNTY

COPY

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 34 - 2005                                               PAGE 10

Sergeant ████████ has no knowledge of a foot pursuit, recovery of a magazine, and recovery of a weapon in Floral Park. He reported, "At no time was I assigned to assist any officer in a foot pursuit in Floral Park."

On August 28, 2005, D/Sgt. Duryee interviewed Lt. ████████ as a subject in this investigation. A written report was submitted and is attached.

Lt. ████████ reported that on October 8, 2004, he was working an 1830 to 0630 tour of duty in the Third Precinct. Lt. ████████ did not have any independent knowledge of this incident and no recollection of anything unusual happening on October 8 into 9, 2004.

When shown computer printouts of radio transmissions for that date, Lt. ████████ reported that he did sign on meal at 0316 hours and that at 0446 he came off meal and was preparing to relieve Lt. ████████ as Desk Officer. He reported that he did not send the transmission at 0444 hours advising that he was at the Station House. He reported that he did not send the transmission at 0446 hours to RMP 345 directing him to respond to Holland Avenue in Floral Park.

Lt. ████████ reported that it was the practice to be relieved at 0600 hours, and he doesn't think he would be present after that time to transmit any other calls.

On September 1, 2005, D/Sgt. Duryee interviewed Lt. ████████ as a subject in this investigation. A written report was submitted and is attached.

Lt. ████████ reported that on October 8, 2004, he was working an 1830 to 0630 tour of duty as Desk Officer in the Third Precinct. He reported further that he signed on meal at 0500 hours October 9 during that tour.

NASSAU COUNTY
000755

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 34 - 2005                                     PAGE 11

Lt. ████████ reported that at about 0440 hours, there was a call from the west end of the precinct, either New Hyde Park or Floral Park, requesting a supervisor and a canine unit for a foot pursuit of a suspected DWI arrest.

Lt. ████████ denied both requests based on the fact that he did not want to leave the precinct with only one patrol supervisor on a Saturday morning and because the second supervisor was going to relieve him for meal. He felt that there was no reason for a supervisor on a straight DWI foot pursuit.

Lt. ████████ reported that after he became aware that a magazine was found at the scene, he authorized the request for a supervisor and a canine unit. He advised the officers at the scene to set up a perimeter only and not to search the yards.

D/Sgt. Duryee showed Lt. ████████ a printout of radio transmissions for that date. He reported that he did not make the transmission made at 0444 hours, advising that he was at the Station House on meal, because it would have him referring to himself in the transmission.

Lt. ████████ reported that the transmission made at 0456 was made by him and that he sent the transmission to RMP Unit 345, operated by Sgt. ████████ Serial Number ████ of the Third Precinct. The transmission assigned him to respond to the scene in Floral Park.

Lt. ████████ reported further he was relieved by Lt. ████████, Serial Number ████ of the Third Precinct and left work at 0500 hours. Lt. ████████ reported that he had no knowledge of what happened after he left and was not aware if Sgt. ████████ responded to the scene or not. He could not say if he briefed Lt. ████████ on what was happening in the command before he was relieved

NASSAU COUNTY

000250

COPY

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 34 - 2005                                      PAGE 12

but reported that as ten years as a Desk Officer, he has never "Relinquished the command without advising his relief as to what was going on at the time."

On September 1, 2005, D/Sgt. Duryee interviewed Sgt. ███████ as a subject in this investigation. A written report was submitted and is attached.

Sergeant ███████ reported that on October 9, 2004, he was working as a patrol supervisor in the Third Precinct on a 0630 to 1830 tour of duty. When he arrived at about 0615 hours, he relieved Sgt. ███████████

Sgt. ███████ observed on the computer screen that was located behind the desk that several cars had responded to Jericho Turnpike and Holland Avenue, in Floral Park. Sgt. ██████ felt that he should respond to that location.

When he arrived at the scene, he spoke with P.O. James Vara, Serial Number 8204, Third Pct, who advised him that a subject that was stopped for DWI had fled, and that ammo and a gun were found. He was told that a perimeter was set up.

Sgt. ███████ responded with P.O. Vara, to the location of where the gun was found, and two Floral Park officers were safeguarding the weapon. He spoke to the Floral Park officers but did not speak to a Floral Park Supervisor.

