119



**POLICE DEPARTMENT
COUNTY OF NASSAU, NEW YORK**

INTERNAL CORRESPONDENCE

DATE: December 7, 2005                                                             Page 1

TO:           COMMANDING OFFICER INTERNAL AFFAIRS UNIT

FROM: Police Officer James Vara Shield Number 2526 Serial Number 8204 HPB

SUBJECT: IAU 34-2005

1. I am making this statement for administrative purposes only. I have not done so voluntarily, but in compliance with an order of a superior officer. This statement in no way constitutes any waiver of my rights, and this statement, or any part thereof may not be used against me in any subsequent criminal proceeding.

On October 9, 2004 I was on routine patrol in RMP #318 working a 1900x0700 Tour. At approximately 0430 hours I observed a black vehicle west bound on Jericho Tpk in New Hyde Park operating approximately 55 mph in a 35 mph zone. A car stop was conducted at Jericho Tpk and Holland Ave in Floral Park. I approached the vehicle and observed Darylle Coggins a person now known to me as Darryll Coggins was in operation of the vehicle. There was a male passenger in the front seat and a female passenger seated in the rear seat directly behind the driver. I observed the operator to have an odor of an alcoholic beverage on his breath, glassy blood-shot eyes and impaired motor skills as he was fumbling to take his license out of his wallet. I requested the operator to exit the vehicle and I then conducted SFST and I attempted 3 times to obtain a proper PBT sample but I was unable to. At some point I requested assistance and upon my assistance arrival of P.O. Bosnora the subject began to get agitated and in sum and substance the subject stated why are all of the police

JV

120

Report of P.O. James Vara                                      page # 2

here. The subject then began to walk westbound on Jericho Tpk by taking approximately 2 or 3 steps. At that time I attempted to control the subject by grabbing his left wrist and I advised the subject that he was under arrest. I was unable to gain control of his wrist and I instead had a grasp of his shirt. At this point the subject pulled away from me and began running east bound on Jericho Tpk toward Holland Ave and then Northbound on Holland Ave. I continued to follow the subject Northbound on Holland Ave and officer Bounora was behind me. At some point on Holland Ave, officer Bounora stated in sum and substance "Just shoot Him". @ The subject then ran diagonally across the front lawn of the first house on the west side of Holland Ave. At this point I observed the subject to be holding both of his hand's to the left side of his body around the area of his waist. The subject then ran down the driveway of the second house on the west side of Holland Ave. The subject then came to a fence and jumped over the fence. I then heard a metal noise hitting the ground and observed a dark object laying on the ground. I immediately returned back to the vehicle leaving Officer Bounora in the area of the driveway J.V.

NASSAU COUNTY
000365
COPY

(2)

Report of _P.O. James Vara_          page # _3_

and the fence. I then approached the driver side of the vehicle and instructed the two remaining occupants to remain in the vehicle and I secured the keys to the vehicle. I then went to Hinsdale Ave to see if the subject was on Hinsdale Ave and I saw a Police Officer from Floral Park who was ~~at the~~ present at the original car stop during the field sobriety tests. He stated that he did not see the subject come out of the back yards. I then broadcast a notification of the subject reading his information from his drivers license. I requested k9 to respond to assist in the search and was advised by CB that k9 was not working and could not respond. I then asked CB to notify the 3rd PCT Desk Officer. I then searched the yards of the houses located on Hinsdale Ave. I then heard a notification over the portable radio that a gun and a clip was found but I do not ~~know in a~~ recall in which order I heard this radio transmission. The substance of this radio transmission was that Floral Park had found a gun. I was then advised by CB that k9 would be responding. At this point I returned back to the driveway and the fence where the subject jumped. I observed numerous ~~off~~ officers including Officer Bonura standing around a 9-mm black handgun in the area where

000366

Report of P.O. James Vara                                        page # 4

I had of seen the dark object. Other officers were safeguarding the weapon and at no point did I safeguard this weapon. I then returned to the vehicle and I interviewed the two remaining occupants. I observed a clip with rounds in it laying next to the passengers front door in line with the passengers tires. It appeared as if the clip would have been ran over when the subject vehicle pulled over and the clip was ~~filled~~ fully intact. K9 responded and I conducted a search with k9 with negative results. 3rd Pct detectives Barnyich ~~st~~ arrived and I advised him of the events that took place. Crime scene detective ▓▓▓ arrived and I assisted him in his investigation. I was with detective Funnon when he recovered a ring from the rear of a house on the east side of Hinsdale that was directly behind the house on Holland Ave that the subject ran through. At no time did I tell Detective Barnyich that I recovered this ring. I did not speak to Officer Bonora regarding the details of this case until preparation for Grand Jury and I did not review the felony complaint prep by P.O. Barnyich. Approxamitly 3 weeks later I prepared a ~~23~~ PDCN 234. As I was preparing this form I

NASSAU COUNTY
000367
COPY

123

Report of P.O. James Vara                                                                 page # 5

Wanted to cut and paste the narrative from the case report that I had prepared on October 9, 2004. I mistakenly cut and pasted the Detective Bucyinski's arrest report narrative with details that were inconsistant. I did not read this form when I submitted it and did not know that it had the wrong narrative. The reason I submitted this PDCN 234 was to state that due to my self initiated car stop a defaced firearm was removed from the street. I wish to clarify the following details that have been asked by Det/Sgt Duryea. When I was attempting to place the subject into custody and he pulled away and ran, the subject tripped fell to his hands and was bent over at the waist then regained his balance and continued to run. I did not jump over the fence to chase the subject. The object that I observed was on the other side of the fence from where I was standing. I had my flashlight in my pocket but I didn't use it to identify the object that fell. I did not notify the officer on Hinsdale or broadcast a notification as to the object that fell at the fence. When I returned to the vehicle to secure it and the subjects

No police officer was guarding the vehicle.

NASSAU COUNTY
000368
COPY

4V

Report of P.O. James Vara                                      page # 6

When I returned to the vehicle the second time officers were guarding the passengers.

I did not find the clip next to the vehicle and I don't know who found it.

The first time I was aware of a question of who found the weapon was at a pretrial suppression hearing after the Grand Jury. P.O.J.V.

I spoke to SGT ▇▇▇▇ regarding the PDCN 234 and told him I was submitting it. He did not speak to me after that. The details I submitted in the 234 regarding finding and safeguarding the weapon were not accurate. I did not make notes in my memo book or prepare any paperwork regarding the SFST or the 3 attempts to obtain a proper PBT sample. The charges of speeding, Resisting Arrest and DWI were presented at the Grand Jury. P.O.J.V.

I did not request P.O. Bonora to say that he safeguarded the weapon.

I told Det. Barnych that P.O. Bonora was in foot pursuit with me. I do not know why P.O. Bonora was not on the arrest report. P.O.J.V.

I did not discuss the charges with Det. Barnych. Police officer

NASSAU COUNTY 000369 COPY