# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DARRYL T. COGGINS,

           DOCKET NO.: 2:07-cv-3624

         Plaintiff,

     • against

COUNTY OF NASSAU, NASSAU COUNTY POLICE
DEPARTMENT, POLICE OFFICER JAMES VARA , in
his individual and official capacity, and POLICE OFFICER
CRAIG BUONORA , in his individual and official capacity,
SERGEANT PICKERING, in his individual and official capacity,
LIEUTENANT DELARGY, in his individual and official capacity,
and JOHN DOES "1-10", in their individual and official capacity,

           **THIRD**
       **AMENDED COMPLAINT**



           **_JURY TRIAL DEMANDED_**

         Defendants.
-------------------------------------------------------------------X

   **PLAINTIFF, DARRYL T. COGGINS,** by and through his attorneys, THE LAW OFFICES

OF FREDERICK K. BREWINGTON, as and for his Third Amended Complaint, against the

Defendants, respectfully states and alleges, upon information and belief, as follows:

### PRELIMINARY STATEMENT

   1.     Prior hereto, Plaintiff filed an Amended Complaint on August 19, 2008. That amendment

of Complaint was done pursuant to an Order of this Court dated June 20, 2008.

   2.     Prior hereto, Plaintiff filed a Second Amended Complaint on August 26, 2011. That

second amendment of the Complaint was based on joinder of additional parties, which was done pursuant

to an Order of this Court..

   3.     This is a civil action for monetary relief, including past economic loss, compensatory

damages, punitive damages, disbursements, costs and fees brought under 42 U.S.C. §§§§1981 and 1983,

1985, 1986 grounded in rights secured by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United

States Constitution, and other New York State causes of action.  This is an action against the COUNTY OF

NASSAU, NASSAU COUNTY POLICE DEPARTMENT, POLICE OFFICER JAMES VARA, in his individual and official capacity, POLICE OFFICER CRAIG BUONORA, in his individual and official capacity, SERGEANT PICKERING, in his individual and official capacity, LIEUTENANT DELARGY, in his individual and official capacity, and JOHN DOES 1-10, in their individual and official capacity, for violating the civil rights and constitutional rights of Plaintiff, DARRYL T. COGGINS by engaging in unlawful conduct including, false arrest, false and unlawful imprisonment, unjust imprisonment, conspiracy, fabrication of evidence, failure to intervene, malicious prosecution, abuse of process, failure to provide information, failure to disclose information, fraudulent misrepresentation, as well as intentional infliction of emotional distress that resulted in physical and emotional harm. All acts were committed under color of law, thus depriving Plaintiff of rights secured by the Constitution and laws of the United States and the State of New York.

4.      Plaintiff, DARRYL T. COGGINS, was falsely arrested, falsely charged, falsely jailed, falsely detained, deprived of his freedom, maliciously and falsely accused, abused, subjected to public ridicule, subjected to violence, subjected to undue pressure, subjected to unauthorized touchings, defamed and made to suffer injury to his body and mind, injury to earning capacity, without reason, legal basis or justification by the COUNTY OF NASSAU, NASSAU COUNTY POLICE DEPARTMENT, POLICE OFFICER JAMES VARA, in his individual and official capacity, POLICE OFFICER CRAIG BUONORA, in his individual and official capacity, SERGEANT PICKERING, in his individual and official capacity, LIEUTENANT DELARGY, in his individual and official capacity, and JOHN DOES 1-10, in their individual and official capacity, all who knew or should have known, or became aware that there was no merit to the arrest, jailing, imprisonment, charging, prosecution, continuation of prosecution, conviction, institution and the continuance of said actions and that pursuit of same was illegal.

5.      The initial incident of the within matter arose on or about October 9, 2004, at about 3:50

2

a.m., at Jericho Turnpike and Holland Avenue in Floral Park, New York.

6.          On or about October 9, 2004 through August 12, 2005, Plaintiff, DARRYL T.

COGGINS was falsely accused, falsely charged, falsely arrested, falsely detained, falsely jailed,

abusively prosecuted, denied information, denied basic rights, subjected to wrongful and negligent

actions by Defendants subjected to negligent use, holding, secreting of persons and records including

information about witnesses, witness statements, exculpatory documents and information. He was

denied his freedom despite the clear evidence showing that he should be freed and was not afforded basic

civil and constitutional protections, with the full complicity of the COUNTY OF NASSAU, NASSAU

COUNTY POLICE DEPARTMENT, POLICE OFFICER JAMES VARA, in his individual and official

capacity, POLICE OFFICER CRAIG BUONORA, in his individual and official capacity, SERGEANT

PICKERING, in his individual and official capacity, LIEUTENANT DELARGY, in his individual and

official capacity,  and JOHN DOES 1-10, in their individual and official capacity and others.

7.     Plaintiff, DARRYL T. COGGINS, sustained severe damages, physical and emotional

injuries, including, but not limited to, violation of his civil rights, injury to his mental health, permanent

damage to his good name and reputation, humiliation, shame, embarrassment, extreme mental and

emotional harm and stress, impairment of earning power, as well as the unjustified loss of his freedom,

access to personal property, good standing in the community, comfort, employment, income, career

opportunities and other damages not yet fully ascertained.

## JURISDICTION

8.     This action is brought pursuant to 42 U.S.C. §§ 1981, 1983, and 1988 and the Fourth,

Fifth, Sixth and Fourteenth Amendments to the United States Constitution.  Jurisdiction is founded upon

28 U.S.C. §§1331 and 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

3

Plaintiff further invokes the pendent jurisdiction of this Court, pursuant to 28 U.S.C.A. § 1367, to hear and decide any and all claims arising under state law.

9.  That all conditions precedent to instituting the lawsuit have been complied with in a timely manner including but not limited to the filing of a notice of claim. In response to the notice of claim, the defendants failed to settle the matter. Prior to the filing of the Second Amended Complaint, the parties have engaged in limited discovery.

10.  Venue herein is proper under 28 U.S.C. § 1391 (b); the cause of action arose in the Eastern District of New York.

## PARTIES

11.  During all times relevant to this Complaint, the Plaintiff DARRYL T. COGGINS was, and still is, a citizen of the United States, residing in the County of Nassau, State of New York.

12.  The Defendant COUNTY OF NASSAU (hereinafter "COUNTY") is a duly constituted municipal corporation of the State of New York and is and was the employer of POLICE OFFICER JAMES VARA (hereinafter referred to as "VARA") POLICE OFFICER CRAIG BUONORA (hereinafter referred to as "BUONORA"), SERGEANT PICKERING (hereinafter referred to as "PICKERING"), in his individual and official capacity, LIEUTENANT DELARGY, (hereinafter referred to as "DELARGY"), in his individual and official capacity, and certain of the unnamed police officers and Detectives, and other personnel (JOHN DOES 1-10).

13.  The Defendant NASSAU COUNTY POLICE DEPARTMENT (hereinafter "NASSAU POLICE") is an agency of the COUNTY.

14.  Upon information and belief, during all times relevant to this Complaint, Defendant VARA, was and is a citizen and resident of the State of New York; and at all times herein mentioned was a Police Officer employed by the COUNTY, under the direction of the NASSAU POLICE and

4

COUNTY and was acting in furtherance of the scope of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and usages of the State of New York and/or COUNTY, and acting in his individual and official capacity.

15.     That Defendant BUONORA was and is a citizen and resident of the State of New York; and at all times herein mentioned was a Police Officer employed by the COUNTY, under the direction of the NASSAU POLICE and COUNTY and was acting in furtherance of the scope of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and usages of the State of New York and/or COUNTY, and acting in his individual and official capacity.

16.     Upon information and belief, during all times relevant to this Complaint, Defendant VARA, was and is a citizen and resident of the State of New York; and at all times herein mentioned was a Police Officer employed by the COUNTY, under the direction of the NASSAU POLICE and COUNTY and was acting in furtherance of the scope of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and usages of the State of New York and/or COUNTY, and acting in his individual and official capacity.

17.     Upon information and belief, during all times relevant to this Complaint, Defendant PICKERING, was and is a citizen and resident of the State of New York; and at all times herein mentioned was a  Police Officer employed by the COUNTY, under the direction of the NASSAU POLICE and COUNTY and was acting in furtherance of the scope of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and usages of the State of New York and/or COUNTY, and acting in his individual and official capacity.

18.     Upon information and belief, during all times relevant to this Complaint, Defendant DELARGY, was and is a citizen and resident of the State of New York; and at all times herein mentioned was a  Police Officer employed by the COUNTY, under the direction of the NASSAU

5

POLICE and COUNTY and was acting in furtherance of the scope of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and usages of the State of New York and/or COUNTY, and acting in his individual and official capacity.

19.     That "JOHN DOES" 1-10 were at all times herein mentioned police officers and/or detectives, in their individual and official capacities, employed by both COUNTY and NASSAU POLICE under the direction of Defendant's COUNTY AND NASSAU POLICE,  and were acting in furtherance of the scope of their employment, acting under color of law, to wit under color of statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the COUNTY and/or NASSAU POLICE.

