```
                                                            DOCKET NO.:CV-07-3624
                                                            (JFB) (AKT)
------------------------------------------------------------X
DARRYL COGGINS,

        - against -


COUNTY OF NASSAU, NASSAU
COUNTY POLICE DEPARTMENT,
POLICE OFFICER JAMES VARA AND
POLICE OFFICER CRAIG BUONORA
and JOHN DOES "1-10",

                    Defendants.
------------------------------------------------------------X
```

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION TO AMEND COMPLAINT

LAW OFFICES OF
FREDERICK K. BREWINGTON
Attorneys for Plaintiff
556 Peninsula Boulevard
Hempstead, NY 11550

COUNSEL:    FREDERICK K. BREWINGTON, ESQ.
            VALERIE M. CARTRIGHT, ESQ.

The Plaintiff, DARRYL T. COGGINS (hereinafter "COGGINS") respectfully submits the within reply memorandum of law in further support of Plaintiff's motion to amend complaint. In the first instance, Plaintiff is a bit perplexed as to the format of this motion filed by COUNTY OF NASSAU, NASSAU COUNTY POLICE DEPARTMENT, POLICE OFFICER JAMES VARA AND POLICE OFFICER (hereinafter referred to as the "County Defendants"). It was this office's understanding that Plaintiff's Third Amended Complaint, was already accepted by the Court, hence Defendant BUONORA's motion to dismiss and summary judgment. Nonetheless, Plaintiff responds to this motion and addresses each issue raised by the County Defendants.

The County Defendants are correct in stating that Plaintiff mistakenly requested to file a Second Amended Complaint as opposed to a Third Amended Complaint, in his motion. However, Complaint filed with the Court on November 7, 2012 is a Third Amended Complaint.

## POINT I

### IN DEFENDANTS' OPPOSITION PAPERS, DEFENDANTS FAILED TO ARTICULATE PREJUDICE CAUSE BY LEAVE TO AMEND

**A.  The Most Relevant Inquiry with regard to the Instant Application for Leave to Amend is Lack of Prejudice:**

Interestingly, Defendants make no claim that the instant request to amend is prejudicial in any way. Accordingly, there is no showing of undue delay or bad faith on the part of Plaintiff. This circuit clearly maintains that "[m]ere delay, absent a showing of bad faith or undue prejudice, does not provide a basis for denying a motion to amend." Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir.1993); quoting, State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir.1981) ("Although courts have recognized that prejudice tends to increase with delay, delay alone is seldom reason to deny a motion to amend."). Further, "the mere fact that discovery has concluded,

<u>does not</u> provide a reason for denying leave to amend, especially where the new claim <u>arises from the same set of operative facts as the original claims</u>." [emphasis supplied]. "<u>Cemar Tekstil Ithalat Ihracat San ve Tic. A.S. v. Joinpac, Inc.</u>, 1993 WL 126890, at *1 (SDNY 1993) (allowing amendment to add a counterclaim where discovery had already closed); <u>Purdy v. Town of Greenburgh</u>, 166 F.Supp.2d 850, 859 (SDNY 2001) (allowing plaintiff to amend complaint despite moving after discovery was closed).

Notwithstanding Defendants' passing reference, in their Preliminary Statement, to a blanket standard that "a request to replead should be denied in the event that repleading would be futile" without any application to facts, same does not amount to any form of prejudice. (See Defendant's Memorandum, page 3) In addressing the application of FRCP Rule 16 to FRCP 15, the Author's Commentary to Rule 15 states, in no uncertain terms, that "[g]enerally, leave to Amend is granted unless a weighing of several factors suggests that leave would be inappropriate." Id. "In particular, if leave to amend is denied, it will often occur because an amendment would create unfair prejudice to another party." Id. In the case at bar, as evident from Plaintiff's initial moving papers, Defendants cannot claim that they would be prejudiced by an amendment because there is no such prejudice. (See Plaintiff's memorandum dated 11/7/12, Point II(A). Moreover, although Plaintiff engages in a very detailed analysis of the aforementioned "several factors" considered by the courts (as mandated by FRCP 15 and its supporting case law), a surface review of Defendants' opposition papers show that Defendants never attempted to address, distinguish, or eliminate these several factors from Plaintiff's full analysis. (See Def. Memo). As such, a bulk of Plaintiff's analysis in support of leave to Amend remains unrequited as of the date of the instant reply.

