EXHIBIT C



NASSAU COUNTY GRAND JURY: MINEOLA
COUNTY OF NASSAU (GRAND JURY)
------------------------------------X
In the Matter of the Investigation of
the People of the State of New York,

        -against-

DARRYL COGGINS

------------------------------------X
S I R S:

Felony#21116/04
Demand the
District Attorney
present witnesses and
submit charges against
Police Officer Vara

    PLEASE TAKE NOTICE that DARRYL COGGINS, having been held in
the instant matter by the District Court for action by the Grand
Jury upon a charge of criminal Possession of a Weapon and Driving
Under the Influence of Alcohol, hereby demands that following his
testimony pursuant to §190.50 of the Criminal Procedures Law, that
the above named Darryl is requesting that the Grand Jury be
informed and advised by the District Attorney's Office that they
are requested to consider the charges of:

- Perjury First, Second and Third Degree PL 210.15,.10 & .5
- Making an Apparently Sworn False Statement in the First and Second degree PL 210.40 & 210.35
- Making a Punishable False Written Statement PL 210.45
- Harassment
- Aggravated Harassment

against Police Officer Vara for his wrongful, false and unlawful
action taken against Darryl Coggins on or about October 9, 2004
and days thereafter in the County of Nassau, State of New York.

    PLEASE TAKE FURTHER NOTICE that the above named Darryl Coggins
demands that the following persons who were subpoenaed by the
People and appeared twice without being called, be presented to
the Grand Jury for testimony as material witnesses and that the

Grand Jury be informed that these persons were witnesses relative to the claims and allegations made about Darryl Coggins and the events of October 9, 2004. Those persons being:

- o Aaron (passenger in vehicle, whose full name is known to the People)
- o Jevon (passenger in the vehicle, whose full name is known to the People)

Dated, the 17th day of March, 2005.

Yours, etc.

THE LAW OFFICES OF
FREDERICK K. BREWINGTON
Attorneys for
Darryl Coggins
50 Clinton Street, Suite 501
Hempstead, New York 11550
(516) 489-6959

TO: Foreperson of the Grand Jury of the County of Nassau

Nassau County District Attorney, Attn. ADA Mindy Plotkin

Clerk of the Court

Felony No.:   211116/04

NASSAU COUNTY GRAND JURY: MINEOLA
COUNTY OF NASSAU, STATE OF NEW YORK
------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

                    - against -

DARRYL COGGINS,

                         Defendant.
------------------------------------------X
        THAT THE DISTRICT ATTORNEY
PRESENT WITNESSES AND SUBMIT CHARGES AGAINST
           POLICE OFFICER VARA
------------------------------------------X

                 LAW OFFICES OF
             FREDERICK K. BREWINGTON
           50 Clinton Street, Suite 501
             Hempstead, New York 11550
                 (516) 489-6959

EXHIBIT D

STATE OF NEW YORK, COUNTY OF NASSAU          5th TERM: PART 33
SUPREME COURT

PRESENT:                                     INDICTMENT # 0663N-05
    HON. ALAN L. HONOROF,
    Supreme Court Justice

---

|  |  |  |
|---|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK, : | DENIS DILLON | **LAW OFFICES OF** **FREDERICK K. BREWINGTON** |
|  : | District Attorney |  |
|  : | Nassau County | MAY 2 5 2005 |
|  : | Mineola, NY 11501 |  |
| -against-  : | By: ADA Mindy Plotkin | **RECEIVED** |
|  : |  |  |
|  : | Frederick Brewington, Esq. |  |
| DARRYL COGGINS,  : | 50 Clinton Street |  |
|  : | Hempstead, NY 11550 |  |
| Defendant.  : | Attorney for Defendant |  |
|  : |  |  |

A stipulation in lieu of motions in the captioned case was executed and approved on April 25, 2005.

Pursuant thereto, the court has inspected the grand jury minutes *in camera* and finds their release to defense counsel unnecessary to assist its determination that there are no grounds upon which to dismiss or reduce. CPL 210.30(3).

First, the evidence presented was legally sufficient to support each of the crimes charged. CPL 210.30. Further, the grand jury proceeding was not defective; proper legal advice and adequate instructions were given by the assistant district attorney. CPL 210.35(5) and 190.25(6). Finally, the indictment conforms to the requirements of CPL Article 200.

Hearings as stipulated, will be conducted on a date to be agreed upon by the attorneys for the respective parties.

Also on consent, a **Sandoval** hearing will be held on the eve of trial.

SO ORDERED.

ENTER

ALAN L. HONOROF, J.S.C.

Dated: May 13, 2005

coggins-gj

EXHIBIT E

Jul 05 05 12:07p     Floral Park P.D.          516-326-6406

## ** FLORAL PARK POLICE DEPARTMENT **

Event#: 04-04499    Recv Date: 10/09/2004 Time: 0442 How Recv: RADIO
----------------------------------------------------------------------
Loc Desc:                                    X-str: JERICHO TPKE
    Addr:              Street: HOLLAND AVE                   Post: 1
    Unit:              Town: FLORAL PARK
----------------------------------------------------------------------
      Type of Event: ASSISTANCE                    Confidential (Y/N):
Short Description: TO NCPD FOOT PURSUIT OF MALE BLACK IN REAR YARDS
----------------------------------------------------------------------
Civilian 1   Name: COGGINS,DARREL         Involvement: SUBJECT
                                  Area Code:    Phone:
Addr:           Street:                          Unit:
Town: ROOSEVELT                  State: NY   Zip:

  DOB: 01/25/81     Sex: M   Race: BLACK       Hispanic?:
----------------------------------------------------------------------
Follow-           1. Persons  :      4. Tickets :     7. Veh Impound:
  Up              2. Auto Acci:      5. Property:
Reports:          3. Med Aided:      6. Warrants:
----------------------------------------------------------------------
Dispatcher: DISP BEDELL         Suprvs/OIC: SGT WIENER

Car #     ID    Name                                Time Disp   Arrv
352       827   SEBBER,JAMES P (COMPLAINANT)
353       813   FENNESSY,MARTIN F (ASSISTING)        0442       0443
354       819   WILSON,JOHN W (ASSISTING)            0442       0444
356       905   WIENER,HOWARD S (SUPERVISOR)         0442       0444


Narrative
---------
PO reports NCPD in foot pursuit of a male black in the rear yards of
Holland Ave  / Jericho Tpk.  wearing a Cleveland Browns shirt
Subject wanted for 1192 - 2 other subjects remaining in vehicle on Jericho
Tpke 1 male and 1 female.
0443..PO reports finding a loaded 25Cal clip. SUBJECT MAY BE ARMED
0455..Subjects name is Darrel Coggins DOB of 1/25/1981
0517..K-9 on the scene
0520..PO Wilson reports finding a 9MM loaded weapon at 6 Holland Ave
      weapon is a Hi point Mdl C  serial # is ground off..
0626..3rd Pct sending RMP to safe guard weapon at 6 Holland Ave.
0855...Crime Scene at #6 Holland Ave.
0925...Crime Scene securing from #6 Holland Ave.

PO Wilson reports that while retracing the pursuit path he did find a Blac
semi automatic pistol Hi-Point Model C which appeared to be loaded. Crime
scene unit did take photos and took the weapon into evidence.
----------
Last page

PO J Wilson/ Found Gun / Assist NCPD

| Track # | Time |
|---------|----------|
| 1 | 04:44:38 |
| 2 | 04:45:08 |
| 3 | 04:45:44 |
| 4 | 04:46:21 |
| 5 | 04:46:35 |
| 6 | 04:47:11 |
| 7 | 04:48:00 |
| 8 | 04:48:11 |
| 9 | 04:48:52 |
| 10 | 04:50:11 |
| 11 | 04:53:03 |
| 12 | 04:59:11 |
| 13 | 04:59:21 |
| 14 | 04:59:35 |
| 15 | 05:00:17 |
| 16 | 05:01:27 |
| 17 | 05:01:28 |
| 18 | 05:06:02 |
| 19 | 05:21:57 |
| 20 | 05:22:37 |
| 21 | 05:24:29 |
| 22 | 05:31:58 |
| 23 | 05:52:41 |
| 24 | 05:55:54 |
| 25 | 05:56:19 |

| | |
|---|---|
| 26 | 05:56:36 |
| 27 | 05:57:45 |
| 28 | 06:06:18 |
| 29 | 06:06:28 |
| 30 | 06:18:34 |
| 31 | 06:19:45 |
| 32 | 06:20:06 |
| 33 | 06:21:42 |
| 34 | 06:22:01 |
| 35 | 06:22:15 |
| 36 | 06:22:28 |
| 37 | 06:22:50 |
| 38 | 06:23:18 |
| 39 | 06:24:56 |
| 40 | 06:25:25 |
| 41 | 06:26:33 |
| 42 | 06:28:05 |
| 43 | 07:12:25 |
| 44 | 07:12:40 |
| 45 | 07:34:59 |
| 46 | 07:35:42 |
| 47 | 07:36:33 |
| 48 | 07:42:54 |
| 49 | 09:02:25 |
| 50 | 09:26:06 |

EXHIBIT F

COUNTY COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

CERTIFICATE OF DISPOSITION
DISMISSAL

**THE PEOPLE OF THE STATE OF NEW YORK**

INDICTMENT #:   663N-2005

FELONY #:

AGAINST

Darryl T. Coggins

DEFENDANT

Date of Birth:        January 25, 1981
Date of Arrest:       October 9, 2004

I DO HEREBY CERTIFY that it appears from an examination of the records on file in this office, that on AUGUST 9, 2005, before the Honorable WILLIAM DONINNO, the above Indictment was dismissed on motion of the Assistant District Attorney. All charges are dismissed and the sealing of said indictment deferred.

The above mentioned dismissal is a termination of the criminal action in favor of the accused and pursuant to Section 160.60 of the Criminal Procedure Law "the arrest and prosecution shall be deemed a nullity and the accused shall be restored, in contemplation of law, to the status he occupied before the arrest and prosecution."

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal on this date, August 12, 2005.

Karen V. Murphy
County Clerk, Nassau County

EXHIBIT G

## DISTRICT COURT -- FELONY COMPLAINT

Citation#

Arrest# 204AR0017759

Date / Time of Arrest 10/09/2004 at 15:50

CR# 204CR0082564
Return Date 10/10/2004

Court Docket _____

DOB
01/25/1981

Age
23

Offense

265.02 (4)

CRIM
POSS WEAPON
3RD SUB 4

D
FELONY

Sector
FP

Prepared By
5356BARNY

FIRST DISTRICT

THE PEOPLE OF THE STATE OF NEW YORK AGAINST

DARRYL T COGGINS
56 WOODS AVE
ROOSEVELT NY 11575

IN THE STATE OF NEW YORK COUNTY OF NASSAU: DET ALEXANDER J BARNYCH, SHIELD# \783, BEING A MEMBER OF THE NASSAU COUNTY POLICE DEPT DEPOSES AND SAYS THAT ON OR ABOUT THE 9TH DAY OF OCTOBER, 2004, AT ABOUT 3:50 PM, AT JERICHO TURNPIKE/HOLLAND AVE FLORAL PARK, THE DEFENDANT DID VIOLATE NEW YORK STATE PENAL LAWSECTION(s) §265.02 (4) .

§ 265.02 CRIMINAL POSSESSION OF A WEAPON IN THE THIRD DEGREE. A PERSON IS GUILTY OF CRIMINAL POSSESSION OF A WEAPON IN THE THIRD DEGREE WHEN: (4) SUCH PERSON POSSESSES ANY LOADED FIREARM. SUCH POSSESSION SHALL NOT, EXCEPT AS PROVIDED IN SUBDIVISION ONE OR SEVEN, CONSTITUTE A VIOLATION OF THIS SECTION IF SUCH POSSESSION TAKES PLACE IN SUCH PERSON'S HOME OR PLACE OF BUSINESS.

TO WIT: Your deponent states that at the aforesaid time and place of occurrence the defendant, Darryl T. Coggins was in possession of a loaded and defaced Hi-Point 9mm pistol. This pistol was recovered during a foot pursuit of the defendant by P.O. Vara after the defendant was stopped for a vehicle and Traffic Law violation which P.O. Vara had observed and stopped the defendant for..

The above is based upon information and belief. The source of this information and belief was the interviews of P.O Vara regarding his observations, the interviews of the passengers of the defendant's vehicle who were present at the time of the vehicle stop, the recovery of the weapon by P.O. Vara along with the recovery of several items of identification left at the scene which identified the defendant as the perpetrator.

* ANY FALSE STATEMENT MADE HEREIN IS PUNISHABLE AS A CLASS A MISDEMEANOR, PURSUANT TO SECTION 210.45 OF THE PENAL LAW.

SUBSCRIBED BEFORE ME THIS
9TH DAY OF OCTOBER 2004.

_____
DET ALEXANDER J BARNYCH

_____
SGT MITCHELL TEPPERMAN

## DISTRICT COURT — FELONY COMPLAINT

Citation#

Arrest# 204AR0017759

Date / Time of Arrest 10/09/2004 at 15:50

CR# 204CR0082564

Return Date 10/10/2004

Court Docket

---

DOB
01/25/1981

Age
23

Offense

265.02 (3)

CRIM
POSS WEAPON
3RD SUB 3

D
FELONY

Sector
FP

Prepared By
6356BARNY

FIRST DISTRICT

THE PEOPLE OF THE STATE OF NEW YORK AGAINST

DARRYL T COGGINS
56 WOODS AVE
ROOSEVELT NY 11575

IN THE STATE OF NEW YORK COUNTY OF NASSAU: DET ALEXANDER J BARNYCH, SHIELD# \783, BEING A MEMBER OF THE NASSAU COUNTY POLICE DEPT DEPOSES AND SAYS THAT ON OR ABOUT THE 9TH DAY OF OCTOBER, 2004, AT ABOUT 3:50 PM, AT JERICHO TURNPIKE/HOLLAND AVE FLORAL PARK, THE DEFENDANT DID VIOLATE NEW YORK STATE PENAL LAWSECTION(s) §265.02 (3) .

§ 265.02 CRIMINAL POSSESSION OF A WEAPON IN THE THIRD DEGREE. A PERSON IS GUILTY OF CRIMINAL POSSESSION OF A WEAPON IN THE THIRD DEGREE WHEN:   (3) HE KNOWINGLY HAS IN HIS POSSESSION A MACHINE-GUN, FIREARM, RIFLE OR SHOTGUN WHICH HAS BEEN DEFACED FOR THE PURPOSE OF CONCEALMENT OR PREVENTION OF THE DETECTION OF A CRIME OR MISREPRESENTING THE IDENTITY OF SUCH MACHINE-GUN, FIREARM, RIFLE OR SHOTGUN.

TO WIT:   Your deponent states that at the aforesaid time and place of occurrence the defendant, Darryl T. Coggins was in possession of a loaded and defaced Hi-Point 9mm pistol. This pistol was recovered during a foot pursuit of the defendant by P.O. Vara after the defendant was stopped for a vehicle and Traffic Law violation which P.O. Vara had observed and stopped the defendant for..

The above is based upon information and belief.  The source of this information and belief was the interviews of P.O Vara regarding his observations, the interviews of the passengers of the defendant's vehicle who were present at the time of the vehicle stop, the recovery of the weapon by P.O. Vara along with the recovery of several items of identification left at the scene which identified the defendant as the perpetrator.

* ANY FALSE STATEMENT MADE HEREIN IS PUNISHABLE AS A CLASS A MISDEMEANOR, PURSUANT TO SECTION 210.45 OF THE PENAL LAW.

SUBSCRIBED BEFORE ME THIS
9TH DAY OF OCTOBER 2004.

