# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 07-CV-3624 (JFB) (AKT)

_____

## DARRYL T. COGGINS,

Plaintiff,

VERSUS

COUNTY OF NASSAU, NASSAU COUNTY POLICE DEPARTMENT, POLICE OFFICER JAMES VARA, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, POLICE OFFICER CRAIG BUONORA, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, SERGEANT PICKERING, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, LIEUTENANT DELARGY, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, AND JOHN DOES 1-10, IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES,

Defendants.

_____

**MEMORANDUM AND ORDER**
December 2, 2013

_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Darryl T. Coggins ("Coggins" or "Plaintiff") brings this action against Defendants County of Nassau ("Nassau County" or "the County"); Nassau County Police Department ("NCPD"); Police Officers James Vara ("Vara") and Craig Buonora ("Buonora"), in their individual and official capacities; Sergeant Pickering ("Pickering"), in his individual and official capacity; Lieutenant Delargy ("Delargy"), in his individual and official capacity; and John Does 1–10, in their individual and official capacities (collectively, "Defendants"), pursuant to 42 U.S.C. §§ 1981, 1983, 1985, and 1985, and New York State tort law.

A grand jury empaneled by the Nassau County District Attorney's Office (the "DA's Office") indicted Coggins on March 17, 2005, on charges of unlawful possession of a weapon and resisting arrest. Coggins contends that Defendants actively prosecuted him despite knowing he was innocent. Specifically, he alleges that Buonora and Vara conspired to and did, *inter alia*, falsify police reports, affidavits, and memorandum books; fabricate evidence; and commit perjury during grand jury proceedings. Indeed, after the DA's Office dismissed the criminal charges against Coggins, it indicted Buonora for perjury. Buonora pleaded guilty.

Presently before the Court are two motions. First, Coggins moves to file a Third Amended Complaint ("TAC") in light of the Supreme Court's decision in *Rehberg v. Paulk*, 132 S. Ct. 1497 (2012). The County, NCPD, Vara, Pickering, and Delargy (collectively, the "County Defendants") oppose, arguing that amendment would be futile. Second, Buonora moves to dismiss the TAC pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. Buonora argues he is entitled to absolute immunity from the only well-pleaded cause of action—the one under § 1983.

For the following reasons, the Court grants in part and denies in part Coggins's motion to amend, and grants in part and denies in part Buonora's motion to dismiss the TAC. In particular, the Court holds, in light of the Supreme Court decision in *Rehberg*, that defendants Vara and Buonora have absolute immunity with respect to any alleged perjury in the grand jury, or any alleged conspiracy to present false testimony to the grand jury, and such alleged evidence cannot be used to support any other Section 1983 claim concerning the initiation or maintenance of a prosecution. Thus, to the extent that the Section 1983 claims are based upon such conduct, the motion to dismiss is granted. However, as discussed herein, the motion to dismiss the Section 1983 claims in the entirety is denied because the TAC alleges unconstitutional conduct against Vara and Buonora far beyond perjury and/or conspiring to commit perjury in the grand jury. For example, it is alleged that defendant Vara improperly stopped, detained, assaulted, and chased Coggins on October 9, 2004. In addition, it is alleged that Vera and Buonora conspired to alter the version of what transpired that night, which led to the falsification and omission of evidence from police reports, resulting in a malicious prosecution. These allegations in support of the Section 1983 and related claims are completely independent of the alleged perjury in the grand jury and are not barred under the doctrine of absolute immunity under *Rehberg*. It is clear that *Rehberg* is not meant to be an absolute immunity cloak that, once a police officer testifies in the grand jury, suddenly shields him or her from all allegedly unconstitutional acts even if they are outside the scope of the grand jury appearance. To the extent defendants suggest that plaintiff will be unable to prove these other allegations of unconstitutional wrongdoing, such arguments are premature at the motion to dismiss stage, and the Court, in its discretion, declines to consider any summary judgment motion at this time because discovery is not complete. Defendants may renew the absolute immunity argument in a summary judgment motion once discovery is complete. Thus, the motion to dismiss all the federal claims, and related state law claims, in their entirety on absolute immunity grounds is denied, and plaintiff's motion to amend such claims in the TAC is granted. The claim under 42 U.S.C. § 1986 and the false arrest and imprisonment claims, however, are untimely and must be dismissed.[1]

I.   BACKGROUND

A.   FACTUAL BACKGROUND

The Court presumes the parties' familiarity with the underlying lawsuit and only details the allegations to the extent they are relevant to resolving the motions, are alleged for the first time in the TAC, or

---

[1] As set forth *infra*, the Court again concludes that Buonora's request for summary judgment is premature pursuant to Federal Rule of Civil Procedure 56(f). The Court also denies Coggins's request for sanctions against Buonora.

both. The Court assumes the following allegations to be true only for purposes of deciding the motions and construes them in the light most favorable to Coggins, the non-movant.

Coggins is a Black male.[2] Early on October 9, 2004, Vara stopped Coggins because of his race and color, not because he had committed any legal violation. (TAC ¶ 24.) Vara never justified the stop to Coggins. (*Id.* ¶¶ 25–26.) Instead, after attempting to determine whether Coggins was intoxicated, Vara called for backup, physically assaulted Coggins when Coggins asked what was going on, and placed his hand on his gun. (*Id.* ¶ 27.) Coggins ran, fearing for his life. (*Id.*) At the same time, Buonora arrived on the scene, began chasing after Coggins, and yelled, "Shoot him in the back, shoot him in the back." (*Id.* ¶ 28.) Coggins escaped, but he surrendered that afternoon and was arrested and charged with two counts of Criminal Possession of a Weapon in the Third Degree, in violation of N.Y. Penal Law §§ 265.02(3) and (4). (*Id.* ¶¶ 28, 31.) Coggins remained in jail for two days—until October 11, 2004. (*Id.* ¶ 31.)

According to Coggins, from this encounter until the DA's Office dropped the charges in August 2005, defendants—despite knowing that Coggins was innocent—"conspired to deprive Plaintiff of his due process right; specifically by attempting to prolong [his] unlawful detainment without probable cause, investigation, and rule of law," and "attempting to cover up" their misconduct. (*Id.* ¶¶ 88, 90.) Defendants allegedly

fabricated evidence, made false reports, failed to adhere to procedures and regulations, and failed to properly investigate the incident. (*Id.* ¶ 89.)

