FILED
CLERK

12/30/2013

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
                               .
Darryl T. Coggins,            .    Docket #CV-07-3624 (JFB)
                              .
         Plaintiffs,          .
                              .    United States Courthouse
             V.               .    Central Islip, New York
                              .    September 9, 2013
County of Nassau, et al.,     .    2:33 p.m.
                              .
         Defendants.          .
...............................
```

TRANSCRIPT OF ORAL ARGUMENT ON MOTION
BEFORE THE HONORABLE JOSEPH F. BIANCO
UNITED STATES DISTRICT COURT JUDGE


APPEARANCES:

For The Plaintiffs:            Valerie M. Cartright, Esq.
                               Law offices of Frederick K.
                               Brewington
                               556 Peninsula Blvd.
                               Hempstead, NY 11550


For The Defendants:            Diane C. Petillo, Esq.
County of Nassau & Officer     Office of the Nassau County
James Vara                     Attorney
                               One West Street
                               Mineola, NY 11501


For The Defendant:             Laurence J. Weingard, Esq.
Officer Craig Buonora          Law office of Laurence J.
                               Weingard
                               250 West 57th St.-Ste. 401
                               New York, NY 10107

                               Mitchell F. Senft, Esq.
                               Law office of Laurence J.
                               Weingard
                               250 West 57th St.-Ste. 401
                               New York, NY 10107

2

Audio Operator:

Transcribing Firm:                    Writer's Cramp, Inc.
                                      6 Norton Rd.
                                      Monmouth Jct., NJ 08852
                                      732-329-0191

**Proceedings recorded by electronic sound recording, transcript produced by transcription service.**

1            THE CLERK:  Calling Case, 07-CV-3624, Coggins vs.

2   County of Nassau.  Please state your appearance for the

3   record.

4            MS. CARTRIGHT:  Valerie Cartright from the law

5   office of Frederick K. Brewington, 556 Peninsula Blvd., 11550,

6   Hempstead, New York.  Your Honor, may we remain seated when we

7   speak?

8            THE COURT:  Yes.

9            MS. CARTRIGHT:  Thank you.

10            MS. PETILLO:  Good afternoon, Your Honor, Diane C.

11   Petillo, for the Defendant, County of Nassau and Officer Vara,

12   Nassau County Attorney's office, One West Street, Mineola, New

13   York 11501.

14            MR. WEINGARD:  Laurence Jeffrey Weingard, for

15   Defendant Buonora, 250 West 57th St., New York City.

16            MR. SENFT:  Mitchell F. Senft, associated with the

17   law office of Laurence Jeffrey Weingard.

18            THE COURT:  Okay.  Good afternoon, everybody.  How's

19   your wife doing, Mr. Weingard, she okay?

20            MR. WEINGARD:  Thank you for asking, Judge.  We'll

21   know more in October.

22            THE COURT:  Good.

23            MR. WEINGARD:  But thank you.

24            THE COURT:  Sure.  As you know, we're here for

25   argument on -- it's actually -- we have very different

1   procedural postures here because the County chose to oppose

2   the Motion to Amend, whereas, Mr. Weingard essentially -- not

3   essentially, did choose to file a Motion to Dismiss and for

4   Summary Judgment against the Amended Complaint.  We have two

5   different procedural postures.  I don't think it really

6   matters, because I think as we've discussed before, the

7   standard is the same, whether or not it's filed as a Motion to

8   Dismiss or Opposition to a Motion to Amend, the standard is

9   whether or not it could survive a Motion to Dismiss standard,

10  although Mr. Weingard is urging the Court to also view it

11  under the Summary Judgment standard, which we'll discuss.

12  But, in any event, that's the posture that we're in, and I'm

13  going to let the Defendants go first.  So, Ms. Petillo, do you

14  want to start, or Mr. Weingard, I don't care who starts.

15          MS. PETILLO:  Do you want to start?

16          MR. WEINGARD:  Up to you.  Judge, do you want us up

17  at the podium?

18          THE COURT:  No, you may be seated.  It's fine.

19          MS. PETILLO:  Your Honor, one of the first issues we

20  have with the Amended Complaint is it makes reference to a

21  conspiracy based on race, arguing that the sole reason that

22  Mr. Coggins was stopped on the night in question was based on

23  his race.  However, if you review the Complaint -- or I should

24  say, a review of the Complaint indicates that there was no

25  claim that he's a member of a protected class.  There's no

1   reference to he being a member of a protected class.  There's
2   just this reference later on in the Complaint; I believe it's
3   paragraph 24, stating that he was stopped "because of his race
4   and color, having committed no violation of law."  So under
5   1985, there needs to be some type of a claim that you're in a
6   protected class.  There also needs to be allegations of a
7   conspiracy being that there was a conspiracy for purposes of
8   depriving either directly or indirectly equal protection of
9   the laws, and act in furtherance of the conspiracy and some
10  type of injury to the person or property.  We know that
11  there's no allegation with respect to he being a member of a
12  protected class.  With respect to the conspiracy itself, the
13  first issue with that is that there's no specifics as to the
14  fact that the Defendants agreed that there was any agreement
15  between the Defendants, what was agreed to, what acts they
16  would take in furtherance of that conspiracy -- there's all
17  these vague allegations that, you known, they decided to --
18  the Plaintiff's fourth cause of action alleges that {quote}
19  "Defendant Vara and Defendant Buonora expressly and impliedly
20  agreed with each other to bring about Plaintiff's seizure,
21  arrest, detention, false accusation, all without proper basis
22  or justification on account of Mr. Coggins' race, color, and
23  gender."  There's no specifics as to what exactly they agreed
24  to, how they were going to accomplish that, and that aside, at
25  the time of this incident, both Buonora and Vara were members

1    of the Nassau County Police Department.  So, based on the fact

2    that they were members of the same Government or corporate

3    entity, there can be no conspiracy on that basis.