Sgt. ███████ reported that the search of roofs and storm drains occurred after he left the location. He did have the officer on RMP 318 request Emergency Service Bureau, but did not stay. He reported further that he made sure everything was in order and that the officer who were not needed resumed patrol. The bulk of the work had been done before he arrived.

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 34 - 2005                                                     PAGE 13

This case was presented to the Grand Jury on August 29 and 30 2005. D/Sgt. Duryee was advised on Monday September 12, 2005, that the District Attorney's Office notified PO Buonora to respond to Internal Affairs Unit on September 16, 2005 at 0700 hours, to be processed on the charge of Perjury in the First Degree Section 210.25 of the NYS Penal Law. A Class D Felony. He was also directed that after processing, he was to respond to the West Wing of 262 Old Country Road, Mineola, to appear before Judge Brown for arraignment on the charge.

P.O. Buonora was directed to respond to the Medical Administration office on September 13, 2005, at 1300 hours, to surrender his weapons and to be placed on restricted assignment. His weapons were invoiced to Property Bureau at that time. A copy of the invoice is attached.

On September 16, 2005, P.O. Buonora responded to the Internal Affairs Unit office and was processed on the charge. He was suspended after arraignment on the charge of Perjury 1st Degree. He was give a court date of October 11, 2005 for a conference with the District Attorney's Office.

A copy of the PDCN Form 81 (Arrest Report), PDCN Form 79 (Physical Condition Questionnaire), PDCN Form 85A (Crime Report), PDCN Form 209A (Notice of Suspension), Personnel Order 05-115, PDCN Form 106 (Property Bureau Invoice) for P.O. Buonora's shield and identification card are attached.

On September 20, 2005, P.O. Buonora was present at Internal Affairs and was served with PDCN Form 209 (Report of Violation of Rules and Regulations) for violation of Article 5, Rule 2, Subdivision 1, Unlawful Conduct and Article 5, Rule 2, Subdivision 2, submitting or causing to be submitted a false official communication. Copies of PDCN Form 209 are attached.

000258

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 34 - 2005                                                    PAGE 14

On November 17, 2005, P.O. Buonora appeared before County Court Judge Jeffrey Brown and pled guilty to the reduced charge of Perjury in the Third Degree, Penal Law Section 210.05, a Class A Misdemeanor.

In his statement to the court, P.O. Buonora stated that he appeared before the Grand Jury on March 17, 2005 and gave sworn testimony. He testified that while he was in foot pursuit of Darryl Coggins he heard a "Clunk, saw a gun on the ground, and stood by the gun until he was relieved by another officer." P.O. Buonora stated he "intentionally made these statements knowing that the entire statement was false."

P.O. Buonora was directed to return on January 17, 2006 for sentencing. A copy of the court transcript for November 17, 2005 is attached and made a part of this investigation.

On December 1, 2005, D/Sgt. Duryee interviewed P.O. Buonora as a subject of this investigation. Present at that time were Detective Lieutenant ▉▉▉▉▉ PBA Attorney ▉▉▉▉▉▉▉, and PBA Delegate P.O. ▉▉▉▉▉ Serial Number ▉▉, Third Precinct. A written report was submitted and is attached.

P.O. Buonora reported that at about 0440 hours on October 9, 2004, he assisted P.O. James Vara, Serial Number 8204, then of the Third Precinct, at Holland Avenue and Jericho Turnpike, Floral Park, on a vehicle stop.

P.O. Buonora reported that as he arrived and was pulling behind P.O. Vara's vehicle, he observed a Floral Park Police vehicle stopped across the street on Jericho Turnpike. As P.O. Buonora was exiting his vehicle, he observed the subject now known a Darryl Coggins run from where P.O. Vara had him standing on the sidewalk. P.O. Buonora reported that P.O. Vara and himself went into foot pursuit of

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 34 - 2005                                             PAGE 15

the subject and that they ran northbound on Holland Avenue turning into the driveway of 6 Holland Avenue.

P.O. Buonora reported further that Darryl Coggins jumped the fence and P.O. Vara was about six feet behind him. P.O. Buonora was about five feet behind P.O. Vara. P.O. Buonora reported that he yelled stop several times but denied saying, "Shoot him" or words to that effect. He reported that as he saw Darryl Coggins running, he did not observe him to be carrying anything or running with his hands holding his side.