20.     During all times relevant to this Complaint, the Defendants, and each of them, were acting under color of law, to wit, under color of constitution, statutes, ordinances, laws, rules, regulations, policies, customs and usages of the State of New York and/or the COUNTY.

21.     During all times relevant to this Complaint, the Defendants, separately and in concert, engaged in acts or omissions which constituted deprivation of the constitutional rights, privileges and immunities of the Plaintiff, and while these acts were carried out under color of law, they had no justification or excuse in law and were instead gratuitous, illegal, improper and unrelated to any activity in which law enforcement officers may appropriately and legally engage in the course of protecting persons and property or ensuring civil order.

22.     During all times relevant to this Complaint, the Defendants, and each of them, had the power and the duty to restrain the other Defendants and prevent them from violating the law and the rights of the Plaintiff, but each of the Defendants failed and refused to restrain the other Defendants and thereby became a party to unlawfully subjecting the Plaintiff to harm and denial of basic rights.

## FACTUAL ALLEGATIONS

23.     Plaintiff, DARRYL T. COGGINS, reiterates and realleges each and every allegation contained in paragraphs 1 through 22 of this Complaint with the same force and effect as though set forth herein.

24.     Police Officer VARA stopped Mr. Coggins even though the plaintiff had committed no violation of the law because of his race and color. On the night of October 9, 2004, Mr. Coggins was driving with his friends, when he saw a police car, which made a U-turn, and drove behind his car. The car's lights and sirens were activated and Mr. Coggins was pulled over.

25.     Defendant VARA never informed Mr. Coggins what he was being stopped or arrested for. After Mr. Coggins got out of the car, he asked Defendant VARA what he was being pulled over for. Defendant VARA refused to proffer any reason for the stop.   Instead, Defendant VARA requested Mr. Coggins' license and returned to his squad car. When Defendant VARA returned, Mr. Coggins again asked what he was being pulled over for but once again he received no response.

26.     Without making any allegations or having any basis, Defendant VARA unnecessarily subjected Mr. Coggins to a series of tests to determine whether Plaintiff was intoxicated despite his having successfully passed every test. After returning from his squad car, Defendant VARA administered a breathalyzer test to Mr. Coggins. Defendant VARA had him breathe into a machine which did not work the first time. Defendant VARA went back to his car with the machine, returned, and had Mr. Coggins breathe into the machine again. Upon information and belief, Mr. Coggins passed this test also. Defendant VARA also had him count to thirty on one foot, while touching his nose, among other things.   Upon information and belief, Mr. Coggins passed all those tests as well. During the tests, Mr. Coggins continued to ask why he was pulled over by Police Officer VARA but again received no response.   Defendant then called for

7

backup.

27.     During this stop, Defendant VARA threatened and physically assaulted Mr. Coggins. After Defendant VARA had called for backup, Mr. Coggins got nervous.  Mr. Coggins turned his head and asked, "you trying to lock me up for what?" and questioned why other Police Officers were being called to the scene. Then, Defendant VARA hostilely exclaimed "don't turn your back on me," and physically assaulted Mr. Coggins by grabbing him.  Mr. Coggins told Defendant VARA that he did not need to grab him.  Then, Defendant VARA threatened Mr. Coggins responding "I'll do more than that,"  assaulted him again and placed his hand on his gun.  Mr. Coggins feared for his life and ran.

28.     As Mr. Coggins was running away, he saw another police officer arrive on the scene, who Plaintiff believes to be Defendant BUONORA  He heard the Officer, who Plaintiff believes to be Officer BUONORA, yell "Shoot him in the back, shoot him in the back."  Mr. Coggins, who had a two year old daughter, then feared for his life even more.  But, when heard "Shoot him in the back," he knew there was no way he could stop running.   Mr. Coggins ran down Jericho Turnpike and jumped over a fence.   Then, Mr. Coggins saw a cab, hailed the cab and obtained a ride home.

29.     Notwithstanding the numerous versions of the story told by various Defendants, some of which are blatantly inconsistent, BUONORA clearly made statements that he engaged in the chase of Plaintiff COGGINS in an effort to arrest him.  This chase of Plaintiff was commenced by Defendant VARA in an attempt to arrest Plaintiff.

30.     BUONORA goes on to further state that after choosing to retreat from chasing Plaintiff as VARA was closer to Plaintiff, he went and secured the passengers of Plaintiff's car with handcuffs, a detention that Plaintiff alleges to be unlawful and without basis.

8

31.     Mr. Coggins, surrendered himself after speaking with his family and  was arrested and falsely charged under Docket No.: 2004NA021116, with violating Penal Law § 265.02(3), Criminal Possession of a Weapon in the Third Degree, a Class D Felony. A Conviction under Penal law §§ 265.02(3) and/or 265.02(4) carries with it a potential penalty of law, two (2) years to seven (7) years incarceration. Mr. Coggins' bail was set at $10,0000.00 Cash and $25,000.00 Bond.  On October 11, 2004, bail was posted on behalf of Mr. Coggins. Accordingly, despite Mr. Coggins' innocence, he remained in jail for a period of two (2) days. Mr. Coggins' freedom was limited as he was required to appear in court for months following his false arrest.

32.    Upon information and belief, in processing the paperwork, Defendants VARA, BUONORA, DELARGY and PICKERING, failed to file the proper paperwork pursuant to the policies and procedures of the NASSAU COUNTY POLICE DEPARTMENT and withheld relevant evidence related to Plaintiff COGGINS.

33.     Upon information and belief, Defendant BUONORA failed to complete an incident report or any other paperwork connected with the detention, chase and arrest of Plaintiff despite the fact that he was identified by Defendant VARA as the "Assisting Officer" and was actively involved in the foot pursuit of and attempted arrest of Plaintiff.

34.     Furthermore, Defendant VARA falsified official documents related to the events that transpired on October 9, 2004 and intentionally omitted the name of Defendant BUONORA despite his appearance and involvement at the scene.

35.     Upon information and belief, Defendant VARA and BUONORA conspired with each other and agreed to an altered version of what transpired on October 9, 2004 and made a conscious decision to omit

9

Case 2:07-cv-03624-JFB-AKT   Document 145-2   Filed 06/13/13   Page 11 of 42 PageID #:
Case 2:07-cv-03624-JFB-AKT   Document 133-1   Filed 11/07/12   Page 10 of 41 PageID #:
1247

certain information and include false information in the Police Report and accompanying arrest paperwork.

36.     Upon information and belief, Defendants VARA and BUONORA have previously been found to be in violation of the NASSAU COUNTY POLICE DEPARTMENT policies and procedures insofar as they failed to document an incident and complete paperwork properly.

37.     Upon information and belief, Officers at the NASSAU COUNTY POLICE DEPARTMENT have been engaging in improper practices and procedures for years, which includes but is not limited to the practice of falsifying documents, omitting information and failing to properly document incidents, particularly in situations where blacks and/or black males are involved.

38.     On March 17, 2005, Mr. Coggins' case was presented to the Grand Jury by the Nassau County District Attorney's Office ("District Attorney").  Prior to the District Attorney presenting the criminal matter to the Grand Jury, Counsel for Plaintiff requested, by way of formal demand, that the District Attorney requested the Grand Jury to consider the charges of perjury against the defendant officers, making an apparently sworn false statement, making a punishable false written statement, harassment and aggravated harassment, and requesting that certain eyewitnesses be presented before the Grand Jury on behalf of the plaintiff.  Despite Counsel's written formal demand, the District Attorney failed to comply with Plaintiff's request and the Grand Jury rendered a True Bill, voting to indict Mr. Coggins on violating Penal Law § 265.02(3), Criminal Possession of a Weapon in the Third Degree, Penal Law § 265.02(4), Criminal Possession of a Weapon in the Third Degree, and Penal Law § 205.30, Resisting Arrest; under Indictment No. 663N-2005.

39.     During the preparation for the Grand Jury presentation, it was discovered that a Floral Park Police Officer had a version of the story that was different from that of Defendant Officers.  It was discovered that on October 9, 2004, a report was created for the Floral Park Police Department that stated

10

Case 2:07-cv-03624-JFB-AKT   Document 145-2   Filed 06/13/13   Page 12 of 42 PageID #:
Case 2:07-cv-03624-JFB-AKT   Document 138-d   Filed 11/07/12   Page 11 of 41 PageID #:
1248

that, a Floral Park Officer, and not the Defendant Officers, is attributed with finding a black semi automatic pistol.

40.     In July 2005, ten months after the initial arrest and after numerous court appearances while preparing for a Mapp/Huntley hearing, a Floral Park Officer informed counsel that the story Defendant VARA and BUONORA were telling was inaccurate. The Floral Park Officer informed counsel that he was the Officer who initially found a gun approximately forty minutes after the foot pursuit began. He further indicated that radio transmission of October 9, 2004 would substantiate his claim. The case was then referred to the Special Investigations Division of the Office of the District Attorney for further investigation.