**B.     <u>Leave To Amend Should Be Granted In The Interest Of Judicial Economy:</u>**

As stated in Plaintiff's memorandum in support, Judicial Economy would be best served should the Court grant leave to amend. Plaintiff seeks to amend the factual allegations of the Complaint based on the new law and the evidence obtained during the limited discovery, which is fully available and in possession of all Parties. Further, all relevant Parties and Non-parties have not yet been deposed in this matter and believe that all necessary documentary evidence has not fully been exchanged.

## POINT II

### PLAINTIFF'S CLAIMS ALLEGING VIOLATIONS OF 42 U.S.C. § 1985 AND 1986 CLAIMS MEET THE PLEADING REQUIREMENT

Notwithstanding Plaintiff's position, Plaintiff contends that the Section 1985 and 1986 claims were sufficiently plead. Defendant's arguments are misplaced and without merit. In that regard, pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, the plaintiff in a civil rights action, like the plaintiff in any civil case, must include in his complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." McNair v. McMickens, 115 F.R.D. 196, *198 (S.D.N.Y.1987). It is alleged that Defendant VARA expressly and impliedly, agreed with the other defendants to bring about plaintiff's seizure, arrest, detention and false accusation, all without lawful or proper basis or justification on account of Mr. COGGINS' race, color and gender. (A copy of Third Amended Complaint is annexed hereto as Exhibit "A", paragraphs 143-145). All without consideration of plaintiff's rights and in violation of all of plaintiff's rights. Defendant VARA expressly and impliedly, agreed with the other defendants to bring about Plaintiff's loss of rights and threat of bodily harm, and expressly and impliedly agreed with each other to deny Plaintiff any rights to which he was entitled, all in furtherance of the conspiracy and all without lawful or

proper basis or justification on account of his race, color and gender. Id. All without consideration of the damage caused to plaintiff's rights. That the false arrest, false imprisonment, excessive force, malicious prosecution and violation of the laws of the State of New York and plaintiff's civil rights were brought about and caused by the actions of defendants and that the same were a clear and intentional abuse of process causing plaintiff damages. All of these rights are secured to plaintiff by the provisions of the Constitution of the United States and by 42 U.S.C. § 1985. Id.

Defendant's next argument – that the defendants are all part of the same institutional defendant — is belied by the intra-entity conspiracy doctrine. See, Volk v. Coler, 845 F.2d 1422, 1434-35 (2nd Cir. 1988) (§ 1985(3) may apply to intra-entity conspiracies, even if employees acted within scope of authority); Cross v. General Motors Corp., 721 F.2d 1152, 1156 (2nd Cir. 1983) (individual defendants separate if they "acted outside the scope of their employment or for personal reasons"). Thus, to the extent that the defendant vaguely asserts that Plaintiff does not plead that BUONORA "was not acting in his official capacity at all times at issue" (Defendant's Memorandum, page 14), Plaintiff's complaint unequivocally pleads that the defendants were acting outside the scope of their lawful employment and for personal and/or unlawful / discriminatory reasons. For example:

> Each of the Defendants, separately and in concert, acted outside the scope of their jurisdiction and without authorization of law and each of the Defendants, separately and in concert acted willfully, knowingly and purposefully with the specific intent to deprive Plaintiff of his right to freedom from illegal seizure of his person, freedom from illegal detention and imprisonment; all rights that are secured to Plaintiff by the Fourth Amendment, the due process clause of the Fifth and Fourteenth Amendments of the United States Constitution, and by 42 U.S.C. §§1981 and 1983.

(Comp. Par. 129).

Absent any legal or factual deficit in the pleadings, there are no legal grounds for dismissing

Plaintiff's conspiracy claims against the individual defendants, under 42 U.S.C. §§ 1983 and 1985.

As per Plaintiff's 42 U.S.C. § 1986 claim, the legal standard is that "if [Defendants were and/or are] able to prevent the commission of a 1985(3) conspiracy between [themselves] and the other [Defendants] and failed to do so, [they] will face liability under § 1986." Wahad v. FBI, at 232. "One who knows of and has the ability to aid in preventing a § 1985 conspiracy has a duty to do so. If that person declines to take steps preventing that conspiracy he or she shall be liable to the injured party for damages which could have been prevented. Id. citing 42 USC § 1986.

In this matter, the defendants do not dispute (nor can they dispute) that Plaintiff has pleaded sufficient facts to sustain a 42 U.S.C. § 1986 failure to intervene claim. (See Comp. Par. 147-151). Rather, defendants assert that this Court should dismiss Plaintiff's § 1986 claim, for lack of a valid underlying 42 U.S.C. § 1985 claim. (Def. Mem. Of Law, pg. 7, Point III). However, as the Plaintiff has amply demonstrated a valid and properly pleaded § 1985 conspiracy (addressed supra), the defendants cannot argue any grounds upon which to dismiss Plaintiff's 42 U.S.C. § 1986 claims.