DET ALEXANDER J BARNYCH

SGT  MITCHELL TEPPERMAN

EXHIBIT H

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

DARRYL T. COGGINS,                                                      DOCKET NO.: 2:07-cv-3624

                        Plaintiff,

            • against

COUNTY OF NASSAU, NASSAU COUNTY POLICE                   **THIRD**
DEPARTMENT, POLICE OFFICER JAMES VARA , in       **AMENDED COMPLAINT**
his individual and official capacity, and POLICE OFFICER
CRAIG BUONORA , in his individual and official capacity,
SERGEANT PICKERING, in his individual and official capacity,
LIEUTENANT DELARGY, in his individual and official capacity,
and JOHN DOES "1-10", in their individual and official capacity,

                                                    *__JURY TRIAL DEMANDED__*

                        Defendants.
-------------------------------------------------------------------X

       **PLAINTIFF, DARRYL T. COGGINS,** by and through his attorneys, THE LAW OFFICES

OF FREDERICK K. BREWINGTON, as and for his Third Amended Complaint, against the

Defendants, respectfully states and alleges, upon information and belief, as follows:

## PRELIMINARY STATEMENT

     1.     Prior hereto, Plaintiff filed an Amended Complaint on August 19, 2008. That amendment

of Complaint was done pursuant to an Order of this Court dated June 20, 2008.

     2.     Prior hereto, Plaintiff filed a Second Amended Complaint on August 26, 2011. That

second amendment of the Complaint was based on joinder of additional parties, which was done pursuant

to an Order of this Court..

     3.     This is a civil action for monetary relief, including past economic loss, compensatory

damages, punitive damages, disbursements, costs and fees brought under 42 U.S.C. §§§§1981 and 1983,

1985, 1986 grounded in rights secured by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United

States Constitution, and other New York State causes of action. This is an action against the COUNTY OF

NASSAU, NASSAU COUNTY POLICE DEPARTMENT, POLICE OFFICER JAMES VARA, in his individual and official capacity, POLICE OFFICER CRAIG BUONORA, in his individual and official capacity, SERGEANT PICKERING, in his individual and official capacity, LIEUTENANT DELARGY, in his individual and official capacity, and JOHN DOES 1-10, in their individual and official capacity, for violating the civil rights and constitutional rights of Plaintiff, DARRYL T. COGGINS by engaging in unlawful conduct including, false arrest, false and unlawful imprisonment, unjust imprisonment, conspiracy, fabrication of evidence, failure to intervene, malicious prosecution, abuse of process, failure to provide information, failure to disclose information, fraudulent misrepresentation, as well as intentional infliction of emotional distress that resulted in physical and emotional harm. All acts were committed under color of law, thus depriving Plaintiff of rights secured by the Constitution and laws of the United States and the State of New York.

4.      Plaintiff, DARRYL T. COGGINS, was falsely arrested, falsely charged, falsely jailed, falsely detained, deprived of his freedom, maliciously and falsely accused, abused, subjected to public ridicule, subjected to violence, subjected to undue pressure, subjected to unauthorized touchings, defamed and made to suffer injury to his body and mind, injury to earning capacity, without reason, legal basis or justification by the COUNTY OF NASSAU, NASSAU COUNTY POLICE DEPARTMENT, POLICE OFFICER JAMES VARA, in his individual and official capacity, POLICE OFFICER CRAIG BUONORA, in his individual and official capacity, SERGEANT PICKERING, in his individual and official capacity, LIEUTENANT DELARGY, in his individual and official capacity, and JOHN DOES 1-10, in their individual and official capacity, all who knew or should have known, or became aware that there was no merit to the arrest, jailing, imprisonment, charging, prosecution, continuation of prosecution, conviction, institution and the continuance of said actions and that pursuit of same was illegal.

5.      The initial incident of the within matter arose on or about October 9, 2004, at about 3:50

2

a.m., at Jericho Turnpike and Holland Avenue in Floral Park, New York.

6.          On or about October 9, 2004 through August 12, 2005, Plaintiff, DARRYL T. COGGINS was falsely accused, falsely charged, falsely arrested, falsely detained, falsely jailed, abusively prosecuted, denied information, denied basic rights, subjected to wrongful and negligent actions by Defendants subjected to negligent use, holding, secreting of persons and records including information about witnesses, witness statements, exculpatory documents and information. He was denied his freedom despite the clear evidence showing that he should be freed and was not afforded basic civil and constitutional protections, with the full complicity of the COUNTY OF NASSAU, NASSAU COUNTY POLICE DEPARTMENT, POLICE OFFICER JAMES VARA, in his individual and official capacity, POLICE OFFICER CRAIG BUONORA, in his individual and official capacity, SERGEANT PICKERING, in his individual and official capacity, LIEUTENANT DELARGY, in his individual and official capacity,  and JOHN DOES 1-10, in their individual and official capacity and others.

7.          Plaintiff, DARRYL T. COGGINS, sustained severe damages, physical and emotional injuries, including, but not limited to, violation of his civil rights, injury to his mental health, permanent damage to his good name and reputation, humiliation, shame, embarrassment, extreme mental and emotional harm and stress, impairment of earning power, as well as the unjustified loss of his freedom, access to personal property, good standing in the community, comfort, employment, income, career opportunities and other damages not yet fully ascertained.

## JURISDICTION

8.          This action is brought pursuant to 42 U.S.C. §§ 1981, 1983, and 1988 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.  Jurisdiction is founded upon 28 U.S.C. §§1331 and 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

3

Plaintiff further invokes the pendent jurisdiction of this Court, pursuant to 28 U.S.C.A. § 1367, to hear and decide any and all claims arising under state law.

9.      That all conditions precedent to instituting the lawsuit have been complied with in a timely manner including but not limited to the filing of a notice of claim. In response to the notice of claim, the defendants failed to settle the matter. Prior to the filing of the Second Amended Complaint, the parties have engaged in limited discovery.

10.     Venue herein is proper under 28 U.S.C § 1391 (b); the cause of action arose in the Eastern District of New York.

## PARTIES

11.     During all times relevant to this Complaint, the Plaintiff DARRYL T. COGGINS was, and still is, a citizen of the United States, residing in the County of Nassau, State of New York.

12.     The Defendant COUNTY OF NASSAU  (hereinafter "COUNTY") is a duly constituted municipal corporation of the State of New York and is and was the employer of POLICE OFFICER JAMES VARA (hereinafter referred to as "VARA") POLICE OFFICER CRAIG BUONORA (hereinafter referred to as "BUONORA"), SERGEANT PICKERING (hereinafter referred to as "PICKERING"), in his individual and official capacity, LIEUTENANT DELARGY, (hereinafter referred to as "DELARGY"), in his individual and official capacity, and certain of the unnamed police officers and Detectives, and other personnel (JOHN DOES 1-10).

13.     The Defendant NASSAU COUNTY POLICE DEPARTMENT (hereinafter "NASSAU POLICE") is an agency of the COUNTY.

14.     Upon information and belief, during all times relevant to this Complaint, Defendant VARA, was and is a citizen and resident of the State of New York; and at all times herein mentioned was a Police Officer employed by the COUNTY, under the direction of the NASSAU POLICE and

4

COUNTY and was acting in furtherance of the scope of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and usages of the State of New York and/or COUNTY, and acting in his individual and official capacity.

15.    That Defendant BUONORA was and is a citizen and resident of the State of New York; and at all times herein mentioned was a Police Officer employed by the COUNTY, under the direction of the NASSAU POLICE and COUNTY and was acting in furtherance of the scope of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and usages of the State of New York and/or COUNTY, and acting in his individual and official capacity.

16.    Upon information and belief, during all times relevant to this Complaint, Defendant VARA, was and is a citizen and resident of the State of New York; and at all times herein mentioned was a Police Officer employed by the COUNTY, under the direction of the NASSAU POLICE and COUNTY and was acting in furtherance of the scope of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and usages of the State of New York and/or COUNTY, and acting in his individual and official capacity.

17.    Upon information and belief, during all times relevant to this Complaint, Defendant PICKERING, was and is a citizen and resident of the State of New York; and at all times herein mentioned was a Police Officer employed by the COUNTY, under the direction of the NASSAU POLICE and COUNTY and was acting in furtherance of the scope of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and usages of the State of New York and/or COUNTY, and acting in his individual and official capacity.

18.    Upon information and belief, during all times relevant to this Complaint, Defendant DELARGY, was and is a citizen and resident of the State of New York; and at all times herein mentioned was a Police Officer employed by the COUNTY, under the direction of the NASSAU

5

POLICE and COUNTY and was acting in furtherance of the scope of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and usages of the State of New York and/or COUNTY, and acting in his individual and official capacity.

19.     That "JOHN DOES" 1-10 were at all times herein mentioned police officers and/or detectives, in their individual and official capacities, employed by both COUNTY and NASSAU POLICE under the direction of Defendant's COUNTY AND NASSAU POLICE, and were acting in furtherance of the scope of their employment, acting under color of law, to wit under color of statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the COUNTY and/or NASSAU POLICE.

20.     During all times relevant to this Complaint, the Defendants, and each of them, were acting under color of law, to wit, under color of constitution, statutes, ordinances, laws, rules, regulations, policies, customs and usages of the State of New York and/or the COUNTY.

21.     During all times relevant to this Complaint, the Defendants, separately and in concert, engaged in acts or omissions which constituted deprivation of the constitutional rights, privileges and immunities of the Plaintiff, and while these acts were carried out under color of law, they had no justification or excuse in law and were instead gratuitous, illegal, improper and unrelated to any activity in which law enforcement officers may appropriately and legally engage in the course of protecting persons and property or ensuring civil order.

22.     During all times relevant to this Complaint, the Defendants, and each of them, had the power and the duty to restrain the other Defendants and prevent them from violating the law and the rights of the Plaintiff, but each of the Defendants failed and refused to restrain the other Defendants and thereby became a party to unlawfully subjecting the Plaintiff to harm and denial of basic rights.

6

## FACTUAL ALLEGATIONS

23.     Plaintiff, DARRYL T. COGGINS, reiterates and realleges each and every allegation contained in paragraphs 1 through 22 of this Complaint with the same force and effect as though set forth herein.

24.     Police Officer VARA stopped Mr. Coggins even though the plaintiff had committed no violation of the law because of his race and color. On the night of October 9, 2004, Mr. Coggins was driving with his friends, when he saw a police car, which made a U-turn, and drove behind his car. The car's lights and sirens were activated and Mr. Coggins was pulled over.

25.     Defendant VARA never informed Mr. Coggins what he was being stopped or arrested for. After Mr. Coggins got out of the car, he asked Defendant VARA what he was being pulled over for. Defendant VARA refused to proffer any reason for the stop.  Instead, Defendant VARA requested Mr. Coggins' license and returned to his squad car. When Defendant VARA returned, Mr. Coggins again asked what he was being pulled over for but once again he received no response.

26.     Without making any allegations or having any basis, Defendant VARA unnecessarily subjected Mr. Coggins to a series of tests to determine whether Plaintiff was intoxicated despite his having successfully passed every test.  After returning from his squad car, Defendant VARA administered a breathalyzer test to Mr. Coggins. Defendant VARA had him breathe into a machine which did not work the first time. Defendant VARA went back to his car with the machine, returned, and had Mr. Coggins breathe into the machine again. Upon information and belief, Mr. Coggins passed this test also. Defendant VARA also had him count to thirty on one foot, while touching his nose, among other things.  Upon information and belief, Mr. Coggins passed all those tests as well. During the tests, Mr. Coggins continued to ask why he was pulled over by Police Officer VARA but again received no response.  Defendant then called for

7

backup.

27.     During this stop, Defendant VARA threatened and physically assaulted Mr. Coggins. After Defendant VARA had called for backup, Mr. Coggins got nervous.  Mr. Coggins turned his head and asked, "you trying to lock me up for what?" and questioned why other Police Officers were being called to the scene. Then, Defendant VARA hostilely exclaimed "don't turn your back on me," and physically assaulted Mr. Coggins by grabbing him.  Mr. Coggins told Defendant VARA that he did not need to grab him.  Then, Defendant VARA threatened Mr. Coggins responding "I'll do more than that,"  assaulted him again and placed his hand on his gun.  Mr. Coggins feared for his life and ran.

28.     As Mr. Coggins was running away, he saw another police officer arrive on the scene, who Plaintiff believes to be Defendant BUONORA   He heard the Officer, who Plaintiff believes to be Officer BUONORA,  yell "Shoot him in the back, shoot him in the back."  Mr. Coggins, who had a two year old daughter, then feared for his life even more.  But, when heard "Shoot him in the back," he knew there was no way he could stop running.  Mr. Coggins ran down Jericho Turnpike and jumped over a fence.  Then, Mr. Coggins saw a cab, hailed the cab and obtained a ride home.

29.     Notwithstanding the numerous versions of the story told by various Defendants, some of which are blatantly inconsistent, BUONORA clearly made statements that he engaged in the chase of Plaintiff COGGINS in an effort to arrest him.  This chase of Plaintiff was commenced by Defendant VARA in an attempt to arrest Plaintiff.

30.     BUONORA goes on to further state that after choosing to retreat from chasing Plaintiff as VARA was closer to Plaintiff, he went and secured the passengers of Plaintiff's car with handcuffs, a detention that Plaintiff alleges to be unlawful and without basis.

8

31.     Mr. Coggins, surrendered himself after speaking with his family and was arrested and falsely charged under Docket No.: 2004NA021116, with violating Penal Law § 265.02(3), Criminal Possession of a Weapon in the Third Degree, a Class D Felony. A Conviction under Penal law §§ 265.02(3) and/or 265.02(4) carries with it a potential penalty of law, two (2) years to seven (7) years incarceration. Mr. Coggins' bail was set at $10,0000.00 Cash and $25,000.00 Bond. On October 11, 2004, bail was posted on behalf of Mr. Coggins. Accordingly, despite Mr. Coggins' innocence, he remained in jail for a period of two (2) days. Mr. Coggins' freedom was limited as he was required to appear in court for months following his false arrest.

32.     Upon information and belief, in processing the paperwork, Defendants VARA, BUONORA, DELARGY and PICKERING, failed to file the proper paperwork pursuant to the policies and procedures of the NASSAU COUNTY POLICE DEPARTMENT and withheld relevant evidence related to Plaintiff COGGINS.

33.     Upon information and belief, Defendant BUONORA failed to complete an incident report or any other paperwork connected with the detention, chase and arrest of Plaintiff despite the fact that he was identified by Defendant VARA as the "Assisting Officer" and was actively involved in the foot pursuit of and attempted arrest of Plaintiff.

34.     Furthermore, Defendant VARA falsified official documents related to the events that transpired on October 9, 2004 and intentionally omitted the name of Defendant BUONORA despite his appearance and involvement at the scene.

35.     Upon information and belief, Defendant VARA and BUONORA conspired with each other and agreed to an altered version of what transpired on October 9, 2004 and made a conscious decision to omit

9

certain information and include false information in the Police Report and accompanying arrest paperwork.

36.     Upon information and belief, Defendants VARA and BUONORA have previously been found to be in violation of the NASSAU COUNTY POLICE DEPARTMENT policies and procedures insofar as they failed to document an incident and complete paperwork properly.

37.     Upon information and belief, Officers at the NASSAU COUNTY POLICE DEPARTMENT have been engaging in improper practices and procedures for years, which includes but is not limited to the practice of falsifying documents, omitting information and failing to properly document incidents, particularly in situations where blacks and/or black males are involved.

38.     On March 17, 2005, Mr. Coggins' case was presented to the Grand Jury by the Nassau County District Attorney's Office ("District Attorney").  Prior to the District Attorney presenting the criminal matter to the Grand Jury, Counsel for Plaintiff requested, by way of formal demand, that the District Attorney requested the Grand Jury to consider the charges of perjury against the defendant officers, making an apparently sworn false statement, making a punishable false written statement, harassment and aggravated harassment, and requesting that certain eyewitnesses be presented before the Grand Jury on behalf of the plaintiff. Despite Counsel's written formal demand, the District Attorney failed to comply with Plaintiff's request and the Grand Jury rendered a True Bill, voting to indict Mr. Coggins on violating Penal Law § 265.02(3), Criminal Possession of a Weapon in the Third Degree, Penal Law § 265.02(4), Criminal Possession of a Weapon in the Third Degree, and Penal Law § 205.30, Resisting Arrest; under Indictment No. 663N-2005.