In particular, Coggins alleges that Buonora and Vara conspired with each other by, *inter alia*, agreeing to an altered version of what transpired on October 9, and making a conscious decision to omit and falsify information in their reports, evidence, and other paperwork. (*Id.* ¶¶ 32, 35, 66.) For instance, even though he actively participated in the pursuit, Buonora allegedly failed to complete an incident report or other paperwork related to Coggins's detention, chase, and arrest. (*Id.* ¶ 33.) Buonora also allegedly knew that documents regarding Coggins's detention, arrest, and prosecution contained false information and omitted relevant facts. (*Id.* ¶ 52.) He also allegedly had three meetings with the DA's Office during which he falsely represented he had found a weapon. (*Id.* ¶ 51.) Buonora falsely reported and testified that he had heard a metal object hit the ground, saw it was a gun, and stayed with the gun until a Floral Park officer relieved him. (*Id.* ¶¶ 59–60.) Coggins claims Buonora never refuted such evidence in any reports, statements to his supervisors, or the grand jury. (*Id.* ¶ 52.) Vara, meanwhile, also allegedly falsified official documents related to the October 9 events. (*Id.* ¶ 34.) He allegedly submitted a false report on October 26, 2004, stating that he was in foot pursuit, heard a metal noise, observed a black object on the ground, safeguarded a weapon, and broadcasted a radio description of Coggins. (*Id.* ¶ 63.) He also allegedly failed to record his three attempts to breathalyze Coggins. (*Id.* ¶ 64.) According to Coggins, NCPD officers routinely have engaged in such improper practices, "particularly in situations where blacks and/or black males are involved." (*Id.* ¶ 37; *see also id.* ¶ 91 ("Defendants Nassau and

---

[2] Coggins does not specifically allege his race. Paragraph 37, which highlights incidents involving black men, and the balance of the allegations support this reasonable inference. Plaintiff's counsel confirmed this fact at oral argument. However, plaintiff may re-plead the TAC to make this allegation explicit.

Nassau Police permitted and tolerated the egregious improper conduct by issuing official claims that the harassment was justified, failing to seriously discipline or prosecute the Defendant Officers. As a result of this conduct, Defendant Police Officers were caused to and encouraged to believe that individuals could be falsely arrested, prosecuted and imprisoned under circumstances requiring the use of falsified evidence and testimony.").)

On March 17, 2005, the DA's Office presented Coggins's case to a grand jury. (*Id.* ¶ 38.) The grand jury indicted Coggins on the weapons charges and for resisting arrest in violation of Penal Law § 205.30. (*Id.* ¶ 38.) Coggins alleges that both officers perjured themselves before the grand jury. (*Id.* ¶ 53.) In July 2005, a Floral Park Officer informed Coggins's counsel that "the story [Vara and Buonora] were telling was inaccurate." (*Id.* ¶ 40.) Specifically, the Floral Park Officer "informed counsel that he was the Officer who initially found the gun approximately forty minutes after the foot pursuit began. He further indicated that radio transmission[s] of October 9, 2004 would substantiate his claim." (*Id.*) Coggins's case eventually was referred to the Special Investigations Division of the DA's Office (*Id.* ¶ 40), and the charges against Coggins were dismissed on the DA's motion in August 2005.[3] (*Id.* ¶ 42.) Buonora was indicted for perjury and pleaded guilty. (*Id.* ¶ 45.)

Coggins brings causes of action for (1) violations of 42 U.S.C. § 1981; (2) violations of 42 U.S.C. § 1983; (3) municipal liability under 42 U.S.C. § 1983;

(4) conspiracy under 42 U.S.C. § 1985; (5) failure to intervene under 42 U.S.C. § 1986; (6) fraudulent misrepresentation; (7) abuse of process and malicious prosecution; (8) false arrest and false imprisonment; (9) negligence; and (10) intentional infliction of emotional distress.

B. PROCEDURAL BACKGROUND

Coggins filed the Complaint on August 28, 2007. The County Defendants answered on December 5, 2007, while Buonora moved to dismiss or for summary judgment on January 24, 2008. The Court dismissed Coggins's claims for malicious prosecution and abuse of discretion under New York State law in June 2008, reasoning that Coggins failed to plead the requisite special damages with specificity. The Court denied Buonora's request for summary judgment as premature, without prejudice. The Court granted leave to amend, and Coggins filed an amended complaint on August 19, 2008. Upon receiving the Court's 2008 Memorandum and Order, Buonora filed his Answer, including a cross-claim against Nassau County, and a Notice of Appeal to the United States Court of Appeals for the Second Circuit. The Second Circuit affirmed this Court's June 2008 Memorandum and Order on June 22, 2010.

Coggins filed the Second Amended Complaint ("SAC") on June 3, 2011. He filed the instant motion to amend on November 7, 2012. The County Defendants opposed on June 12, 2013, and Coggins replied on July 26, 2013. Buonora filed the instant motion to dismiss and motion for summary judgment on June 7, 2013. Coggins opposed on July 26, 2013, also requesting sanctions against Buonora. Buonora replied on August 16, 2013. The Court held oral argument on both motions on September 9, 2013.

---

[3] According to Coggins, he "never wavered in declaring his innocence," "never signed any statement that can be construed as an admission of guilt," and "maintained throughout these proceedings that [Vara and Buonora] were lying and had fabricated evidence against him." (TAC ¶ 42.)

## II.   STANDARDS OF REVIEW

### A.   AMENDMENT OF PLEADINGS

Federal Rule of Civil Procedure 15 applies to motions to amend the pleadings. A motion to amend "shall be freely granted when justice so requires." Fed. R. Civ. P. 15(a). Such a motion should be denied "only for reasons such as undue delay, bad faith, futility of the amendment or prejudice to the other party." *Crippen v. Town of Hempstead*, No. 07-CV-3478(JFB)(ARL), 2013 WL 2322874, at *1 (E.D.N.Y. May 22, 2013); *see also Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 125 (2d Cir. 2008) (per curiam) ("[M]otions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."). "An amendment is considered futile if, for example, it could not defeat a motion to dismiss for failure to state a claim or for lack of subject matter jurisdiction." *Crippen*, 2013 WL 2322874, at *1 (citing *Chan v. Reno*, 916 F. Supp. 1289, 1302 (S.D.N.Y. 1996)); *see also Absolute Activist Master Value Fund Ltd. v. Ficeto*, 677 F.3d 60, 71 (2d Cir. 2012).

### B.   FAILURE TO STATE A CLAIM

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'"

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Supreme Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679 (explaining that though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Second, if a complaint contains "well-pleaded factual allegations," a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting and citing *Twombly*, 550 U.S. at 556–57 (internal citation omitted)).