4         Also with respect to the 1986 Failure to Intervene, under

5    --

6         THE COURT:  I just want to go back to what you said

7    there, because I guess I don't -- the conspiracy -- I mean,

8    they spent pages and pages describing the conspiracy.  I guess

9    I don't understand -- this is not -- believe me, I've

10   dismissed many a complaint because of a conclusory allegation

11   of conspiracy, but the conspiracy that they're describing here

12   is a conspiracy to essentially frame Mr. Coggins in terms of

13   the possession of the firearm, where they're alleging that

14   both officers knew that it was not his and that they engaged

15   in a conspiracy to have him arrested and then prosecuted for

16   possession of a weapon that was not his.  I mean, that's the

17   conspiracy.

18        MS. PETILLO:  And even if we assume that, Your

19   Honor, they're still members of the Nassau County Police

20   Department.  They are members of the same entity.

21        THE COURT:  I know, but if their allegation is -- I

22   think there's an exception to the Intracorporate Conspiracy

23   Doctrine if it's for personal reasons, and they're alleging in

24   connection with this, that it is because of his race.  And I

25   understand you're saying they don't allege --

 1          MS. PETILLO:  Which they don't allege in the

 2     complaint, which is --

 3          THE COURT:  But they could correct that.  I mean

 4     that's one sentence if he's -- you'll get your turn, Mr.

 5     Weingard.  You know, if he's African American -- I don't know

 6     what his race is, but whatever it is, that's not a defect that

 7     they can't correct, but if the officers did knowingly

 8     fabricate evidence in terms of his possession of a gun based

 9     upon his race, I'm not sure the Intracorporate Conspiracy

10     Doctrine would protect that type of conspiracy because of that

11     exception.  But go ahead.

12          MS. PETILLO:  There's also the issue Officer Vara

13     being entitled to absolute immunity based on his testimony

14     before the Grand Jury.

15          THE COURT:  I know, but this is really what this

16     whole motion is about, based upon the Supreme Court's

17     decision, and Mr. Weingard obviously is going to address this,

18     too.  But, we've already talked somewhat about this issue.

19     They allege all sorts of conduct unrelated to the actual

20     testimony before the Grand Jury, and I want you or Mr.

21     Weingard to point to any language in Rehberg itself or any

22     circuit Court in the United States that has said that that

23     doctrine extends to everything that a police officer does in

24     connection with an arrest and prosecution once he goes into

25     the Grand Jury.  What you are inviting me to do is say that if

1   someone perjures themself in the Grand Jury, then they have

2   absolute immunity, not just for what they did in the Grand

3   Jury, but everything that they did in connection with the

4   case.  And that, certainly is not the law, and I think Mr.

5   Weingard realizes that that's not the law, which is why he

6   makes a separate argument in his brief, which is problematic

7   in and of itself, which is that there's not enough evidence to

8   show that they did anything else other than to perjure

9   themselves in the Grand Jury.  But is it your position that

10  you have absolute immunity if you falsify police reports -- is

11  it your position that you have absolute immunity for that?

12          MS. PETILLO:  No, Your Honor.  My position --

13          THE COURT:  That's what they're alleging, though.

14          MS. PETILLO:  They're also alleging that there was

15  false testimony before the Grand Jury, and my position is --

16          THE COURT:  Okay, so --

17          MS. PETILLO:  -- that any claims with respect to

18  that testimony before the Grand Jury, those claims Officer

19  Vara has absolute immunity for.

20          THE COURT:  I know, but then I don't think they have

21  to divide them up into separate claims.  In other words,

22  there's not one claim for Grand Jury testimony.  There's a

23  claim for 1983 based upon violation of his civil rights, you

24  know, under several theories.  So, if there was a separate

25  claim that said Section 1983 claim based upon Grand Jury

1    testimony, then maybe that particular claim should be

2    dismissed, but the claim is one for an overall violation of

3    his rights in connection with the arrest and the prosecution

4    of his case.  So, there's nothing for me to dismiss, based

5    solely on his Grand Jury testimony.  The law is that he can't

6    be held liable based upon that testimony, but they're

7    asserting much, much more in this complaint.

8         MS. PETILLO:  That was the sum and substance of our

9    arguments with respect to the amendment of the Complaint, Your

10   Honor.

11        THE COURT:  Okay.  Okay, go ahead Mr. Weingard.

12        MR. WEINGARD:  Thank you very much.  My

13   understanding of the racial allegations required a more than

14   just summary allegations, conclusory allegations, but must set

15   forth facts which constitute motivation predicated on race.  I

16   looked at this rather long and -- well, this rather long

17   Complaint.  I see some summary language which says that it's

18   predicated on color, race, and so on, but there is not a

19   single factual allegation in all of the literal pages, 30

20   some-odd pages, which contain factual allegations related to

21   motivation as it relates to why this man was stopped and why

22   he was detained briefly before he ran away.  And it seems

23   logical to me, based on Iqbal and various other cases both in

24   this circuit and elsewhere, that in order to prevail on these

25   civil rights claims, you have to have a motivational

1    experience.  It has to say in facts, not in conclusions, that

2    there is a motivation predicated on race which would justify a

3    1983 or a 1981, or for that matter, an 85 or 6 claim, and

4    there is not a single reference to a fact as opposed to

5    conclusions, surmise, and so forth.  Given the Facial

6    Plausibility Doctrine, I don't understand how anybody can

7    sustain a 1981 and 3 claim, much less a 5 and 6 claim where

8    you cannot at least allege facts, and they've had four chances

9    to do so.  I have yet to see a single fact saying that the

10   motivation -- and I'm not going to cover this from everybody's

11   point of view.  I'm going to deal purely and simply with my

12   client.  There is not a hint of a motivation on the part of my

13   client predicated in race.  And that is the standard, as I

14   understand it.  Not only the standard, but in order to have

15   facial plausibility, you must allege factual content from

16   which Your Honor can draw an inference that there is that

17   motivation.  I went through this Answer yesterday.  I was

18   unable to find anything.  Perhaps I did it too quickly, or

19   perhaps I did it too slowly, because anyway I did it, I

20   couldn't find it.  Yes, they say in all of their multiple

21   counts that this was all predicated on race, but there is not

22   a single fact to show that.  They don't show how whites were

23   treated differently than blacks, how Asians were treated

24   differently than blacks, how any other minority group or

25   majority group was treated differently.  In and of itself, and

1    based on the <u>Iqbal</u> standards, these claims must fail, and

2    they've had forever within which to figure out what their

3    factual allegations are.  Conclusory, yes.  Surmise, yes.