P.O. Buonora reported that he did not continue the foot pursuit and told PO Vara that he would return to where the vehicle was stopped and "secure the occupants". **(INVESTIGATOR'S NOTE: There were two passengers in the auto.)** P.O. Buonora stated that P.O. Vara told him that he was going into the yard; however, P.O. Buonora did not see him enter the yard.

P.O. Buonora returned to the vehicle and he and a Floral Park officer took the subjects out of the vehicle and handcuffed them. P.O. Buonora reported that both he and the Floral Park officer observed a weapon's magazine on the ground by the passenger side of the vehicle. P.O. Buonora was aware that a radio transmission was made reporting the magazine being found. P.O. Vara returned and was advised about the magazine. P.O. Vara questioned the male passenger who was uncooperative. P.O. Vara and the Floral Park officer left P.O. Buonora watching the passengers.

P.O. Buonora reported that about 0500 hours, everyone received radio notification that a weapon was found by a Floral Park Officer. P.O. Buonora does not know who safeguarded the weapon. He never went to where the weapon was found and never spoke to any supervisor from Nassau County or Floral Park.

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 34 - 2005                                                 PAGE 16

P.O. Buonora reported that the next time he discussed this incident with anyone including Detective Barnych and P.O. Vara was at the District Attorney's Office, when he spoke with ADA Plotkin. He reported further that he had about three meetings with her and told her he was the one who found the weapon.

P.O. Buonora reported that when he testified before the grand jury he was sworn in and testified that he heard the weapon fall during the pursuit, saw the gun on the ground and safeguarded it. P.O. Buonora was not aware of any problem with the case until the suppression hearing. When asked why he testified falsely, P.O. Buonora reported "I thought he was helping the District Attorney with her case".

On December 1, 2005, D/Sgt. Duryee interviewed Det. Alexander Barnych, Serial Number 6356, Third Squad, as a subject in this investigation. Present at that time were Detective Lieutenant ███████ DAI Attorney, ███████████ and DAI Delegate, Det. ███████. A written report was submitted and is attached.

Detective Barnych reported that on Saturday, October 9, 2005, he responded along with Detective Nicholas Occhino, Serial Number 7224, Third Squad, to Jericho Turnpike and Holland Avenue, Floral Park.

Detective Barnych arrived at the scene after he signed on duty at 0700 hours, well after the initial incident time of 0430 hours. He spoke with P.O. James Vara, Serial Number 8204, Third Precinct, who reported the details of the incident. P.O. Vara and Detective Barnych walked through the areas where the car stop, field sobriety tests and footpursuit took place.

Detective Barnych reported that PO Vara reported that he chased the subject Darryl Coggins into the driveway at 6 Holland Avenue, Floral Park. The suspect jumped a chain link fence, and as he did, P.O. Vara heard a metal object hit the

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 34 - 2005                                                      PAGE 17

ground. P.O. Vara reported that he looked in the direction of the sound and saw a dark object on the ground.

Detective Barnych reported that he observed a Floral Park police officer safeguarding the weapon in the driveway. He did not speak to that officer. Later Detective Barnych observed a ring on the ground in the rear of a house on Hinsdale Avenue. This house was behind the Holland Avenue Home. There was a photo found in the stopped auto showing Coggins wearing a ring. Detective Barnych reported that the ring that was recovered matched a ring that was worn by the Darryl Coggins in the photo. The ring was photographed and secured by Crime Scene Search Unit.

Detective Barnych reported that during his discussion with P.O. Vara, he never told Detective Barnych that P.O. Buonora was involved in the foot pursuit. He was never made aware that a Floral Park police officer found the magazine by the stopped vehicle or recovered the weapon.

Detective Barnych was not aware of any radio transmissions by Floral Park Police Department or Nassau County Police Department reporting that Floral Park found the weapon. Detective Barnych reported that he left the scene between 1100 and 1200 hours.

At about 1600 hours, Detective Barnych was at the Third Squad and was notified that Darryl Coggins was present with his attorney to surrender. Darryl Coggins was arrested and processed on two charges of Possession of a weapon. At no time during the arrest processing did Darryl Coggins complain of mistreatment.