41.     On or about March 17, 2005, the Special Investigations Bureau of the Nassau County Police Department commenced an investigation, under Tracking No. 410-2005 into the arrest, detention and prosecution of Mr. Coggins, which is the subject matter of this federal complaint.

42.     Eventually, the charges against Mr. Coggins were dismissed on a motion by the District Attorney. Throughout all of these proceedings, Plaintiff never wavered in declaring his innocence and made that fact unequivocally known to Defendants. Plaintiff never signed any statement that can be construed as an admission of guilt. Plaintiff has maintained throughout these proceedings that Defendant's VARA and BUONORA were lying and had fabricated evidence against him.

43.     As a result of the investigation conducted by the Police Department, it was determined Defendant BUONORA engaged in unlawful conduct in that on March 17, 2005, he appeared before the Nassau County Grand Jury in his capacity as a Police Officer and did give false testimony.

44.     As a result of the investigation, it was determined that Defendant BUONORA engaged in conduct unbecoming of a Police Officer in that in or around October 9, 2004, while he was in foot

11

pursuit of Plaintiff, Defendant Officer yelled "Just shoot him" or words to that effect.

45.     On November 17, 2005, Defendant BUONORA appeared before Judge Jeffrey Brown County Court Judge and pled guilty to a reduced charge of New York Penal Law 210.05, Perjury in the Third Degree, a Class A Misdemeanor.

46.     The Nassau County Police Internal Affairs Unit recommended that Defendant BUONORA be served with PDCN Form 209 (Report of Violation of Rule and Regulations) for violation of departmental rules and regulations Article 5, Rule 2,  Subdivision 1 Unlawful Conduct, Article 5, Rule 2,  Subdivision 2, Submitting a False Official Communication, and Article 5, Rule 1,  Subdivision 2, Conduct Unbecoming of a Police Officer.

47.     On December 1, 2005, Defendant BUONORA falsely reported to Detective Bruce Duryee that he and Defendant VARA went into foot pursuit of Mr. Coggins.  Defendant Buornora denied yelling "shoot him" or words to that effect.

48.     Defendant BUONORA reported that during foot chase, he stopped and returned to vehicle. Whereupon, he alleges that, he and a Floral Park Police Officer, ordered other subjects out of the vehicle and handcuffed them.  Facts contained in this report directly contradicts other testimony given by Defendant BUONORA. Further, Defendant BUONORA failed to create any reports regarding the arrest.

49.     Despite asserting that he recovered a weapon,   Defendant BUONORA later admits in a report that everyone received radio notification that a weapon was found by a Floral Park Officer.

50.     Directly contradicting Defendant VARA's version of events, Defendant BUONORA admitted that he never safeguarded a weapon nor ever went to a weapon was recovered or spoke to any

12

Case 2:07-cv-03624-JFB-AKT   Document 145-2   Filed 06/13/13   Page 14 of 42 PageID #:
Case 2:07-cv-03624-JFB-AKT   Document 133-1   Filed 11/07/12   Page 13 of 41 PageID #:
1250

supervisor from Nassau County or Floral Park about his version of the incident.

51.    Despite his version of the incident changing several times, Defendant BUONORA alleges that he never spoke with anyone about the incident until he met with the District Attorney's Office. Upon information and belief, there were approximately three (3) meetings with the District Attorney's Office wherein he falsely represented to the Assistant District Attorney that he had found a weapon.

52.    Upon information and belief, from the time of the arrest of Plaintiff COGGINS through the times that he met with the District Attorney's office up until the time that he testified before the Grand Jury, Defendant BUONORA was aware of the fact that the documents that had been prepared related to the detention, arrest and prosecution of Plaintiff contained false information, omitted important and relevant information. Despite this knowledge, Defendant BUONORA did not refute this evidence in any reports, statements to his supervisors or before the Grand Jury.

53.    On March 17, 2005, Defendants BUONORA and VARA intentionally and maliciously testified falsely before the Grand Jury related to the arrest, detention and prosecution of Plaintiff COGGINS.

54.    During an investigation of Defendant BUONORA's misconduct, he was asked why he falsely testified about a gun, to which he responded "I thought I was helping the District Attorney with her case."

55.    During the malicious prosecution of Mr. Coggins, Defendant BUONORA was aware that Defendant VARA indicated in his reports and in his Grand Jury testimony that he stayed with the evidence in the form of a fabricated gun during and after the foot chase of the defendant. Despite this knowledge, Defendant BUONORA did not refute this evidence in any reports, statements to his supervisors or before the Grand Jury.

13

56.     Defendant BUONORA knew that a gun recovered by the Floral Park Officers was submitted to the Forensic Evidence Bureau under false pretenses but never informed his supervisors about this information.

57.     During the prosecution of Mr. Coggins, Defendant BUONORA provided and relied upon false documents, statements and perjured testimony. Defendant BUONORA assisted in and conspired with Defendant VARA to arrest Plaintiff COGGINS, to fabricate evidence and failed to intervene to prevent the malicious prosecution of Mr. Coggins.

58.     On September 16, 2005, Defendant BUONORA signed a Notification of Suspension for the Nassau County Police Department. In that Notification, Defendant BUONORA admitted to violating the Penal Law 210.15, Perjury in the First Degree and giving false testimony in the Grand Jury.

59.     On December 1, 2005, Defendant BUONORA created a report for the Nassau County Police Department containing inaccurate and blatantly false and fabricated facts. Directly contradicting Defendant's VARA version of events, Defendant BUONORA reported that he returned to the subject's vehicle and handcuffed the remaining occupants. Defendant BUONORA falsely reported that he did not make any statement about shooting Mr. Coggins. Defendant BUONORA admitted that he never found nor secured a gun.

60.     Defendant BUONORA falsely testified at the grand jury that he heard a metal object hitting the ground. Defendant BUONORA falsely testified that he looked at the object that fell and found it to be a gun. Defendant falsely testified that he stayed with a gun until a Floral Park Police Officer relieved him.

61.     Despite having allegedly helped in the foot pursuit of Mr. Coggins and the arrest of the other persons in the plaintiff's car, Defendant BUONORA asserts in his interrogatory that he

14

Case 2:07-cv-03624-JFB-AKT   Document 145-2   Filed 06/13/13   Page 16 of 42 PageID #:
Case 2:07-cv-03624-JFB-AKT   Document 133-1   Filed 11/07/12   Page 15 of 41 PageID #:
1252

prepared no reports, records, documents or other tangible objects that describe or record his involvement on October 9, 2004.

62.     Despite preparing reports indicating that he, with a Floral Park Officer, arrested the other persons in the plaintiff's car, Defendant BUONORA asserts in his interrogatory that he has no independent knowledge of any witnesses of the factors and circumstances surrounding the plaintiff's arrest.

63.     As a result of the investigation conducted by the Police Department, it was determined that Defendant VARA submitted a false official report in that on October 26, 2004 he submitted a PDCN (Standard Departmental Recognition) reporting that he was in foot pursuit, heard a metal noise, observed a black object on the ground and safeguarded a weapon and broadcasted a radio description of the defendant.

64.     As a result of the investigation, it was determined that Defendant VARA failed to properly document his alleged observations and activities in his Memorandum Book and failed to record three failed attempts to administer the portable breath test on Plaintiff on October 9, 2004.

65.     On December 7, 2005, Defendant VARA was interviewed at Internal Affairs and admitted he submitted the false report. The Nassau County Police Internal Affairs Unit recommended that Defendant VARA be served with PDCN Form 209 (Report of Violation of Rule and Regulations) for violation of departmental rules and regulations Article 5, Rule 2,  Subdivision 2, Submitting a False Official Report, and Article 6, Rule 1,  Subdivision C., Article 6, Rule 1,  Subdivision 2, Failure to enter a full and accurate record of duties performed by him in his memorandum book.

66.     DEFENDANT VARA, instigated, assisted and conspired with Defendant BUONORA to fabricate evidence, fabricate testimony and failed to intervene to prevent the malicious prosecution of Mr. Coggins.

15

67.     Defendant VARA provided and relied upon false documents, statements and perjured testimony. On March 17, 2005, Defendant VARA testified falsely at the grand jury to numerous facts surrounding the events that took place on October 9, 2004.  Despite Mr. Coggins passing all the tests administered to determine his intoxication level, Defendant VARA, asserted and falsely testified that the plaintiff had a strong odor of alcoholic beverage on his breath, glassy, bloodshot eyes and a slurred speech.

68.     On October 9, 2004, Defendant VARA created a false case report for the Nassau County Police Department.  In that report he falsely reported hearing a metal object hitting the ground.  Further, he falsely reported seeing a black object, which he later found to be a loaded black automatic handgun.

69.     On December 7, 2005, Defendant VARA created a report for the Nassau County Police Department with inaccurate and blatantly false and fabricated facts. Defendant VARA falsely asserted in this report that he heard a metal object hit the ground. He falsely asserted in the report that he found Officer Bounora safeguarding a gun.