## POINT III

### DEFENDANT VARA IS NOT ENTITLED TO ABSOLUTE IMMUNITY NOR IS HE ENTITLED TO QUALIFIED IMMUNITY

#### A. ABSOLUTE IMMUNITY

Defendant VARA takes the position that he is entitled to absolute immunity based on his testimony at the Grand Jury. In the first instance, it is too early to determine exactly specifically, and with certainty, what Defendant VARA's role was in the initial arrest, detention and prosecution of Plaintiff. Due to the fact that there has been no discovery, the facts in this matter have yet to be fully developed.

6

Defendant VARA is not entitled to absolute immunity or qualified immunity in this case. However, Defendant VARA's conduct was not limited to any false testimony at the grand jury proceeding and therefore, that alone is insufficient to pierce the shield of absolute immunity. In particular, Defendant VARA cites to Rehberg v. Paulk, 132 S. Ct. 1497, 1507, 182 L. Ed. 2d 593 (2012). Plaintiff does not dispute that the recent Rehberg decision narrowly broadened the immunity rule to afford witnesses, including police officers, absolute immunity for testifying in the grand jury. Id. At 1507. However, the Rehberg decision is not entirely applicable in this case.

In Rehberg, grand jury witnesses should enjoy the same immunity as witnesses at trial; this means that a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony. Id.. However, evidence against Defendant VARA goes beyond the scope of false testimony presented at the grand jury, as Plaintiff has alleged other actions and inactions that help to form the basis for liability in this case.

Numerous courts have interpreted Rehberg to stand for the proposition that law enforcement officers are not entitled to absolute immunity where a plaintiff presents evidence in addition to grand jury testimony which establishes that the defendant engaged conduct which "laid the groundwork for a prosecution." Sankar v. City of New York, 2012 WL 2923236, at * 3 (explicitly distinguished Rehberg as inapplicable where the defendant submitted two contemporaneous incomplete police reports; failed to properly investigate the crime; failed to collect evidence; and failed to take photos of the crime scene, in addition to falsely testifying at the grand jury); Hewitt v. City of New York, 2012 WL 4503277, at * 9 (E.D.N.Y. Sept. 28, 2012) (concurring with the reasoning applied by Sankar); Frederick v. New York City, 2012 WL 4947806, at * 5 (S.D.N.Y Oct. 11, 2012) (holding that Rehberg did not "create a categorical bar to the use of grand jury testimony as evidence against

7

§1983 defendants and affirmatively establishing that grand jury testimony may be used against other §1983 defendants); Kennedy v. Finley, 2012 WL 2564796, at * 6 (D. Colo. July 2, 2012) (holding that absolute immunity did not extend to all conduct outside of the grand jury room, including the falsification of affidavits or evidence). Thus, given the recent and rapidly developing case law surrounding the issue of the evidentiary use of grand jury, it is clear that Rehberg is not a bar to Plaintiff's claims against Defendant.

Here, Plaintiff has previously alleged a vast amount of wrongful conduct beyond the Defendants' Grand Jury Testimony in the original and previously Amended Complaints. However, with limited discovery and a further evaluation of the facts and the new law, DARRYL COGGINS can in good faith allege that the misconduct of Defendants include both grand jury testimony and evidence of other conduct which far exceeds any of the aforementioned cases. It is clear that Mr. COGGINS' claim does not rest solely on the substance of the Defendant Officer's testimony in the grand jury but rather on the fact that their perjured testimony was made in a much more complex series of events in furtherance of an intent to maliciously prosecute him. (See Exhibit "A") Plaintiff alleges that the wrongful conduct preceded the Grand Jury testimony, and as it relates to Plaintiff individually, commenced on October 9, 2004 when Plaintiff was illegally and improperly pulled over while in his vehicle, improperly and illegally detained, threatened, assaulted and chased. (See Exhibit "A", paragraphs 24-37) The wrongful conduct was further magnified when Defendants began to fabricate evidence, falsify documents, withhold evidence, fail to follow proper policies and protocols, failed to intervene, engage in conspiracy and then testified falsely before the Grand Jury. (Id. At 34, 35, 37, 38, 43, 46, 47, and 51-84).