39.     During the preparation for the Grand Jury presentation, it was discovered that a Floral Park Police Officer had a version of the story that was different from that of Defendant Officers.  It was discovered that on October 9, 2004, a report was created for the Floral Park Police Department that stated

10

that, a Floral Park Officer, and not the Defendant Officers, is attributed with finding a black semi automatic pistol.

      40.      In July 2005, ten months after the initial arrest and after numerous court appearances while preparing for a Mapp/Huntley hearing, a Floral Park Officer informed counsel that the story Defendant VARA and BUONORA were telling was inaccurate. The Floral Park Officer informed counsel that he was the Officer who initially found a gun approximately forty minutes after the foot pursuit began. He further indicated that radio transmission of October 9, 2004 would substantiate his claim. The case was then referred to the Special Investigations Division of the Office of the District Attorney for further investigation.

      41.      On or about March 17, 2005, the Special Investigations Bureau of the Nassau County Police Department commenced an investigation, under Tracking No. 410-2005 into the arrest, detention and prosecution of Mr. Coggins, which is the subject matter of this federal complaint.

      42.      Eventually, the charges against Mr. Coggins were dismissed on a motion by the District Attorney. Throughout all of these proceedings, Plaintiff never wavered in declaring his innocence and made that fact unequivocally known to Defendants. Plaintiff never signed any statement that can be construed as an admission of guilt. Plaintiff has maintained throughout these proceedings that Defendant's VARA and BUONORA were lying and had fabricated evidence against him.

      43.      As a result of the investigation conducted by the Police Department, it was determined Defendant BUONORA engaged in unlawful conduct in that on March 17, 2005, he appeared before the Nassau County Grand Jury in his capacity as a Police Officer and did give false testimony.

      44.      As a result of the investigation, it was determined that Defendant BUONORA engaged in conduct unbecoming of a Police Officer in that in or around October 9, 2004, while he was in foot

11

pursuit of Plaintiff, Defendant Officer yelled "Just shoot him" or words to that effect.

45. On November 17, 2005, Defendant BUONORA appeared before Judge Jeffrey Brown County Court Judge and pled guilty to a reduced charge of New York Penal Law 210.05, Perjury in the Third Degree, a Class A Misdemeanor.

46. The Nassau County Police Internal Affairs Unit recommended that Defendant BUONORA be served with PDCN Form 209 (Report of Violation of Rule and Regulations) for violation of departmental rules and regulations Article 5, Rule 2, Subdivision 1 Unlawful Conduct, Article 5, Rule 2, Subdivision 2, Submitting a False Official Communication, and Article 5, Rule 1, Subdivision 2, Conduct Unbecoming of a Police Officer.

47. On December 1, 2005, Defendant BUONORA falsely reported to Detective Bruce Duryee that he and Defendant VARA went into foot pursuit of Mr. Coggins. Defendant Buornora denied yelling "shoot him" or words to that effect.

48. Defendant BUONORA reported that during foot chase, he stopped and returned to vehicle. Whereupon, he alleges that, he and a Floral Park Police Officer, ordered other subjects out of the vehicle and handcuffed them. Facts contained in this report directly contradicts other testimony given by Defendant BUONORA. Further, Defendant BUONORA failed to create any reports regarding the arrest.

49. Despite asserting that he recovered a weapon, Defendant BUONORA later admits in a report that everyone received radio notification that a weapon was found by a Floral Park Officer.

50. Directly contradicting Defendant VARA's version of events, Defendant BUONORA admitted that he never safeguarded a weapon nor ever went to a weapon was recovered or spoke to any

12

supervisor from Nassau County or Floral Park about his version of the incident.

51.     Despite his version of the incident changing several times, Defendant BUONORA alleges that he never spoke with anyone about the incident until he met with the District Attorney's Office. Upon information and belief, there were approximately three (3) meetings with the District Attorney's Office wherein he falsely represented to the Assistant District Attorney that he had found a weapon.

52.     Upon information and belief, from the time of the arrest of Plaintiff COGGINS through the times that he met with the District Attorney's office up until the time that he testified before the Grand Jury, Defendant BUONORA was aware of the fact that the documents that had been prepared related to the detention, arrest and prosecution of Plaintiff contained false information, omitted important and relevant information. Despite this knowledge, Defendant BUONORA did not refute this evidence in any reports, statements to his supervisors or before the Grand Jury.

53.     On March 17, 2005, Defendants BUONORA and VARA intentionally and maliciously testified falsely before the Grand Jury related to the arrest, detention and prosecution of Plaintiff COGGINS.

54.     During an investigation of Defendant BUONORA's misconduct, he was asked why he falsely testified about a gun, to which he responded "I thought I was helping the District Attorney with her case."

55.     During the malicious prosecution of Mr. Coggins, Defendant BUONORA was aware that Defendant VARA indicated in his reports and in his Grand Jury testimony that he stayed with the evidence in the form of a fabricated gun during and after the foot chase of the defendant. Despite this knowledge, Defendant BUONORA did not refute this evidence in any reports, statements to his supervisors or before the Grand Jury.

13

56.     Defendant BUONORA knew that a gun recovered by the Floral Park Officers was submitted to the Forensic Evidence Bureau under false pretenses but never informed his supervisors about this information.

57.     During the prosecution of Mr. Coggins, Defendant BUONORA provided and relied upon false documents, statements and perjured testimony. Defendant BUONORA assisted in and conspired with Defendant VARA to arrest Plaintiff COGGINS, to fabricate evidence and failed to intervene to prevent the malicious prosecution of Mr. Coggins.

58.     On September 16, 2005, Defendant BUONORA signed a Notification of Suspension for the Nassau County Police Department. In that Notification, Defendant BUONORA admitted to violating the Penal Law 210.15, Perjury in the First Degree and giving false testimony in the Grand Jury.

59.     On December 1, 2005, Defendant BUONORA created a report for the Nassau County Police Department containing inaccurate and blatantly false and fabricated facts. Directly contradicting Defendant's VARA version of events, Defendant BUONORA reported that he returned to the subject's vehicle and handcuffed the remaining occupants. Defendant BUONORA falsely reported that he did not make any statement about shooting Mr. Coggins. Defendant BUONORA admitted that he never found nor secured a gun.

60.     Defendant BUONORA falsely testified at the grand jury that he heard a metal object hitting the ground. Defendant BUONORA falsely testified that he looked at the object that fell and found it to be a gun. Defendant falsely testified that he stayed with a gun until a Floral Park Police Officer relieved him.

61.     Despite having allegedly helped in the foot pursuit of Mr. Coggins and the arrest of the other persons in the plaintiff's car, Defendant BUONORA asserts in his interrogatory that he

14

prepared no reports, records, documents or other tangible objects that describe or record his involvement on October 9, 2004.

62.     Despite preparing reports indicating that he, with a Floral Park Officer, arrested the other persons in the plaintiff's car, Defendant BUONORA asserts in his interrogatory that he has no independent knowledge of any witnesses of the factors and circumstances surrounding the plaintiff's arrest.

63.     As a result of the investigation conducted by the Police Department, it was determined that Defendant VARA submitted a false official report in that on October 26, 2004 he submitted a PDCN (Standard Departmental Recognition) reporting that he was in foot pursuit, heard a metal noise, observed a black object on the ground and safeguarded a weapon and broadcasted a radio description of the defendant.

64.     As a result of the investigation, it was determined that Defendant VARA failed to properly document his alleged observations and activities in his Memorandum Book and failed to record three failed attempts to administer the portable breath test on Plaintiff on October 9, 2004.

65.     On December 7, 2005, Defendant VARA was interviewed at Internal Affairs and admitted he submitted the false report. The Nassau County Police Internal Affairs Unit recommended that Defendant VARA be served with PDCN Form 209 (Report of Violation of Rule and Regulations) for violation of departmental rules and regulations Article 5, Rule 2, Subdivision 2, Submitting a False Official Report, and Article 6, Rule 1, Subdivision C., Article 6, Rule 1, Subdivision 2, Failure to enter a full and accurate record of duties performed by him in his memorandum book.

66.     DEFENDANT VARA, instigated, assisted and conspired with Defendant BUONORA to fabricate evidence, fabricate testimony and failed to intervene to prevent the malicious prosecution of Mr. Coggins.

15

67.    Defendant VARA provided and relied upon false documents, statements and perjured testimony. On March 17, 2005, Defendant VARA testified falsely at the grand jury to numerous facts surrounding the events that took place on October 9, 2004. Despite Mr. Coggins passing all the tests administered to determine his intoxication level, Defendant VARA, asserted and falsely testified that the plaintiff had a strong odor of alcoholic beverage on his breath, glassy, bloodshot eyes and a slurred speech.

68.    On October 9, 2004, Defendant VARA created a false case report for the Nassau County Police Department. In that report he falsely reported hearing a metal object hitting the ground. Further, he falsely reported seeing a black object, which he later found to be a loaded black automatic handgun.

69.    On December 7, 2005, Defendant VARA created a report for the Nassau County Police Department with inaccurate and blatantly false and fabricated facts. Defendant VARA falsely asserted in this report that he heard a metal object hit the ground. He falsely asserted in the report that he found Officer Bounora safeguarding a gun.

70.    Defendant VARA falsely testified at the grand jury that Mr. Coggins was staggering as he exited and walked away from the vehicle. Defendant VARA falsely testified that he saw the defendant holding both of his hands to the left side of his leg as he fled.

71.    Defendant VARA falsely testified at the grand jury that he heard a metal noise hitting the concrete. Defendant VARA falsely testified that he saw an metal object laying on a driveway. Defendant VARA falsely testified that Defendant BUONORA was with the fabricated evidence in the form of a gun when he returned from his chase of the defendant.

72.    Defendant VARA reported to the Internal Affairs Unit that it was Defendant BUONORA who yelled in sum and substance "just shoot him." Directly contradicting Defendant BUONORA versions of events (BUONORA asserted that he arrested the occupants in the subject's vehicle),

16

Defendant VARA reported that he did not jump over the fence but returned to the subject's vehicle. Defendant VARA reported that he instructed the two occupants to remain in the vehicle and took the keys out of the car.

73.     Defendant VARA reported that he then went to look for Mr. Coggins and saw the Floral Park Police Officer. He admitted that he did not tell that officer about a gun nor did he ask him to secure it. Defendant VARA further admitted that, in his broadcast notification, he did not report finding a metal object nor did he request assistance in recovering it.

74.     Defendant VARA admitted that he was aware that the notification said Floral Park Police found a gun. Defendant VARA also admitted that at no point did he safeguard a weapon.

75.     Defendant VARA admitted to the District Attorney that he had not prepared any paperwork, or made any entries in his memo book with regard to the breathalyzer tests.

76.     Defendant VARA falsely reported to Detective  that he heard a metal object hit the ground during his foot pursuit of Mr. Coggins.  He also falsely reported to the detective that he looked in the direction of the sound and saw a dark object on the ground.

77.     On October 9, 2004, Detective BUONORA prepared a report documenting his interactions with Defendant VARA as they relate to this case. Defendant VARA reported to Detective Barnych that he was involved in the foot pursuit of Mr. Coggins.  Defendant VARA falsely reported to Detective Barnych that he observed a handgun fall from the defendant.

78.     Defendant VARA never informed Detective Barnych that a Floral Park Police Officer actually recovered a weapon. Nor did he inform the detective of any radio transmissions by the Floral Park Police Department or Nassau reporting that the Floral Park officer found a weapon.  Detective Barnych did not document Defendant VARA mentioning Defendant BUONORA at all during his

17

recollection of the incident.

79.    Defendant VARA reported to Detective Occhino that he was involved in the foot pursuit of Mr. Coggins. Defendant VARA falsely reported to Detective Occhino that he observed a handgun fall from the defendant. Defendant VARA never informed Detective Occhino that a Floral Park Police Officer actually recovered a weapon. Nor did he inform the detective of any radio transmissions by the Floral Park Police Department or Nassau reporting that the Floral Park officer found a weapon.

80.    In a redacted Internal Correspondence memo from the Nassau County Police Department, a Sergeant at the 3rd Precinct reported his findings when he arrived at the scene several hours after the incident. The Unknown Sergeant spoke with Defendant VARA and reported that Defendant VARA first said he found a gun and said we found a gun.

81.    Defendant VARA has engaged in a pattern and practice of unlawful misconduct. On 12/30/2001, Defendant VARA received a complaint from a woman who stated that defendant stopped her for no reason and issued her two unfounded summons.

82.    On October 28, 2002, a complaint regarding the improper use of tactics or procedure was filed against Defendant VARA and Defendant BUONORA. The Police Department subsequently found this complaint founded and indicated that the defendants were retrained in the proper completion of their memo books. (Police Department, County of Nassau, New York Supplemental Complaint Tracking Form, Tracking Number 102-02)

83.    As a result of the Investigation conducted by the Police Department, it was determined that DEFENDANT PICKERING failed to respond to the scene at Holland Avenue and Jericho Turnpike as directed by the Desk Officer through the Communications Bureau.

84.    As a result of Defendant Pickering's conduct, he failed to supervise the scene of the incident and failed to prevent Defendants VARA and BUONORA from falsely stopping, assaulting, violating

18

rights and fabricating evidence against Mr. Coggins.

85.     As a result of the Investigation conducted by the Police Department, it was determined that DEFENDANT DELARGY failed to respond to the scene at Holland Avenue and Jericho Turnpike as directed by the Desk Officer through the Communications Bureau.

86.     It was also determined that Defendant Delargy failed to produce his memorandum book for October 8 and 9, 2004.

87.     As a result of his conduct, he failed to supervise the scene of the incident and failed to prevent Defendants VARA and BUONORA from falsely stopping, assaulting, and fabricating evidence against Mr. Coggins.

88.     Upon information and belief, the Defendants County, Nassau Police, VARA, BUONORA, PICKERING, and DELARGY conspired to deprive Plaintiff of his due process rights; specifically by attempting to prolong Mr. Coggins unlawful detainment without probable cause, investigation, and rule of law. The defendants conspired to deny Mr. Coggins his Fifth Amendment rights by attempting to cover up the aforementioned incidents of misconduct.

89.     Defendants prolonged Mr. Coggins captivity by fabricating evidence, making false reports, engaging in misconduct, failing to adhere to procedures, rules and regulations, and wholly failing to investigate the incident and Mr. Coggins pleas that he was innocent. Defendants possessed but withheld information which would have exonerated Mr. Coggins.

90.     Defendants individually and collectively knew at the time of Mr. Coggins' arrest, and at all times since then, that the evidence they had in connection with the charges brought against the plaintiff were false, inconsistent with and insufficient to establish his guilt with respect to all of the charged crimes.

19

91.     Defendants Nassau and Nassau Police permitted and tolerated the egregious improper conduct by issuing official claims that the harassment was justified, failing to seriously discipline or prosecute the Defendant Officers. As a result of this conduct, Defendant Police Officers were caused to and encouraged to believe that individuals could be falsely arrested, prosecuted and imprisoned under circumstances requiring the use of falsified evidence and testimony.

92.     Despite Mr. Coggins' innocence, he remained in jail for a period of two days. Plaintiff has suffered loss of freedom and damage to his good name and will continue to suffer from psychological harm, humiliation, fear, injury to his character, and injury to his reputation.

93.     As a result of the Defendant's conduct, plaintiff has been subjected to unnecessary and unsubstantiated charges, detention, court appearances, loss of career choices and other due process violations. Plaintiff has suffered severe humiliation, anxiety, fear, and emotional and psychological harm, as a direct result of being publicly detained, jailed for two days, manhandled, handcuffed, stripped and cavity searched.

94.     As a direct result of the Defendants' conduct, Plaintiff has suffered and continues to suffer loss of income, loss of other employment benefits, loss of career opportunities, and has suffered and continues to suffer repeated, severe and permanent psychological, emotional and physical trauma.  Mr. Coggins has suffered great financial expenses in relation to his false arrest and prosecution.

## AS AND FOR COUNT ONE
### 42 U.S.C §1981

95.     The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 94 of this Complaint with the same force and effect as though fully set forth herein.