The Court notes that in adjudicating this motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has

knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356–57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and rev'd in part on other grounds sub nom. Lentell v. Merrill Lynch Co.*, 396 F.3d 161 (2d Cir. 2005).

### III.   DISCUSSION

### A.   MOTION TO AMEND

Coggins moves to amend to plead additional facts and clarify the causes of action in light of *Rehberg*, which affected the Second Circuit precedents the Court relied upon in 2008 to reject Buonora's claim of absolute immunity for his perjury. The County Defendants oppose the amendments on futility grounds, arguing that the modified federal causes of action could not withstand a motion to dismiss. As noted below, defendant Buonora simply moves to dismiss the TAC. The Court judges the adequacy of a proposed amended complaint by the same standards as those governing the adequacy of a filed pleading. *See Crippen*, 2013 WL 2322874, at *1 (citation omitted). As set forth *infra*, the Court finds that the TAC adequately pleads claims under 42 U.S.C. §§ 1981, 1983, and 1985, but the § 1986 and state law false arrest and imprisonment claims are untimely. Accordingly, with the exception of those causes of action, the Court grants the motion to amend because, as discussed below, the remaining claims survive a motion to dismiss. As discussed in more detail below, however, to the extent plaintiff seeks to hold defendants Buonora and Vara liable for perjury or conspiracy to commit

perjury in the grand jury, those portions of the federal claims cannot proceed because they are barred by the doctrine of absolute immunity.

### B.   MOTION TO DISMISS

### 1.   Prematurity of Summary Judgment

As in 2008, Buonora styles his motion as one to dismiss pursuant to Rule 12(b)(6) and, in the alternative, for summary judgment pursuant to Rule 56, appending several exhibits he contends directly contradict and undermine the allegations in the TAC. The Court again finds Buonora's request for summary judgment premature. (*See* 2008 Memorandum and Order, at 4–7.) District courts should grant summary judgment only "[i]f *after discovery*, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Berger v. United States*, 87 F.3d 60, 65 (2d Cir. 1996) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (alteration in original and emphasis added). Discovery in this case continues. For example, Buonora and Vara have not yet been deposed, and such depositions could impact Coggins's case significantly. Given this procedural posture, in its discretion, the Court will not consider Buonora's request for summary judgment at this juncture.

### 2.   Judicial Notice

Coggins did not append any documents to the TAC, and neither he nor Buonora asks the Court to take judicial notice of the documents appended to their respective filings. The Court has reviewed these documents and will take judicial notice of the following: (1) the transcripts of the grand jury proceedings (Coggins Ex. B); (2) the arrest report (Buonora Ex. G); (3) Vara's

and Buonora's Memorandum Book entries for the times at issue (Buonora Exs. J, K); and (4) Coggins's Demand the District Attorney Present Witnesses and Submit Charges Against Police Officer Vara (Buonora Ex. M). Courts routinely take judicial notice at the motion to dismiss stage of transcripts—including those of testimony provided in related criminal proceedings—when they are incorporated into the complaint by reference. *See, e.g.*, *SEC v. Siebel Sys., Inc.*, 384 F. Supp. 2d 694, 699 n.6 (S.D.N.Y. 2005) (taking judicial notice of transcripts relied upon by complaint). The other documents also are incorporated by reference into the TAC. (*See* TAC ¶¶ 34 (arrest reports); 38 (request to DA's Office); 55 (police reports).)

The Court takes judicial notice of these exhibits not for the truth of the facts asserted therein, but solely to determine what the respective parties said.[4]

### 3.    Analysis

#### a.    Count 2: 42 U.S.C. § 1983

Coggins asserts that the officers violated his constitutional rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments by conspiring to and actually fabricating evidence, falsifying documents and official records, withholding evidence, failing to follow proper policies and protocols, failing to intervene, falsely testifying before the grand jury; and conspiring as to the false arrest and imprisonment, abuse of process, and malicious prosecution. (TAC ¶ 106.) 42

U.S.C. § 1983 does not itself create substantive rights; it offers "a method for vindicating federal rights elsewhere conferred." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under § 1983, a plaintiff must allege: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, (2) by a person acting under the color of state law. 42 U.S.C. § 1983; *see also Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999).

The officers claim absolute immunity pursuant to *Rehberg*. Buonora also argues that the claim is inadequately pled. The Court addresses each contention in turn.

#### i.    Absolute Immunity

According to Buonora, *Rehberg* establishes that grand jury testimony cannot serve as the basis for any civil rights claim, and therefore the claims must be dismissed because the evidence shows that his only involvement in the prosecution of Coggins was the grand jury proceeding. Vara claims he is entitled to absolute immunity for his testimony and any related conspiracy.

As a threshold matter, the Court will not "confirm whether a fact is documented or whether it's no more than a supposition submitted solely in the hope of defeating a motion to dismiss."[5] (Motion to Dismiss, at 7.) In analyzing the sufficiency of a complaint, a court need not accept as true "conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of

---

[4] The remaining exhibits do not fall within the aforementioned exceptions and cannot be considered. *See, e.g.*, *Lyn v. Inc. Vill. Of Hempstead*, No. 03-CV-5041, 2004 U.S. Dist. LEXIS 30545, at *5 (E.D.N.Y. June 25, 2004) (refusing to consider police reports appended to officers' motion to dismiss case on immunity grounds). Even if the Court did consider such exhibits at this stage, it would not change the Court's determination at this juncture.

[5] For example, Buonora asserts that discovery shows it is "completely untrue" that he conspired with Vara. (Motion to Dismiss, at 7.) The officers also deny "that anything such as alleged occurred." (*Id.*)

which the court may take judicial notice." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001) (citing *Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995); *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971)). None of those situations are present here. Thus, the Court cannot entertain Buonora's factual challenges at this juncture because a substantial portion of Coggins's remaining allegations (in light of *Rehberg* and plaintiff's inability to proceed as to the alleged perjury) is that the officers tainted the reports, evidence, and statements in a manner that violated his constitutional rights to be free from a false arrest and a malicious prosecution. Thus, discovery is necessary to determine whether plaintiff can prove that the information contained in these exhibits and other evidence is false, and whether Buonora and/or Vara had involvement in the falsification of non-grand jury evidence and participated in the violation of plaintiff's constitutional rights. Accordingly, the Court accepts Coggins's allegations as true at this stage.