4    Facts, zero.  Not a fact contained which shows the malevolent

5    motivation required by 1983, 1981, 5, and 6.  And if you look

6    at nothing else from the point of view of that, you'll see

7    that they fail in their pleading obligations, predicated on

8    the facial plausibility as opposed to possibility doctrine of

9    <u>Iqbal</u>.  If I may turn from that, unless the Court has

10   questions?

11            THE COURT:  Well, I might -- I guess they're also

12   entitled to any reasonable inferences that could be drawn from

13   the fact --

14            MR. WEINGARD:  I'm so sorry, Judge.  I couldn't hear

15   you.

16            THE COURT:  I said, they're also entitled to

17   reasonable inferences that could be drawn from the fact, and I

18   guess the question would be if, in fact, they were able to

19   prove everything that they say in the Complaint, which would

20   essentially then establish that your client fabricated

21   evidence to implicate Mr. Coggins in the possession of the

22   weapon and also said to shoot him as he was running, after he

23   says he was being threatened -- what motivation -- what

24   inference should the Court draw from that?  What would be the

25   motivation for that if that were all true?

1          MR. WEINGARD:  Judge, the problem with it is that

2     there is not a factual allegation that shows its race based or

3     motivated.  It may be --

4          THE COURT:  Why isn't that plausible?  Why isn't it

5     plausible that it was race based at this point?

6          MR. WEINGARD:  No, it may be possible, Judge, but it

7     is not plausible, because there are no facts from which you

8     can draw that inference.  And incidentally --

9          THE COURT:  I know, but we haven't completed

10    discovery, how could we have the facts?  They didn't even --

11         MR. WEINGARD: Judge, we have 780 pages of material

12    that has transpired, including a special investigation by the

13    Nassau County Attorney's office, a special investigation

14    conducted by the Nassau County Police Department, and no where

15    --

16         THE COURT:  Has you client been deposed?

17         MR. WEINGARD:  No.

18         THE COURT:  Has Officer Vara been deposed?

19         MR. WEINGARD:  No.

20         THE COURT:  So, don't you think those would be two

21    important witnesses on what the motivation for this might have

22    been?

23         MR. WEINGARD:  Judge, the answer is no.  I'll tell

24    you why.  Because when the Nassau County Police Department

25    went through this after the Plaintiff's case had been

1    dismissed, after my client had committed perjury, and after my

2    client had pleaded guilty to perjury, because the police

3    department was trying to assess an appropriate level of

4    punishment within their rules and regulations, and they never

5    concluded that this was race based.  They never concluded that

6    that was a motivation for what occurred.  They concluded that

7    there was a violation of some procedure not to have done those

8    things, but not that it was motivated by race.  There has been

9    an extensive amount of discovery in this case.  Yes, you can

10    go through more and more and more depositions and yes, we can

11    have still yet another application to amend this Complaint,

12    and yes, all of those things will happen, but what won't

13    happen is that you will find in all of that mess, a single

14    reference to a race-based motivation, and if you look at this

15    Complaint alone, there is none.  And turning for a moment to

16    my client having fabricated a weapon or fabricated evidence,

17    that is pure speculation.  It is completely false.  My client,

18    you will recall, originally said he found the gun, and then he

19    said he did not because that was his perjury.  He did not

20    fabricate a gun, and oh, incidentally, that was a 9 mm gun.

21    Next to the car was found still yet another fully loaded

22    magazine of a different caliber.  There was not --

23         THE COURT:  I know, but Mr. Weingard, you keep --

24    this is the whole problem with this motion at this time.  You

25    want to argue as if we're sitting here on Summary Judgment.

1   You want that to be true.  But it's not true.  We're not on

2   Summary Judgment here.  We are still on a Motion to Dismiss

3   stage because, for a number of years, this case has not been

4   allowed to proceed in discovery.  So you want me to conclude

5   that, even though they allege that there was a fabrication of

6   evidence in this case -- you just want me to reject that.  You

7   want me to reject what they are alleging in the Complaint, and

8   act as if it's not there, and you know I can't do that.  You

9   want me to do the same thing when we get to the Rehberg issue.

10  You want me to -- even though they have alleged that your

11  client is involved in the preparation of police reports, you

12  say in your brief, that's false Judge, that never happened,

13  and you know that never happened because discovery to date has

14  not shown that to be true.  So, you want to litigate this case

15  as if all the facts are out, but they're not all out.