Detective Barnych reported that during preparation for a suppression hearing at the District Attorney's Office in Mineola, he learned for the first time that

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 34 - 2005                                                           PAGE 18

P.O. ███████ a Floral Park Officer found the weapon. Detective Barnych directed P.O. ██████ to advise the District Attorney.

On December 7, 2005, D/Sgt. Duryee interviewed P.O. James Vara, Serial Number 8204, formerly of the Third Precinct, currently assigned to Highway Patrol, as a subject of this investigation. Present at that time were Detective Lieutenant ████████████, Internal Affairs Unit, Attorney ███████████ and PBA Delegate PO ██████████████, Serial Number ██████ Highway Patrol Bureau. Inspector ███████ █████████ Serial Number ███████ observed the interview process. A written report was submitted and is attached.

P.O. Vara reported that on October 9, 2004, he was working a 1900 to 0700 tour of duty assigned to RMP 318. At about 0430 hours, he observed a vehicle traveling 55 miles per hour in a 35 mile per hour zone, westbound on Jericho Turnpike in New Hyde Park, New York. The vehicle was stopped at Jericho Turnpike and Holland Avenue Floral Park.

P.O. Vara approached the vehicle and observed a male, now known as Darryl Coggins, operating the vehicle. P.O. Vara reported that he observed the odor of an alcoholic beverage on his breath, glassy eyes, and impaired motor skills in that he fumbled when he took his license out of his wallet. P.O. Vara reported that he requested Mr. Coggins to get out of the vehicle and conducted field tests for intoxication and attempted three times to obtain a proper portable breath test sample put was unsuccessful.

P.O. Vara denied that he administered the test through the driver's side window of Mr. Coggin's vehicle. He reported that the test was conducted while Mr. Coggins was on the sidewalk and that he took his eyes off Mr. Coggins reached into his RMP through an open window on the passenger side of the RMP to get the

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 34 - 2005                                    PAGE 19

portable breath unit. When the tests were unsuccessful he again took his eyes off Mr. Coggins and put the unit back into the RMP.

P.O. Vara reported that he did not wait for assistance to arrive before he conducted the tests. He reported that it was about twenty minutes before the first unit arrived to assist him. **(INVESTIGATOR'S NOTE:** P.O. Buonora reported that he arrived about one minute after P.O. Vara requested assistance.**)**

P.O. Vara reported that Mr. Coggins became agitated when P.O. Buonora in RMP 303 and a Floral Park police officer arrived, Mr. Coggins began to walk westbound on Jericho Turnpike. He took two or three steps before P.O. Vara grabbed his left wrist and advised him that he was under arrest. P.O. Vara was unable to maintain a hold of the wrist and had a hold of Mr. Coggins' shirt. Mr. Coggins pulled away, tripped, fell to his hands. He regained his balance and began running eastbound on Jericho Turnpike and then northbound on Holland Avenue.

P.O. Vara pursued Mr. Coggins with P.O. Buonora right behind him. P.O. Vara reported that while they were on Holland Avenue, P.O. Buonora stated, in sum and substance, "Just shoot him."

P.O. Vara observed Mr. Coggins jump over a chain link fence in the driveway of 6 Holland Avenue. P.O. Vara heard a "metal noise as something hit the ground." P.O. Vara looked down and observed a dark object lying on the ground. P.O. Vara reported that he did not recover the object or safeguard it. He reported that he had his flashlight in his pocket but he did not use it to identify the object. He reported that his main concern at that time was the subject returning to his auto and escaped.

P.O. Vara reported that he did not jump over the fence. He left P.O. Buonora in the driveway and returned to the subject's vehicle. P.O. Vara went to the driver's

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 34 - 2005                                             PAGE 20

side and instructed the two occupants to remain in the vehicle. He also took the keys to the auto.

P.O. Vara left the occupants unguarded and ran to Hinsdale Avenue to look for Mr. Coggins. On Hinsdale, P.O. Vara met the same Floral Park officer who had stopped earlier. P.O. Vara reported that he did not tell that officer about the object in the driveway and did not ask him to secure it.

P.O. Vara reported that he broadcast a notification reading the subject's description from the driver's license that he had with him. P.O. Vara did not include in the notification that something metal was dropped in the driveway of 6 Holland Avenue and he did not request assistance in recovering it.