70.     Defendant VARA falsely testified at the grand jury that Mr. Coggins was staggering as he exited and walked away from the vehicle.  Defendant VARA falsely testified that he saw the defendant holding both of his hands to the left side of his leg as he fled.

71.     Defendant VARA falsely testified at the grand jury that he heard a metal noise  hitting the concrete. Defendant VARA falsely testified that he saw an metal object laying on a  driveway.  Defendant VARA falsely testified that Defendant BUONORA was with the fabricated evidence in the form of a gun when he returned from his chase of the defendant.

72.     Defendant VARA reported to the Internal Affairs Unit that it was Defendant BUONORA who yelled in sum and substance "just shoot him." Directly contradicting Defendant BUONORA versions of events (BUONORA asserted that he arrested the occupants in the subject's vehicle),

16

Case 2:07-cv-03624-JFB-AKT   Document 145-2   Filed 06/13/13   Page 18 of 42 PageID #:
Case 2:07-cv-03624-JFB-AKT   Document 133-1   Filed 11/07/12   Page 17 of 41 PageID #:
1254

Defendant VARA reported that he did not jump over the fence but returned to the subject's vehicle. Defendant VARA reported that he instructed the two occupants to remain in the vehicle and took the keys out of the car.

73.     Defendant VARA reported that he then went to look for Mr. Coggins and saw the Floral Park Police Officer. He admitted that he did not tell that officer about a gun nor did he ask him to secure it. Defendant VARA further admitted that, in his broadcast notification, he did not report finding a metal object nor did he request assistance in recovering it.

74.     Defendant VARA admitted that he was aware that the notification said Floral Park Police found a gun. Defendant VARA also admitted that at no point did he safeguard a weapon.

75.     Defendant VARA admitted to the District Attorney that he had not prepared any paperwork, or made any entries in his memo book with regard to the breathalyzer tests.

76.     Defendant VARA falsely reported to Detective  that he heard a metal object hit the ground during his foot pursuit of Mr. Coggins.  He also falsely reported to the detective that he looked in the direction of the sound and saw a dark object on the ground.

77.     On October 9, 2004, Detective BUONORA prepared a report documenting his interactions with Defendant VARA as they relate to this case. Defendant VARA reported to Detective Barnych that he was involved in the foot pursuit of Mr. Coggins.  Defendant VARA falsely reported to Detective Barnych that he observed a handgun fall from the defendant.

78.     Defendant VARA never informed Detective Barnych that a Floral Park Police Officer actually recovered a weapon. Nor did he inform the detective of any radio transmissions by the Floral Park Police Department or Nassau reporting that the Floral Park officer found a weapon.  Detective Barnych did not document Defendant VARA mentioning Defendant BUONORA at all during his

17

Case 2:07-cv-03624-JFB-AKT Document 145-2 Filed 06/13/13 Page 19 of 42 PageID #:
Case 2:07-cv-03624-JFB-AKT Document 133-1 Filed 11/07/12 Page 18 of 41 PageID #:
1255
1255

recollection of the incident.

79.     Defendant VARA reported to Detective Occhino that he was involved in the foot pursuit of Mr. Coggins. Defendant VARA falsely reported to Detective Occhino that he observed a handgun fall from the defendant. Defendant VARA never informed Detective Occhino that a Floral Park Police Officer actually recovered a weapon. Nor did he inform the detective of any radio transmissions by the Floral Park Police Department or Nassau reporting that the Floral Park officer found a weapon.

80.     In a redacted Internal Correspondence memo from the Nassau County Police Department, a Sergeant at the 3rd Precinct reported his findings when he arrived at the scene several hours after the incident. The Unknown Sergeant spoke with Defendant VARA and reported that Defendant VARA first said he found a gun and said we found a gun.

81.     Defendant VARA has engaged in a pattern and practice of unlawful misconduct. On 12/30/2001, Defendant VARA received a complaint from a woman who stated that defendant stopped her for no reason and issued her two unfounded summons.

82.     On October 28, 2002, a complaint regarding the improper use of tactics or procedure was filed against Defendant VARA and Defendant BUONORA. The Police Department subsequently found this complaint founded and indicated that the defendants were retrained in the proper completion of their memo books. (Police Department, County of Nassau, New York Supplemental Complaint Tracking Form, Tracking Number 102-02)

83.     As a result of the Investigation conducted by the Police Department, it was determined that DEFENDANT PICKERING failed to respond to the scene at Holland Avenue and Jericho Turnpike as directed by the Desk Officer through the Communications Bureau.

84.     As a result of Defendant Pickering's conduct, he failed to supervise the scene of the incident and failed to prevent Defendants VARA and BUONORA from falsely stopping, assaulting, violating

Case 2:07-cv-03624-JFB-AKT   Document 145-2   Filed 06/13/13   Page 20 of 42 PageID #:
Case 2:07-cv-03624-JFB-AKT   Document 133-1   Filed 11/07/12   Page 19 of 41 PageID #:
1256

rights and fabricating evidence against Mr. Coggins.

85.     As a result of the Investigation conducted by the Police Department, it was

determined that DEFENDANT DELARGY failed to respond to the scene at Holland Avenue and Jericho

Turnpike as directed by the Desk Officer through the Communications Bureau.

86.     It was also determined that Defendant Delargy failed to produce his memorandum

book for October 8 and 9, 2004.

87.     As a result of his conduct, he failed to supervise the scene of the incident and

failed to prevent Defendants VARA and BUONORA from falsely stopping, assaulting, and fabricating

evidence against Mr. Coggins.

88.     Upon information and belief, the Defendants County, Nassau Police, VARA,

BUONORA, PICKERING, and DELARGY conspired to deprive Plaintiff of his due process rights;

specifically by attempting to prolong Mr. Coggins unlawful detainment without probable cause,

investigation, and rule of law. The defendants conspired to deny Mr. Coggins his Fifth Amendment rights

by attempting to cover up the aforementioned incidents of misconduct.

89.     Defendants prolonged Mr. Coggins captivity by fabricating evidence, making false

reports, engaging in misconduct, failing to adhere to procedures, rules and regulations, and wholly

failing to investigate the incident and Mr. Coggins pleas that he was innocent. Defendants possessed but

withheld information which would have exonerated Mr. Coggins.

90.     Defendants individually and collectively knew at the time of Mr. Coggins' arrest,

and at all times since then, that the evidence they had in connection with the charges brought against the

plaintiff were false, inconsistent with and insufficient to establish his guilt with respect to all of the charged

crimes.

19

Case 2:07-cv-03624-JFB-AKT   Document 145-2   Filed 06/13/13   Page 21 of 42 PageID #:
Case 2:07-cv-03624-JFB-AKT   Document 135-1   Filed 11/07/12   Page 20 of 41 PageID #:
1257

91.     Defendants Nassau and Nassau Police permitted and tolerated the egregious

improper conduct by issuing official claims that the harassment was justified, failing to seriously discipline

or prosecute the Defendant Officers. As a result of this conduct, Defendant Police Officers were caused to

and encouraged to believe that individuals could be falsely arrested, prosecuted and imprisoned under

circumstances requiring the use of falsified evidence and testimony.

92.     Despite Mr. Coggins' innocence, he remained in jail for a period of two days.

Plaintiff has suffered loss of freedom and damage to his good name and will continue to suffer from

psychological harm, humiliation, fear, injury to his character, and injury to his reputation.

93.     As a result of the Defendant's conduct, plaintiff has been subjected to unnecessary

and unsubstantiated charges, detention, court appearances, loss of career choices and other due process

violations. Plaintiff has suffered severe humiliation, anxiety, fear, and emotional and psychological harm,

as a direct result of being publicly detained, jailed for two days, manhandled, handcuffed, stripped and cavity

searched.

94.     As a direct result of the Defendants' conduct, Plaintiff has suffered and continues

to suffer loss of income, loss of other employment benefits, loss of career opportunities, and has suffered and

continues to suffer repeated, severe and permanent psychological, emotional and physical trauma.  Mr.

Coggins has suffered great financial expenses in relation to his false arrest and prosecution.

## AS AND FOR COUNT ONE
### 42 U.S.C §1981

95.     The Plaintiff repeats, reiterates and realleges each and every allegation contained in

paragraphs 1 through 94 of this Complaint with the same force and effect as though fully set forth herein.

96.     The Defendants COUNTY, its agents and employees, the NASSAU POLICE, in its agents

and employees, POLICE OFFICER JAMES VARA, in his individual and official capacity, POLICE OFFICER CRAIG BUONORA, SERGEANT PICKERING, in his individual and official capacity, LIEUTENANT DELARGY, in his individual and official capacity,   and JOHN DOES 1-10, in their individual and official capacity, in their individual and official capacity deprived Plaintiff of his Fourth, Fifth, Sixth and Fourteenth Amendment rights, and caused such deprivation of rights by unlawfully stopping, falsely detaining, unlawfully accusing, wrongfully arresting and falsely imprisoning the Plaintiff for two days as described above in paragraphs 1 through 83 of this Complaint. Said acts were motivated by race and color, and  were marked by the conduct of Defendants to support the motivation.