In addition to alleging that Defendant BUONORA and VARA committed misconduct before

8

the Grand Jury, Plaintiff seeks to allege the following: fabrication of falsified police reports, falsification of affidavits, falsification of memo books, falsification of complaints, fabrication of evidence (i.e. a recovered gun), failure to intervene, conspiracy to commit all of the aforementioned violations. Id. Further, Plaintiff intends to offer evidence in support of the allegations, which includes but is not limited to: the testimony of various Floral Park Police Officers which directly contradict Defendant BUONORA and Defendant VARA's testimony; radio transmissions which substantiate the Floral Park officers' testimony; evidence of the investigation commenced by the Special Investigations Bureau of the Nassau County Police Department into Defendants' false arrest and prosecution on March 17, 2005; evidence that on November 17, 2005, Defendant BUONORA appeared before a County Court judge and pled guilty to a reduced charge of Perjury in relation to his false arrest and prosecution; evidence that on December 1, 2005, Defendant BUONORA admitted to giving false testimony in the grand jury; evidence that the result of the March 2005 investigation, was that the police department determined that Defendant BUONORA engaged in conduct unbecoming of a police officer in that in or around October 9, 2004, while he was in foot pursuit of Mr. COGGINS, defendant yelled "Just Shoot Him" or words to that effect; evidence that the further results of that investigation resulted in a determination that Defendant PICKERING and Defendant DELARGY failed to respond and supervise the scene of the incident; and evidence that all of the defendant Officer's knew that Mr. COGGINS was innocent but helped support each other in fabricating evidence and effectuating his false arrest, detention, and prosecution. Id. At 28, 34, 35, 37, 38, 43, 44, 46, 47, and 51-84.

     First, it is clear that the evidence against Defendant VARA, even without the benefit of discovery at this early stage, is beyond the scope of his grand jury testimony. For example, Police

9

Officer VARA stopped Mr. COGGINS even though the plaintiff had committed no violation of the law because of his race and color. On the night of October 9, 2004, Mr. COGGINS was driving with his friends, when he saw a police car, which made a U-turn, and drove behind his car. The car's lights and sirens were activated and Mr. COGGINS was pulled over. (See Exhibit "A", par. 24). Defendant VARA never informed Mr. COGGINS what he was being stopped or arrested for. After Mr. COGGINS got out of the car, he asked Defendant VARA what he was being pulled over for. Defendant VARA refused to proffer any reason for the stop. Instead, Defendant VARA requested Mr. COGGINS' license and returned to his squad car. When Defendant VARA returned, Mr. COGGINS again asked what he was being pulled over for but once again he received no response.(See Exhibit "A., par. 25) Without making any allegations or having any basis, Defendant VARA unnecessarily subjected Mr. COGGINS to a series of tests to determine whether Plaintiff was intoxicated despite his having successfully passed every test. After returning from his squad car, Defendant VARA administered a breathalyzer test to Mr. COGGINS. Defendant VARA had him breathe into a machine which did not work the first time. Defendant VARA went back to his car with the machine, returned, and had Mr. COGGINS breathe into the machine again. Upon information and belief, Mr. COGGINS passed this test also. Defendant VARA also had him count to thirty on one foot, while touching his nose, among other things. Upon information and belief, Mr. COGGINS passed all those tests as well. During the tests, Mr. COGGINS continued to ask why he was pulled over by Police Officer VARA but again received no response. Defendant then called for backup. (See Exhibit "A, par. 26) During this stop, Defendant VARA threatened and physically assaulted Mr. COGGINS. After Defendant VARA had called for backup, Mr. COGGINS got nervous. Mr. COGGINS turned his head and asked, "you trying to lock me up for what?" and

10

questioned why other Police Officers were being called to the scene. Then, Defendant VARA hostilely exclaimed "don't turn your back on me," and physically assaulted Mr. COGGINS by grabbing him. Mr. COGGINS told Defendant VARA that he did not need to grab him. Then, Defendant VARA threatened Mr. COGGINS responding "I'll do more than that," assaulted him again and placed his hand on his gun. Mr. COGGINS feared for his life and ran. (See Compl., par. 27) Furthermore, Defendant VARA falsified official documents related to the events that transpired on October 9, 2004 and intentionally omitted the name of Defendant BUONORA despite his appearance and involvement at the scene. (See Exhibit "A, par. 34) Upon information and belief, Defendant VARA and BUONORA conspired with each other and agreed to an altered version of what transpired on October 9, 2004 and made a conscious decision to omit certain information and include false information in the Police Report and accompanying arrest paperwork. (See Exhibit "A, par. 35)

In addition, On December 7, 2005, Defendant VARA was interviewed at Internal Affairs and admitted he submitted the false report. The Nassau County Police Internal Affairs Unit recommended that Defendant VARA be served with PDCN Form 209 (Report of Violation of Rule and Regulations) for violation of departmental rules and regulations Article 5, Rule 2, Subdivision 2, Submitting a False Official Report, and Article 6, Rule 1, Subdivision C., Article 6, Rule 1, Subdivision 2, Failure to enter a full and accurate record of duties performed by him in his memorandum book. (See Exhibit "A, par. 65). DEFENDANT VARA, instigated, assisted and conspired with Defendant BUONORA to fabricate evidence, fabricate testimony and failed to intervene to prevent the malicious prosecution of Mr. COGGINS. (See Exhibit "A", par. 66) Defendant VARA provided and relied upon false documents, statements and perjured testimony.