96.     The Defendants COUNTY, its agents and employees, the NASSAU POLICE, in its agents

20

and employees, POLICE OFFICER JAMES VARA, in his individual and official capacity, POLICE OFFICER CRAIG BUONORA, SERGEANT PICKERING, in his individual and official capacity, LIEUTENANT DELARGY, in his individual and official capacity, and JOHN DOES 1-10, in their individual and official capacity, in their individual and official capacity deprived Plaintiff of his Fourth, Fifth, Sixth and Fourteenth Amendment rights, and caused such deprivation of rights by unlawfully stopping, falsely detaining, unlawfully accusing, wrongfully arresting and falsely imprisoning the Plaintiff for two days as described above in paragraphs 1 through 83 of this Complaint. Said acts were motivated by race and color, and were marked by the conduct of Defendants to support the

motivation.

97.    Upon information and belief, the Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY, further deprived the plaintiff of his due process rights; specifically by attempting to prolong the Defendant's unlawful detainment without probable cause, investigation, rule of law and by further denying the plaintiff his Fifth Amendment rights via an attempt to cover up the misconduct of said officers and officials and to prevent plaintiff from being compensated for his wrongful arrest, detainment, and other physical and emotional harm incurred.

98.    In furtherance of said conduct, the Defendant officers prolonged the plaintiff's captivity by failing to investigate plaintiff's protests that he was not the alleged perpetrator and by conspiring to set bail at an unreasonable amount.

99.    Said actions by Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY denied the plaintiff his Due Process, and denied him the equal protection under the law. All of these rights are guaranteed to the plaintiff under U.S.C. §§1981. Said acts were motivated by race and color, and were marked by the conduct of Defendants to support the motivation.

100.    By assisting in the prolonged detainment and false charging of the Plaintiff,COUNTY,

21

NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY acted with the shared purpose of denying plaintiff his rights to freedom of movement, protection from unlawful seizure, procedural and substantive due process, and the right to equal protection under the laws. These rights are guaranteed to the plaintiff under 42 U.S.C. §1981.

101.    As a result of said conduct by the Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY, the plaintiff has been subjected to unnecessary and unsubstantiated charges, detention, court appearances, and other due process violations.

102.    Plaintiff further suffered severe humiliation, anxiety, fear, and emotional and psychological harm, as a direct result of being publicly detained, jailed for two days, manhandled, handcuffed, stripped and cavity searched.

103.    As a direct result of said acts, Plaintiff has suffered and continues to suffer loss of income, loss of other employment benefits, loss of career opportunities,  and has suffered and continues to suffer repeated, severe and permanent psychological, emotional and physical trauma and damage, including distress, humiliation, embarrassment, great financial expense and damage to his reputation, and the emotional and psychological trauma as alleged in the preceding paragraphs of the within complaint.

104.    As a result of the Defendants unlawful acts, the Plaintiff has been exposed to disgrace, public humiliation and embarrassment and has been damaged in the sum of Ten Million ($10,000,000.00) dollars, including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages.

## AS AND FOR COUNT TWO
### 42 U.S.C §1983 - FOURTH, FIFTH, SIXTH and FOURTEENTH AMENDMENTS

105.    The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 104 of this Complaint with the same force and effect as though fully set forth herein.

106.    Plaintiff alleges numerous constitutional violations under Section 1983 which include,

22

but is not limited to: fabrication of evidence, falsification of documents and arrest paperwork, falsification of official records, withholding of evidence, failure to follow proper policies and protocols, failure to intervene, falsely testifying before the Grand Jury, conspiracy as it relates to the above and conspiracy as it relates to the false arrest, false imprisonment, abuse of process and malicious prosecution of Plaintiff, all of which support Plaintiff's claims for constitutional violations.

107.    Plaintiff alleges that Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY fabricated evidence as it relates to the incident involving Plaintiff on October 9, 2004 which constituted violations of his constitutional rights under Fourth, Fifth, Sixth and Fourteenth Amendments. Plaintiff alleges that this conduct was intentional and malicious and based on race, color and gender.

108.    Plaintiff alleges that Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY falsified documents and arrest paperwork as it relates to the incident involving Plaintiff on October 9, 2004 which constituted violations of his constitutional rights under Fourth, Fifth, Sixth and Fourteenth Amendments. Plaintiff alleges that this conduct was intentional and malicious and based on race, color and gender.

109.    Plaintiff alleges that Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY falsified official records as it relates to the incident involving Plaintiff on October 9, 2004 which constituted violations of his constitutional rights under Fourth, Fifth, Sixth and Fourteenth Amendments. Plaintiff alleges that this conduct was intentional and malicious and based on race, color and gender.

110.    Plaintiff alleges that Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY fabricated evidence as it relates to the incident involving Plaintiff on

23

October 9, 2004 which constituted violations of his constitutional rights under Fourth, Fifth, Sixth and Fourteenth Amendments. Plaintiff alleges that this conduct was intentional and malicious and based on race, color and gender.

111. Plaintiff alleges that Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY withheld evidence as it relates to the incident involving Plaintiff on October 9, 2004 which constituted violations of his constitutional rights under Fourth, Fifth, Sixth and Fourteenth Amendments. Plaintiff alleges that this conduct was intentional and malicious and based on race, color and gender.

112. Plaintiff alleges that Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY failure to follow proper policies and protocols as it relates to the incident involving Plaintiff on October 9, 2004 which constituted violations of his constitutional rights under Fourth, Fifth, Sixth and Fourteenth Amendments. Plaintiff alleges that this conduct was intentional and malicious and based on race, color and gender.

113. Plaintiff alleges that Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY failed to intervene as it relates to the incident involving Plaintiff on October 9, 2004 which constituted violations of his constitutional rights under Fourth, Fifth, Sixth and Fourteenth Amendments. Plaintiff alleges that this conduct was intentional and malicious and based on race, color and gender.

114. Plaintiff alleges that Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY falsely testified before the Grand Jury, as it relates to the incident involving Plaintiff on October 9, 2004 which constituted violations of his constitutional rights under Fourth, Fifth, Sixth and Fourteenth Amendments. Plaintiff alleges that this conduct was intentional and malicious and based on race, color and gender.

24

115.     Plaintiff alleges that Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY conspired as to the fabrication of evidence, falsification of documents and arrest paperwork, falsification of official records, withholding of evidence, failure to follow proper policies and protocols, failure to intervene, falsely testifying before the Grand Jury, as it relates to the incident involving Plaintiff on October 9, 2004 which constituted violations of his constitutional rights under Fourth, Fifth, Sixth and Fourteenth Amendments. Plaintiff alleges that this conduct was intentional and malicious and based on race, color and gender.

116.     Plaintiff alleges that Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY conspired as to the false arrest, false imprisonment, abuse of process, and malicious prosecution of Plaintiff as it relates to the incident involving Plaintiff on October 9, 2004 which constituted violations of his constitutional rights under Fourth, Fifth, Sixth and Fourteenth Amendments. Plaintiff alleges that this conduct was intentional and malicious and based on race, color and gender.

117.     On or about October 9, 2004, Plaintiff, DARRYL T. COGGINS, was falsely arrested, falsely seized and falsely detained, deprived of his freedom, unlawfully imprisoned and maliciously prosecuted by Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY, in violation of the civil and constitutional rights afforded to him via the Fourth Amendment and the Due Process Clauses of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution, as well as 42 U.S.C.§1983. All acts by the Defendants were committed under color of law, thus depriving the Plaintiff of rights secured by federal law and the United States Constitution.

118.     On or about October 9, 2004, Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY, falsely arrested, falsely seized and falsely detained Plaintiff, thus depriving him of his freedom. Said seizure was made without probable cause, as Defendants were

25

of the knowledge that Plaintiff had committed no crime.

119.    Upon information and belief such seizure, arrest, and detention was ordered and directed by Defendants COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY. Defendants VARA and BUONORA actively instigated and encouraged the prosecution of the Plaintiff.

120.    Upon information and belief, the Defendants, COUNTY, NASSAU POLICE, VARA, BUONORA, PICKERING, and DELARGY, possessed, but withheld information which would have exonerated Plaintiff of the criminal charges with which he was charged.

121.    Upon information and belief, the Defendants, COUNTY, NASSAU POLICE, VARA, BUONORA, PICKERING, and DELARGY, deprived Plaintiff of the right to offer testimony of witnesses, and to compel their testimony at the Grand Jury Proceeding, thereby depriving Plaintiff of the right to establish a defense.

122.    Upon information and belief, each of the Defendants took an active role in creating and manufacturing the charges against Plaintiff, solely for the purposes of effecting an arrest and conviction, and not to effectuate justice.

123.    As part of the false arrest, detention and accusations, Defendants caused the Plaintiff to be wrongfully seized, falsely detained, falsely arrested, falsely imprisoned, and deprived of his liberty, without probable cause. Furthermore, as a direct result of said actions, the Plaintiff was unjustly exposed to disgrace, public humiliation, injury and embarrassment.

124.    The Defendants individually and collectively knew at the time of Plaintiff's arrest, and at all times since then, that the evidence they had in connection with the charges brought against Plaintiff were false, inconsistent with and insufficient to establish his guilt with respect to any of the crimes charged.

26

125.    In arresting, detaining and interrogating Plaintiff, each of the Defendants knew or should have known they were violating federal law and the Plaintiff's constitutional rights set forth herein and had failed to prevent the same and, therefore, acted in concert to harm the Plaintiff.

126.    Defendants withheld information and conspired to cover up the illegal acts delineated herein, despite the truth being apparent. Defendants VARA and BUONORA offered and were allowed to provide false documents, false statements and perjured testimony before the Nassau County Grand Jury with the full knowledge and support of COUNTY and NASSAU POLICE.

127.    Defendants withheld information and conspired to cover up the illegal acts delineated herein, despite the truth being apparent. Defendants PICKERING and DELARGY failed to carry out their duties as Nassau County Police Officers by failing to respond to the scene and provide the necessary supervision at the scene.

128.    As a direct result of the unlawful actions of each of the Defendants, COUNTY, NASSAU POLICE, VARA , BUONORA, PICKERING, and DELARGY, the Plaintiff was wrongfully subjected to grand jury proceedings, wrongfully indicted for weapons possession, maliciously prosecuted, forced to endure multiple mandatory court appearances, and face potential incarceration all based upon false premises.

129.    Each of the Defendants, separately and in concert, acted outside the scope of their jurisdiction and without authorization of law and each of the Defendants, separately and in concert acted willfully, knowingly and purposefully with the specific intent to deprive Plaintiff of his right to freedom from illegal seizure of his person, freedom from illegal detention and imprisonment; all rights that are secured to Plaintiff by the Fourth Amendment, the due process clause of the Fifth and Fourteenth Amendments of the United States Constitution, and by 42 U.S.C. §§1981 and 1983.

130.    As a direct and proximate result of the aforesaid acts of the Defendants and each of

27

them, the Plaintiff suffered great physical harm, mental anguish and violation of rights from then until

now and he will continue to so suffer in the future having been greatly humiliated and mentally injured,

as a result of the foregoing acts of the Defendants.

131.    Plaintiff was forced to incur great expense and special damages to date for the defending

the false criminal charges, attorney's fees, investigation expenses, and other expenses in clearing his

name against the unfounded and unwarranted allegations by the Defendants which have been a serious

burden to Plaintiff.

132.    That by reason of the foregoing, the Plaintiff has been exposed to disgrace, public

humiliation and embarrassment and has been damaged in the sum of Ten Million ($10,000,000.00)

dollars, including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages.

**AS AND FOR COUNT THREE**
**42 U.S.C. §1983-MUNICIPAL LIABILITY**

133.    The Plaintiff repeats, reiterates and realleges each and every allegation contained in

paragraphs 1 through 132 of this Complaint with the same force and effect as though fully set forth

herein.

134.    Prior to October 9, 2004 and since, Defendants NASSAU AND NASSAU POLICE have

permitted and tolerated a pattern and practice of unjustified, unreasonable and illegal abuses and arrests

of persons by police officers.  Despite the egregiously improper conduct, the officers involved were not

seriously prosecuted, disciplined or subjected to restraint and such incidents were in fact covered up with

official claims that the harassments were justified and proper. As a result, Defendants NASSAU

POLICE were caused and encouraged to believe that individuals could be falsely arrested, prosecuted

and imprisoned under circumstances requiring the use of fabricated and falsified evidence and giving false

testimony, falsified and intentionally misleading reports, ignoring and misapplying the rules and regulations,

28

and that such behavior would, in fact, be permitted by the COUNTY.

135.    In addition to permitting a pattern of practice of improper treatment of persons, the COUNTY has failed to maintain a proper system for oversight of officers and supervisors and for investigation of all incidents of unjustified arrests and prosecution by their agents/employees.

136.    The COUNTY has failed to respond to the continuing and urgent need to prevent, restrain and discipline police officers that deprive citizens of their civil rights.

137.    A system allegedly maintained by the COUNTY, has failed to properly review unjustified behavior and activities by police officers, and has failed to identify the violative acts by police officers and to subject officers to discipline, closer supervision or restraint to the extent that it has become the custom of the COUNTY to tolerate the improper and illegal arrests and other wrongful actions by police officers.

138.    Upon information and belief, specific systemic flaws in the COUNTY's police misconduct review process include but are not limited to the following:

        a.    Preparing reports regarding investigations of incidents as routine point-by point justification of the police officers' actions regardless of whether such actions are justified;

        b.    Police officers investigating incidents systematically fail to credit testimony by non-police officer witnesses and uncritically rely on reports by police officers involved in the incident;

        c.    Police officers investigating incidents fail to include in their reports relevant factual information that would tend to contradict the statements of the police officer involved;

        d.    Police officers failing to communicate, properly respond to the scene and failing to provide the proper supervision at the scene of incidents;

        e.    Create and manufactured false testimony and evidence.

f..     Overlooking false and misleading statements made by Police Personnel

139.    The foregoing acts, omissions, systemic flaws, policies and customs of the COUNTY caused Nassau County Police Officers to believe that improper actions would not be aggressively, honestly and properly investigated with the foreseeable result that officers are most likely to act inappropriately and falsify evidence in situations where such evidence is neither necessary nor reasonable. These such failure continued and were part of an ongoing culture.

140.    As a direct and proximate result of the aforesaid acts, omissions, systemic flaws, policies and customs of the Defendant COUNTY, the Plaintiff was unjustifiably mistreated, illegally arrested and wrongfully detained, in violation of his civil and constitutional rights. Moreover, he has suffered and will continue to suffer from psychological harm, humiliation, fear, defamation of character and injury to his reputation, monetary expenses in lost wages and legal costs, personal humiliation, damage to reputation and loss of standing in the community, and severe physical, emotional and psychological damage, resulting in the need to seek professional counseling for the trauma which he incurred. All of these rights are secured to Plaintiff by the provisions of the Fourth Amendment, the due process clause of the Fifth and Fourteenth Amendments of the Constitution of the United States, as well as 42 U.S.C. §§1981 and 1983.

141.    That by reason of the foregoing, Plaintiff has been exposed to disgrace, public humiliation and embarrassment and has been damaged in the sum of Ten Million ($10,000,000.00) dollars, including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages.

## AS FOR COUNT FOUR

## 42 U.S.C. § 1985 - CONSPIRACY

142.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 141 of this complaint with the same force and effect as though fully set forth herein.

143. DEFENDANT OFFICERS' accusations and allegations against plaintiff were false, malicious, negligent, reckless, intentional and wrongful and were intended to cause plaintiff injury and to harass plaintiff.

144. Defendant VARA and Defendant BUONORA expressly and impliedly, agreed with each other to bring about plaintiff's seizure, arrest, detention and false accusation, all without lawful or proper basis or justification on account of Mr. Coggins' race, color and gender. All without consideration of plaintiff's rights and in violation of all of plaintiff's rights.

145. Defendant VARA and Defendant BUONORA, and the Nassau County Police Department expressly and impliedly, agreed with each other to bring about Plaintiff's loss of rights and threat of bodily harm, and expressly and impliedly agreed with each other to deny Plaintiff any rights to which he was entitled, all in furtherance of the conspiracy and all without lawful or proper basis or justification on account of his race, color and gender. All without consideration of the damage caused to plaintiff's rights.