After reviewing the TAC, accepting its allegations as true, and drawing all reasonable inferences in favor of Coggins, the Court finds that the officers are not entitled to absolute immunity as a matter of law at this juncture. As set forth below, the protections in *Rehberg* are not as expansive as Buonora asserts. Pursuant to *Rehberg*, Buonora and Vera are entitled to absolute immunity with respect to any alleged unconstitutional conduct relating to the grand jury testimony, or any alleged conspiracy relating thereto. However, the TAC alleges more than an extra-judicial conspiracy to commit perjury and perjury before the grand jury. Instead, Coggins alleges a broader conspiracy and series of furthering acts, including the falsification and/or withholding of documents, evidence, and testimony related to Coggins's arrest

and prosecution. The parties may reassert such immunity at the summary judgment stage—after discovery concludes.[6]

Trial witnesses, including police officers, have absolute immunity with respect to any 42 U.S.C. § 1983 claims arising from that testimony, even if such testimony was perjured. *Briscoe v. LaHue*, 460 U.S. 325, 335–36, 341–46 (1983) (affirming dismissal of § 1983 claims arising from officers' perjured testimony during criminal trial). In *Rehberg*, the Supreme Court clarified that "a grand jury witness [also] has absolute immunity from any § 1983 claim *based on the witness' testimony*." 132 S. Ct. at 1506 (emphasis added); *see Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. June 20, 2012) (summary order) (noting that *Rehberg* extends *Briscoe*'s absolute immunity from § 1983 claims to grand jury testimony). "[T]his rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution." *Rehberg*, 132 S. Ct. at 1506.

*Rehberg*, however, does not justify absolute immunity where liability is based not "on the witness' testimony," but on other

---

[6] The Court is aware that "district courts are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery. . . . This is because '[a]n absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity.'" *Deronette v. City of New York*, No. 05-CV-5275, 2007 WL 951925, at *4 (E.D.N.Y. Mar. 27, 2007) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), and quoting *Imbler v. Pachtman*, 424 U.S. 409. 419 n.13 (1976)). As set forth *infra*, however, the Court cannot determine whether Buonora's and Vara's actions were "within the scope of the immunity" at this juncture. Thus, it is inappropriate to grant such immunity at this time.

conduct "laying the groundwork for an indictment"—where the perjury "was but one additional step" taken to push the case forward. *Sankar v. City of New York*, No. 07 CV 4726(RJD)(SMG), 2012 WL 2923236, at *3 (E.D.N.Y. July 18, 2012); *see Rehberg*, 132 S. Ct. at 1507 n.1 ("[W]e do not "suggest that absolute immunity extends to *all* activity that a witness conducts outside the grand jury room. For example, we have accorded only qualified immunity to law enforcement officials who falsify affidavits and fabricate evidence concerning an unsolved crime." (emphasis in original) (citations omitted)). This Court agrees with others in this circuit that find defendants' attempts to use *Rehberg* to "convert grand jury testimony into an all-purpose shield from malicious prosecution liability . . . unpersuasive," because "[t]he adoption of such a broad interpretation of *Rehberg* would allow any police officer—regardless of the extent of their involvement in laying the groundwork for an indictment—to escape liability merely be securing an appearance before a grand jury." 2012 WL 2923236, at *3; *see also Carr v. City of New York*, No. 11 Civ. 6982(SAS), 2013 WL 1732343, at *6 (S.D.N.Y. Apr. 19, 2013); *Del Col v. Rice*, No. 11 CV 5138(MKB), 2012 WL 6589839, at *14 n.19 (E.D.N.Y. Dec. 18, 2012).

As alleged in the TAC, Buonora and Vara did more than conspire to and commit perjury before the grand jury to further Coggins's prosecution. Their wrongful conduct allegedly began from the moment Vara improperly stopped, detained, assaulted, and chased Coggins on October 9, 2004. (*E.g.*, TAC ¶¶ 24–37.) Coggins claims the officers conspired and agreed to an altered version of what transpired that night, leading to the falsification and omission of information and evidence, and malicious prosecution. (TAC ¶ 35.) For instance, plaintiff alleges that Vara intentionally

omitted Buonora's name from the police reports. (TAC ¶ 34.) Plaintiff also alleges Buonora repeatedly lied to the DA's Office when he claimed he found a weapon at the scene. (TAC ¶¶ 51–52.)

In addition to alleging a conspiracy between the two officers to falsify reports and evidence in connection with Vara's alleged false arrest and the subsequent prosecution of plaintiff, the TAC also alleges that Buonora failed to intervene in Vara's unconstitutional actions. For example, the TAC alleges the following: "Upon information and belief, from the time of the arrest of Plaintiff COGGINS through the times that he met with the District Attorney's Office up until the time that the testified before the Grand Jury, Defendant Buonora was aware of the fact that the documents that had been prepared related to the detention, arrest, and prosecution of Plaintiff contained false information, omitted important and relevant information. Despite this knowledge, Defendant Buonora did not refute this evidence in any reports, statements to his supervisors or before the Grand Jury." (TAC ¶ 52.)[7] It further alleges that "[d]efendant BUONORA knew that a gun recovered by the Floral Park Officers was submitted to the Forensic Evidence Bureau under false pretenses but never informed his supervisors about this information." (TAC ¶ 56.) Thus, it is alleged that "[d]efendant BUONORA assisted in and conspired with Defendant VARA to arrest Plaintiff COGGINS, to fabricate evidence and *failed to intervene to prevent the malicious prosecution of Mr. Coggins.*" (TAC ¶ 57 (emphasis added).) It is well settled that "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights

---

[7] The Court is not considering the portion of this allegation relating to the grand jury in light of *Rehberg*.

of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). Thus, "[a]n officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official." *Id.* (citations omitted). Therefore, even if plaintiff cannot ultimately establish that Buonora was personally involved with Vara in falsifying paperwork to justify and conceal a false arrest and malicious prosecution, Buonora could still be potentially liable under a failure to intervene theory in Vara's unconstitutional arrest and in the malicious prosecution. In other words, plaintiff has articulated a plausible claim that, apart from Buonora's own conduct or any conspiracy with Vara, Buonora was aware of a false arrest and malicious prosecution by Vara and failed to intervene after that arrest to prevent the continuation of those constitutional violations even though, construing the allegations most favorable to plaintiff, there was sufficient time to intervene.