16          MR. WEINGARD:  But they certainly with regard to the

17  latter, they have 850 pages of documents, including 150 of

18  which that they, themselves, submitted, and there is not even

19  a hint of any of those things.  Nothing contained within them

20  reflect --

21          THE COURT:  They --

22          MR. WEINGARD:  -- racial motivation --

23          THE COURT:  Okay, okay, let's --

24          MR. WEINGARD:  -- or the fabrication of evidence.

25          THE COURT:  Well, let's go to the Section 1983 Claim

```
 1    itself, because obviously you don't need a racial component
 2    for that.  So, what's your response to the questions that I
 3    asked Ms. Petillo?  Does Rehberg protect your client --
 4              MR. WEINGARD:  Yes.
 5              THE COURT:  -- if he was involved --
 6              MR. WEINGARD:  Oh, I'm sorry Judge, pardon me.  The
 7    answer is yes, but please, finish.  I'm sorry.
 8              THE COURT:  So, your position is that if your client
 9    was involved in the preparation of false police reports that
10    resulted in the detention and malicious prosecution of their
11    client, that Rehberg says he has absolute immunity?  That's
12    your position?
13              MR. WEINGARD:  No, no.  No, no.
14              THE COURT:  Okay.  See, you answered too quickly.
15              MR. WEINGARD:  Quite honestly, I think that that's
16    true, but I'm not going to receive a welcomed response to
17    that.
18              THE COURT:  Okay.
19              MR. WEINGARD:  So I will lay that aside for the
20    moment.
21              THE COURT:  Well, before you lay that aside for a
22    moment, do you -- tell me, when you say you believe that's
23    true, what is that based on?  Do you have any case --
24              MR. WEINGARD:  He --
25              THE COURT:  Does Rehberg itself or any case --
```

1            MR. WEINGARD:  Yes.

2            THE COURT:  -- in the United States say that an

3    officer who prepares a false police report --

4            MR. WEINGARD:  No.

5            THE COURT:  -- has absolute immunity?

6            MR. WEINGARD:  No.

7            THE COURT:  Okay.

8            MR. WEINGARD:  But, when you have 850 documents

9    supplied by the County of Nassau, the Police Department of the

10   County of Nassau, and the special investigation units of both

11   the District Attorney's office and the Police Department of

12   Nassau, there is nothing in those documents to support the

13   fact that he fabricated anything, much less a gun, and as I

14   told you, there is not a hint in the Complaint about the other

15   fully loaded -- what's it called, help me --

16           MR. SENFT:  Magazine.

17           MR. WEINGARD:  Magazine.  Thank you.  I needed that.

18   There's not a hint of that.  My client -- Judge, let me put it

19   this way, unless my client was Houdini, he came to the scene

20   as a result of Vara's calling for backup.  As he arrived on

21   the scene, a chase ensued.  Now, I'm not here to defend Vara,

22   and I'm not here to defend what Vara did post chase or post

23   anything else, but I can tell you that my client ran after

24   him, and then headed back to the car where he held the other

25   parties in the car until other persons from the Floral Park

1   Police Department arrived.  I believe they were all there

2   together, and my client did nothing with regard to any of

3   those things.  At the end of that event, he was discharged to

4   home.  He had a sign out at 7 a.m., and that's what he did.

5   The next thing he knows, he's called by the Prosecutor to come

6   to Court and testify.  Whatever happened during his perjury,

7   whatever happened in preparation or in a conspiratorial act

8   for his perjury, is insulated an absolutely immune according

9   to Williper (phonetic).  And Rehberg goes farther.  It says

10  you can't have a conspiracy, you can't use the perjury, and

11  oh, by the way, you can't use his perjury to substantiate any

12  other 1983 or other claim involving initiation or maintenance

13  of the Prosecution.  There is none of that in this case.

14  Zero.  And look, we can go through more discovery.  We'll find

15  the same things.  My client has been burdened by the expenses

16  of this litigation.  He has been defending for seven years,

17  and nothing is happening.  This is a case in -- look, you can

18  hold every other police officer, if you choose, responsible

19  here.  That's okay.  Perhaps they did things that my client

20  didn't.  But there is nothing to suggest he did it.  Not a

21  single factual allegation.  It was a conclusion that he

22  fabricated {quote} "the gun." {closed quote}  Not a hint about

23  the magazine that was laying near the car.  Why they don't

24  deal with that is curious to me.  But if anybody believes that

25  Mr. Coggins sprang full blown from the brow of Zeus and was a

 1   generally innocent man in this case, I'd be surprised.  What

 2   happened here is what happened here.  But for my client's

 3   perjury, there would be nothing that would have provoked his

 4   involvement in this case.  He never signed a document until

 5   after the case was dismissed, and that was only in connection

 6   with his SIU -- or SIB, I believe it's called in Nassau.  Only

 7   in connection with his SIB cooperation after his plea -- he

 8   didn't -- incidentally, and that he does not say that he

 9   yelled, "Just shoot the guy."  I'm not even sure of how that

10   differs from "Stop or I'll shoot," but he does not acknowledge

11   doing that.  And he had every reason to acknowledge doing

12   that.  He didn't want anymore charges.  He didn't want anymore

13   problems with the police, and this was what it was.

14            THE COURT:  Okay, hold on.  Hold on.

15            MR. WEINGARD:  Sure.

16            THE COURT:  I'm focused on what the allegations in

17   the Complaint are.  That's the standard here.  You, again --

18   you can tell me as much as you want that there's 850 pages of

19   documents out there, but --

20            MR. WEINGARD:  Judge, I'm so sorry.  Could you just

21   speak a little louder?

22            THE COURT:  Yes.  I said I'm focusing on the

23   allegations in the Complaint.  That's what I'm looking at.