P.O. Vara requested K9 for a search of the area and asked Communications Bureau to notify the Desk Officer. P.O. Vara did not request a supervisor to respond to the scene. P.O. Vara reported further that he heard via radio that a "clip and gun had been found." P.O. Vara did not recall which notification he heard first. (**INVESTIGATOR'S NOTE:** The notification for finding the magazine came first.) P.O. Vara reported that he was aware that the notification said Floral Park Police found a gun at 6 Holland Avenue.

P.O. Vara reported that he returned to 6 Holland and observed several officers, including P.O. Buonora, standing around a black 9mm handgun in the area where P.O. Vara earlier observed the black object.

P.O. Vara reported that at no point did he safeguard the weapon. P.O. Vara returned to the subject's vehicle and observed a loaded clip on the ground by the driver's side door. He reported that he questioned the passengers.

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 34 - 2005                                    PAGE 21

When a K9 Officer responded, P.O. Vara went with him and conducted a search with negative results. When Detective Barnych arrived in the early morning hours, he advised Detective Barnych of the events that took place and the fact that P.O. Buonora was in foot pursuit with him. He does not know why P.O. Buonora's name was not on the arrest paperwork. (INVESTIGATOR'S NOTE: P.O. Vara prepared the case report and did not report P.O. Buonora at the scene.)

P.O. Vara reported that he was with Detective ███████████ Serial Number ████, Crime Scene Search Unit, when he recovered a ring from the rear of a house on the east side of Hinsdale Avenue, directly behind 6 Holland Avenue, Floral Park. P.O. Vara reported that at no time did he tell Detective Barnych that he recovered the ring.

P.O. Vara reported that he did not talk to P.O. Buonora about this case until preparation for the grand jury and that he did not review the felony complaint prepared by Detective Barnych. The first time he was aware of any question over who found the weapon was at a pretrial suppression hearing after Coggins had been indicted.

P.O. Vara reported that the District Attorney attempted to present speeding, resisting arrest and Driving while intoxicated charges to the Grand Jury but was unsuccessful. When asked if he documented any of his observations during field testing or prepared any paper work or make memo book entries with regard to the three portable breath test attempts, P.O. Vara reported that he did not.

P.O. Vara reported that about three weeks later he prepared PDCN Form 234 (Standard Departmental Recognition Request). As he was preparing the form, he wanted to cut and paste the narrative from the case report that he had prepared on October 9, 2004. P.O. Vara reported that he "Mistakenly cut and pasted Detective Barnych's arrest report narrative that had incorrect details." P.O. Vara reported that

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 34 - 2005                                    PAGE 22

he did not read the report and signed it as being a true statement of fact. He reported that the statement of him finding and safeguarding the weapon was not true.

On December 14, 2005, D/Sgt. Duryee interviewed Detective Occhino as a subject of this investigation. A written report was submitted and is attached.

Detective Occhino reported that on October 9, 2004, he was working a 0700 to 1700 tour of duty in the Third Squad. At about 0800 hours, he became aware of an investigation in which a subject fled from police during a traffic stop in Floral Park, New York. At about 0835 hours, Detective Occhino responded to that location with Detective Alexander Barnych, Third Squad. Detective Barnych was responsible for the cases during that tour.

At Jericho Turnpike and Holland Avenue, Detective Occhino learned that the incident had occurred about four hours earlier. Detective Occhino observed P.O. James Vara, Third Precinct, standing near a four-door sedan that belonged to the subject, who fled the scene. Detective Occhino also observed an ammunition magazine on the ground near the passenger side of the vehicle.

Det. Occhino reported further that he heard P.O. Vara inform Det. Barnych that he had performed a traffic stop that rose to the level of a driving while intoxicated investigation. P.O. Vara reported that he asked the driver, identified as Darryl Coggins, to step out of the vehicle. As P.O. Vara was conducting field sobriety tests, Mr. Coggins fled on foot and a foot pursuit ensued.

P.O. Vara escorted Detective Occhino and Barnych to a driveway alongside a home on Holland Avenue. Detective Occhino reported that he observed a handgun on the ground, and several Floral Park police officers, and Nassau ████ Crime Scene Search Unit, standing in the driveway.

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 34 - 2005                                           PAGE 23

Detective Occhino became aware that a ring had been recovered and that the property was invoiced as evidence. He reported that while he was at the scene, P.O. Vara was his only source of information. He was not approached by nor did he speak with any other police officers or supervisors from either Floral Park or Nassau County.