97.     Upon information and belief, the Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY, further deprived the plaintiff of his due process rights; specifically by attempting to prolong the Defendant's unlawful detainment without probable cause, investigation, rule of law and by further denying the plaintiff his Fifth Amendment rights via an attempt to cover up the misconduct of said officers and officials and to prevent plaintiff from being compensated for his wrongful arrest, detainment, and other physical and emotional harm incurred.

98.     In furtherance of said conduct, the Defendant officers prolonged the plaintiff's captivity by failing to investigate plaintiff's protests that he was not the alleged perpetrator and by conspiring to set bail at an unreasonable amount.

99.     Said actions by Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY denied the plaintiff his Due Process, and denied him the equal protection under the law.  All of these rights are guaranteed to the plaintiff under U.S.C. §§1981.  Said acts were motivated by race and color, and  were marked by the conduct of Defendants to support the motivation.

100.     By assisting in the prolonged detainment and false charging of the Plaintiff,COUNTY,

Case 2:07-cv-03624-JFB-AKT  Document 145-2  Filed 06/13/13  Page 23 of 42 PageID #:
Case 2:07-cv-03624-JFB-AKT  Document 139-1  Filed 11/07/12  Page 22 of 41 PageID #:
1259

NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY acted with the shared purpose

of denying plaintiff his rights to freedom of movement, protection from unlawful seizure, procedural and

substantive due process, and the right to equal protection under the laws.  These rights are guaranteed

to the plaintiff under 42 U.S.C. §1981.

101.    As a result of said conduct by the Defendants COUNTY, NASSAU POLICE, VARA ,

BUONORA, PICKERING, and DELARGY, the plaintiff has been subjected to unnecessary and

unsubstantiated charges, detention, court appearances, and other due process violations.

102.    Plaintiff further suffered severe humiliation, anxiety, fear, and emotional and psychological

harm, as a direct result of being publicly detained, jailed for two days, manhandled, handcuffed, stripped and

cavity searched.

103.    As a direct result of said acts, Plaintiff has suffered and continues to suffer loss of income,

loss of other employment benefits, loss of career opportunities,  and has suffered and continues to suffer

repeated, severe and permanent psychological, emotional and physical trauma and damage, including

distress, humiliation, embarrassment, great financial expense and damage to his reputation, and the emotional

and psychological trauma as alleged in the preceding paragraphs of the within complaint.

104.    As a result of the Defendants unlawful acts, the Plaintiff has been exposed to disgrace,

public humiliation and embarrassment and has been damaged in the sum of Ten Million ($10,000,000.00)

dollars, including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages.

### AS AND FOR COUNT TWO
### 42 U.S.C §1983 - FOURTH, FIFTH, SIXTH and FOURTEENTH AMENDMENTS

105.    The Plaintiff repeats, reiterates and realleges each and every allegation contained in

paragraphs 1 through 104 of this Complaint with the same force and effect as though fully set forth

herein.

106.    Plaintiff alleges numerous constitutional violations under Section 1983 which include,

Case 2:07-cv-03624-JFB-AKT   Document 145-2   Filed 06/13/13   Page 24 of 42 PageID #:
Case 2:07-cv-03624-JFB-AKT   Document 138-1   Filed 11/07/12   Page 23 of 41 PageID #:
1260

but is not limited to: fabrication of evidence, falsification of documents and arrest paperwork, falsification of official records, withholding of evidence, failure to follow proper policies and protocols, failure to intervene, falsely testifying before the Grand Jury, conspiracy as it relates to the above and conspiracy as it relates to the false arrest, false imprisonment, abuse of process and malicious prosecution of Plaintiff, all of which support Plaintiff's claims for constitutional violations.

107.    Plaintiff alleges that Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY fabricated evidence as it relates to the incident involving Plaintiff on October 9, 2004 which constituted violations of his constitutional rights under Fourth, Fifth, Sixth and Fourteenth Amendments.  Plaintiff alleges that this conduct was intentional and malicious and based on race, color and gender.

108.    Plaintiff alleges that Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY falsified documents and arrest paperwork as it relates to the incident involving Plaintiff on October 9, 2004 which constituted violations of his constitutional rights under Fourth, Fifth, Sixth and Fourteenth Amendments.  Plaintiff alleges that this conduct was intentional and malicious and based on race, color and gender.

109.    Plaintiff alleges that Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY falsified official records as it relates to the incident involving Plaintiff on October 9, 2004 which constituted violations of his constitutional rights under Fourth, Fifth, Sixth and Fourteenth Amendments.  Plaintiff alleges that this conduct was intentional and malicious and based on race, color and gender.

110.    Plaintiff alleges that Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY fabricated evidence as it relates to the incident involving Plaintiff on

Case 2:07-cv-03624-JFB-AKT Document 138-1 Filed 11/07/12 Page 24 of 41 PageID #: 1261

October 9, 2004 which constituted violations of his constitutional rights under Fourth, Fifth, Sixth and Fourteenth Amendments. Plaintiff alleges that this conduct was intentional and malicious and based on race, color and gender.

111.     Plaintiff alleges that Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY withheld evidence as it relates to the incident involving Plaintiff on October 9, 2004 which constituted violations of his constitutional rights under Fourth, Fifth, Sixth and Fourteenth Amendments. Plaintiff alleges that this conduct was intentional and malicious and based on race, color and gender.

112.     Plaintiff alleges that Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY failure to follow proper policies and protocols as it relates to the incident involving Plaintiff on October 9, 2004 which constituted violations of his constitutional rights under Fourth, Fifth, Sixth and Fourteenth Amendments. Plaintiff alleges that this conduct was intentional and malicious and based on race, color and gender.

113.     Plaintiff alleges that Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY failed to intervene as it relates to the incident involving Plaintiff on October 9, 2004 which constituted violations of his constitutional rights under Fourth, Fifth, Sixth and Fourteenth Amendments. Plaintiff alleges that this conduct was intentional and malicious and based on race, color and gender.

114.     Plaintiff alleges that Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY falsely testified before the Grand Jury, as it relates to the incident involving Plaintiff on October 9, 2004 which constituted violations of his constitutional rights under Fourth, Fifth, Sixth and Fourteenth Amendments. Plaintiff alleges that this conduct was intentional and malicious and based on race, color and gender.

Case 2:07-cv-03624-JFB-AKT   Document 145-2   Filed 06/13/13   Page 26 of 42 PageID #:
Case 2:07-cv-03624-JFB-AKT   Document 138-1   Filed 11/07/12   Page 25 of 41 PageID #:
1262

115.    Plaintiff alleges that Defendants COUNTY, NASSAU POLICE, VARA , BUONORA,

PICKERING, and DELARGY conspired as to the  fabrication of evidence, falsification of documents

and arrest paperwork, falsification of official records, withholding of evidence, failure to follow

proper policies and protocols, failure to intervene, falsely testifying before the Grand Jury, as it

relates to the incident involving Plaintiff on October 9, 2004 which constituted violations of his

constitutional rights under Fourth, Fifth, Sixth and Fourteenth Amendments.  Plaintiff alleges that this

conduct was intentional and malicious and based on race, color and gender.

116.    Plaintiff alleges that Defendants COUNTY, NASSAU POLICE, VARA , BUONORA,

PICKERING, and DELARGY conspired as to the false arrest, false imprisonment, abuse of process,

and malicious prosecution of Plaintiff as it relates to the incident involving Plaintiff on October 9, 2004

which constituted violations of his constitutional rights under Fourth, Fifth, Sixth and Fourteenth

Amendments.  Plaintiff alleges that this conduct was intentional and malicious and based on race, color

and gender.

117.    On or about October 9, 2004, Plaintiff, DARRYL T. COGGINS, was falsely arrested,

falsely seized and falsely detained, deprived of his freedom, unlawfully imprisoned and maliciously

prosecuted by Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and

DELARGY, in violation of the civil and constitutional rights afforded to him via the Fourth Amendment

and the Due Process Clauses of the Fifth, Sixth and Fourteenth Amendments of the United States

Constitution, as well as 42 U.S.C.§1983.  All acts by the Defendants were committed under color of law,

thus depriving the Plaintiff of rights secured by federal law and the United States Constitution.

118.    On or about October 9, 2004, Defendants COUNTY, NASSAU POLICE, VARA ,

BUONORA, PICKERING, and DELARGY, falsely arrested, falsely seized and falsely detained Plaintiff,

thus depriving him of his freedom. Said seizure was made without probable cause, as Defendants were

of the knowledge that Plaintiff had committed no crime.

119.    Upon information and belief such seizure, arrest, and detention was ordered and directed

by Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY.

Defendants VARA and BUONORA actively instigated and encouraged the prosecution of the Plaintiff.

120.    Upon information and belief, the Defendants, COUNTY, NASSAU POLICE, VARA,

BUONORA, PICKERING, and DELARGY, possessed, but withheld information which would have

exonerated Plaintiff of the criminal charges with which he was charged.