11

On March 17, 2005, Defendant VARA testified falsely at the grand jury to numerous facts surrounding the events that took place on October 9, 2004. Despite Mr. COGGINS passing all the tests administered to determine his intoxication level, Defendant VARA, asserted and falsely testified that the plaintiff had a strong odor of alcoholic beverage on his breath, glassy, bloodshot eyes and a slurred speech. (See Exhibit "A, par. 67) On October 9, 2004, Defendant VARA created a false case report for the Nassau County Police Department. In that report he falsely reported hearing a metal object hitting the ground. Further, he falsely reported seeing a black object, which he later found to be a loaded black automatic handgun. (See Exhibit "A, par. 68) On December 7, 2005, Defendant VARA created a report for the Nassau County Police Department with inaccurate and blatantly false and fabricated facts. Defendant VARA falsely asserted in this report that he heard a metal object hit the ground. He falsely asserted in the report that he found Officer Bounora safeguarding a gun. (See Exhibit "A, par. 69)

The Plaintiff has reason to believe that once discovery is complete, there is an abundance of outside evidence showing Defendant VARA's involvement in the aforementioned complaints. The court should not dismiss the complaints prior to discovery if there is evidence that discovery was withheld from the plaintiff willfully or contumaciously. Sawh v. Bridges, 120 A.D.2d 74, 507 N.Y.S.2d 632 (1986). In the same regard, the Court should not deny Plaintiff the right to amend his complaint given the new case law and the lack of progress on discovery. Plaintiff is still awaiting to move forward with discovery by the defendants.

**B.     QUALIFIED IMMUNITY**

As to the issue of qualified immunity, Justice Dearie was clear in Sankar v. City of New York, that in a § 1983 claim alleging malicious prosecution in violation of the Fourth Amendment,

where a court finds an issue of material fact as to probable cause to prosecute, the element of malice also becomes an issue of material fact as well, precluding summary judgment. Sankar v. City of New York, 867 F. Supp. 2d 297 (E.D.N.Y. 2012) Moreover, where there is a genuine issue of material fact as to whether probable cause was so totally lacking as to reasonably permit an inference that the proceeding was maliciously instituted, the court cannot grant a defendant qualified immunity. Id.

Furthermore, Defendant VARA's conduct alone supports the contention that he is not entitled to qualified immunity. Qualified immunity does not protect those who "knowingly violate the law," Malley, 475 U.S. at 341, "the right to be free from ...prosecution in the absence of probable cause is a long established constitutional right," Ricutti v. N.Y.C. Transit Authority, 124 F.3d 123, 130 (2d Cir. 1997). One who gives false information to a prosecutor that he/she knows will induce a prosecutor to continue proceedings against a Defendant knowingly violates the law and is not entitled to qualified immunity for his/her actions. Mejia v. City of New York, 119 F. Supp .2d 232, 273 (E.D.N.Y. 2000) The extension of qualified immunity to one who knowingly violates the law would thwart the basic purpose of Section 1983 which is to protect persons from abuse of official authority. Mejia,119 F. Supp.2d at 272.

It is important to note that this Court has also previously considered the issue of qualified immunity. Judge Bianco concluded, that "in light of the particular factual circumstances of this case, that dismissing Coggins' case on immunity grounds at this juncture is inappropriate under Second Circuit law...he is not entitled to such immunity at this juncture."(See Exhibit "A", pages 13-14). Plaintiff requests that this Court rule in the same fashion on this motion.

## CONCLUSION

Given the above circumstances, we respectfully submit that allowing Plaintiff to amend the complaint in this matter would be appropriate and warranted. As the "decision whether to grant leave to amend is within the sound discretion of the Court" (Twisted Records v. Rauhofer, 2005 WL 517328, at * 6 (S.D.N.Y. 2005), Plaintiff respectfully avers that granting leave to amend the Complaint would be proper.

Dated: Hempstead, NY
July 26, 2013

Respectfully Submitted

By: VALERIE M. CARTRIGHT(VC7327)
Law Offices of Frederick K. Brewington
Attorneys for Plaintiff
556 Peninsula Boulevard
Hempstead, New York 11550
(516) 489-6959

14