146. That the false arrest, false imprisonment, excessive force, malicious prosecution and violation of the laws of the State of New York and plaintiff's civil rights were brought about and caused by the actions of defendants and that the same were a clear and intentional abuse of process causing plaintiff damages. All of these rights are secured to plaintiff by the provisions of the Constitution of the United States and by 42 U.S.C. § 1985.

31

### AND AS FOR A FIFTH COUNT

### 42 U.S.C. § 1986 - FAILURE TO INTERVENE

147.    The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1through 146 of this complaint with the same force and effect as though fully set forth herein.

148.    Defendant VARA and Defendant BUONORA, and the Nassau County Police Department knew or should have known that the detainment, false arrest, wrongful imprisonment, and malicious prosecution of Mr. Coggins violated the Plaintiff's rights, guaranteed to him under the Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983, 1985 and 1986.

149.    Each of the said Defendants had the authority, ability and concurrent duty under 42 U.S.C. § 1986 to prevent the false arrest, wrongful detainment and malicious prosecution of the Plaintiff, yet neglected to prevent said violations from occurring, and further failed to intervene to protect or aid the Plaintiff when such violations did in fact occur, all without lawful or proper basis or justification on account of Mr. Coggins' race, color and gender. All without consideration of plaintiff's rights and in violation of all of plaintiff's rights.

150.    Defendant VARA and Defendant BUONORA, and the Nassau County Police Department failure to stop these wrongful actions constitutes a breach of their duty to do so under 42 U.S.C. § 1986.

151.    Defendant VARA and Defendant BUONORA, and the Nassau County Police Department knew or should have known that the fabricated accusations against, and malicious

32

prosecution of Mr. Coggins were violative of his Fourth, Fifth and Fourteenth Amendment rights to due process, and were tantamount to unequal protection under the law, in violation of the Plaintiff's fundamental rights under the Constitution.

## AS AND FOR COUNT SIX
## STATE LAW FRAUDULENT MISREPRESENTATION

152.    The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 151 of this Complaint with the same force and effect as though fully set forth herein.

153.    Defendants VARA and BUONORA's accusations and allegations against Plaintiff were false, malicious, negligent, reckless, intentional and wrongful and were intended to cause Plaintiff injury and to persecute Plaintiff.

154.    Defendants, and each of them, expressly and impliedly, acted with each other to bring about Plaintiff's seizure, false arrest, and detention, all without lawful or proper basis or justification. All without consideration of Plaintiff's rights and in violation of Plaintiff's rights as stated herein.

155.    Defendants VARA and BUONORA were aware that the representations made to the Court and Jury and representations made in sworn documents were representations of fact, that on October 9, 2004, Plaintiff was involved in the alleged incident, that Plaintiff was the perpetrator and was identified as the perpetrator, Plaintiff was in possession of a criminal weapon and that same alleged weapon fell from Plaintiff as he jumped over the fence, and that Defendant Officers observed all of this leading Defendant BUONORA to stand over a weapon until Floral Park Police arrived as well as other facts listed in Paragraphs 1-40.

156.    Defendants VARA and BUONORA knew said representations were knowingly and maliciously false, and said representations were made with a reckless disregard to their veracity. These representations made by Defendants induced the trial court to rely upon same, and wrongfully convict Plaintiff of criminal charges.

33

157.     That the false representations, false arrest, false imprisonment and violation of the laws of the State of New York and Plaintiff's civil rights were brought about and caused by the actions of Defendants and that the same were a clear and intentional abuse of process causing Plaintiff damages. All of these rights are secured to Plaintiff by the provisions of the New York State Constitution.

158.     That by reason of the foregoing, Plaintiff has been placed in fear of his life, exposed to disgrace, public humiliation and embarrassment and has been damaged in the sum of Ten Million ($10,000,000.00) dollars, including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages.

## AS AND FOR COUNT SEVEN
## STATE LAW ABUSE OF PROCESS and MALICIOUS PROSECUTION

159.     The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 158 of this Complaint with the same force and effect as though fully set forth herein.

160.     Defendants maliciously caused a criminal proceeding to be commenced against Plaintiff without reasonable and probable cause. Defendants VARA and BUONORA actively instigated and encouraged the baseless prosecution of the Plaintiff on Criminal Possession of a Weapons charges. Plaintiff was indicted based upon VARA and BUONORA's malicious and false statements before the Grand Jury and false documents. As a result of this baseless prosecution and abuse of process, Plaintiff was falsely detained, wrongfully arrested, maliciously prosecuted along with other wrongful acts conducted. The criminal proceeding was eventually terminated in favor of Plaintiff.

161.     The false detainment, wrongful arrest, malicious prosecution and other wrongful acts conducted against the Plaintiff by the Defendants, VARA,BUONORA,PICKERING AND DELARGY constituted unreasonable and excessive force by police officers and the district attorney, as well as abuse

34

of process, abuse of authority, breach of police procedures, and violationsofthe Plaintiff's Fourth, Fifth, Sixth and Fourteenth Amendment rights. The Defendants VARA, BUONORA, PICKERING AND DELARGY negligently and recklessly breached their duty under the United States Constitution to prevent the commission of the civil rights violations perpetrated against DARRYL T. COGGINS, including violations of42 U.S.C. §§ 1981, 1983, and substantive and procedural dueprocess infractions.

162.     Said baseless prosecution and abuse of process was continued by the VARA and BUONORO's refusal to adequately investigate and properly discipline the Defendants VARA, BUONORA, PICKERING AND DELARGY for their actions against the Plaintiff DARRYL T. COGGINS. Specifically, the COUNTY failed to investigate and verify the veracity of the Plaintiff's claims, despite the lack of any significant hearing or consideration by the District Attorney's office for the substantial evidencesupportingDARRYLT. COGGINS'Complaint-- such evidence including eye witnesses, consistent testimony, and the blatant lack of any probable cause for wrongly stopping, detaining and arresting, prosecuting and imprisoning DARRYL T. COGGINS.

163.     The continued action taken by the Defendants POLICE OFFICER VARA and BUONORA, to prosecute, persecute and fully inconvenience the Plaintiff DARRYL T. COGGINS with false criminal charges is an abuse of process, in that using the courts and judicial process to persecute, intimidate, inconvenience and further damage the Plaintiff DARRYL T. COGGINS, despite no significant evidence for prosecuting the baseless charges of Criminal Possession of a Weapon and Resisting Arrest and a complete absence of reasonable or probable cause.

164.     As a result of said baseless prosecution and abuse of process, Plaintiff has suffered continued emotional damage, including prolonged stress and anxiety, fear, and frustration, and has been harmed monetarily in his incurring of attorney fees, lost business opportunities, and other expenses incurred in the attempt to clear the Plaintiff DARRYL T. COGGINS from these false and maliciously

35

imposed criminal charges.

165.    As a result of said baseless prosecution and abuse of process, Plaintiff was subjected to a highly substantial and identifiable interference with his person, property and business based upon his arrest of October 9, 2004 and his unlawful detention up until October 11, 2004. Furthermore, Plaintiff's liberty was continuously compromised as a result of the continued baseless prosecution of this matter for an additional ten (10) months and he was subjected to significant burden and humiliation by being the subject target of an indictment submitted to the Grand Jury by the Defendants in this action.

166.    As a further result of said baseless prosecution and abuse of process, Plaintiff was forced to incur legal expenses in the amount of $7,580.00 (Seven Thousand Five Hundred and Eighty Dollars) in order to defend himself against these frivolous charges, baseless prosecution and abuse of process.

167.    As a further result of said baseless prosecution and abuse of process, Plaintiff was cause to lose temporary possession of his Cadillac vehicle when it was impounded as result of the false arrest, abuse of process and malicious prosecution, forcing Plaintiff to incur expenses in the amount of approximately $75.00 (Seventy-Five Dollars) in order to regain possession of vehicle.

168.    As a further result of said baseless prosecution and abuse of process, Plaintiff was cause to suffer expense of over $10,000.00 (Ten Thousand Dollars) as fees associated with the posting of the Bond for Plaintiff's release from custody after being falsely arrested on October 9, 2004.

169.    As a further result of said baseless prosecution and abuse of process, Plaintiff suffered a loss of wages from his employment at Keyspan amounting to approximately $1352.00 (One Thousand Three Hundred and Fifty-Two Dollars).

170.    As a further result of said baseless prosecution and abuse of process, Plaintiff suffered injury to his reputation in the community and his professional reputation. Plaintiff was caused to forego employment opportunities with the Westbury Juvenile Detention Center, employment offering an annual

36

salary of approximately $35,000 (Thirty Five Thousand Dollars) causing him to suffer additional economic loss.

171.    As a further result of said baseless prosecution and abuse of process, Plaintiff suffered a loss of his security guard license for approximately 10 (ten) months which prevented him from acquiring gainful employment in the security field within that period of time.

172.    As a further result of said baseless prosecution and abuse of process, Plaintiff was caused to forego employment opportunities with the Suffolk County Police Department, employment offering an annual salary of approximately $50,000.00 (Fifty Thousand Dollars) causing him to suffer additional economic loss.

173.    By reason of the foregoing, Plaintiff has been damaged in the sum of Ten Million ($10,000,000.00) dollars,  including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages.

## AS AND FOR COUNT EIGHT
## STATE LAW FALSE ARREST/FALSE IMPRISONMENT

174.    The Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 173  of this Complaint with the same force and effect as though fully set forth herein.

175.    The Defendants VARA, BUONORA, PICKERING and DELARGY lacked any probable cause to stop, hold and detain the Plaintiff DARRYL T. COGGINS in custody for any period of time, no less the prolonged period of custody at the local Police Precinct and the Nassau County Police Headquarters.

176.    Without such probable cause, Defendants VARA, BUONORA, PICKERING and DELARGY conspired to and wrongfully detained the Plaintiff DARRYL T. COGGINS in the back of

37

a police car, at the police precinct, at the Headquarters, and at the jail, denied Plaintiff his freedom for a period of approximately two days. During said time, Plaintiff was physically prevented from leaving the custody of police, in that he was handcuffed and surrounded by officers in a police precinct, and kept there under the supervision and knowledge of the Police.

177. As a result of said false arrest and false imprisonment, Plaintiff suffered and continues to suffer pain, great emotional and psychological harm, anxiety and personal fear, all due to the callous indifference of said Defendants in falsely arresting and imprisoning DARRYL T. COGGINS and requiring him to face false charges.

178. By reason of the foregoing, Plaintiff has been damaged in the sum of Ten Million ($10,000,000.00) dollars, including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages.

## AS AND FOR COUNT NINE
## STATE LAW NEGLIGENCE

179. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 178 of this Complaint with the same force and effect as though fully set forth herein.

180. The Defendants COUNTY, VARA, BUONORA, PICKERING and DELARGY had a duty under 42 U.S.C. §§ 1981 and 1983, as well as under the Fourth, Fifth, Sixth and Fourteenth Amendments, and under New York State Law and their own rules and regulations, to prevent and cease the wrongful detainment, false arrest, false imprisonment, malicious and false charging and prosecuting, as well as a duty to hire, to train, to investigate, supervise and discipline Defendants VARA, BUONORA, PICKERING and DELARGY and JOHN DOES "1-10" and prevent other wrongful acts that were committed against Plaintiff DARRYL T. COGGINS.

181. In actively inflicting and failing to prevent the above stated abuses incurred by DARRYL T. COGGINS, all of the Defendants acted unreasonably, recklessly, and negligently in failing to exercise the

38

slightest amount of due care to secure and protect the civil and constitutional rights of the Plaintiff against illegal search and seizure, detained custody and arrest without Miranda warnings, and other due process violations. Said rights are guaranteed to the Plaintiff by 42 U.S.C. § 1983 and by the Fourth, Fifth, Sixth and Fourteenth Amendments of the Constitution.

182. The breach of duty by the Defendants COUNTY, VARA, BUONORA, PICKERING and DELARGY was a direct and proximate cause of the harm suffered by Plaintiff DARRYL T. COGGINS. Said harm includes physical harm, pain and suffering which continues to this day, monetary expenses in lost wages and legal costs, personal humiliation, damage to reputation and loss of standing in the community, and severe physical, emotional and psychological damage, resulting in the need to seek professional counseling for the trauma which he incurred.

183. By reason of the foregoing, Plaintiff has been damaged in the sum of Ten Million ($10,000,000.00) dollars, including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages.

## AS AND FOR COUNT TEN
## STATE LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

184. The Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 183 of this Complaint with the same force and effect as though fully set forth herein.

185. The Defendants VARA, BUONORA, PICKERINGand DELARGY acted outrageously for their above-stated roles in the wrongful stop, detainment, false arrest, malicious prosecution, prolonged imprisonment, intimidation and public humiliation of the Plaintiff, DARRYL T. COGGINS.

186. Said emotional harm was exacerbated by the fabricated criminal charges against the Plaintiff, known by VARA, BUONORA, PICKERING and DELARGY to be without basis, yet

39

prosecuted, and denied Plaintiff of his freedom with the intention of causing extreme further harm and duress to the Plaintiff, DARRYL T. COGGINS.

187.    The Defendants VARA, BUONORA, PICKERING and DELARGY's initiation of a baseless charge, falsified testimony, with sadistic intent and for the purpose of subjecting Plaintiff to the prosecution system is utterly intolerable in a civilized society.

188.    The Defendants knew that their conduct, along with the threat of imprisonment would cause severe and extreme emotional harm to Plaintiff.

189.    Said harm did in fact occur in this case, in that the Plaintiff was debilitated to the point where he still suffers from episodes of anxiety, anger, loss of sleep, and other factors; to the extent that the Plaintiff is in need of counseling by a psychiatrist or similar health care provider.

190.    By reason of the foregoing, Plaintiff has been damaged in the sum of Ten Million ($10,000,000.00) dollars.

**WHEREFORE,** Plaintiff demands judgment against Defendants:

(A)    As and for Count One in the sum of Ten Million ($10,000,000.00) dollars;

(B)    As and for Count Two in the sum of Ten Million ($10,000,000.00) dollars;

(C)    As and for Count Three in the sum of Ten Million ($10,000,000.00) dollars;

(D)    As and for Count Four in the sum of Ten Million ($10,000,000.00) dollars;

(E)    As and for Count Five in the sum of Ten Million ($10,000,000.00) dollars;

(F)    As and for Count Six in the sum of Ten Million ($10,000,000.00) dollars;

(G)    As and for Count Seven in the sum of Ten Million ($10,000,000.00) dollars;

(H)    As and for Count Eight in the sum of Ten Million ($10,000,000.00) dollars;

(I)    As and for Count Nine in the sum of Ten Million ($10,000,000.00) dollars;

(J)    As and for Count Ten in the sum of Ten Million ($10,000,000.00) dollars;

(I)      Award such other and further relief as this Court may deem appropriate.

**A JURY TRIAL IS HEREBY DEMANDED**


Dated:  Hempstead, New York
        November 7, 2012


                                        LAW OFFICES OF
                                        FREDERICK K. BREWINGTON

                                By:_____
                                        VALERIE M. CARTRIGHT (VC7327)
                                        Attorneys for Plaintiff
                                        556 Peninsula Boulevard
                                        Hempstead, New York 11550
                                        (516) 489-6959

# EXHIBIT I

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

№ 07-CV-3624 (JFB) (AKT)

DARRYL T. COGGINS

Plaintiff,

VERSUS

COUNTY OF NASSAU, NASSAU COUNTY POLICE DEPARTMENT, POLICE OFFICER
JAMES VARA, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, POLICE OFFICER CRAIG
BUONORA, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, AND JOHN DOES 1-10, IN
THEIR INDIVIDUAL AND OFFICIAL CAPACITY,

Defendants.