In short, Coggins adequately pleads facts that, if true, could establish the officers' liability under § 1983 separate and apart from the perjury. Accordingly, given the alleged non-grand jury conduct, Buonora and Vara do not have absolute immunity from suit at this juncture as a matter of law. *See White v. Frank*, 855 F.2d 956, 961 (2d Cir. 1988) ("Clearly, the plaintiff . . . appears to have a factual basis that will defeat a claim of immunity from liability for [malicious prosecution]. Whether that turns out to be the case cannot be determined at this stage. Since the availability of immunity cannot now be determined as a matter of

law, we lack jurisdiction over this interlocutory appeal and are obliged to dismiss so that the matter may proceed in the trial court.").[8]

### ii.   Adequacy of the Pleading

Buonora also argues that there is no allegation that he acted in his individual capacity. The Court disagrees. "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,"

---

[8] The Court also finds that the officers are not entitled to qualified immunity at this juncture, either.

> A defendant is entitled to qualified immunity on a motion to dismiss if the allegations of the complaint fail to state a claim of violation of clearly established law. Qualified immunity shields officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. A right is clearly established when the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . The unlawfulness must be apparent. Even where a right is clearly established, an official is entitled to qualified immunity nevertheless if it was objectively reasonable for the public official to believe that his acts did not violate that right[].

*Connell v. Signoracci*, 153 F.3d 74, 80 (2d Cir. 1998) (citations and quotation marks omitted).

It is beyond cavil that, *inter alia*, conspiring to and actually falsifying police records, evidence, and testimony violates clearly established rights of which Buonora and Vara should have known, and that no public official would think it was objectively reasonable to violate those rights. Thus, at this stage, the officers cannot sustain a claim of qualified immunity under the circumstances of this case.

whereas official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Davis v. Cnty. of Nassau*, 355 F. Supp. 2d 668, 675 (E.D.N.Y. 2005) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). To establish personal liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* (quoting *Graham*, 473 U.S. at 166). Thus, to properly plead individual capacity, the plaintiff must allege the "personal involvement" of the defendant in the "alleged constitutional deprivations." *Id.* at 676 (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). As detailed above, Coggins extensively alleges Buonora's direct participation in the alleged constitutional violations while on duty, rather than simply suing Buonora based on his employment alone. Such allegations of direct participation in an alleged violation can constitute "personal involvement" and therefore suffice to state a claim. *See id.*

Relatedly, Buonora contends that the Section 1983 conspiracy claim fails because Coggins does not allege that the conspiracy involved a private party. The Court again disagrees. To survive a motion to dismiss a § 1983 conspiracy claim, the plaintiff must allege (1) an agreement between two or more state actors or an agreement between a state actor and private party; (2) concerted acts to inflict an unconstitutional injury; and (3) an overt act done in furtherance of the goal of causing damages.[9] *Nealy v. Berger*, No. 08-CV-1322 (JFB)(AKT), 2009 WL

704804, at *5 (E.D.N.Y. Mar. 16, 2009) (citing *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002); *Carmody v. City of New York*, No. 05-CV-8084 (HB), 2006 WL 1283125, at *5 (S.D.N.Y. May 11, 2006)); *see also Sclafani v. Spitzer*, 734 F. Supp. 2d 288, 297 (E.D.N.Y. 2010). The TAC details the conspiracy between Buonora and Vara, both of whom are state actors acting under the authority of the NCPD. *See West v. Atkins*, 487 US. 42, 50 (1988) ("[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."). Moreover, as discussed in more detail *infra* with respect to the Section 1985 conspiracy claim, there is an exception to the intracorporate conspiracy doctrine where defendants are alleged to have acted outside the scope of their employment. At this juncture, the Court cannot determine whether the defendants acted within the scope of their employment and, thus, dismissal under the intracorporate conspiracy doctrine is unwarranted. *See, e.g., Randle v. Alexander*, No. 10 Civ. 9235 (JPO), 2013 WL 2358601, at *11 (S.D.N.Y. May 30, 2013) (denying motion to dismiss because prison guards were alleged to have acted outside scope of employment). In short, Coggins adequately states a § 1983 conspiracy claim.

Accordingly, the Court denies the motion to dismiss the entire § 1983 claim.

b.    Count 1: 42 U.S.C. § 1981

Coggins's first cause of action is under 42 U.S.C. § 1981. To establish a claim under § 1981, the plaintiff must allege (1) he is a member of a racial minority; (2) the defendant intended to discriminate against the plaintiff on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (*i.e.,*

---

[9] *Ciambriello* focuses on a § 1983 conspiracy against a private actor acting under color of state law. *See* 292 F.3d at 323–25 (analyzing sufficiency of conspiracy allegation against private actor). Nothing in *Ciambriello* forecloses a §1983 conspiracy involving two state actors. *Accord Bodkin v. Garfinkle*, 412 F. Supp. 2d 205, 214 (E.D.N.Y. 2006) ("Section 1985 applies to conspiracies of private individuals as well as state actors.").

make and enforce contracts, sue and be sued, give evidence, etc.). *Allen v. Suozzi*, No. 09-CV-1520 (JFB)(ARL), 2011 WL 1059147, at *2 (E.D.N.Y. Mar. 21, 2011) (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)). To survive a motion to dismiss, "the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994) (citations omitted).

Buonora argues that Coggins fails to allege any specific events giving rise to a plausible inference of discriminatory intent, or instances in which non-minorities were treated differently than him. The Court disagrees. The TAC sets forth numerous allegations of adverse conduct by Buonora and Vara toward Coggins that allegedly were based on his race. For example, the TAC alleges the following: that Vara stopped Coggins because of his race and not for any legal violation (*see* TAC ¶ 24); that Buonora, almost immediately upon arriving at the scene, yelled "Shoot him in the back" (TAC ¶ 28); and, as detailed *supra*, that the officers conspired to maliciously prosecute Coggins, fabricate and omit evidence, and misrepresent the events of October 9. The TAC also repeatedly alleges that these actions were based on racial animus. (*See* TAC ¶¶ 24 (alleging that Coggins was stopped because of his race); 37 (alleging that officers at the NCPD have engaged in such improper practices for years "particularly in situations where blacks and/or black males are involved"); 99 (alleging that all actions by the defendants "were motivated by race and color, and were marked by the conduct of Defendants to support the motivation").

Accepting these factual allegations as true and drawing all reasonable inferences from the officers' alleged conduct in Coggins's favor, the Court concludes that TAC sets forth a plausible § 1981 claim. Accordingly, the Court denies the motion to dismiss the § 1981 claim.

c.    Count 4: 42 U.S.C. § 1985

Coggins's fourth cause of action, under 42 U.S.C. § 1985(3), alleges that the officers conspired to bring about his "seizure, arrest, detention and false accusation, all without lawful or proper basis or justification on account of [his] race, color and gender." (TAC ¶ 144.)