24   You can tell me as many times as you want that there are 850

25   pages of documents out there, but I'm not persuaded by the

1    number of pages of documents out there, that I should cut the

2    case off simply because there's pages of documents in

3    discovery that have been provided, even though your client

4    hasn't been deposed, Defendant Vara hasn't been deposed, I

5    don't think anybody's been deposed other than maybe one

6    person, if my memory is correct.  But -- for example, in

7    paragraphs 34 and 35, it says, "Defendant Vara falsified

8    official documents related to what had transpired on October

9    9th, 2004.  He intentionally omitted Defendant Buonora's

10   name."  And then in the following paragraph, agrees that they

11   agreed with each other to alter the versions of what happened

12   and to submit false information in the police paperwork.  So -

13   -

14           MR. WEINGARD:  May I just respond to that, Judge?

15           THE COURT:  Yes, explain to me how in the Complaint

16   it alleges that your client was involved in the preparation of

17   false paperwork, that I should ignore that allegation?

18           MR. WEINGARD:  Because there's no basis in fact for

19   it, and under Iqbal, you have to have more than a conclusory

20   result.  What you're dealing with here is the conclusory

21   allegation in which they are hopeful that they can show that.

22           THE COURT:  Okay, how about paragraph 47 -- no wait,

23   hold on.  That's the wrong number.

24       (Pause in proceedings)

25           THE COURT:  Paragraph 77, October 9th --

1          MR. WEINGARD:  I'm sorry, paragraph 77?

2          THE COURT:  Yeah, October 9th, 2004, "Detective

3     Buonora prepared a report documenting his interactions with

4     Defendant Vara as they related to this case."  Is that --

5          MR. WEINGARD:  May I just have a moment to --

6          THE COURT:  Sure --

7          MR. WEINGARD:  -- see it please?  That's a mistake.

8     If you're looking at 77, it's on October 9th, Detective Barish

9     (phonetic) prepared a report.  Barish is the detective -- it

10    was a typo.

11         THE COURT:  That's a typo?

12         MR. WEINGARD:  Typo.

13         THE COURT:  Okay.

14         MR. WEINGARD:  And if you look at the context in

15    which it finishes up, you'll see it deals with Vara and

16    Barish.

17         MR. SENFT:  Barnish (phonetic).

18         MR. WEINGARD:  What does it say?

19         MR. SENFT:  Barnish.

20         MR. WEINGARD:  Barnish, I'm sorry.  There is a --

21    Judge, I'm telling you, it's devoid of a factual allegation --

22         THE COURT:  Well, that -- I guess we --

23         MR. WEINGARD:  -- not a one.

24         THE COURT:  -- have a different definition of what a

25    factual allegation is.

1          MR. WEINGARD:  All right, Judge.

2          THE COURT:  I think when someone alleges that there

3    was a conspiracy to fabricate that he had the gun, that false

4    police reports were prepared, and that your client, even if he

5    didn't author the false police reports, was involved in their

6    preparation, knew that they were being submitted, failed to

7    intervene, even though he knew, according to them, that the

8    facts that Vara were submitting in those reports were wrong

9    and that he was intentionally left out of the reports.  That's

10   what they're alleging.

11         MR. WEINGARD:  Judge, they are alleging that.  But

12   there is no factual substance for that allegation, and if I

13   may, Judge, please?

14         THE COURT:  They don't -- that's what an allegation

15   is.  An allegation is -- it's not --

16         MR. WEINGARD:  Yes, but --

17         THE COURT:  -- the question of whether there's

18   evidence to support, the question is whether or not it is

19   detailed enough for you to have notice as to what they are

20   claiming.  You can't have much more of a detailed explanation

21   other than to say, this report, that report, but -- in fact,

22   in the brief I think they do actually put particular dates on

23   some of the reports, but it's not -- you're just saying they

24   don't have evidence to support that.  It's not a pleading

25   problem.  You're just saying they don't have evidence, that

1    they're not going to be able to prove that.

2            MR. WEINGARD:  No, I'm saying -- well first, they're

3    not going to be able to, because it doesn't exist, but first

4    I'm saying that under Iqbal if I may read, "A claim has facial

5    plausibility when the Plaintiff pleads factual content that

6    allows the Court to draw the reasonable inference that the

7    Defendant is liable for the misconduct alleged."  There is no

8    factual content.  It doesn't exist in this Complaint.  You can

9    go through this Complaint until the cows come home, and when

10   you look at things like the motivational reason based on race,

11   it doesn't exist.  If you look at the facial plausibility

12   issue that I just addressed, there is not a single factual

13   assertion -- a factual assertion and pleading which allows the

14   Court to draw a reasonable inference.  I mean, Judge, please

15   forgive this observation, but Iqbal is the case that keeps on

16   giving.  I mean, it's a case in which the Court was looking at

17   what do you do with these types of 1983 allegations when it

18   involves serious charges against serious people with serious

19   governmental obligations, and how do you test it?  And the

20   answer is, you test it by looking at the factual allegations

21   from which you can draw conclusions that there is facial

22   plausibility, none of which exist here.  Not a -- Judge, you

23   can look through that Complaint until the cows come home.  You

24   won't find them.  I was with it for four hours yesterday.

25   Looking as hard as I could, I couldn't find them.

1         THE COURT:  Why wouldn't it be a reasonable

2    inference if Defendant Vara was going to put false information

3    in his report that you would have to discuss that with your

4    client as well before he put it in the report?  Why isn't that

5    a reasonable inference to be drawn that if, in fact, Vara was

6    creating false police reports, that he would have consulted

7    with your client --

8         MR. WEINGARD:  But that's surmise, Judge.  You're

9    making --

10         THE COURT:  Why is that surmise?

11         MR. WEINGARD:  Sure it is.  There isn't a factual

12    allegation -- here -- they don't say that they met on such and

13    such a day.  They don't say that they had a conversation while

14    having coffee at the local diner.  They don't give you any

15    factual basis from which you conclude under the Iqbal facial

16    plausibility standard that it exists.