Detective Occhino reported that he later became aware that Darryl Coggins had turned himself in at the Third Squad later that day. Detective Occhino was not involved in the arrest processing. He was not subpoenaed by the District Attorney to testify in the Grand Jury. He was not requested for any case preparation at the District Attorney's Office.

Detective Occhino was subpoenaed to testify in the second Grand Jury handled by ADA James Clarke.

On December 19, 2005, D/Sgt. Duryee interviewed Detective ████████ as a witness in this investigation. A written report was submitted and is attached.

Detective ██████ reported that on October 9, 2004, he was assigned to the Crime Scene Search Unit, and responded to Jericho Turnpike and Holland Avenue, Floral Park, New York. Detective ████████ arrived at about 0745 hours and advised by P.O. James Vara, Serial Number 8204, Third Precinct, that he was involved in a traffic stop and that the operator of the vehicle fled on foot. P.O. Vara gave Det. ████████ an overall view of the scene and Detective ████████ walked with P.O. Vara from Jericho Turnpike to Holland Avenue.

NASSAU COUNTY
0 0 0 2 1 8

Detective ██████ observed a black, 9mm handgun in the driveway of 6 Holland Avenue. He reported that P.O. ██████ of the Floral Park Police Department was in the driveway safeguarding the weapon. P.O. Vara and Detective ██████ then

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

went through the gate in the driveway into the rear yard. P.O. Vara pointed out the path that the subject had run into another yard.

Detective ████ went back to his vehicle to get his equipment. He spoke with Detective Alexander Barnych, Serial Number 6356, Third Squad, and got a general overview from him. Detective ████ photographed the entire scene and retrieved the weapon. He photographed the rear yard of 6 Holland, and as he looked into the rear yard of 5 Hinsdale Avenue, he observed a gold colored ring on the ground in a garden.

He took pictures of the ring, retrieved it and gave the evidence to Detective Barnych. Detective ████ reported that the first time he was aware of any problem with the chain of custody of the weapon was when he was at a suppression hearing after the grand jury.

On December 21, 2005, D/Sgt. Duryee interviewed ADA Plotkin at her office at 262 Old Country Road, Mineola, New York. Present at that time was Detective Lieutenant ████.

ADA Plotkin stated that she was assigned a case involving the arrest of Darryl Coggins for two counts of Possession of a Weapon in the Third Degree, Resisting Arrest, and 1180 D of The Vehicle and Traffic Law, Speeding.

ADA Plotkin stated that the first meeting with regard to this case was with P.O. Vara. The meeting took place in her office and only P.O. Vara was there. ADA Plotkin stated that the first request for the Grand Jury was adjourned because there was a question of the chain of custody of the weapon. At that meeting she was told by P.O. Vara that P.O. Buonora was involved in the foot pursuit.

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 34 - 2005                                              PAGE 25

ADA Plotkin stated that a second meeting was held and during that meeting, P.O. Buonora informed her that he was involved in the foot pursuit and that he heard something metal hit the ground when Mr. Coggins jumped the fence. He advised her that he looked down and observed a handgun. He stayed with the weapon and safeguarded it.

ADA Plotkin stated that she never spoke with any Floral Park police officers. She was satisfied that the custody issue was resolved and that the case went to the Grand Jury. As a result Mr. Coggins was indicted.

A plea was offered to Darryl Coggins and he was about to agree and take it until he changed attorneys.

ADA Plotkin stated that she had other cases that she was handling and ADA O'Brien handled case preparation for this charge. During the suppression hearings, Floral Park Police Officer ███████ told ADA O'Brien that he found the weapon.

As a result of this disclosure, the indictment against Darryl Coggins was withdrawn and ADA Quigley of the District Attorney's Office was notified.

All charges against Coggins were dismissed in the furtherance of justice.

On January 17, 2006, P.O. Buonora was sentenced to $1000 (One Thousand Dollars) fine, Mandatory $140. (One Hundred Forty Dollars) surcharge, $20. (Twenty Dollars) Crime Victims Fee, and one year unsupervised probation on the charge of Misdemeanor Perjury. P.O. Buonora applied for and was granted relief from civil disability.