121.    Upon information and belief, the Defendants, COUNTY, NASSAU POLICE, VARA,

BUONORA, PICKERING, and DELARGY, deprived Plaintiff of the right to offer testimony of

witnesses, and to compel their testimony at the Grand Jury Proceeding, thereby depriving Plaintiff of the

right to establish a defense.

122.    Upon information and belief, each of the Defendants took an active role in creating and

manufacturing the charges against Plaintiff, solely for the purposes of effecting an arrest and conviction,

and not to effectuate justice.

123.    As part of the false arrest, detention and accusations, Defendants caused the Plaintiff to

be wrongfully seized, falsely detained, falsely arrested, falsely imprisoned, and deprived of his liberty,

without probable cause. Furthermore, as a direct result of said actions, the Plaintiff was unjustly exposed

to disgrace, public humiliation, injury and embarrassment.

124.    The Defendants individually and collectively knew at the time of Plaintiff's arrest, and

at all times since then, that the evidence they had in connection with the charges brought against Plaintiff

were false, inconsistent with and insufficient to establish his guilt with respect to any of the crimes

charged.

26

125.    In arresting, detaining and interrogating Plaintiff, each of the Defendants knew or should have known they were violating federal law and the Plaintiff's constitutional rights set forth herein and had failed to prevent the same and, therefore, acted in concert to harm the Plaintiff.

126.    Defendants withheld information and conspired to cover up the illegal acts delineated herein, despite the truth being apparent. Defendants VARA and BUONORA offered and were allowed to provide false documents, false statements and perjured testimony before the Nassau County Grand Jury with the full knowledge and support of COUNTY and NASSAU POLICE.

127.    Defendants withheld information and conspired to cover up the illegal acts delineated herein, despite the truth being apparent. Defendants PICKERING and DELARGY failed to carry out their duties as Nassau County Police Officers by failing to respond to the scene and provide the necessary supervision at the scene.

128.    As a direct result of the unlawful actions of each of the Defendants, COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY, the Plaintiff was wrongfully subjected to grand jury proceedings, wrongfully indicted for weapons possession, maliciously prosecuted, forced to endure multiple mandatory court appearances, and face potential incarceration all based upon false premises.

129.    Each of the Defendants, separately and in concert, acted outside the scope of their jurisdiction and without authorization of law and each of the Defendants, separately and in concert acted willfully, knowingly and purposefully with the specific intent to deprive Plaintiff of his right to freedom from illegal seizure of his person, freedom from illegal detention and imprisonment; all rights that are secured to Plaintiff by the Fourth Amendment, the due process clause of the Fifth and Fourteenth Amendments of the United States Constitution, and by 42 U.S.C. §§1981 and 1983.

130.    As a direct and proximate result of the aforesaid acts of the Defendants and each of

27

Case 2:07-cv-03624-JFB-AKT   Document 145-2   Filed 06/13/13   Page 29 of 42 PageID #:
Case 2:07-cv-03624-JFB-AKT   Document 136-1   Filed 11/07/12   Page 28 of 41 PageID #:
1265

them, the Plaintiff suffered great physical harm, mental anguish and violation of rights from then until
now and he will continue to so suffer in the future having been greatly humiliated and mentally injured,
as a result of the foregoing acts of the Defendants.

131.    Plaintiff was forced to incur great expense and special damages to date for the defending
the false criminal charges, attorney's fees, investigation expenses, and other expenses in clearing his
name against the unfounded and unwarranted allegations by the Defendants which have been a serious
burden to Plaintiff.

132.    That by reason of the foregoing, the Plaintiff has been exposed to disgrace, public
humiliation and embarrassment and has been damaged in the sum of Ten Million ($10,000,000.00)
dollars, including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages.

### AS AND FOR COUNT THREE
### 42 U.S.C. §1983-MUNICIPAL LIABILITY

133.    The Plaintiff repeats, reiterates and realleges each and every allegation contained in
paragraphs 1 through 132 of this Complaint with the same force and effect as though fully set forth
herein.

134.    Prior to October 9, 2004 and since, Defendants NASSAU AND NASSAU POLICE have
permitted and tolerated a pattern and practice of unjustified, unreasonable and illegal abuses and arrests
of persons by police officers.  Despite the egregiously improper conduct, the officers involved were not
seriously prosecuted, disciplined or subjected to restraint and such incidents were in fact covered up with
official claims that the harassments were justified and proper. As a result, Defendants NASSAU

POLICE were caused and encouraged to believe that individuals could be falsely arrested, prosecuted

and imprisoned under circumstances requiring the use of fabricated and falsified evidence and giving false
testimony, falsified and intentionally misleading reports, ignoring and misapplying the rules and regulations,

Case 2:07-cv-03624-JFB-AKT Document 145-2 Filed 06/13/13 Page 30 of 42 PageID #:
1266
Case 2:07-cv-03624-JFB-AKT Document 133-1 Filed 11/07/12 Page 29 of 41 PageID #:
1266

and that such behavior would, in fact, be permitted by the COUNTY.

135.    In addition to permitting a pattern of practice of improper treatment of persons, the COUNTY has failed to maintain a proper system for oversight of officers and supervisors and for investigation of all incidents of unjustified arrests and prosecution by their agents/employees.

136.    The COUNTY has failed to respond to the continuing and urgent need to prevent, restrain and discipline police officers that deprive citizens of their civil rights.

137.    A system allegedly maintained by the COUNTY, has failed to properly review unjustified behavior and activities by police officers, and has failed to identify the violative acts by police officers and to subject officers to discipline, closer supervision or restraint to the extent that it has become the custom of the COUNTY to tolerate the improper and illegal arrests and other wrongful actions by police officers.

138.    Upon information and belief, specific systemic flaws in the COUNTY's police misconduct review process include but are not limited to the following:

     a.    Preparing reports regarding investigations of incidents as routine point-by point justification of the police officers' actions regardless of whether such actions are justified;

     b.    Police officers investigating incidents systematically fail to credit testimony by non-police officer witnesses and uncritically rely on reports by police officers involved in the incident;

     c.    Police officers investigating incidents fail to include in their reports relevant factual information that would tend to contradict the statements of the police officer involved;

     d.    Police officers failing to communicate, properly respond to the scene and failing to provide the proper supervision at the scene of incidents;

     e.    Create and manufactured false testimony and evidence.

29

Case 2:07-cv-03624-JFB-AKT   Document 145-2   Filed 06/13/13   Page 31 of 42 PageID #:
Case 2:07-cv-03624-JFB-AKT   Document 105-1   Filed 11/07/12   Page 30 of 41 PageID #:
1267

   f..  Overlooking false and misleading statements made by Police Personnel

  139.  The foregoing acts, omissions, systemic flaws, policies and customs of the COUNTY

caused Nassau County Police Officers to believe that improper actions would not be aggressively, honestly

and properly investigated with the foreseeable result that officers are most likely to act inappropriately and

falsify evidence in situations where such evidence is neither necessary nor reasonable. These such failure

continued and were part of an ongoing culture.

  140.  As a direct and proximate result of the aforesaid acts, omissions, systemic flaws, policies

and customs of the Defendant COUNTY, the Plaintiff was unjustifiably mistreated, illegally arrested and

wrongfully detained, in violation of his civil and constitutional rights. Moreover, he has suffered and will

continue to suffer from psychological harm, humiliation, fear, defamation of character and injury to his

reputation, monetary expenses in lost wages and legal costs, personal humiliation, damage to reputation and

loss of standing in the community, and severe physical, emotional and psychological damage, resulting in

the need to seek professional counseling for the trauma which he incurred. All of these rights are secured

to Plaintiff by the provisions of the Fourth Amendment, the due process clause of the Fifth and Fourteenth

Amendments of the Constitution of the United States, as well as 42 U.S.C. §§1981 and 1983.

  141.  That by reason of the foregoing, Plaintiff has been exposed to disgrace, public humiliation

and embarrassment and has been damaged in the sum of Ten Million ($10,000,000.00) dollars, including the

cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages.

## AS FOR COUNT FOUR

### 42 U.S.C. § 1985 - CONSPIRACY

  142.  The plaintiff repeats, reiterates and realleges each and every allegation contained in

paragraphs 1 through 141 of this complaint with the same force and effect as though fully set forth

herein.

Case 2:07-cv-03624-JFB-AKT   Document 145-2   Filed 06/13/13   Page 32 of 42 PageID #:
Case 2:07-cv-03624-JFB-AKT   Document 103-1   Filed 11/07/12   Page 31 of 41 PageID #:
1268

143.    DEFENDANT OFFICERS' accusations and allegations against plaintiff were false, malicious, negligent, reckless, intentional and wrongful and were intended to cause plaintiff injury and to harass plaintiff.

144.    Defendant VARA and Defendant BUONORA expressly and impliedly, agreed with each other to bring about plaintiff's seizure, arrest, detention and false accusation, all without lawful or proper basis or justification on account of Mr. Coggins' race, color and gender.  All without consideration of plaintiff's rights and in violation of all of plaintiff's rights.