MEMORANDUM AND ORDER
June 20, 2008

JOSEPH F. BIANCO, District Judge:

On August 27, 2007, plaintiff Darryl T. Coggins ("plaintiff" or "Coggins") brought the instant action against defendants County of Nassau ("Nassau County"), Nassau County Police Department (the "Police Department"), Police Officer James Vara, in his individual and official capacity ("Vara"), Police Officer Craig Buonora, in his individual and official capacity ("Buonora"), and John Does 1-10, in their individual and official capacity (collectively, "defendants"), pursuant to 42 U.S.C. §§ 1981 and 1983 and New York State tort law. The complaint alleges that, on March 17, 2005, a grand jury empaneled by the Nassau County District Attorney's Office (the "DA's Office")

indicted Coggins on charges of which he was innocent. According to the complaint, the defendants – including Buonora – knew Coggins was innocent and, nevertheless, actively encouraged his prosecution. The complaint further alleges – inter alia – that Officers Vara and Buonora conspired to commit perjury during plaintiff's grand jury proceedings. Indeed, the complaint states that, after dismissing all charges against plaintiff, the DA's Office indicted Buonora for perjury. Buonora pleaded guilty.

Buonora now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 or, in the alternative, to dismiss the complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6). In particular, Buonora argues that (1) he is entitled to absolute witness immunity from suit; (2) four of plaintiff's causes of action are time-barred under New York State law; (3) plaintiff fails to state a claim for negligence under New York State law; and (4) plaintiff has failed to plead special damages with sufficient specificity. For the reasons set forth below, Buonora's motion is granted in part and denied in part. Specifically, the Court dismisses without prejudice plaintiff's claims for malicious prosecution and abuse of process under New York State law on the grounds that he has failed to plead the requisite special damages with specificity.[1] The motion is denied on all other grounds.

### I. FACTS

The following facts are taken from the complaint and are not findings of fact by the Court. The Court assumes these facts to be true for the purpose of deciding the motion to dismiss and construes them in the light most favorable to plaintiff, the non-moving party.[2]

#### A. Coggins's Arrest and Incarceration

The complaint alleges that, on or about October 9, 2004, Coggins was "falsely arrested, falsely seized and falsely detained, deprived of his freedom, unlawfully imprisoned and maliciously prosecuted" by defendants, including Buonora. (Compl. ¶ 42.) Specifically, on or

about that date, Coggins was arrested and charged in Nassau County with two counts of Criminal Possession of a Weapon in the Third Degree, in violation of Penal Law §§ 265.02(3) and (4). (Compl. ¶ 19.) Bail was posted on plaintiff's behalf on October 11, 2004. (Compl. ¶ 20.) Thus, Coggins spent two days in jail. (Compl. ¶ 31.)

According to the complaint, Coggins was innocent of the crimes with which he was charged. (Compl. ¶ 20.) Plaintiff also alleges that defendants knew that Coggins was innocent. (Compl. ¶ 42.)

#### B. Alleged Role of Buonora in Plaintiff's Arrest and Prosecution

Coggins alleges that defendants, including Buonora, "actively instigated and encouraged the prosecution of plaintiff." (Compl. ¶ 43; see also Compl. ¶ 46 ("Upon information and belief, each of the Defendants took an active role in creating and manufacturing the charges against Plaintiff, solely for the purposes of effecting an arrest and conviction, and not to effectuate justice.").) Specifically, the complaint states that Buonora and the other defendants "ordered and directed" plaintiff's arrest and detention (Compl. ¶ 43), and "withheld information which would have exonerated Plaintiff of the criminal charges with which he was charged" (Compl. ¶ 44; see also Compl. ¶ 48 ("The Defendants individually and collectively knew at the time of Plaintiff's arrest, and at all times since then, that the evidence they had in connection with the charges brought against Plaintiff were [sic] false. . . .")).

According to the complaint, Buonora and the other defendants "further deprived the plaintiff of his due process rights; specifically

---

[1] As set forth *infra*, however, the Court also grants plaintiff leave to replead these claims within sixty days of this Memorandum and Order.

[2] As set forth *infra*, with respect to defendant's request for summary judgment, the Court concludes such application is premature under Rule 56(f) of the Federal Rules of Civil Procedure.

by attempting to prolong the Defendant's unlawful detainment without probable cause, investigation, rule of law and by further denying the plaintiff his Fifth Amendment rights via an attempt to cover up the misconduct of said officers and officials and to prevent plaintiff from being compensated for his wrongful arrest, detainment, and other physical and emotional harm incurred." (Compl. ¶ 32.) Coggins claims that "in furtherance of said conduct, the Defendant officers prolonged the plaintiff's custody by failing to investigate plaintiff's protests that he was not the alleged perpetrator and by conspiring to set bail at an unreasonable amount." (Compl. ¶ 33.) Thus, according to plaintiff, Buonora and the other defendants "acted with the shared purpose of denying plaintiff his rights. . . ." (Compl. ¶ 35.)

The complaint further alleges that Vara and Buonora "negligently and recklessly breached their duty under the United States Constitution to prevent the commission of the civil rights violations perpetrated against" Coggins. (Compl. ¶ 73.)

### (1) The Grand Jury

On March 17, 2005, the DA's Office presented Coggins's case to the Grand Jury, which voted to indict plaintiff not only on the charges for which he was arrested, but also for Resisting Arrest in violation of Penal Law § 205.30 (the "indictment"). (Compl. ¶ 22.)

Plaintiff alleges that the indictment "was based primarily on the testimony" of Vara and Buonora. (Compl. ¶ 6.) Specifically, according to the complaint, "Vara falsely testified that while he was chasing [plaintiff], he saw an object fall from Plaintiff as Plaintiff was jumping over a fence. Vara testified that he continued his pursuit of Plaintiff, but later returned to

determine that the object that had fallen was a 9-millimeter handgun." (Compl. ¶ 6.) Further, plaintiff alleges that Buonora "falsely testified that he saw a 9-millimeter handgun fall from [plaintiff] as he jumped the fence and that Buonora stayed with the handgun until he was relieved by a Floral Park Officer." (Compl. ¶ 24.)

### C. The Floral Park Officer

Coggins alleges that, in June 2005, a Floral Park Officer informed plaintiff's counsel that "the story that [Vara and Buonora] was telling was inaccurate." (Compl. ¶ 25.) Specifically, the Floral Park Officer "informed counsel that he was the Officer who initially found the gun approximately forty minutes after the foot pursuit began. He further indicated that radio transmissions of October 9, 2004 would substantiate his claim." (Compl. ¶ 25.) Coggins alleges that the "Floral Park Officer's version of the events directly contradicted the sworn testimony of Vara and Buonora at the Grand Jury proceeding." (Compl. ¶ 25.)

According to the complaint, Coggins's counsel reviewed the radio transmissions in question and found that they corroborated the claim of the Floral Park Police Officer. (Compl. ¶ 26.) Counsel referred plaintiff's case to the Special Investigations Division of the DA's Office. (Compl. ¶¶ 4, 26.)

### D. Dismissal of Charges Against Coggins and Institution of Perjury Charge Against Buonora

Coggins alleges that fifteen months after his arrest – on August 12, 2005 – "in the face of clear perjury and manufactured evidence, the charges filed against Plaintiff were dismissed

3

on motion of the" DA's Office. (Compl. ¶ 27.) Further, the complaint states that

> [t]hroughout all of these proceedings, Plaintiff never wavered in declaring his innocence and made that fact unequivocally known to Defendants. Significantly, no statements were signed by Plaintiff that can be construed as an admission of guilt. Plaintiff always maintained his innocence and that Vara and Buonora were not being truthful about the underlying facts.

(Compl. ¶ 27.)

The complaint states that Buonora was subsequently indicted for perjury and pleaded guilty to that charge. (Compl. ¶ 28.)

## II. Procedural History

Coggins filed his complaint on August 28, 2007. On December 5, 2007, the County, the Police Department, and Vara answered the complaint. On January 24, 2008, Buonora submitted the instant motion. Plaintiff submitted his opposition on February 29, 2008. Buonora submitted his reply on March 10, 2008. By letter dated April 17, 2008, Buonora supplemented his prior submissions with additional case citations.[3] By letter dated April 23, 2008, plaintiff responded to Buonora's supplemental submission. The Court held oral argument on May 30, 2008.

---

[3] In particular, Buonora submitted citations to cases stating that a district court's denial of immunity at the motion to dismiss stage is subject to interlocutory appeal. The Court is aware of this procedure.

## III. Prematurity of Summary Judgment

In his opposition papers, Coggins argues that the Court should review Buonora's motion solely pursuant to Rule 12(b)(6) – and not as a motion for summary judgment pursuant to Rule 56 – on the grounds that discovery has not commenced and, therefore, Buonora's motion for summary judgment is premature. For the reasons set forth below, the Court agrees with plaintiff and, pursuant to Federal Rule of Civil Procedure 56(f), denies Buonora's motion for summary judgment without prejudice to Buonora's renewing it at the close of discovery.

As a threshold matter, the Second Circuit has held that district courts should grant summary judgment only "[i]f *after discovery*, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.'" *Berger v. United States*, 87 F.3d 60, 65 (2d Cir. 1996) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (alteration in original and emphasis added). In particular, "[t]he nonmoving party must have 'had the opportunity to discover information that is essential to his opposition' to the motion for summary judgment." *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)). Consequently, "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (reversing district court's grant of summary judgment because plaintiff had not been able to conduct discovery).

4

Indeed, the Supreme Court has explained that in instances where a plaintiff has not had the opportunity to conduct discovery, Rule 56(f) of the Federal Rules of Civil Procedure "allows a summary judgment motion to be denied, or the hearing on the motion to be continued, if the nonmoving party has not had an opportunity to make full discovery." *Celotex*, 477 U.S. at 326; *see also Comm. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 386 (2d Cir. 2001) ("Fed. R. Civ. P. 56(f) provides, as interpreted by court opinions, that when a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion.").

Rule 56(f) specifically states:

> Should it appear from the affidavits of a party opposing the [summary judgment] motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f). Further, the Second Circuit has outlined the procedure by which a party may obtain relief under Rule 56(f):

> [A] party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing '(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.'

*Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999) (quoting *Meloff v. N.Y. Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995)).

Here, Coggins submitted an affidavit in compliance with Rule 56(f), specifically explaining that the information he seeks through discovery would create genuine issues of material fact for trial. For instance, Coggins states:

> 9. I believe that through discovery I will be able to obtain the necessary evidence to show that defendants, including Defendant Craig Buonora, were working together to deprive me of my constitutional rights.
> 10. I believe that through discovery I will be able to obtain the necessary evidence to show that Defendant Craig Buonora was intimately involved in my arrest and prosecution.
> 11. I believe that through discovery I will be able to obtain the necessary evidence to show that Defendant Craig

Buonora not only participated in the plan to deprive me of my rights but that he had the ability to stop the other Defendants from continuing to violate my rights and that he failed to do so.

\*\*\*

14. [I] believe that through discovery I will be able to obtain the necessary evidence to show that despite knowing that I was innocent, Defendant Craig Buonora worked with the other Defendants to cover up their lies and had no regard for my life and liberty.

(Coggins Aff. ¶¶ 9-11, 14.) Plaintiff also explained the efforts he had made to obtain the information and the reason why he was unsuccessful. Specifically, Coggins stated: "I was informed by my attorneys that they have made every effort to commence the discovery process, however, they are prevented from properly doing so as it is too early in the case." (Coggins Aff. ¶ 15.)

Coggins's affidavit, therefore, wholly complies with the standard the Second Circuit has set forth for compliance with Rule 56(f); he has particularized the discovery required –the materiality of which, as established *infra*, is beyond dispute – and has explained why he has not obtained this discovery to date. Under similar circumstances – including in cases where, as here, the proposed basis for summary judgment is absolute immunity and the complaint alleges a conspiracy to commit perjury – courts routinely deny summary judgment motions as premature when they are raised prior to plaintiff's being provided with the opportunity for discovery. *See, e.g., Safeco Insurance Co. of Am. v. Discover Property and Casualty Insurance Co.*, No. 05 Civ. 8625, 2008 U.S. Dist.

LEXIS 10626, at \*10 (S.D.N.Y. Feb. 6, 2008) ("The parties' pending cross-motions for summary judgment are denied as premature and without prejudice to refiling after discovery closes. . . ."); *Peele v. Mattingly*, No. 06 Civ. 13423, 2007 U.S. Dist. LEXIS 65310, at \*4 (S.D.N.Y. Sept. 5, 2007) (holding summary judgment motion in abeyance pursuant to Rule 56(f) where defendant moved on qualified immunity grounds and "facts sought by plaintiffs through deposition discovery promise to fill in material gaps in the chronology of events; illuminate the defendants' knowledge at each phase of the investigation; reveal a more complete picture of the investigative steps taken; and disclose the rationale underlying certain decisions made by the defendants"); *Gabel v. Bd. of Educ. of the Hyde Park Cent. Sch. Dist.*, 368 F. Supp. 2d 313, 336 (S.D.N.Y. 2005) ("Here, there has been no discovery, so the factual record remains to be fleshed out. The District's motion for summary judgment is at best premature."); *Sheff v. City of New York*, No. 03 Civ. 708, 2004 U.S. Dist. LEXIS 4819, at \*22 (S.D.N.Y. Mar. 24, 2004) ("While prosecutors have absolute immunity not just for the presentation of testimony, but for all actions related to their advocacy, police officers are not immune for extra-judicial actions such as an alleged conspiracy to present false testimony. [Defendant police officer's] motion for summary judgment on this single, remaining claim against him is premature.") (citations and quotation marks omitted).

In sum, after carefully reviewing both the complaint in this case and Coggins's Rule 56(f) affidavit, and in light of plaintiff's inability to conduct any discovery to date, the Court concludes that Buonora's motion for summary judgment is premature and dismisses it without prejudice to refile at the close of discovery. As set forth below, therefore, the

Court reviews Buonora's motion pursuant to the standard of review for motions to dismiss under Rule 12(b)(6).

## IV. STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The plaintiff must satisfy "a flexible 'plausibility' standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007). The Court does not, therefore, require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* at 1974.

Further, in reviewing a motion to dismiss, "the district court is normally required to look only to the allegations on the face of the complaint," *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007), as well as any documents appended thereto. However, the Second Circuit has also established two exceptions to this rule. First, courts may consider a document not appended to the complaint if the document is "incorporated in [the complaint] by reference." *Id.* at 509 (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (emphases in original). Second, courts "'take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in other litigation,

but rather to establish the fact of such litigation and related filings.'" *Crews v. County of Nassau*, No. 06-CV-2610 (JFB), 2007 U.S. Dist. LEXIS 6572, at *5 n.2 (E.D.N.Y. Jan. 30, 2007) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

Here, plaintiff did not append any documents to the complaint. Moreover, neither Coggins nor Buonora has asked the Court to take judicial notice of documents appended to their motion papers. Nevertheless, the Court has independently reviewed these documents in order to determine whether they fall into either of the exceptions stated above. After such review, and as set forth below, the Court has determined that the transcripts of Coggins's grand jury proceedings, portions of which were submitted by each party, fall into both of the aforementioned exceptions and, therefore, are properly subject to consideration on the instant motion to dismiss.[4]

---

[4] Specifically, Buonora submitted his own grand jury testimony, and Coggins submitted his own grand jury testimony, as well as Buonora's and Vara's. The remainder of the exhibits proferred – which largely consist of police reports – do not fall within any of the above-referenced exceptions and, thus, the Court should not consider them at this juncture. *See, e.g., Lyn v. Incorporated Vill. of Hempstead*, No. 03-CV-5041, 2004 U.S. Dist. LEXIS 30545, at *5 (E.D.N.Y. June 25, 2004) (refusing to consider police reports appended to police officers' motion to dismiss case on immunity grounds); *see generally Jarmon v. Pacific Rail Servs.*, No. 06-CV-01372, 2007 U.S. Dist. LEXIS 14393, at *5 (D. Colo. Mar. 1, 2007) (refusing to consider police report at motion to dismiss stage); *Ferranti v. Martin*, No. 3:06cv1694, 2007 U.S. Dist. LEXIS 3981, at *7 n.1 (M.D. Pa. Jan. 19, 2007) (same). In any event, those additional documents would not change the Court's analysis at this stage of the litigation.