Section 1985 prohibits two or more persons from conspiring for the purpose of depriving any person of the equal protection of the laws or of equal privileges and immunities under the laws. 42 U.S.C. § 1985(3). To adequately plead a claim under § 1985(3), a plaintiff must allege (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. *Hollman v. Cnty. of Suffolk*, No. 06-CV-3589 (JFB)(ARL), 2011 WL 280927, at *11 (E.D.N.Y. Jan. 27, 2011) (quoting *Mian*, 7 F.3d at 1087); *see Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (citing *Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586–87 (2d Cir. 1988)). A conspiracy "can be established by showing that the parties have a tacit understanding to carry out of the prohibited conduct." *Roach*, 165 F.3d at 146 (quoting *LeBlanc–Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995) (internal quotation marks omitted)). It must

also be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Id.* (quoting *Mian*, 7 F.3d at 1088). The plaintiff also must show "with at least some degree of particularity, overt acts which the defendants engaged in which were reasonable related to the promotion of the claimed conspiracy." *Simpson ex rel. Simpson v. Uniondale Union Free School Dist.*, 702 F. Supp. 2d 122, 133 (E.D.N.Y. 2010) (quoting *Thomas*, 165 F.3d at 146).

The County Defendants first argue that the TAC fails to plead a § 1985 conspiracy with any specificity because Coggins "does not allege exactly what the Defendant Police Officers agreed to and does not identify the overt act in furtherance of the conspiracy," "when the conspiracy occurred," "who started the conspiracy and when the other defendants became part of the conspiracy." (Motion to Amend Opp., at 5.) Buonora concurs. The County Defendants also argue that Coggins did not plead a protected status or identify any racial motivation or discriminatory animus behind the alleged conspiracy. The Court disagrees.

Defendants ignore the factual allegations in the TAC and the reasonable inferences that can be drawn therefrom. As noted above, it is reasonable to infer that Coggins is Black. To the extent this may not be explicit from the proposed TAC, Coggins may re-plead this fact. Further, contrary to the County Defendants' position, there are numerous allegations about the officers' conspiracy and actions after Coggins's arrest. Coggins alleges that racial motivations underlay this conduct. (*E.g.*, TAC ¶¶ 144 ("Defendant VARA and Defendant BUONORA expressly and impliedly, agreed with each other to bring about plaintiff's seizure, arrest, detention and false accusation, all without lawful or

proper basis or justification on account of Mr. Coggins' race, color and gender."); 145 (same).) In sum, given the expansive nature of the conspiracy and the allegations in the TAC, the Court concludes that the allegations plausibly assert a discriminatory animus behind the officers' actions. (*Cf.* TAC ¶ 37 ("Officers at the [NCPD] have been engaging in improper practices and procedures for years, which includes but is not limited to the practice of falsifying documents, omitting information and failing to properly document incidents, particularly in situations where blacks and/or black males are involved.").)

Defendants also argue that the intracorporate conspiracy doctrine bars the Section 1985(3) claim because the officers are employed by the same institutional defendant. Under this doctrine, a plaintiff fails to state a § 1985 conspiracy claim "if the conspiratorial conduct challenged is essentially a single act by a single corporation [or municipal entity] acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment." *Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 465 (S.D.N.Y. 2012) (quoting *Hermann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978); *see also Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008) (affirming dismissal of § 1985 conspiracy claim where defendants were all Southampton Police Department employees). An exception to this doctrine exists where a plaintiff alleges facts that tend to show the defendants were "pursuing personal interests wholly separate and apart from the entity." *Hartline v. Gallo*, No. 03 Civ. 1974, 2006 WL 2850609, at *9 (E.D.N.Y. Sept. 30, 2005), *rev'd on other grounds*, 546 F.3d 95 (2d Cir. 2008); *see Chance v. Reed*, 538 F. Supp. 2d 500, 509 (D. Conn. 2008) (explaining that it is possible for a conspiracy to exist despite the intracorporate doctrine "when the individual

defendants are alleged to have been motivated by an independent personal stake in achieving the [organization's] objective" (internal citations and quotation marks omitted)). Personal racial bias, however, "does not constitute personal interest and is not sufficient to defeat the intracorporate conspiracy doctrine." *Bond v. Bd. of Educ.*, No. 97 CV 1337, 1999 WL 151702, at *2 (E.D.N.Y. Mar. 17, 1999) (explaining that although complaint alleged that defendant wanted to "get rid of" plaintiff, this personal bias would not stop the application of the intracorporate doctrine).

The officers are employees of a single municipal entity, but the alleged conspiracy consists of actions taken by the officers that go beyond mere personal bias and the scope of their employment. Coggins alleges that the officers acted in concert to fabricate the charges and evidence, omit relevant facts from reports, and ensure his malicious prosecution. These allegations, if assumed to be true, plausibly suggest that the officers acted in their own personal interest—such as to avoid disciplinary action for their allegedly improper conduct—and not in the interest of the NCPD, in fabricating the evidence and charges against Coggins. *See Hill v. City of New York*, No. 03 Civ. 1283, 2005 WL 3591719, at *6 (E.D.N.Y. Dec. 30, 2005) (finding that plaintiff's allegations that defendants conspired to cover up one of defendant's alleged use of excessive force was sufficient to apply "personal stake" exception to intracorporate conspiracy doctrine); *Alvarez v. City of New York*, 2012 WL 6212612, at *3 (S.D.N.Y. Dec. 12, 2012) (same); *cf. K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 210 (S.D.N.Y. 2013) (finding exception inapplicable because complaint alleged that defendants were "on duty" and acting "within the scope of their employment" at time of alleged conspiracies). Therefore,

Coggins adequately pleads an exception to the intracorporate conspiracy doctrine.