17         THE COURT:  How about a (indiscern.) theory?  Why

18    wouldn't your client be responsible --

19         MR. WEINGARD:  Because he didn't -- okay, this is a

20    beauty.  He didn't even know that there had been a prosecution

21    started.  The client -- he went home, he went about his

22    business after the chase, and when he was next contacted by

23    anybody, it was to go to the Grand Jury and testify.

24         THE COURT:  Where is that in the Complaint?

25         MR. WEINGARD:  It -- where is that in the Complaint?

1                 THE COURT:  Yes.

2                 MR. WEINGARD:  It's not in the Complaint.

3                 THE COURT:  Well then how can I consider that?

4     Again, you're asking me to consider facts that aren't even in

5     the Complaint.

6                 MR. WEINGARD:  No, I'm telling you that they can't

7     allege facts that are -- their Complaint is devoid of the fact

8     that says they met on such and such a day.  They spoke on such

9     a -- there's not even an indication that they spoke on a

10    particular day.  There is nothing which suggests any of that.

11    Nothing.  And so it comes down to mere speculation or a

12    conclusion from which this Court cannot draw a facially

13    plausible conclusion that the Complaint should be sustained.

14                THE COURT:  So when did your client learn Mr.

15    Coggins was in jail?

16                MR. WEINGARD:  I don't think he ever learned it.

17    And I'll tell you -- I will say this to the best of my

18    knowledge, he never -- remember, jail was 2 days.  He -- you

19    know what everybody's forgetting about this case?  Coggins was

20    a fugitive.  Coggins ran away and then went home, apparently,

21    according to his papers, spoke to his mother or father, and

22    then hired a lawyer who then surrendered him.  He -- now, my

23    client was there for none of this.  He participated in none of

24    it.  There was no allegation that he participates in any of

25    it, predicated on any fact whatsoever.  Yes, Vara's in a

1   different position.  The two detectives are on different

2   positions, because the surrender was made to the detectives,

3   and the detectives took control, and the detectives spoke to

4   Vara.  That is a factual allegation.  That is something in

5   which they garner some information, and it holds against Vara.

6   But with regard to Buonora, there are no factual allegations.

7   Just to remind you, Coggins spent two days in jail and was

8   bailed out.  Look Judge, but for the fact of my client's

9   perjury, he would not be here.  He was the touchstone under

10  the old law in this circuit for making this case.  That law

11  has been changed.  Rehberg gives him absolute immunity with

12  regard to any claim -- any 1983 claim.  It gives him

13  conspiratorial immunity.  How do you sustain the 1985 claim?

14  How do you then conclude that 1895 should also be sustained?

15  My client wasn't there, as against Buonora, this case is

16  dimensionally different from the case against everyone else.

17  I don't know whether or not the Complaint is sufficient to

18  Vara, because I wasn't studying it from that point of view,

19  but I want to tell you that I sense it may be sufficient if

20  he's not entitled to absolute immunity.  But it is not

21  sufficient, not by the facial plausibility standard of Iqbal

22  against Buonora.

23          THE COURT:  Okay.  Okay.  Thank you.  Go ahead, Ms.

24  Amsterdam.

25          MR. WEINGARD:  I'm so sorry, Judge, I couldn't hear

1    you.

2              THE COURT:  I was going to let Ms. Amsterdam go,

3    okay?

4              MR. WEINGARD:  Of course.

5              MS. CARTRIGHT:  Ms. Cartright.

6              THE COURT:  Go ahead.

7              MS. CARTRIGHT:  You said --

8              THE COURT:  I called you Ms. Amsterdam.  I know a

9    Valerie Amsterdam who is a defense lawyer you may have heard

10   of -- I'm sorry -- Ms. Cartright.

11             MS. CARTRIGHT:  No problem, Your Honor.  Okay, with

12   respect to the arguments made by Ms. Petillo, and I believe

13   Mr. Weingard touched on it also with respect to our 1981

14   claim, Your Honor, it is our position that race was a

15   motivating factor, if not the motivating factor, at least a

16   motivating factor, which is sufficient under Section 1981.

17   There may be, and I was just trying to go through the

18   Complaint to see if we failed to possibly indicate that he is

19   an African American male, but that is his racial background,

20   and it is our position that the initial stop and the manner in

21   which he was treated, and then the subsequent interactions

22   with him as far as charging him falsely, and then of course,

23   moving towards the Grand Jury all -- the race played a part in

24   all of that, Your Honor.

25             THE COURT:  Well, they're suggesting that's just a

1   conclusory allegation, that there's no evidence to support

2   that.  What's your response to that?

3          MS. CARTRIGHT:  Your Honor, our position is that

4   throughout discovery, we will be able to indicate and show

5   that there is actually a pattern in practice in the County of

6   stopping African American males with no real basis, and then

7   fabricating documents, not properly investigating those

8   claims, once it is an African American male who is being

9   charged, and not following through and following the proper

10  procedures as it relates to African American males.  That is -

11  - we can only allege what we can allege prior to discovery,

12  Your Honor.  It is our position and our belief that with

13  further discovery, we will be able to support our position.

14         THE COURT:  Okay.

15         MS. CARTRIGHT:  Your Honor, as it relates to the

16  Intracorporate Conspiracy Doctrine, it is our position that

17  all the Defendants engaged in conspiracy as it relates to

18  falsely detaining, falsely arresting, maliciously prosecuting

19  Mr. Coggins.  The way we believe the Intracorporate Conspiracy

20  Doctrine is defeated is based on the fact that the individual

21  officers were acting with personal motives.  They were acting

22  outside of their capacity, and it satisfies one of the

23  exceptions, Your Honor.  So that is our position with respect

24  to the conspiracy.  Of course, Section 1986 deals with the

25  failure to intervene, which is why we brought that matter also

1    -- that claim.