145.    Defendant VARA and Defendant BUONORA, and the   Nassau County Police Department expressly and impliedly, agreed with each other to bring about Plaintiff's loss of rights and threat of bodily harm, and expressly and impliedly agreed with each other to deny Plaintiff any rights to which he was entitled, all in furtherance of the conspiracy and all without lawful or proper basis or justification on account of his race, color and gender.  All without consideration of the damage caused to plaintiff's rights.

146.    That the false arrest, false imprisonment, excessive force, malicious prosecution and violation of the laws of the State of New York and plaintiff's civil rights were brought about and caused by the actions of defendants and that the same were a clear and intentional abuse of process causing plaintiff damages.  All of these rights are secured to plaintiff by the provisions of the Constitution of the United States and by 42 U.S.C. § 1985.

31

Case 2:07-cv-03624-JFB-AKT Document 145-2 Filed 06/13/13 Page 33 of 42 PageID #:
Case 2:07-cv-03624-JFB-AKT Document 139-1 Filed 11/07/12 Page 32 of 41 PageID #:
1269

## AND AS FOR A FIFTH COUNT

## 42 U.S.C. § 1986 - FAILURE TO INTERVENE

147.  The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1through 146 of this complaint with the same force and effect as though fully set forth herein.

148.  Defendant VARA and Defendant BUONORA, and the Nassau County Police Department knew or should have known that the detainment, false arrest, wrongful imprisonment, and malicious prosecution of Mr. Coggins violated the Plaintiff's rights, guaranteed to him under the Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983, 1985 and 1986.

149.  Each of the said Defendants had the authority, ability and concurrent duty under 42 U.S.C. § 1986 to prevent the false arrest, wrongful detainment and malicious prosecution of the Plaintiff, yet neglected to prevent said violations from occurring, and further failed to intervene to protect or aid the Plaintiff when such violations did in fact occur, all without lawful or proper basis or justification on account of Mr. Coggins' race, color and gender. All without consideration of plaintiff's rights and in violation of all of plaintiff's rights.

150.  Defendant VARA and Defendant BUONORA, and the Nassau County Police Department failure to stop these wrongful actions constitutes a breach of their duty to do so under 42 U.S.C. § 1986.

151.  Defendant VARA and Defendant BUONORA, and the Nassau County Police Department knew or should have known that the fabricated accusations against, and malicious

32

Case 2:07-cv-03624-JFB-AKT   Document 145-2   Filed 06/13/13   Page 34 of 42 PageID #:
Case 2:07-cv-03624-JFB-AKT   Document 1886-1   Filed 11/07/12   Page 33 of 41 PageID #:
1270

prosecution of Mr. Coggins were violative of his Fourth, Fifth and Fourteenth Amendment rights to due process, and were tantamount to unequal protection under the law, in violation of the Plaintiff's fundamental rights under the Constitution.

## AS AND FOR COUNT SIX
### STATE LAW FRAUDULENT MISREPRESENTATION

152.  The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 151 of this Complaint with the same force and effect as though fully set forth herein.

153.  Defendants VARA and BUONORA's accusations and allegations against Plaintiff were false, malicious, negligent, reckless, intentional and wrongful and were intended to cause Plaintiff injury and to persecute Plaintiff.

154.  Defendants, and each of them, expressly and impliedly, acted with each other to bring about Plaintiff's seizure, false arrest, and detention, all without lawful or proper basis or justification. All without consideration of Plaintiff's rights and in violation of Plaintiff's rights as stated herein.

155.  Defendants VARA and BUONORA were aware that the representations made to the Court and Jury and representations made in sworn documents were representations of fact, that on October 9, 2004, Plaintiff was involved in the alleged incident, that Plaintiff was the perpetrator and was identified as the perpetrator, Plaintiff was in possession of a criminal weapon and that same alleged weapon fell from Plaintiff as he jumped over the fence, and that Defendant Officers observed all of this leading Defendant BUONORA to stand over a weapon until Floral Park Police arrived as well as other facts listed in Paragraphs 1-40.

156.  Defendants VARA and BUONORA knew said representations were knowingly and maliciously false, and said representations were made with a reckless disregard to their veracity. These representations made by Defendants induced the trial court to rely upon same, and wrongfully convict Plaintiff of criminal charges.

33

157.    That the false representations, false arrest, false imprisonment and violation of the laws of the State of New York and Plaintiff's civil rights were brought about and caused by the actions of Defendants and that the same were a clear and intentional abuse of process causing Plaintiff damages. All of these rights are secured to Plaintiff by the provisions of the New York State Constitution.

158.    That by reason of the foregoing, Plaintiff has been placed in fear of his life, exposed to disgrace, public humiliation and embarrassment and has been damaged in the sum of Ten Million ($10,000,000.00) dollars, including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages.

## AS AND FOR COUNTSEVEN
## STATE LAW ABUSE OF PROCESS and MALICIOUS PROSECUTION

159.    The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 158 of this Complaint with the same force and effect as though fully set forth herein.

160.    Defendants maliciously caused a criminal proceeding to be commenced against Plaintiff without reasonable and probable cause.  Defendants VARA and BUONORA actively instigated and encouraged the baseless prosecution of the Plaintiff on Criminal Possession of a Weapons charges. Plaintiff was indicted based upon VARA and BUONORA's malicious and false statements before the Grand Jury and false documents. As a result of this baseless prosecution and abuse of process, Plaintiff was falsely detained, wrongfully arrested, maliciously prosecuted along with other wrongful acts conducted. The criminal proceeding was eventually terminated in favor of Plaintiff.

161.    The false detainment, wrongful arrest, malicious prosecution and other wrongful acts conducted against the Plaintiff by the Defendants, VARA, BUONORA, PICKERING AND DELARGY constituted unreasonable and excessive force by police officers and the district attorney, as well as abuse

34

Case 2:07-cv-03624-JFB-AKT Document 145-2 Filed 06/13/13 Page 36 of 42 PageID #:
Case 2:07-cv-03624-JFB-AKT Document 133-2 Filed 11/07/12 Page 35 of 41 PageID #:
1272

of process, abuse of authority, breach of police procedures, and violationsofthe Plaintiff's Fourth, Fifth,

Sixth and Fourteenth Amendment rights. The Defendants VARA, BUONORA, PICKERING AND

DELARGY negligently and recklessly breached their duty under the United States Constitution to

prevent the commission of the civil rights violations perpetrated against DARRYL T. COGGINS,

including violations of42 U.S.C. §§ 1981, 1983, and substantive and procedural dueprocess infractions.

162.    Said baseless prosecution and abuse of process was continued by the VARA and

BUONORO's refusal to adequately investigate and properly discipline the Defendants VARA,

BUONORA, PICKERING AND DELARGY for their actions against the Plaintiff DARRYL T.

COGGINS. Specifically, the COUNTY failed to investigate and verify the veracity of the Plaintiff's

claims, despite the lack of any significant hearing or consideration by the District Attorney's office for

the substantial evidencesupportingDARRYLT. COGGINS'Complaint-- such evidence including eye

witnesses, consistent testimony, and the blatant lack of any probable cause for wrongly stopping,

detaining and arresting, prosecuting and imprisoning DARRYL T. COGGINS.

163.    The continued action taken by the Defendants POLICE OFFICER VARA and

BUONORA, to prosecute, persecute and fully inconvenience the Plaintiff DARRYL T. COGGINS with

false criminal charges is an abuse of process, in that using the courts and judicial process to persecute,

intimidate, inconvenience and further damage the Plaintiff DARRYL T. COGGINS, despite no

significant evidence for prosecuting the baseless charges of Criminal Possession of a Weapon and

Resisting Arrest and a complete absence of reasonable or probable cause.

164.    As a result of said baseless prosecution and abuse of process, Plaintiff has suffered

continued emotional damage, including prolonged stress and anxiety, fear, and frustration, and has been

harmed monetarily in his incurring of attorney fees, lost business opportunities, and other expenses

incurred in the attempt to clear the Plaintiff DARRYL T. COGGINS from these false and maliciously

35

Case 2:07-cv-03624-JFB-AKT   Document 145-2   Filed 06/13/13   Page 37 of 42 PageID #:
Case 2:07-cv-03624-JFB-AKT   Document 163-1   Filed 11/07/12   Page 36 of 41 PageID #:
1273

imposed criminal charges.

165. As a result of said baseless prosecution and abuse of process, Plaintiff was subjected to a highly substantial and identifiable interference with his person, property and business based upon his arrest of October 9, 2004 and his unlawful detention up until October 11, 2004. Furthermore, Plaintiff's liberty was continuously compromised as a result of the continued baseless prosecution of this matter for an additional ten (10) months and he was subjected to significant burden and humiliation by being the subject target of an indictment submitted to the Grand Jury by the Defendants in this action.

166. As a further result of said baseless prosecution and abuse of process, Plaintiff was forced to incur legal expenses in the amount of $7,580.00 (Seven Thousand Five Hundred and Eighty Dollars) in order to defend himself against these frivolous charges, baseless prosecution and abuse of process.