7

In particular, with respect to the first exception, courts routinely take judicial notice at the motion to dismiss stage of transcripts – including those of testimony provided in related criminal proceedings – which are incorporated into the complaint by reference. *See, e.g., Jovanovic v. City of New York*, No. 04 Civ. 8437, 2006 U.S. Dist. LEXIS 59165, at *15 (S.D.N.Y. Aug. 17, 2006) (holding, in Section 1983 case involving allegations of false arrest and malicious prosecution, that where complaint "refers to what happened at the arraignment, the grand jury indictment, the trial and the appeal . . . [t]he Court will therefore take judicial notice of these documents and proceedings"); *SEC v. Siebel Sys., Inc.*, 384 F. Supp. 2d 694, 699 n.6 (S.D.N.Y. 2005) ("The Court previously granted defendants' request to take judicial notice of the transcripts that the complaint relies upon. The Court, based on the allegations in the complaint, takes judicial notice of what was said at the April 4th, 23rd, and 28th conferences."). In addition, with respect to the second exception, courts routinely take judicial notice – at the motion to dismiss stage – of transcripts of related judicial proceedings, including criminal proceedings. *See, e.g., Reynolds v. Blumenthal*, No. 3:04cv218, 2006 U.S. Dist. LEXIS 68970, at *9 n.5 (D. Conn. Sept. 26, 2006) ("[I]t has been held that courts may take judicial notice of transcripts from judicial proceedings in related cases."); *Browdy v. Karpe*, No. 3:00-CV-1866, 2004 U.S. Dist. LEXIS 19299, at *5 n.3 (D. Conn. Sept. 20, 2004), *aff'd* 2005 U.S. App. LEXIS 9329 (2d Cir. May 16, 2005) ("The Court takes judicial notice of the judgment mittimus and the transcript of the plea and sentencing in Browdy's state criminal case. . . ."); *UCAR Int'l v. Union Carbide Corp.*, No. 00-CV 1338, 2004 U.S. Dist. LEXIS 914, at *43 (S.D.N.Y. Jan. 26, 2004), *aff'd* 2004 U.S. App. LEXIS 24927 (2d Cir. Dec. 2, 2004) (taking judicial notice of plea agreement, sentencing transcript, and arraignment transcript in related criminal case).

Here, the complaint explicitly refers to Vara's and Buonora's grand jury testimony. (*See, e.g.*, Compl. ¶¶ 6, 24.) In addition, the grand jury testimony took place in a criminal proceeding that is not merely related, but central to the complaint in this action. Under these circumstances, the Court finds it appropriate to consider all the grand jury testimony submitted, including Vara's and Buonora's – not for the truth of the facts asserted therein, but solely for the purpose of determining what Vara and Buonora said. *Cf. Global Network Comm'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (finding that district court should not have taken judicial notice of testimony where his "testimony as a government witness in an unrelated criminal proceeding was neither mentioned nor relied upon by appellant in drafting its complaint").

## V. DISCUSSION

### A. Absolute Immunity

Buonora moves to dismiss the complaint in its entirety on the grounds that he is entitled to absolute witness immunity. However, after carefully reviewing the complaint, accepting all of its allegations as true, and drawing all reasonable inferences in favor of plaintiff, the Court declines to rule – at this juncture – that Buonora is entitled to absolute immunity as a matter of law. Specifically, as set forth below, the Court concludes that each of the following reasons suffices independently to defeat Buonora's claim of absolute immunity at the motion to dismiss stage: (1) the Court cannot determine at this juncture, as a matter of law, whether Buonora served as a "complaining witness" in Coggins's prosecution; and (2) the complaint alleges an extra-judicial conspiracy to commit perjury. Thus, the Court denies

8

Buonora's motion to dismiss the complaint on absolute immunity grounds without prejudice to his reasserting such immunity at the summary judgment stage – after the parties have had the opportunity to conduct discovery.[5]

### (1) The "Complaining Witness" Rule

Buonora argues that he is entitled to absolute immunity from suit because he was not a "complaining witness" in Coggins's case according to the Supreme Court's holding in *Briscoe v. LaHue*, 460 U.S. 325 (1983). As set forth below, however – after carefully reviewing the complaint, accepting each of its allegations as true, and drawing all reasonable inferences in plaintiff's favor – the Court cannot determine at this juncture whether Buonora was a complaining witness and, thus, whether he is entitled to absolute immunity on this ground.

"In *Briscoe*, the Supreme Court answered in the negative the question 'whether 42 U.S.C. § 1983 authorizes a convicted person to assert a claim for damages against a police officer for giving perjured testimony at his criminal trial.'" *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993)

---

[5] The Court is aware that "district courts are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery. . . . This is because '[a]n absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity.'" *Deronette v. City of New York*, No. 05-CV-5275, 2007 U.S. Dist. LEXIS 21766, at *12 (E.D.N.Y. Mar. 27, 2007) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) and quoting *Imbler*, 424 U.S. at 419 n.13). However, as set forth *infra*, the Court cannot determine whether Buonora's actions were "within the scope of the immunity" at this juncture. Thus, it would be inappropriate to grant such immunity at this time under the particular circumstances of this case.

(quoting *Briscoe*, 460 U.S. at 326). The Second Circuit subsequently extended such "*Briscoe* grants" of immunity for perjurious trial testimony to grand jury testimony. *See San Filippo v. U.S. Trust Co. of N.Y.*, 737 F.2d 246, 254 (2d Cir. 1984), *cert. denied* 470 U.S. 1035 (1985). However, the Second Circuit has also clarified the "subtle yet crucial distinction between two categories of witnesses with respect to their immunity for false testimony. Those whose role was limited to providing testimony enjoyed immunity; those who played a role in initiating a prosecution – complaining witnesses – did not enjoy immunity." *White v. Frank*, 855 F.2d 956, 958-59 (2d Cir. 1988). "The question of whether a witness is a complaining witness is a factual one, resting on the determination of whether the witness played such a role in initiating the proceedings that it can be said the witness commenced or continued proceedings against the plaintiff within the meaning of the law of malicious prosecution." *Cipolla v. Rensselaer*, 129 F. Supp. 2d 436, 451 (N.D.N.Y. 2001) (citations and quotation marks omitted); *see also Mejia v. City of New York*, 119 F. Supp. 2d 232, 272 (E.D.N.Y. 2000) ("Whether a witness is a complaining witness a fact-based question that coincides with the determination of whether the witness played such a role in initiating the proceedings that it can be said the witness commenced or continued proceedings against the plaintiff within the meaning of the law of malicious prosecution.").

Here, Buonora argues that his role in Coggins's prosecution was limited to providing grand jury testimony and, therefore, he was not a complaining witness. As set forth below, however, the particular factual circumstances of this case preclude the Court from agreeing with Buonora at this juncture as a matter of law.

9

Specifically, the Court has carefully reviewed the complaint and finds that it alleges acts by Buonora – separate and apart from perjury – that served to initiate and continue Coggins's prosecution. For instance, the complaint alleges, *inter alia*, that (1) defendants, including Buonora, "actively instigated and encouraged the prosecution of plaintiff" (Compl. ¶ 43); (2) Buonora and the other defendants "ordered and directed" plaintiff's arrest and detention (Compl. ¶ 43), and "withheld information which would have exonerated Plaintiff of the criminal charges with which he was charged" (Compl. ¶ 44); (3) Buonora and the other defendants "further deprived the plaintiff of his due process rights; specifically by attempting to prolong the Defendant's unlawful detainment without probable cause, investigation, rule of law and by further denying the plaintiff his Fifth Amendment rights via an attempt to cover up the misconduct of said officers and officials and to prevent plaintiff from being compensated for his wrongful arrest, detainment, and other physical and emotional harm incurred" (Compl. ¶ 32); (4) "Defendant officers prolonged the plaintiff's custody by failing to investigate plaintiff's protests that he was not the alleged perpetrator and by conspiring to set bail at an unreasonable amount" (Compl. ¶ 33); and (5) Vara and Buonora "negligently and recklessly breached their duty under the United States Constitution to prevent the commission of the civil rights violations perpetrated against" Coggins. . . ." (Compl. ¶ 73).

In the face of these allegations, the Court cannot determine as a matter of law at this stage in the proceedings whether Buonora served as a complaining witness under *Briscoe*. Indeed, in arguing that he was not a complaining witness, Buonora relies solely on exhibits and information extraneous to the complaint that, as stated *supra*, the Court cannot consider in the context of a

motion under Rule 12(b)(6).[6] Therefore, although the Court is sensitive that the availability of absolute immunity should be decided at the earliest possible juncture, the Court declines to rule as a matter of law at this stage, given the allegations of misconduct in the complaint separate from Buonora's perjury, that absolute immunity shields him from any alleged misconduct that took place during Coggins's prosecution. *White*, 855 F.2d at 961 ("Clearly, the plaintiff has alleged a claim of malicious prosecution and appears to have a factual basis that will defeat a claim of immunity from liability for this tort. Whether that turns out to be the case cannot be determined at this stage. Since the availability of immunity cannot now be determined as a matter of law, we lack jurisdiction over this interlocutory appeal and are obliged to dismiss so that the matter may proceed in the trial court.").

## (2) The Extra-Judicial Conspiracy Exception to Absolute Immunity

As described *supra*, the complaint alleges that Vara and Buonora conspired to commit perjury during Coggins's grand jury proceedings. As set forth below, these allegations of conspiracy provide an additional, independent obstacle to Buonora's assertion of absolute immunity at this juncture. Specifically, the Court finds that the "extra-judicial conspiracy exception" established by

---

[6] The Court notes that, even if such documents submitted by defendant were considered, it would not warrant absolute immunity prior to plaintiff's conducting discovery, including depositions (Buonora, Vara, and the Floral Park Officer), to determine whether the information contained in these police reports and other documents is accurate or whether there is other evidence that may place the accuracy of these reports in dispute.

the Second Circuit in *San Filippo* prevents Buonora from successfully invoking absolute immunity at the motion to dismiss stage, under the circumstances of this case.

As noted above, in *San-Filippo*, the Second Circuit extended "*Briscoe* grants" of immunity to witnesses testifying before the grand jury. 737 F.2d at 254. However, the Second Circuit also held that *Briscoe* "was expressly limited to immunity for testimony given in judicial proceedings, and its rationale – to encourage witnesses to come forward with all they know – does not justify extending that immunity to cover extra-judicial conspiracies between witnesses and the prosecutor to give false testimony." *Id.* at 255. Subsequently, in *Dory v. Ryan*, the Second Circuit confirmed that this so-called "extra-judicial conspiracy exception" applied to police officer defendants. 25 F.3d 81, 84 (2d Cir. 1994) ("*San Filippo* did not involve police officers, and has not subsequently been applied to police officers. There is no reason, however, to distinguish police officers from other witnesses with regard to the 'extra-judicial conspiracy exception'. . . ."); *see also Brown v. Adsit*, No. 95-CV-29, 1996 U.S. Dist. LEXIS 16863, at *8 (N.D.N.Y. Nov. 6, 1996) ("Where a plaintiff alleges an extra-judicial conspiracy to present false testimony, police officers are not entitled to absolute immunity."). In *Dory*, therefore, because the complaint alleged not merely perjury, but also contained allegations of conspiracy, the Second Circuit reversed the district court's grant of absolute immunity to the police officer defendant in question. *Id.* at 84.

Here, the Court has carefully examined the complaint in order to determine whether it alleges facts sufficient to invoke the extra-judicial conspiracy exception at this juncture. In conducting this examination, the Court has been mindful of the Second Circuit's admonition in *San Filippo* that "it is imperative for courts to

examine with great care any suit charging" a conspiracy to give false testimony and to "dismiss on pre-trial motion those that are clearly baseless." 737 F.2d at 256. However, accepting all allegations in the complaint as true, and drawing all reasonable inferences in plaintiff's favor, the Court finds that the allegations of an extra-judicial conspiracy in Coggins's suit are sufficient to overcome Buonora's claim of absolute immunity at the motion to dismiss stage. *See Blount v. N.Y. Unified Court Sys.*, No. 03-CV-0023, 2005 U.S. Dist. LEXIS 44013, at *21 (E.D.N.Y. Mar. 17, 2005) ("This Court . . . is bound by Second Circuit precedent, which has expressly rejected absolute witness immunity in the context of extra-judicial conspiracies to give false testimony. Therefore, this is not a case where the Plaintiff is impermissibly circumventing the absolute witness immunity doctrine. Rather, the State Defendants are attempting to circumvent the Second Circuit's holding in *Dory* and *San Filippo*. The Court is not persuaded.") (citations omitted); *Cipolla v. County of Rensselaer*, 129 F. Supp. 2d 436, 451 (N.D.N.Y. 2001) ("But for Plaintiffs' allegations of conspiracy, the absolute immunity analysis would end here. In this Circuit, however, absolute witness immunity does not extend to allegations of conspiracy.").

Specifically, the complaint alleges at various points that Vara and Buonora conspired to violate Coggins's rights. (*See, e.g.,* Compl. ¶¶ 16, 33, 35, 48, 50, 52, 66.) In the particular factual context of this case – including, *inter alia*, Coggins's allegations that (1) Buonora and Vara provided false testimony before the grand jury (Compl. ¶¶ 23-25); (2) Vara and Buonora provided mutually consistent testimony (Compl. ¶¶ 23, 24, 67); and (3) Buonora, in fact, pleaded guilty to perjury (Compl. ¶ 28) – the Court concludes that plaintiff has alleged facts adequate to

11

invoke the extra-judicial conspiracy exception and defeat Buonora's claim of absolute immunity at this stage of the proceedings.

In particular, with respect to these factual allegations, counsel for Buonora did not dispute at oral argument for purposes of this motion (as alleged in the complaint) that (1) Vara and Buonora provided false testimony before the grand jury;[7] and (2) Buonora pleaded guilty to perjury. However, counsel claimed that Vara's and Buonora's grand jury testimony was inconsistent and therefore, could not provide a basis for conspiracy. As set forth below, after carefully reviewing this testimony, the Court wholly disagrees. Specifically, one could reasonably infer from this testimony that Vara and Buonora testified consistently regarding the very issue about which Buonora perjured himself, *i.e.*, the actions he took during the period that Vara was chasing Coggins, especially with respect to Buonora's purported retrieval of the gun in question.

For instance, Buonora testified as follows:

> Q: What, if anything, attracted your attention during the course of the chase?
> A: As we got up the side street on Holland, the subject went in an alleyway and went to jump a fence. I heard a noise as he went to jump the fence, which sounded like metal hitting the ground. Officer Vara was in front of me, because he's a little lighter than me, I guess. And he kept after

the subject. And I looked down to see what it was and found the gun there.

> ***
> Q: You said you detected a metal sound hitting concrete?
> A: Yes.
> Q: Did you immediately look down?
> A: Once I got up there, I immediately looked to see what it was.
>
> ***
> Q: When the other officer returned back to the vehicle, where did you go?
> A: I stayed with the gun until, I believe, a Floral Park police officer relieved me so I could assist that officer.
> ***
> Q: And at any time, did you move the gun while you were, I guess, safeguarding the weapon?
> A: You would just safeguard it. You didn't touch it. You wait for crime scene.

(Buonora Testimony at 42, 44, 49.)

Similarly, Vara testified as follows:

> Q: What, if anything, attracted your attention during the chase?
> A: He came to a fence at the driveway. He jumped over the fence, and as he jumped over the fence, I heard a metal noise hitting concrete, and I looked down, and I saw an object

---

[7] Counsel for the County, the Police Department, Vara, and John Does 1-10, however, has made clear that the other defendants make no such concession regarding Vara's testimony.

laying on the driveway. My focus was still towards him, towards the defendant. My assisting officer stayed there at the scene, and I had run around, because I thought he was going to go back to the car.

*   *   *

Q: After the chase was suspended, you said you returned to the driveway and actually observed now the gun on the driveway floor?
A: Yes.
Q: And was Officer Buonora there at that time?
A: Yes, he was.