Accordingly, the Court denies the motion to dismiss the § 1985 claim.

        d.      Count 5: 42 U.S.C. § 1986

The 42 U.S.C. § 1986 cause of action is untimely. Section 1986 provides that "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued." The DA's Office dismissed the charges against Coggins on August 12, 2005. Therefore, even if the claim relates back to the original 2007 complaint, this action is untimely because the alleged § 1985(3) conspiracy and resulting injuries to Coggins occurred on or before August 12, 2005. Accordingly, the Court grants the motion to dismiss the § 1986 claim.

        e.      State Law Personal Injury Claims

Coggins brings state intentional tort claims for fraudulent misrepresentation, abuse of process and malicious prosecution, and false arrest and imprisonment; a claim for negligence; and a claim for intentional infliction of emotional distress. Buonora moves to dismiss these claims as procedurally barred under N.Y. General Municipal Law § 50-i ("Section 50-i" or "§ 50-i"), as inadequately pled, or both.

        i.      Absolute Immunity

As a threshold matter, Buonora contends that he is entitled to absolute immunity from the state law claims in their entirety. For the same reasons the Court denies that motion with respect to the federal claims, the Court also denies the motion on that ground as to the state claims.

ii.     Other Grounds

Buonora argues that the intentional tort claims are untimely because the statute of limitations in § 50-i applies, the claims accrued no later than August 12, 2005, and Coggins only filed suit in August 2007. Buonora also contends that the Court should not apply the statute of limitations in N.Y. C.P.L.R. ("CPLR") 213-b, because the claims accrued when Coggins was arrested then prosecuted, not when Buonora committed perjury. Further, Buonora argues that the state law claims must be dismissed because Coggins never filed a Notice of Claim. Coggins does not reply to these contentions; instead, he argues that the Court addressed the statute of limitations issue in its 2008 Memorandum and Order and deferred a ruling until after discovery.[10]

State claims brought under state law in federal court are subject to state procedural rules. *See, e.g.*, *Felder v. Casey*, 487 U.S. 131, 141 (1988). Thus, New York County Law § 52 applies in this case and incorporates the statute of limitations and notice of claim requirements in N.Y. General Municipal Law §§ 50-e and 50-i. Section § 50-i(1) provides that a plaintiff must commence any action against a county for "personal injury" within one year and ninety days from the claim's accrual.[11] *See*

Campbell v. City of New York, 791 N.Y.S.2d 880, 882 (N.Y. 2005); *see, e.g.*, *Geslak v. Suffolk Cnty.*, No. 06 Civ. 251, 2008 WL 620732, at *2 (E.D.N.Y. Mar. 5, 2008) (applying § 50-i limitations period to state claim in federal court). CPLR § 213-b provides that "an action by a crime victim . . . may be commenced to recover damages from a defendant . . . convicted of a crime which is the subject of such action, for any injury or loss resulting therefrom within seven years of the date of the crime." New York State courts liberally construe § 213-b and apply it to a range of crimes. (*See* 2008 Memorandum and Order, at 15.) "[T]he benefit of CPLR 213-b has been denied only in those cases where there was no causal connection between the crime for which defendant was convicted and the damages sought." (*Id.* (quoting *Cavanaugh v. Watanabe*, 806 N.Y.S.2d 848, 849 (N.Y. Sup. Ct. Dec. 19, 2005).)

Section § 50-i(2) provides that "[t]his section shall be applicable notwithstanding any inconsistent provisions of law." In contrast, CPLR § 201 provides that an action must be commenced within the time period specified in Article 2 unless a different time is prescribed by law. Thus, courts hold that § 50-i(c) applies with respect to an action against a municipality or against a municipality's employee acting in the performance of her duties and within the scope of her employment when she committed the alleged tort—in which case the municipality must indemnify the individual and therefore is the real party in interest. *Ruggiero v. Phillips*, 739 N.Y.S.2d 797, 799–800 (N.Y. App. Div. 2002) (citing *Clark v. City of Ithaca*, 542 N.Y.S.2d 819, 821 (N.Y. App. Div. 1997)). On the other hand, if the individual was not acting within the scope of her employment, then the

---

[10] In that Order, the Court found that it could not determine at this stage and without further discovery whether the intentional tort claims are timely. The Court reasoned that § 213-b could be applicable because a causal connection could exist between Buonora's crime of perjury and the physical, emotional, and financial damages Coggins allegedly suffered. (*See* 2008 Memorandum and Order, at 15–16.) The Court did not consider whether to apply the one year and ninety day statute of limitations in General Municipal Law § 50-i(1).

[11] "Personal injury" includes malicious prosecution, assault, battery, false imprisonment, or other

actionable injury to the person either of the plaintiff, or of another. N.Y. Gen. Const. Law. § 37-a.

statute of limitations in the CPLR applies. *Id.* (citing *Tumminello v. City of New York*, 622 N.Y.S.2d 714, 715 (N.Y. App. Div. 1995).

Section 50-e requires that a notice of claim be filed within ninety days of the incident giving rise to the claim. Moreover, pursuant to § 50-i, a plaintiff must plead that: (1) a notice of claim was served; (2) at least thirty days elapsed since the notice of claim was filed and before the complaint was filed; and (3) in that time, the defendant neglected to or refused to adjust or satisfy the claim. *See Horvath v. Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006) (citing N.Y. Gen. Mun. Law § 50-i(1)). "Notice of claim requirements are construed strictly by New York state courts. Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793–94 (2d Cir. 1999) (internal quotations and citations omitted); *see Horvath*, 423 F. Supp. 2d at 423 ("Absent a showing of such a Notice of Claim, the complaint may be dismissed for failure to state a cause of action." (internal quotation omitted)). Accordingly, for the asserted state law claims, "[t]he failure to file a notice of claim is fatal unless the action has been brought in the public interest, such as a class action brought to protect civil rights, or a court has granted leave to serve late notice." *Pustilnik v. Hynes*, No. 99 Civ. 4087(JG), 2000 WL 914629, at *6 (E.D.N.Y. June 27, 2000) (citation omitted).

Based on these principles, and taking the allegations in the TAC as true and drawing all reasonable inferences therefrom in favor of Coggins, the Court finds that it is premature to decide whether the majority of the state law claims are procedurally barred.

First, as the Court explained *supra*, Coggins's allegations that the officers acted in concert to fabricate the charges and evidence, omit relevant facts from reports, and ensure his malicious prosecution plausibly suggest that the officers acted in their own personal interest—such as to avoid disciplinary action for their allegedly improper conduct—and not in the interest of the NCPD, in fabricating the evidence and charges. Thus, at this juncture and without further discovery, the Court cannot find as a matter of law that the officers were acting within the scope of their employment—making the County the real party in interest—and not solely on their own behalf. Therefore, at this stage, the Court cannot find as a matter of law that § 50-i applies and that Coggins's claims must be dismissed for failure to file a Notice of Claim and bring suit within the one year and ninety days of the claims' accrual. *See Coe v. Town of Conklin*, 942 N.Y.S.2d 255, 256–57 (N.Y. App. Div. 2012) (finding that defendant town was real party in interest and statutory statute of limitations applied because plaintiff did not allege that town board member acted outside scope of his employment); *Kalpin v. Cunningham*, 401 N.Y.S.2d 659, 659 (N.Y. App. Div. 1978) (affirming order denying motion to dismiss for failure to file notice of claim because allegations could be construed against defendant in her individual capacity).