2         Your Honor, as it relates to the arguments made by Mr.

3    Weingard, most of his arguments are based on the fact that we

4    don't have enough information.  And that was our point

5    initially in our response.  The same arguments that we made in

6    response to the first Motion to Dismiss, last Summary Judgment

7    made by Mr. Weingard, his Motion for Summary Judgment was

8    premature.

9         As it relates to the Motion to Dismiss, we believe that

10   it is facially sufficient with this opportunity that the Court

11   gave us to amend the Complaint another time -- we did

12   everything that we could to make sure that we indicated as

13   much facts as possible to satisfy the Iqbal standard.  And

14   after reviewing the Complaint a number of times, we believe

15   that it does satisfy that standard.

16        As it relates to Summary Judgment, Your Honor, we do

17   believe again, that it is premature.  We have not deposed the

18   two key people here, which is our opinion, the two key people,

19   Vara and Buonora, who are named Defendants in this action, and

20   have not yet been deposed.  We do not contest the fact that

21   there were certain discovery materials that was -- you know,

22   provided amongst the parties, which does not include Officer

23   Buonora, given the fact that discovery was stayed as it

24   relates to Buonora.  But as it relates to the County, we did

25   have some discovery exchange.  However, Your Honor, due to the

 1   fact that discovery was stayed in totality again at some point

 2   in time because of the motion practice by Defendant Buonora,

 3   it was -- we have not moved forward with discovery.  So, if in

 4   fact, Plaintiff had concerns related to the sufficiency of the

 5   responses to our discovery demands, those have not been dealt

 6   with.

 7         As it relates to any Internal Affairs investigation, Your

 8   Honor, the Plaintiff is not required to rely upon the Internal

 9   Affairs investigation.  That is what discovery is for.

10   Internal Affairs investigation reports is just a part of

11   discovery which aids us in determining the other facts that

12   can assist our case.  We, of course, and we've wrote a letter

13   to the Court most recently, asking that discovery be lifted so

14   we can move forward in this matter, and we believe that the

15   Summary Judgment portion is, of course, premature.

16         Your Honor, as it relates to the reply affirmation that

17   was provided by Mr. Weingard, he attached additional

18   documentation -- I believe some transcripts.  We ask that

19   those documents not be considered, given that it was submitted

20   on reply, and it did not provide the Plaintiff an opportunity

21   to properly respond to those documents, as well as any new

22   arguments that were placed in the reply.

23         Your Honor, we believe that we have, with this new

24   Complaint, satisfied the pleading standard, and we ask that we

25   are allowed to continue with discovery in this matter against

1    all Defendants, and that the Defendants' motions be denied in

2    its entirety.

3              THE COURT:  Okay.  Thank you.  I'll give you both a

4    chance to briefly respond if you wish to.  Ms. Petillo?

5              MR. WEINGARD:  May I do this first?  Judge, I'm

6    going to go first if it's okay with you?

7              THE COURT:  Sure.

8              MR. WEINGARD:  I don't understand the notion that

9    with discovery, Mr. Brewington's office is going to learn of

10   racial stops and convictions which in some way create a

11   motivational basis to prove that this is a race-based event.

12   It is my understanding that Mr. Brewington's office does this

13   every day of the week, and it's not in the Complaint.  If they

14   know of things like this, why wouldn't they have pleaded this

15   in the Proposed Amended Complaint or in any other Complaint.

16   We're on Complaint four if you grant permission to receive the

17   Complaint.  There is nothing, nothing like this in any of the

18   allegations, and they are numerous, and they do not cover

19   Buonora in any way other than in a conclusory way, and based

20   on surmise and so forth.

21             THE COURT:  Let me just -- through all the

22   paragraphs in the Complaint I was looking for before -- I

23   couldn't find, Mr. Weingard, paragraphs 51 and 52 --

24             MR. WEINGARD:  May I get there, Judge?  Give me a

25   moment?

1          THE COURT:  Sure.  Fifty-one alleges that even

2    before -- that there were three different meetings with the

3    District Attorney's office where he falsely represented to the

4    ADA that he had found a weapon, and then the following

5    paragraph says from the time that he met with the District

6    Attorney's office up until the Grand Jury testimony, he was

7    aware of the fact that the documents had been prepared

8    relating to the detention, arrest, and prosecution of

9    Plaintiff contained false information and omitted important

10   and relevant information, and that despite this knowledge, he

11   did not refute this evidence in any of the reports.  So,

12   again, you said before that there's no allegation that he knew

13   that the Defendant had been arrested and was being prosecuted

14   prior to stepping into the Grand Jury but they --

15          MR. WEINGARD:  No, no.  I didn't say stepping to the

16   Grand Jury, Your Honor.  I said until he was contacted by the

17   District Attorney, and if I did say stepping in, I apologize.

18          THE COURT:  Okay.  Well, no -- you didn't say that,

19   but guess I misunderstood --

20          MR. WEINGARD:  He was contacted by the --

21          THE COURT:  So again, if he has meetings with the

22   District Attorney's office and becomes aware that false

23   information is contained in police reports, that someone is

24   being detained and prosecuted based upon false information in

25   police reports, why wouldn't there be a failure to intervene

1   theory that he didn't tell his supervisors, he didn't tell

2   anybody, that he knew that the information was false?  Why --

3   I don't understand --

4            MR. WEINGARD:  First of all, Your Honor, if you take

5   a look at 52, that is not alleged as are the charges all the

6   way through, except upon information and belief.  This is

7   surmise.  What they're saying is that he must have had

8   conversations concerning police reports.  My client did not.

9   What he had was conversations with the District Attorney and

10  the District Attorney asked him questions to which he

11  responded.  He prepared no police reports for review, and

12  there were none for him to review, as I understand the facts.