167. As a further result of said baseless prosecution and abuse of process, Plaintiff was cause to lose temporary possession of his Cadillac vehicle when it was impounded as result of the false arrest, abuse of process and malicious prosecution, forcing Plaintiff to incur expenses in the amount of approximately $75.00 (Seventy-Five Dollars) in order to regain possession of vehicle.

168. As a further result of said baseless prosecution and abuse of process, Plaintiff was cause to suffer expense of over $10,000.00 (Ten Thousand Dollars) as fees associated with the posting of the Bond for Plaintiff's release from custody after being falsely arrested on October 9, 2004.

169. As a further result of said baseless prosecution and abuse of process, Plaintiff suffered a loss of wages from his employment at Keyspan amounting to approximately $1352.00 (One Thousand Three Hundred and Fifty-Two Dollars).

170. As a further result of said baseless prosecution and abuse of process, Plaintiff suffered injury to his reputation in the community and his professional reputation. Plaintiff was caused to forego employment opportunities with the Westbury Juvenile Detention Center, employment offering an annual

Case 2:07-cv-03624-JFB-AKT   Document 145-2   Filed 06/13/13   Page 38 of 42 PageID #:
Case 2:07-cv-03624-JFB-AKT   Document 133-1   Filed 11/07/12   Page 37 of 41 PageID #:
1274

salary of approximately $35,000 (Thirty Five Thousand Dollars) causing him to suffer additional economic loss.

171.    As a further result of said baseless prosecution and abuse of process, Plaintiff suffered a loss of his security guard license for approximately 10 (ten) months which prevented him from acquiring gainful employment in the security field within that period of time.

172.    As a further result of said baseless prosecution and abuse of process, Plaintiff was caused to forego employment opportunities with the Suffolk County Police Department, employment offering an annual salary of approximately $50,000.00 (Fifty Thousand Dollars) causing him to suffer additional economic loss.

173.    By reason of the foregoing, Plaintiff has been damaged in the sum of Ten Million ($10,000,000.00) dollars,  including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages.

## AS AND FOR COUNT EIGHT
## STATE LAW FALSE ARREST/FALSE IMPRISONMENT

174.    The Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 173  of this Complaint with the same force and effect as though fully set forth herein.

175.    The Defendants VARA, BUONORA, PICKERING and DELARGY lacked any probable cause to stop, hold and detain the Plaintiff DARRYL T. COGGINS in custody for any period of time, no less the prolonged period of custody at the local Police Precinct and the Nassau County Police Headquarters.

176.    Without such probable cause, Defendants VARA, BUONORA, PICKERING and DELARGY conspired to and wrongfully detained the Plaintiff DARRYL T. COGGINS in the back of

37

Case 2:07-cv-03624-JFB-AKT   Document 145-2   Filed 06/13/13   Page 39 of 42 PageID #:
Case 2:07-cv-03624-JFB-AKT   Document 133-1   Filed 11/07/12   Page 38 of 41 PageID #:
1275

a police car, at the police precinct, at the Headquarters, and at the jail, denied Plaintiff his freedom for

a period of approximately two days. During said time, Plaintiff was physically prevented from leaving

the custody of police, in that he was handcuffed and surrounded by officers in a police precinct, and kept

there under the supervision and knowledge of the Police.

177.     As a result of said false arrest and false imprisonment, Plaintiff suffered and continues

to suffer pain, great emotional and psychological harm, anxiety and personal fear, all due to the callous

indifference of said Defendants in falsely arresting and imprisoning DARRYL T. COGGINS and

requiring him to face false charges.

178.     By reason of the foregoing, Plaintiff has been damaged in the sum of Ten Million

($10,000,000.00) dollars, including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and

punitive damages.

## AS AND FOR COUNT NINE
## STATE LAW NEGLIGENCE

179.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs

1 through 178 of this Complaint with the same force and effect as though fully set forth herein.

180.     The Defendants COUNTY, VARA, BUONORA, PICKERING and DELARGY had a duty

under 42 U.S.C. §§ 1981 and 1983, as well as under the Fourth, Fifth, Sixth and Fourteenth Amendments,

and under New York State Law and their own rules and regulations, to prevent and cease the wrongful

detainment, false arrest, false imprisonment, malicious and false charging and prosecuting, as well as a duty

to hire, to train, to investigate, supervise and discipline Defendants VARA, BUONORA, PICKERING and

DELARGY and JOHN DOES "1-10" and prevent other wrongful acts that were committed against Plaintiff

DARRYL T. COGGINS.

181.     In actively inflicting and failing to prevent the above stated abuses incurred by DARRYL

T. COGGINS, all of the Defendants acted unreasonably, recklessly, and negligently in failing to exercise the

slightest amount of due care to secure and protect the civil and constitutional rights of the Plaintiff against illegal search and seizure, detained custody and arrest without Miranda warnings, and other due process violations. Said rights are guaranteed to the Plaintiff by 42 U.S.C. § 1983 and by the Fourth, Fifth, Sixth and Fourteenth Amendments of the Constitution.

182.    The breach of duty by the Defendants COUNTY, VARA, BUONORA, PICKERING and DELARGY was a direct and proximate cause of the harm suffered by Plaintiff DARRYL T. COGGINS. Said harm includes physical harm, pain and suffering which continues to this day, monetary expenses in lost wages and legal costs, personal humiliation, damage to reputation and loss of standing in the community, and severe physical, emotional and psychological damage, resulting in the need to seek professional counseling for the trauma which he incurred.

183.    By reason of the foregoing, Plaintiff has been damaged in the sum of Ten Million ($10,000,000.00) dollars, including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages.

## AS AND FOR COUNT TEN
## STATE LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

184.    The Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 183 of this Complaint with the same force and effect as though fully set forth herein.

185.    The Defendants VARA, BUONORA, PICKERINGand DELARGY acted outrageously for their above-stated roles in the wrongful stop, detainment, false arrest, malicious prosecution, prolonged imprisonment, intimidation and public humiliation of the Plaintiff, DARRYL T. COGGINS.

186.    Said emotional harm was exacerbated by the fabricated criminal charges against the Plaintiff, known by VARA, BUONORA, PICKERING and DELARGY to be without basis, yet

39

Case 2:07-cv-03624-JFB-AKT   Document 145-2   Filed 06/13/13   Page 41 of 42 PageID #:
Case 2:07-cv-03624-JFB-AKT   Document 133-1   Filed 11/07/12   Page 40 of 41 PageID #:
1277

prosecuted, and denied Plaintiff of his freedom with the intention of causing extreme further harm and duress to the Plaintiff, DARRYL T. COGGINS.

187.    The Defendants VARA, BUONORA, PICKERING and DELARGY's initiation of a baseless charge, falsified testimony, with sadistic intent and for the purpose of subjecting Plaintiff to the prosecution system is utterly intolerable in a civilized society.

188.    The Defendants knew that their conduct, along with the threat of imprisonment would cause severe and extreme emotional harm to Plaintiff.

189.    Said harm did in fact occur in this case, in that the Plaintiff was debilitated to the point where he still suffers from episodes of anxiety, anger, loss of sleep, and other factors; to the extent that the Plaintiff is in need of counseling by a psychiatrist or similar health care provider.

190.    By reason of the foregoing, Plaintiff has been damaged in the sum of Ten Million ($10,000,000.00) dollars.

**WHEREFORE,** Plaintiff demands judgment against Defendants:

(A)    As and for Count One in the sum of Ten Million ($10,000,000.00) dollars;

(B)    As and for Count Two in the sum of Ten Million ($10,000,000.00) dollars;

(C)    As and for Count Three in the sum of Ten Million ($10,000,000.00) dollars;

(D)    As and for Count Four in the sum of Ten Million ($10,000,000.00) dollars;

(E)    As and for Count Five in the sum of Ten Million ($10,000,000.00) dollars;

(F)    As and for Count Six in the sum of Ten Million ($10,000,000.00) dollars;

(G)    As and for Count Seven in the sum of Ten Million ($10,000,000.00) dollars;

(H)    As and for Count Eight in the sum of Ten Million ($10,000,000.00) dollars;

(I)    As and for Count Nine in the sum of Ten Million ($10,000,000.00) dollars;

(J)    As and for Count Ten in the sum of Ten Million ($10,000,000.00) dollars;

Case 2:07-cv-03624-JFB-AKT   Document 145-2   Filed 06/13/13   Page 42 of 42 PageID #:
Case 2:07-cv-03624-JFB-AKT   Document 183-1   Filed 11/07/12   Page 41 of 41 PageID #:
1278

(I)     Award such other and further relief as this Court may deem appropriate.

**A JURY TRIAL IS HEREBY DEMANDED**

Dated:  Hempstead, New York

November 7, 2012

LAW OFFICES OF

FREDERICK K. BREWINGTON

By: _____

VALERIE M. CARTRIGHT (VC7327)

Attorneys for Plaintiff

556 Peninsula Boulevard

Hempstead, New York 11550

(516) 489-6959

41