(Vara Testimony at 20-21, 29.) Taken in the context of this case as a whole – including the complaint's allegations that (1) Coggins never possessed a gun and, thus, no such gun fell from him during the chase (Compl. ¶¶ 67-68); and (2) the Floral Park Officer, and not Buonora, "initially found the gun approximately forty minutes after the foot pursuit began" (Compl. ¶ 25) – the Court concludes that Coggins has alleged facts sufficient to invoke the extra-judicial conspiracy exception to immunity at this juncture. See, e.g., Pearl v. City of Long Beach, 296 F.3d 76, 87 (2d Cir. 2002), cert. denied 538 U.S. 922 (2003) (explaining that "it was a reasonable inference that the officers had agreed to present their allegedly false" testimony where officers provided identical testimony); cf. Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999) (affirming district court's grant of summary judgment to police officer defendants on conspiracy claim where district court had noted that "it would seem more conspiratorial if

all of the defendants' stories matched up in the details") (quotation marks omitted).[8]

In sum, after carefully reviewing the complaint, assuming all of its allegations are true, and drawing all reasonable inferences in plaintiff's favor, the Court concludes that each of the following reasons is independently sufficient to defeat Buonora's claim of absolute immunity at the motion to dismiss stage: (1) the Court cannot determine at this juncture as a matter of law whether Buonora served as a "complaining witness" in Coggins's prosecution; and (2) the complaint alleges an extra-judicial conspiracy to commit perjury.[9]

---

[8] The Court notes that in response to the Court's inquiry at oral argument, counsel for Buonora was unable to cite any case where a court granted absolute immunity to a police officer at the motion to dismiss stage – thereby refusing to permit the parties to conduct any discovery – where the plaintiff alleged an extra-judicial conspiracy among officers to commit perjury and one of the police officers actually pleaded guilty to perjury. Instead, counsel repeatedly cited cases such as Mitchell v. Forsyth, where the Supreme Court emphasized that courts should resolve questions of immunity as early in judicial proceedings as possible. See 472 U.S. 511, 526 (1985). As stated supra, the Court is aware of the holding in Mitchell and is sensitive to its dictate. The Court has concluded, however, in light of the particular factual circumstances of this case, that dismissing Coggins's case on immunity grounds at this juncture is inappropriate under Second Circuit law. Again, the Court reaches this conclusion without prejudice to Buonora arguing that he is entitled to immunity at the summary judgment stage, after the parties have had the opportunity to conduct discovery.

[9] Buonora does not argue that he is entitled, in the alternative, to qualified immunity. Nevertheless, the Court has considered whether Buonora is entitled to qualified immunity and, for the reasons set forth below, has determined that he is not

13

## B. Statute of Limitations

Buonora moves to dismiss Coggins's causes of action under New York State law for Fraudulent Misrepresentation (Count Four), Abuse of Process and Malicious Prosecution (Count Five), False Arrest and False Imprisonment (Count Six), and Intentional

entitled to such immunity at this juncture. The Second Circuit has held that

> [a] defendant is entitled to qualified immunity on a motion to dismiss if the allegations of the complaint fail to state a claim of violation of clearly established law. Qualified immunity shields officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. A right is clearly established when the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . The unlawfulness must be apparent. Even where a right is clearly established, an official is entitled to qualified immunity nevertheless if it was objectively reasonable for the public official to believe that his acts did not violate that right[].

*Connell v. Signoracci*, 153 F.3d 74, 80 (2d Cir. 1998) (citations and quotation marks omitted). It is beyond cavil that, *inter alia*, conspiring to commit perjury before the grand jury violates a clearly established right of which Buonora should have known, and that no public official would think it was objectively reasonable to violate that right. Thus, at this stage of the proceedings, Buonora could not sustain a claim of qualified immunity under the circumstances in this case.

Infliction of Emotional Distress (Count Eight) on statute of limitations grounds. For the reasons set forth below, and under the particular circumstances of this case, the Court cannot conclude at this juncture that these causes of action are time-barred as a matter of law. As with the immunity issue, therefore, Buonora may renew his statute of limitations defense at the summary judgment stage, after the parties have had the opportunity to conduct discovery.

In particular, Buonora argues that all of the above-referenced claims are governed by New York Civil Practice Law and Rules § 215(3), which establishes a one-year statute of limitations for intentional torts. *See Green v. City of New York*, 465 F.3d 65, 86 (2d Cir. 2006) ("New York Civil Practice Law and Rules § 215(3) provides a one-year statute of limitations for intentional torts."); *see also Brewton v. City of New York*, No. 05-CV-3574, 2008 U.S. Dist. LEXIS 36455, at 38 n.13 (E.D.N.Y. May 5, 2008) ("New York Civil Practice Law and Rules § 215(3) fixes a one-year statute of limitations for intentional torts.")[10]

---

[10] As a threshold matter, the Court notes that fraudulent misrepresentation claims are not governed by Section 215(3). Instead, "[i]ntentional misrepresentation claims are governed by the six-year statute of limitations for actual frauds." *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 51 F. Supp. 2d 457, 470 (S.D.N.Y. 1999). Specifically, "a party must commence an action for actual fraud within either six years of the commission of the fraud or two years from the time that the party discovered or should have discovered the fraud with reasonable diligence, whichever is longer." *Id.* (citing CPLR §§ 203(g), 213(8)); *see also Raul v. Am. Stock Exchange, Inc.*, No. 95 Civ. 3154, 1996 U.S. Dist. LEXIS 5914, at *25-*26 (applying six-year statute of limitations – as well as two-year exception for discovery of the fraud – to

14

Plaintiff, on the contrary, argues that the appropriate limitations period under the circumstances of this case is set forth in CPLR § 213-b, which establishes a seven-year statute of limitations for suits by crime victims. Specifically, Section 213-b provides that

> an action by a crime victim, or the representative of a crime victim . . . may be commenced to recover damages from a defendant . . . convicted of a crime which is the subject of such action, for any injury or loss resulting therefrom within seven years of the date of the crime.

NY CPLR § 213-b. Essentially, Coggins argues that Section 213-b applies to his lawsuit because he was the victim of Buonora's crime of perjury. In response, Buonora claims that Section 213-b is inapplicable because his victim was the justice system – not Coggins. For the reasons set forth below, the Court cannot determine at this juncture – prior to the parties' having the opportunity to conduct any discovery – whether Section 213-b is applicable.

The New York State courts have affirmed that "CPLR 213-b being a procedural statute is to be liberally construed. Its purpose, to extend the time a crime victim has to pursue a defendant responsible for the crime, is designed to provide a meaningful remedy to the victim and the statute should, therefore, be read expansively." *Cavanaugh v. Watanabe*, 806 N.Y.S.2d 848, 849 (N.Y. Sup. Ct. Dec. 19, 2005) (slip op.). As such, the statute "does not specifically define 'crime,' does not limit the crimes to which it is applicable, and does not limit the term 'crime victim'. . . . Since [the legislature] did not do so,

it follows that the terms 'crime' and 'crime victim' were not intended to be restricted as they are in the Executive Law." *Elkin v. Cassarino*, 680 N.Y.S.2d 601, 603 (App. Div. 1998). Thus, courts have applied Section 213-b to a range of crimes. *See, e.g., Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 153 n.6 (2d Cir. 1999) (noting that district court had applied Section 213-b to claim for breach of fiduciary duty, although reversing district court in part on other grounds). For these reasons, "[r]esearch discloses that the benefit of CPLR 213-b has been denied only in those cases where there was no causal connection between the crime for which defendant was convicted and the damages sought." *Cavanaugh*, 806 N.Y.S.2d at 849; *see also Elkin*, 680 N.Y.S.2d at 604 (noting that plaintiff must demonstrate that his injury "resulted from [defendant's] crime" in order to invoke Section 213-b).

Here, the complaint reflects that the DA's Office continued to prosecute Coggins – for crimes of which he was allegedly innocent – for nearly five months after Buonora committed perjury. (Compl. ¶ 4.) Further, the complaint states that as a "direct result" of defendants' alleged misconduct, including Buonora's perjury, Coggins "has suffered and continues to suffer loss of income, loss of other employment benefits, loss of career opportunities, and has suffered and continues to suffer repeated, severe and permanent psychological, emotional and physical trauma and damage, including distress, humiliation, embarrassment, great financial expense and damage to his reputation. . . ." (Compl. ¶ 38.) In light of the New York State courts' expansive interpretation of Section 213-b – and assuming all of the allegations in the complaint are true, and drawing all reasonable inferences in favor of plaintiff – the Court declines to determine as a matter of law that no causal

fraudulent misrepresentation claim).

connection exists between Buonora's crime of perjury and the physical, emotional, and financial damage Coggins allegedly suffered. The Court finds, therefore, that discovery is warranted in order to determine the applicability of Section 213-b. Thus, the Court denies Buonora's motion to dismiss these causes of action on the grounds that they are time-barred, without prejudice to Buonora's renewing the statute of limitations defense at the summary judgment stage, after the parties have had the opportunity to conduct discovery on the factual issues that relate to the application of Section 213-b.

## C. Negligence

For the reasons set forth below, the Court rejects Buonora's assertion that the Court should dismiss Coggins's cause of action for negligence under New York State law.

In particular, Buonora objects to Coggins's negligence claim on the grounds that plaintiff also brought causes of action under Sections 1981 and 1983, which involve intentional misconduct. (Buonora Reply at 10 ("Not only has the plaintiff offered no theory as to how Officer Buonora might have been 'negligent,' plaintiff has argued strenuously as to how Officer Buonora's intentional acts damaged plaintiff. As a matter of law, Officer Buonora can not [sic] be found to be negligent.").) However, Federal Rule of Civil Procedure 8, which sets forth the legal standard for pleadings, explicitly states that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). Thus, "[w]hile it is true that the same factual predicate cannot support both a finding of liability based on reckless or intentional conduct and a finding of liability based on negligent conduct, plaintiff is free to plead alternate theories of liability, even if those theories are inconsistent." *Brown v. City of New York*, No. 02-CV-6337, 2005 U.S.

Dist. LEXIS 5512, at *12-*13 (E.D.N.Y. Mar. 30, 2005) (citing Rule 8 and *Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49, 55 n.3 (2d Cir. 2004)).    Because Coggins's alternate theories of liability comply fully with Rule 8, the Court declines to dismiss plaintiff's cause of action for negligence on the grounds that he also brought causes of action pursuant to Sections 1981 and 1983.

In addition, the Court rejects Buonora's related assertion that the Court should dismiss Coggins's cause of action for negligence on the grounds that Buonora's sole involvement in Coggins's prosecution consisted of Buonora's perjury – a crime of intent. As set forth in detail *supra*, the complaint contains various allegations against Buonora in addition to perjury. For instance, the complaint states, *inter alia*, that he "fail[ed] to investigate plaintiff's protests that he was not the alleged perpetrator" (Compl. ¶ 33), and "withheld information which would have exonerated Plaintiff of the criminal charges with which he was charged" (Compl. ¶ 44). Under these circumstances, the Court declines to conclude as a matter of law that Coggins's cause of action for negligence is insufficient to withstand a motion to dismiss.

In sum, the Court denies Buonora's motion to dismiss plaintiff's cause of action for negligence under New York State law.[11]

---

[11] Buonora also moves to dismiss Coggins's cause of action for negligence – as well as his causes of action for malicious prosecution, abuse of process, and for violations of Sections 1981 and 1983 – on the grounds that Coggins has failed to plead special damages with specificity. As set forth below, the Court agrees with Buonora in part. Although plaintiff need not plead special damages in order to state a claim for negligence and for violations of Sections 1981 and 1983, *see, e.g., Bisson v. United*

16

VI. CONCLUSION

*Nations*, No. 06 Civ. 6352, 2008 U.S. Dist. LEXIS 9723, at *4-*5 (S.D.N.Y. Feb. 11, 2008) (analyzing negligence claim where plaintiff claimed general damages); *Day v. Morgenthau*, 909 F.2d 75, 77 (2d Cir. 1990) (explaining that special damages need not be alleged in Section 1983 case); *Shelter Inc. Realty v. City of New York*, No. CV-01-7015, 2007 U.S. Dist. LEXIS 305, at *38 (E.D.N.Y. Jan. 4, 2007) (explaining that Section 1983 provides "the exclusive damages remedy for violations of § 1981 when the claim is against state actors"), the Court agrees with Buonora that "special damages are a necessary element" of claims for malicious prosecution and abuse of process. *Hawkins v. City of New York*, No. 99 Civ. 11704, 2005 U.S. Dist. LEXIS 15898, at *53 (S.D.N.Y. Aug. 8, 2005); *see also Brown v. Brown*, 343 F. Supp. 2d 195, 198 (E.D.N.Y. 2004) (explaining that plaintiff must plead special damages for abuse of process and malicious prosecution claims). The Court also agrees that "round numbers . . . may not qualify as special damages." *Kirby v. Wildenstein*, 784 F. Supp. 1112, 1118 (S.D.N.Y. 1992) (finding "plaintiff's allegations of special damages are still too generalized to survive dismissal" where plaintiff "'has not submitted the itemized proof of damages the law requires. . . .'"); *see also Daniels v. Alvarado*, No. 03-CV-5832, 2004 U.S. Dist. LEXIS 3893, at *19 (E.D.N.Y. Mar. 12, 2004) ("Round numbers and general allegations of dollar amounts are insufficient as special damages.") (citation and quotation marks omitted). Here, because plaintiff has provided round dollar figures in conjunction with his causes of action for abuse of process and malicious prosecution, he has failed to state these claims with sufficient specificity. The Court, therefore, dismisses these claims without prejudice. However, because Coggins may be capable of remedying this pleading failure, the Court grants plaintiff leave to replead. Specifically, plaintiff shall submit any such amended pleading within sixty days of this Memorandum and Order. Failure to submit an amended pleading will result in dismissal of these causes of action with prejudice.

For the foregoing reasons, the Court determines, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, that Buonora's motion for summary judgment is premature at this juncture. The Court thus denies this motion without prejudice to Buonora's renewing it after the completion of discovery. Further, the Court grants in part and denies in part Buonora's motion to dismiss the complaint pursuant to Rule 12(b)(6). Specifically, the Court dismisses without prejudice Coggins's claims for abuse of process and malicious prosecution under New York State law on the grounds that he has failed to plead the requisite special damages with sufficient specificity. The Court, however, grants plaintiff leave to replead these causes of action and affords plaintiff sixty days from the date of this Memorandum and Order to submit an amended complaint. Failure to do so shall result in dismissal of these causes of action with prejudice. Buonora's motion to dismiss the complaint is denied on all other grounds.

The parties shall begin discovery under the direction of Magistrate Judge Tomlinson. Although Buonora is concerned that discovery will be a fishing expedition by plaintiff, the Court is confident that Magistrate Judge Tomlinson will monitor the discovery process to ensure that the nature and scope of discovery is consistent with the factual issues relevant to this case.

17

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: June 20, 2008
Central Islip, NY

* * *

The attorney for plaintiff is Frederick K.
Brewington, Esq. of the Law Offices of
Frederick K. Brewington, 50 Clinton Street,
Suite 501, Hempstead, New York, 11550. The
attorney for defendant Buonora is Laurence
Jeffrey Weingard, Esq. of the Law Offices of
Laurence Jeffrey Weingard, 250 West 57th Street,
New York, New York, 10107. The attorney for
defendants Nassau County, the Police
Department, Vara, and John Does 1-10 is Donna
Napolitano, Esq. of the Nassau County
Attorney's Office, One West Street, Mineola,
New York, 11501.

18

DOCKET NO.:CV-07-3624 (JFB) (AKT)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

DARRYL T. COGGINS,

Plaintiff,

- against -

COUNTY OF NASSAU, NASSAU COUNTY POLICE
DEPARTMENT, POLICE OFFICER JAMES VARA in his individual
and official capacity, POLICE OFFICER CRAIG BUONORA,
in his individual and official capacity, and JOHN DOES
"1-10", in their individual and official capacity,

Defendants.

------------------------------------------------------------------------X

**DECLARATION OF VALERIE M. CARTRIGHT
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MOTION TO DISMISS**

------------------------------------------------------------------------X

**LAW OFFICES OF
FREDERICK K. BREWINGTON**
*Attorneys for the Defendant*
**556 Peninsula Boulevard
Hempstead, New York 11550
(516) 489-6959**