Second, in light of that conclusion, the Court cannot determine at this stage whether the statute of limitations in CPLR § 213-b applies to the abuse of process, malicious prosecution, and intentional infliction of emotional distress claims.[12] The Court

---

[12] The fraudulent misrepresentation claims are not covered by N.Y. C.P.L.R. 215(3). Instead, "[i]ntentional misrepresentation claims are governed by the six-year statute of limitations for actual frauds." *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 51 F. Supp. 2d 457, 670 (S.D.N.Y. 1999).

agrees with Buonora that his liability for these claims may be circumscribed because they may have accrued before Buonora committed and was convicted for perjury. That fact, however, does not mean that Coggins also was not injured under these torts because of the perjury, given that the DA's Office dismissed the claims five months after Buonora committed perjury. Indeed, the TAC states that as a "direct result" of the alleged misconduct, Coggins "has suffered and continues to suffer loss of income, loss of other employment benefits, loss of career opportunities, and has suffered and continues to suffer repeated, severe and permanent psychological and physical trauma." (TAC ¶ 94.) Thus, in light of New York State courts' expansive interpretation of CPLR § 213-b—and assuming all of the allegations in the TAC are draw, and drawing all reasonable inferences in favor of Coggins—the Court declines to determine as a matter of law that no causal connection exists between Buonora's crime of perjury and the damage Coggins allegedly suffered.[13]

Therefore, the Court denies the motion to dismiss the fraudulent misrepresentation, abuse of process and malicious prosecution, intentional infliction of emotional distress, and negligence claims as procedurally barred. The dismissal is without prejudice to Buonora's renewing these defenses at the summary judgment stage after the parties have conducted discovery on the factual issues that relate to the application of Section 50-i and CPLR § 213-b.

### iii.    Negligence

Buonora argues that the negligence claim must be dismissed because it merely restates the 42 U.S.C. §§ 1981 and 1983 claims, and he is absolutely immune from civil liability. The Court has declined to hold that Buonora that he is absolutely immune from all the claims in this lawsuit at this stage. Further, the Court's 2008 reasoning remains applicable: Coggins's alternative theories of liability comply with Federal Rule of Civil Procedure 8. Thus, there is no reason to dismiss the negligence claim on the grounds that Coggins also brought causes of action pursuant to §§ 1981 and 1983. (*See* 2008 Memorandum and Order, at 16.) Accordingly, the Court denies the motion to dismiss the negligence claim.

### f.    Request for Sanctions

Coggins requests that the Court levy sanctions pursuant to Federal Rule of Civil Procedure 11 because Buonora brought the Motion to Dismiss to harass, cause unnecessary delay, and increase the cost of the litigation. For the following reasons, the Court denies Coggins's request.

Under Rule 11, to avoid the risk of sanctions, counsel must undertake reasonable inquiry to "ensure that papers filed are well-grounded in fact, legally tenable, and not interposed for any improper purpose." *Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294, 307 (S.D.N.Y. 2005) (internal quotation marks omitted) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)). In considering a motion for sanctions under Rule 11, this Court applies an objective standard of reasonableness. *See MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 73 F.3d 1253, 1257–58 (2d Cir. 1996).

---

[13]  The false arrest and imprisonment, however, occurred from October 9–11, 2004. Under New York law, the false arrest claim ends at arraignment, and subsequent damages are attributable to a malicious prosecution. *See Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992). Thus, this claim could not have accrued because of Buonora's perjury, and the one year statute of limitations in CPLR 215(3) applies. Accordingly, the Court dismisses this claim as untimely.

Moreover, "Rule 11 is violated only when it is patently clear that a claim has absolutely no chance of success." *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986) (internal quotation marks and citation omitted). Additionally, "when divining the point at which an argument turns from merely losing to losing and sanctionable, . . . courts [must] resolve all doubts in favor of the signer" of the pleading. *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (internal quotation marks omitted).

Although Buonora reiterated several contentions in his original motion although the Court addressed them in 2008, there is no basis to conclude that the instant motion was brought in bad faith. Coggins filed an expanded complaint, Buonora in good faith believed (albeit incorrectly) that *Rehberg* affected the entirety of the claims, and he raised issues the Court never ruled upon prior to *Rehberg*. That the Court denies the majority of the motion does not warrant the imposition of sanctions. *See, e.g.*, *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990) ("The positions advanced by [plaintiff] and his attorney, however faulty, were not so untenable as a matter of law as to necessitate sanction. Nor did they constitute the type of abuse of the adversary system that Rule 11 was designed to guard against."); *Scientific Components Corp. v. Sirenza Microdevices, Inc.*, No. 03–CV–1851 NGG, 2007 WL 1026411, at *5 (E.D.N.Y. Mar. 30, 2007) ("The court agrees that [the defendant] has been imprudent in choosing to litigate this claim. However, Rule 11 sanctions are not appropriate where there is a viable claim that is weak."); *Eisenberg v. Yes Clothing Co.*, No. 90 CIV. 8280(JFK), 1992 WL 36129, at *4 (S.D.N.Y. Feb. 19, 1992) ("Rule 11 sanctions are not to be imposed on every litigant that files a motion that the Court deems premature, or ill-advised, or weak.").

In sum, no grounds for sanctions exist. Accordingly, the Court denies Coggins's request for sanctions under Rule 11.

IV.   CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Coggins's motion to amend. The Court grants in part and denies in part Buonora's motion to dismiss.

Specifically, the Court dismisses Coggins's 42 U.S.C. § 1986 and New York State false arrest and imprisonment claims as time-barred. The dismissal is with prejudice. The Court also grants the motion to dismiss the federal claims on absolute immunity grounds to the extent those claims rely upon, in any way, any alleged perjury in the grand jury (or conspiracy to commit such perjury). However, the motion to dismiss the remainder of those federal claims (and related state claims) on absolute immunity grounds is denied, and the remainder of the motion to dismiss is denied. The Court finds the motion for summary judgment premature and denies it without prejudice to its renewal after discovery concludes. Finally, the Court denies Coggins's request for sanctions against Buonora.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 2, 2013
        Central Islip, NY

\*\*\*

Plaintiff is represented by Frederick K. Brewington and Valerie M. Cartright of the Law Offices of Frederick K. Brewington, 556 Peninsula Boulevard, Hempstead, NY 11550. The County Defendants are represented by Diane C. Petillo from the Office of the Nassau County Attorney, One West Street, Mineola, NY 11501. Defendant Buonora is represented by Laurence Jeffrey Weingard and Mitchell F. Senft of Hayt, Hayt & Landau, 600 Northern Boulevard, Great Neck, NY 11021.