13           THE COURT:  Okay.  Okay, thank you.  Ms. Petillo, is

14  there anything you want to add?

15           MS. PETILLO:  At this time, Your Honor, the only

16  thing I would like to add is that there are no allegations of

17  any other claims where any other individuals are alleging to

18  have been differently treated because of their race by the

19  County of Nassau, and the Plaintiff's argument that they be

20  permitted to have discovery to flush out their Complaint, I

21  think is incorrect.  What we're talking about is whether or

22  not there was enough on the pleadings themselves to make out a

23  claim.  And just a general statement that this is something

24  Nassau County does all the time without pleading other

25  instances where things were done so as to put Nassau County on

1   notice or to show that there is some type of a policy or

2   practice in place, I think is improper at this time.  You

3   cannot use discovery as a way to buttress your Complaint.  The

4   Complaint needs to stand alone, on its own, with respect to

5   the facts alleged in it.  And there's no facts alleged that

6   would show that he was treating any differently than any other

7   individual of his race or color or any other individual of any

8   other minority or class, period.  Just the fact that he's

9   alleging, well, this is what happened to him, so therefore he

10  must have been treated differently because of his race, I

11  think is totally incorrect.

12          THE COURT:  Okay.

13          MR. WEINGARD:  Judge, I join in that observation.

14  It was what I think I was saying to you before, and I think

15  it's crucial under Iqbal and the facial plausibility.  Judge,

16  before we go, there is one other thing we have to discuss with

17  the Court.

18          THE COURT:  Okay.

19          MR. WEINGARD:  You were -- I assume you were in

20  receipt of a letter from Mr. Brewington's office?

21          THE COURT:  Yes, I was going to discuss that now.

22          MR. WEINGARD:  Shall we?

23          THE COURT:  Yes.  I guess Ms. Cartright, this

24  appears to be a request that I lift the Stay of Discovery in

25  light of this transcript that's quoted.  Is that --

1          MS. CARTRIGHT:  That is correct, Your Honor.  And

2    some of the excerpts of the transcript was cited to show that

3    we do believe that the Defendants in this action had

4    communication, and the same things that we've been discussing

5    for the past 20 minutes, that the Defendants have engaged in

6    conspiracy outside of just the perjury, but discussions that

7    may have been had with the District Attorney's office leading

8    up to any Grand Jury testimony.  And this is our position that

9    continued discovery would help us sift through exactly what

10    factually occurred here, Your Honor.

11          THE COURT:  Okay.

12          MS. CARTRIGHT:  And if I may one moment, just

13    respond to the statements by both Ms. Petillo and Mr. Weingard

14    with respect to Plaintiff not flushing out the County's

15    pattern and practice of pulling over African Americans and

16    treating them differently, we have paragraphs 133 to 141 which

17    speak specifically to just the manner in which the County of

18    Nassau has conducted themselves in the past.  It is our Monell

19    claim, Your Honor.  So it is our position again, that we plead

20    that properly.

21          MS. PETILLO:  Your Honor, that is just simply that

22    the allegations as what they're alleging they believe Nassau

23    County did wrong.  There was nothing saying that there have

24    been other cases in which Nassau County did all these things

25    wrong, and I think that's an important distinction.  They're

1    saying well, in this case, you know, we believe that Nassau

2    County did this, this, this, this, and this wrong, therefore

3    there's a Monell issue, and there's nothing to say that in any

4    other cases that there were any of these things did wrong,

5    thereby putting Nassau County on notice as to a Monell issue.

6            THE COURT:  Okay.  Mr. Weingard, do you want to

7    address that September 6th letter?

8            MR. WEINGARD:  Yes, Judge.  First, this came to us

9    mid-morning on the second day of the Jewish holiday.  We

10   haven't had a real opportunity to respond.  I understand we

11   have until tomorrow to do so.  I'd ask you until the end of

12   the week so that we may respond to that.

13           THE COURT:  I don't know that you need to respond,

14   because I guess, to the extent that it's asking you to revisit

15   my Stay of the Discovery, giving the briefing on this motion,

16   I'm not going to alter that ruling.  I don't think -- I

17   understand why the letter was written to me, but for all the

18   reasons that I previously stated, that the law is very

19   favorable to Defendants and Mr. Buonora's decision -- excuse

20   me, Mr. Buonora's position that they should not have the

21   burden of going through a discovery, and given that this has

22   been fully briefed, and I anticipate a decision in the next 60

23   days, if not sooner, with respect to the motions.  I'm not

24   going to lift the stay at this point.  I was a little confused

25   by the last sentence that talks about an amended briefing

1    schedule.  That -- I didn't understand -- that that meant -- I

2    didn't see this as a request for any motion other than a

3    Motion to Lift the Stay, right?

4           MS. CARTRIGHT:  That was what it was, Your Honor.

5           THE COURT:  Okay.  So, I'm not going to do that at

6    this point.  We've had oral argument.  As I said, I'm hoping

7    to decide this in the near future, and then obviously,

8    depending on the Court's decision, then the discovery issue

9    will be resolved, one way or the other, okay?

10          MS. CARTRIGHT:  Okay.  Thank you, Your Honor.

11          THE COURT:  Okay.  Thank you for coming in.  Have a

12   good day.

13          MR. WEINGARD:  Thank you, very much, Judge.

14          MS. PETILLO:  Thank you, Your Honor.

15       (Court adjourned)

16

17                        CERTIFICATION
18   I certify that the foregoing is a correct transcript from the
19   electronic sound recording of the proceedings in the above-
20   entitled matter.
21
22
23   _Lewis Parham_                        12/30/13
24
25
26   _____       _____
27   Signature of Transcriber                    Date