# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

—————————————

Nº 07-CV-3624 (JFB) (AKT)

—————————————

## DARRYL T. COGGINS,

Plaintiff,

VERSUS

## COUNTY OF NASSAU, NASSAU COUNTY POLICE DEPARTMENT, POLICE OFFICER JAMES VARA, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, POLICE OFFICER CRAIG BUONORA, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, AND JOHN DOES 1-10, IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES,

Defendants.

—————————————

### MEMORANDUM AND ORDER
May 26, 2017

—————————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Darryl T. Coggins ("Coggins" or "plaintiff") brought this action against defendants County of Nassau ("Nassau County" or "the County"); Nassau County Police Department ("NCPD"); Police Officers James Vara ("Vara") and Craig Buonora ("Buonora"), in their individual and official capacities; and John Does 1–10, in their individual and official capacities (collectively, "defendants"), pursuant to 42 U.S.C. §§ 1981, 1983, and 1985, and New York State tort law.

A grand jury empaneled by the Nassau County District Attorney's Office ( "DA's Office") indicted Coggins on March 17, 2005, on charges of unlawful possession of a weapon and resisting arrest. After the DA's Office dismissed the criminal charges against Coggins, it indicted Buonora for perjury.

Buonora pled guilty. In this action, Coggins contends that defendants actively prosecuted him despite knowing he was innocent. Specifically, he alleges that Buonora and Vara conspired to and did, *inter alia*, falsify police reports, affidavits, and memorandum books; fabricate evidence; and commit perjury during grand jury proceedings.

Presently before the Court are two motions. First, Coggins moves to file a Fourth Amended Complaint ("FAC") to add a 28 U.S.C. § 1983 ("Section 1983") excessive force claim (and related state law claims) in light of newly discovered evidence. Defendants oppose, arguing, *inter alia*, that plaintiff has inexcusably delayed in asserting the claims he now seeks to add to the complaint.

Second, defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56.

As set forth below, the Court denies plaintiff's motion to amend and grants in part and denies in part defendants' motion for summary judgment. Specifically, the Court concludes that defendants are entitled to summary judgment on plaintiff's 42 U.S.C. § 1981 ("Section 1981") claim, federal and state abuse of process claims, 42 U.S.C. § 1985 ("Section 1985") claim, and state law negligence claims, but not on his remaining claims.

## I. Background

The following facts are taken from the parties' depositions, affidavits, and exhibits, and the parties' respective Rule 56.1 statements of fact.[1] (*See* Defs.' Rule 56.1 Statement ("Defs.' 56.1"), ECF No. 232-2; Pl.'s Resp. to Defs.' Rule 56.1 Statement ("Pl.'s 56.1 Resp."), ECF No. 236-1, 1–8; Pl.'s Rule 56.1 Statement ("Pl.'s 56.1"), ECF No. 236-1, 9–31.) Unless otherwise noted, the facts are undisputed. Upon consideration of the motion for summary judgment, the Court shall construe the facts in the light most favorable to plaintiff as the nonmoving party, and will resolve all factual ambiguities in his favor. *See Capobianco v. New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2001).

### A. Facts

Coggins is an African-American male. (Pl.'s 56.1 ¶ 18.) Early on October 9, 2004,

plaintiff was driving with two other African American individuals, Jovan Miles and Aaron Simmons, when Vara effectuated a stop on plaintiff's car. (Defs.' 56.1 ¶¶ 1–2, 4; Pl.'s 56.1 Resp. ¶¶ 1–2, 4; Pl.'s 56.1 ¶¶ 9, 11, 18.) When plaintiff asked why he was being pulled over, Vara gave no reason but instructed plaintiff to step out of the vehicle. (Pl.'s 56.1 ¶¶ 19–20.) Vara then administered a breathalyzer. (*Id.* ¶ 22; Defs.' 56.1 ¶ 5.) Plaintiff denies that any of the occupants of the vehicle had been drinking before the stop. (Pl.'s 56.1 ¶¶ 11–15.) Vara does not recall—and did not record—the results of the field sobriety tests. (*Id.* ¶ 120.)

After administering the breathalyzer, Vara allegedly became aggressive, verbally threatening plaintiff and grabbing him. (*Id.* ¶¶ 23, 25; Pl.'s 56.1 Resp. ¶ 5.) Plaintiff claims he asked Vara to stop grabbing him and Vara responded by stating "he would do more than that." (Pl.'s 56.1 ¶ 26.) At some point, Vara placed his hand on his firearm. (*Id.* ¶ 27.) Nervous, plaintiff fled on foot just as Buonora was pulling up in his patrol car. (*Id.* ¶¶ 28–31; Defs.' 56.1 ¶¶ 5–6.) As he was fleeing, plaintiff heard Buonora yell, "shoot him in the back." (Pl.'s 56.1 ¶ 31.) Buonara and Vara chased plaintiff, who ran through some nearby yards, but they could not catch him. (Defs.' 56.1 ¶ 7; Pl.'s 56.1 Resp. ¶ 7; Pl.'s 56.1 ¶ 30.) Vara then searched the yards through which plaintiff had ran, but he found no evidence. (Pl.'s 56.1 ¶¶ 40–41.)

Meanwhile, Floral Park Police Officer John Wilson ("Wilson") discovered an empty magazine[2] next to plaintiff's vehicle. (Defs.'

---

[1] Although the Court generally only cites to the Rule 56.1 statements, it has confirmed that the record supports any assertions upon which it has relied.

[2] Defendants assert that the magazine was loaded (Defs.' 56.1 ¶ 9), but they provide no record citation to support this assertion, and Wilson's deposition testimony indicates that the magazine he found was

empty (Decl. of Andre K. Preston Supp. Defs.' Mot. Sum. J. ("Preston Decl."), Ex. AB, ECF No. 232-31, at 16). For the purposes of this motion, the Court assumes the magazine was unloaded. *See Capobianco*, 422 F.3d 47, 50 n.1.

56.1 ¶ 9; Defs.' Resp. 56.1 ¶ 9.) Wilson asked passengers Miles and Simmons where the gun was, and they told him there was no gun. (Preston Decl., Ex. AB, at 19–20.) Wilson ordered them to show their hands, the passengers complied, and more officers subsequently arrived on the scene. (*Id.* at 20–21.) Later, Wilson found a loaded, 9 millimeter pistol next to a fence near the scene. (*Id.* at 30; Defs.' 56.1 ¶ 10; Pl.'s 56.1 ¶ 10.) Officers then ordered Miles and Simmons to exit the vehicle, told them a gun had been found, handcuffed them, patted them down, and placed them in separate squad cars. (Pl.'s 56.1 ¶¶ 35–37, 39.)

Later that day, plaintiff appeared at the police station with his attorney to surrender himself. (Defs.' 56.1 ¶ 12; Pl.'s 56.1 Resp. ¶ 12; Pl.'s 56.1 ¶ 48.) While plaintiff was handcuffed to a bench at the precinct, Vara entered and made a comment about plaintiff's escape. (Pl.'s 56.1 ¶ 50.) Plaintiff alleges that Vara then punched him in the face twice and other officers had to pull Vara away. (*Id.*; *see also* FAC ¶ 34.)

Detective Alexander Barnych and Sergeant Mitchell Tepperman subsequently filed two felony complaints against plaintiff, charging him with two counts of criminal possession of a weapon in the third degree. (Defs.' 56.1 ¶ 13; Pl.'s 56.1 Resp. ¶ 13.) After arraignment, Buonora falsely testified before the grand jury that he "heard a noise when [plaintiff] jumped the fence which sounded like metal hitting the ground . . . . And [he] looked down to see what it was and found the gun there." (Pl.'s 56.1 ¶ 99; *see also* Defs.' 56.1 ¶ 17; Pl.'s 56.1 Resp. ¶ 17.) Buonora had spoken with the Assistant District Attorney ("ADA") who handled the case prior to his grand jury testimony, and Buronora only testified about the gun. (Pl.'s 56.1 ¶¶ 100, 102.) Buonora's sworn handwritten statement to the NCPD Internal Affairs Unit ("Internal Affairs") also states that

he, not Wilson, found the magazine next to plaintiff's vehicle. (*Id.* ¶ 103.)

In addition, the arrest report completed by Detective Barnych indicated that Vara had reported hearing the sound of a gun hit the ground when plaintiff jumped over a chain link fence and that Vara had secured the gun. (*Id.* ¶ 83.) His Standard Requisition Request Form also indicates that he "safeguarded the wepon [sic]." (*Id.* ¶ 86.) At his deposition, however, Vara testified that he never told Detective Barnych that he had heard the sound of a gun hitting the ground or secured the gun. (*Id.* ¶ 84.) Vara later admitted to investigators that he falsified the Requisition Form. (*Id.* ¶ 88.)

The criminal case against plaintiff was dismissed when Buronora's false testimony came to light. (Defs.' 56.1 ¶ 18; Pl.'s 56.1 Resp. ¶ 18.) On October 29, 2005, NCPD's Forensic Evidence Bureau discovered that the handgun Wilson recovered at the scene had been reported missing from the Orangeburg Department of Public Safety in South Carolina. (Pl.'s 56.1 ¶ 108.)

Internal Affairs charged Vara with perjury, making a false sworn statement, making a false written statement, and harassment for his false statements made in connection with the arrest and prosecution of plaintiff. (Pl.'s 56.1 ¶ 90.) Vara accepted immunity in exchange for his testimony against Buonora. (*Id.* ¶ 92.) Internal Affairs ultimately found Vara guilty of issuing a false communication, but the perjury charge was left "undetermined" based on his immunity. (*Id.* ¶¶ 94–95.) Ten vacation days were revoked as punishment on the false communication charge. (*Id.* ¶ 96.) He was not suspended or demoted, his salary was not reduced, and the County has indemnified him in the current action for the counts in the Third Amended Complaint ("TAC"). (*Id.* ¶¶ 97–98.)

Internal Affairs charged Buonara with submitting false official communications. (*Id.* ¶ 110.) He was also arrested, criminally charged with first-degree perjury (a felony), and suspended without pay for one month in September 2005. (*Id.* ¶¶ 109, 113.) Buonara did not challenge the Internal Affairs charges and entered into a Disciplinary Stipulation and Agreement on August 15, 2006. (*Id.* ¶ 111.) As punishment, he lost 100 vacation days, was put on desk duty, and was put on probation for one year. (*Id.* ¶¶ 111–12.) In the criminal case, he pled guilty to third-degree perjury (a misdemeanor) and was sentenced to three years' probation. (*Id.* ¶¶ 114; *see also* Defs.' 56.1 ¶ 19; Pl.'s 56.1 Resp. ¶ 19.)

### B. Procedural History

Coggins filed the Complaint on August 28, 2007. (ECF No. 1.) The case has undergone extensive motion practice since that time, including two motions to dismiss and multiple appeals to the Second Circuit. (*See, e.g.*, ECF Nos. 28, 70, 170.) The Court dismissed several of plaintiff's claims on defendants' motion to dismiss the TAC, *see Coggins v. Cnty. of Nassau*, 988 F. Supp. 2d 231 (E.D.N.Y. 2013), and the following causes of action remain: (1) violations of Section 1981; (2) violations of Section 1983; (3) municipal liability; (4) violations Section 1985; (5) violations of 42 U.S.C. § 1986; (6) state law fraudulent misrepresentation; (7) state law abuse of process and malicious prosecution; (8) state law false arrest and false imprisonment; (9) negligence; and (10) state law intentional infliction of emotional distress ("IIED") (*see* ECF No. 178). The FAC seeks to add a Section 1983 claim for excessive force and a state law assault and battery claim based on Vara's alleged assault of plaintiff at the police station when plaintiff surrendered himself. (ECF No. 241-1 at ¶¶ 137–41, 179–84.)

The parties completed discovery on September 1, 2016 (*see* ECF No. 226), and defendants moved for summary judgment on the claims in the TAC on December 5, 2016 (ECF No. 232). Plaintiff filed his opposition on February 13, 2017 (ECF No. 236), and defendants replied on March 13, 2017 (ECF No. 238). The Court heard oral argument on March 24, 2017 and set a briefing schedule for plaintiff's motion to amend. (ECF No. 239.) Plaintiff filed the motion, along with the FAC, on April 3, 2017 (ECF No. 241), and defendants opposed on April 17, 2017 (ECF No. 243). The Court has fully considered the parties' submissions.

### II. Motion to Amend

#### A. Standard of Review

Federal Rule of Civil Procedure 15 applies to motions to amend the pleadings. A motion to amend "shall be freely granted when justice so requires." Fed. R. Civ. P. 15(a). Such a motion should be denied "only for reasons such as undue delay, bad faith, futility of the amendment or prejudice to the other party." *Crippen v. Town of Hempstead*, No. 07-CV-3478(JFB)(ARL), 2013 WL 2322874, at *1 (E.D.N.Y. May 22, 2013); *see also Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 125 (2d Cir. 2008) (per curiam) ("[M]otions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party.").

In the Second Circuit, "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)). Nevertheless, "leave to amend may

be denied where the moving party knows or should have known of the facts upon which the proposed amendment is based, but failed to include them in the original pleading." *Priestley v. Am. Airlines, Inc.*, No. 89 CIV. 8265 (JMC), 1991 WL 64459, at *1 (S.D.N.Y. Apr. 12, 1991). In addition, "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Block*, 988 F.2d at 350 (quoting *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983)).

In determining whether the party opposing the amendment has been prejudiced, courts consider "whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Id.* Furthermore, "[a] court may also consider whether the motion comes on the eve of trial after many months or years of pretrial activity, or witnesses have become unavailable for examination and the memories of others may have dimmed." *Gem Glob. Yield Fund, Ltd. v. Surgilight, Inc.*, No. 04-CV-4451 (KMK), 2006 WL 2389345, at *10 (S.D.N.Y. Aug. 17, 2006) (brackets and citations omitted).

Courts in this Circuit have repeatedly found that a proposed amendment will prejudice the nonmoving party where it would require the court to reopen discovery. *See, e.g.*, *Instinet Inc. v. Ariel (UK) Ltd.*, No. 08 CIV. 7141 JFK RLE, 2011 WL 4444086, at *3 (S.D.N.Y. Sept. 26, 2011) ("Permitting Ariel to amend at this late juncture would result in substantial prejudice to Instinet, as it would require the reopening of discovery and further delay the resolution of this lawsuit." (citations omitted)); *Re-Source Am., Inc. v. Corning Inc.*, No. 07-CV-6048 CJS, 2009 WL 2179254, at *7 (W.D.N.Y. July 22, 2009) ("The Court also finds that the proposed amendment would prejudice Defendant, since the Court would need to reopen discovery, which would further delay the resolution of the case."); *Travelers Ins. Co. v. Buffalo Reinsurance Co.*, No. 86 CIV. 3369 (JMC), 1990 WL 116741, at *2 (S.D.N.Y. Aug. 7, 1990) ("The burden of additional discovery is adequate justification for denial of leave to amend . . . where the amendment would reopen discovery concerning an event that happened many years ago." (citations omitted)). Similarly, courts have found prejudice resulting from a delay when that delay has either rendered witnesses unavailable or caused their memories of the relevant events to fade. *See, e.g.*, *Zubulake v. UBS Warburg LLC*, 231 F.R.D. 159, 162 (S.D.N.Y. 2005) (denying motion to amend in part because "[w]itnesses to these events may not [have been] available" and, "[e]ven if the knowledgeable witnesses [were] available, their recollection of events [would] undoubtedly be diminished compared to two years earlier"). Prejudice can also exist where a proposed amendment could raise a conflict of interest that would require the nonmoving party to retain separate counsel. *See, e.g.*, *Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*, No. 95 CIV. 3901 (PKL), 1999 WL 946354, at *5 (S.D.N.Y. Oct. 19, 1999) (denying motion to amend where the amendment "would create a conflict of interest with the potential to require [the nonmoving parties] to retain separate counsel").

B. Discussion

Here, the FAC seeks to add claims based on Vara's alleged assault on plaintiff in the police station, which occurred when plaintiff surrendered himself on October 9, 2004. Thus, plaintiff clearly knew of "the facts upon which the proposed amendment is based" at the time the original complaint was

filed "but failed to include them in the original pleading." *Priestley*, 1991 WL 64459, at *1. Instead, plaintiff waited to file the present motion to amend for almost thirteen years after the alleged assault took place, almost ten years after the original complaint was filed, and over eight months after counsel learned of the assault at plaintiff's deposition. Plaintiff provides no explanation for this delay, and, given its length, "less [is] required of the nonmoving party in terms of a showing of prejudice." *Block*, 988 F.2d at 350.

Under this standard, defendants have made an adequate showing of prejudice. First, permitting the amendment would require the court to reopen discovery, and defendants would have to expend substantial resources in conducting such discovery. In addition to re-deposing both plaintiff and Vara, defendants would also need to investigate and question additional witnesses, given plaintiff's allegation that other officers had to intervene to stop Vara's alleged assault. *See Ariel*, 2011 WL 4444086, at *3; *Re-Source Am.*, 2009 WL 2179254, at *7.

Second, based on how much time has passed since the alleged assault, these same witnesses may not be available or even ascertainable, and, to the extent they are, they may not adequately remember the events in question. *See Zubulake*, 231 F.R.D. at 162. Had plaintiff included these allegations in the original complaint, defendants could have identified and questioned the officers who allegedly intervened to stop the assault. Permitting plaintiff to add these substantial claims at this juncture would thus greatly prejudice defendants because, if these witnesses had been identified and questioned in a timely manner, they would have been in a better position to provide all relevant information on this issue.

Third, the County has only agreed to indemnify Vara on the counts in the TAC, and, therefore, if the Court permitted plaintiff to amend, Vara would need to seek indemnification on the newly added claims from the Indemnification Board, resulting in further delay. Relatedly, given the nature of the allegations, there is a distinct possibility that the Indemnification Board would decline to indemnify Vara on the excessive force and assault and battery claims. Because defense counsel only represents Vara by virtue of his indemnification from the County, a conflict of interest could arise in the event indemnification is denied, in which case Vara would need to seek new counsel. *See Media Sport*, 1999 WL 946354, at *5.

In short, defendants have established prejudice because (1) granting leave to amend would require costly additional discovery on the newly added claims; (2) witnesses to the alleged assault may not be ascertainable or available at this late stage, and, in any event, would need to recall an incident that took place almost thirteen years ago; (3) Vara would need to seek additional indemnification based on the FAC; and (4) a conflict of interest could arise requiring Vara to obtain new counsel if the Court permits the FAC to go forward. Furthermore, plaintiff has offered no explanation for the substantial delay in filing these claims even though he knew the factual basis for them when the original complaint was filed. *See Priestley*, 1991 WL 64459, at *1. Accordingly, in its discretion the Court denies plaintiff's motion for leave to amend.[3] *See, e.g.*, *Brown v. Fisher*, 486 F. App'x 959, 960 (2d Cir. 2012)

---

[3] Plaintiff also argues that the claims in the FAC relate back to the original filing because the new allegations were "part of what transpired during the series of actions taken by Defendants regarding Plaintiff's wrongful arrest, malicious prosecution etc." (ECF No. 241 at 2.) The Court disagrees. As the Second Circuit has explained, "the touchstone for relation back pursuant to Rule 15(c)(2) is notice, *i.e.*, whether the original pleading gave a party adequate notice of the conduct, transaction, or occurrence that forms the basis of the

(affirming denial of leave to amend where plaintiff "failed to move for leave to amend his complaint before the close of discovery or after receiving [defendant's] summary judgment motion . . . [and] requested leave to amend his complaint and reopen discovery . . . more than eight months after the summary judgment motion had been filed, a year after discovery had closed, and almost two years after the initial complaint had been filed"); *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (affirming denial of leave to amend where the motion was filed after "discovery had closed, defendants had filed for summary judgment, and nearly two years had passed since the filing of the original complaint"); *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) ("The plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint. Plaintiff delayed pursuing this claim until after discovery had passed, the dispositive motion deadline had passed, and a motion for summary judgment had been filed. There appears to be no justification for the delay, and the plaintiff proposes none. Allowing amendment at this late stage in the litigation would create significant prejudice to the defendants in having to reopen discovery and prepare a defense for a claim quite different from the . . . claim that was before the court. The district court did not abuse its discretion in denying leave to amend. . . .").

III.   SUMMARY JUDGMENT

A.   Standard of Review

The standard for summary judgment is well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that it is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). Rule 56(c)(1) provides that a

> party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse

---

claim or defense." *United States v. Baylor Univ. Med. Ctr.*, 469 F.3d 263, 270 (2d Cir. 2006). The original complaint—and the TAC, for that matter—are based on the conduct of Vara and Buonora during the traffic stop and the various false statements they made during the investigation. Nothing in the original complaint suggested that an assault and battery occurred while plaintiff was at the police station, and none of the alleged physical force that was used against plaintiff during the traffic stop comes close to the level plaintiff alleges in the new claims. Therefore, the Court concludes that the original complaint does not provide notice adequate enough for the new claims to relate back. *See id.*

party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he non-moving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (alteration and emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249–50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties alone will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *Bell-South Telecomms., Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

## B. Discussion

Defendants move for summary judgment on various causes of action in the TAC. As set forth below, the Court concludes that defendants are entitled to summary judgment on plaintiff's Section 1981 claim, federal and state abuse of process claims, Section 1985 claim, and state law negligence claims, but not on his remaining claims.

### 1. Discrimination

Plaintiff has brought a racial discrimination claim pursuant to Section 1981. Under that statute,

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to . . . the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). A claim under Section 1981 requires a plaintiff to establish that "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute. . . ." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). As this

Court has recognized, "Section 1981 claims are analyzed under the same standards as Title VII claims." *Allen v. Suozzi*, No. 09-CV-1520 JFB ARL, 2011 WL 1059147, at *2 (E.D.N.Y. Mar. 21, 2011) (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000)); *see also Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) ("Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981.").

Unlike a Title VII claim, however, "a plaintiff pursuing a claimed violation of § 1981 . . . must show that the discrimination was intentional." *Patterson*, 375 F.3d at 226. The discrimination must be "a substantial or motivating factor for the defendant's actions." *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001). Furthermore, "[n]aked assertions of racial discrimination are insufficient to state a cause of action." *Johnson v. City of N.Y.*, No. CV-01-1860(SJF)(VVP), 2004 WL 502929, at *3 (E.D.N.Y. Jan. 12, 2004). In general, "[a] finding of discriminatory intent is a finding of fact" for the jury. *Id.* at 70.

In *Coward v. Town & Village of Harrison*, 665 F. Supp. 2d 281, 306 (S.D.N.Y. 2009), for example, a plaintiff survived summary judgment on a Section 1981 claim against two police officers who arrested him at a park for exercising near a baseball field and shouting at the players during a little league game. The court concluded that a genuine dispute of material fact existed because the plaintiff and another witness had testified that the plaintiff's exercises were not alarming anyone, his comments "were neither harassing nor different from the comments frequently called out by certain parents," he "was the only African-American in the Park at the time of his arrest," and there was "testimony in the record supporting the inference that it was not uncommon for white parents to shout out similar comments in similar situations without incident." *Id.* at 304 (analyzing discriminatory intent on Section 1983 Equal Protection claim); *see also id.* at 306 (applying holding on Section 1983 claim to Section 1981 claim); *Antoine ex rel. Antoine v. Rucker*, No. 03-3738 (DRD), 2006 WL 1966649, at *9 (D.N.J. July 12, 2006) (denying summary judgment where Haitian plaintiff identified testimony in the record indicating that, when defendant, a police officer, assaulted him, defendant said, "I'll teach you *American* law").

By contrast, in *Green v. Missouri*, 734 F. Supp. 2d 814, 842 (E.D. Mo. 2010), the court granted summary judgment on a plaintiff's Section 1981 claim where the plaintiff "failed to produce any evidence that Defendant Police Officers' decision to arrest him was based on his race." In that case, the African-American plaintiff, a well-known civil rights activist, was arrested at a crowded school board meeting for being disruptive and refusing to comply with the officers' orders to leave. *Id.* at 827. The court concluded that he failed to establish a Section 1981 claim, reasoning that

> [a]lthough [the plaintiff] testified that he believed police officers in the City of St. Louis have a general attitude of dominance and often abuse their authority, [he] submitted no evidence that Defendant Police Officers held any racial animus towards African-Americans, that they said any remarks where one could infer racial animus, or that they treated Green differently than similarly situated people of another race.

*Id.* at 841 (analyzing Section 1983 Equal Protection claim); *see also id.* at 842 (granting summary judgment on Section 1981 claim for the same reasons as Equal Protection claim); *see also Gonzalez v. Pierce Cnty.*, No. C04-5303RJB, 2005 WL 2088367, at *11 (W.D. Wash. Aug. 29, 2005) (granting summary judgment on Section 1981 claim where the only evidence of racial discrimination was plaintiff's deposition testimony "that she believed that if the same contact with officers happened with her Caucasian neighbor, her neighbor would not have been arrested" and officer's admission that he initially spoke to plaintiff in Spanish).

Here, like in *Green*, plaintiff has failed to adduce any evidence that the conduct of the officers was racially motivated. He has not identified anything in the record to suggest that similarly situated suspects of another race were treated differently,[4] *see Coward*, 665 F. Supp. 2d at 306, nor has he highlighted any testimony that defendants made racially suggestive comments at any time during his arrest or prosecution, *see Rucker*, 2006 WL 1966649, at *9. Instead, like the plaintiffs in *Green* and *Gonzalez*, the only evidence of racial animus is plaintiff's belief that the arrest was racially motivated.[5] This, however, is insufficient as a matter of law to establish a Section 1981 claim.

Accordingly, plaintiff has failed to present evidence to suggest that any of defendants' actions were racially motivated. As such, no genuine issue of material fact exists on plaintiff's Section 1981 claim, and the Court grants defendant's motion for summary judgment on that claim.

---

[4] Plaintiff argues that racial animus can be implied because there is no evidence that defendants have ever behaved similarly toward white suspects. (Pl.'s Opp'n Defs.' Mot. Sum. J. ("Pl.'s Br."), ECF No. 236 at 4–5.) There is also, however, no evidence to suggest that defendants have treated other African-American suspects in the same way they treated plaintiff. In fact, as noted below, there are a number of other alleged incidents of Vara allegedly stopping motorists without probable cause, yet plaintiff puts forth no evidence or argument that these other incidents also included African-American motorists. (*See, e.g.*, Pl.'s 56.1 ¶¶ 70, 76, 78 (no mention of complainant's race).) On the contrary, although the "Type of Complaint" section on the civilian complaints cited by plaintiff contains an option for "Racial/Ethnic Bias," this option was not marked on any of the complaints against Buonora or Vara. (*See* Decl. of Frederick K. Brewington Supp. Pl.'s Opp'n Defs.' Mot. Sum. J., Exs. Y, Z, AA, BB, CC, ECF No. 236-3.) Thus, given the evidence of multiple stops by Vara with no corresponding evidence of any link to race, no inference of racial motivation can be drawn for defendants' behavior toward plaintiff when compared to other motorists.

[5] Plaintiff also argues that racial animus can be inferred from the following facts: (1) Vara and Buonora,

who are white, stopped plaintiff and his African-American passengers in a predominantly white neighborhood without articulating a reason for the stop; and (2) the officers arrested the passengers for no apparent reason. (Pl.'s Br. at 4–5.) The Court disagrees. First, plaintiff's record citations do not support the assertion that the neighborhood in which he was driving was predominantly white, and the Court could find no basis in the record for this claim. Even if there were record support for this proposition, the location of the stop, without more, does give rise to an inference of racial discrimination. *See Ford v. City of Rockford*, 48 F.3d 1221 (7th Cir. 1995) ("Ford claims that the officers' decision to stop him was based on race because he, a black [man], was in a predominately white neighborhood. Even if that is true, it still does not amount to an equal protection violation."); *see also Poole v. Flanery*, 162 F. App'x 661, 662 (8th Cir. 2006); *Caldwell v. City of Selma*, No. 1:13-CV-00465-SAB, 2015 WL 1897806, at *9 (E.D. Cal. Apr. 16, 2015). Second, nothing in the record suggests that the arrests of plaintiff's passengers were racially motivated. Instead, the record indicates that the officers arrested them after the officers found an empty magazine right next to the car and the passengers denied knowledge of a gun.

2. False Arrest, False Imprisonment, Malicious Prosecution, and Abuse of Process Claims

To prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). Here, plaintiff brings Section 1983 claims for (1) false arrest and imprisonment; (2) malicious prosecution; and (3) abuse of process, in addition to parallel state law claims.[6]

As the Second Circuit has noted, "[c]laims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (quoting *Weyant*, 101 F.3d at 852 (false arrest) and citing *Conway v. Vill. of Mount Kisco*, 750 F.2d 205, 214 (2d Cir. 1984) (malicious prosecution)). The same is true for abuse of process claims. *See Cook v. Sheldon*, 41 F.3d 73, 79–80 (2d Cir. 1994) ("As with malicious prosecution, we turn to state law to find the elements of the malicious abuse of process claim."). Furthermore, under New York law, "the tort of false arrest is synonymous with that of false imprisonment," and courts use that tort to analyze an alleged Fourth Amendment violation in the Section 1983 context. *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991); *see Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir.

1995). Thus, in this section, the Court considers the false arrest, false imprisonment, malicious prosecution, and abuse of process claims under Section 1983 collectively with their parallel claims under state law.

a. False Arrest/Imprisonment

To prevail on a false arrest claim, a plaintiff must prove four elements: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Broughton v. New York*, 37 N.Y.2d 451, 456 (N.Y. 1975). Because there is no dispute that Detective Barnych arrested plaintiff at the precinct on October 9, 2004 (*see* Defs.' 56.1 ¶ 12; Pl.'s 56.1 Resp. ¶ 12), the first three elements are plainly satisfied, *see, e.g.*, *Adonis v. Coleman*, No. 08 CIV.1726 (MGC), 2009 WL 3030197, at *7 (S.D.N.Y. Sept. 23, 2009). Defendants argue, however, that they were not the officers who physically arrested plaintiff and that, even if they were, they had probable cause to do so, which, if true, would render the confinement privileged under the fourth element. (*See* Defs.' Reply Mem. Supp. Mot. Sum. J. ("Defs.' Reply"), ECF No. 238, at 1–2.)

The Court concludes that factual issues preclude summary judgment on the false arrest claims. First, it is well settled that "[a]n officer need not necessarily have directly seized and handcuffed an individual to be liable for false arrest." *Bryant v. Serebrenik*, No. 15CV3762ARRCLP, 2016 WL 6426372, at *3 (E.D.N.Y. Oct. 28, 2016); *see also Malley v. Briggs*, 475 U.S. 335, 345 n.7 (1986) ("[Section] 1983 'should be read against the background of tort liability that

---

[6] Plaintiff's Section 1983 municipal liability claim is discussed separately.

makes a man responsible for the natural consequences of his actions.' Since the common law recognized the causal link between the submission of a complaint and an ensuing arrest, we read § 1983 as recognizing the same causal link." (quoting *Monroe v. Pape,* 365 U.S. 167, 187 (1961))); *Goode v. Newton,* No. 3:12CV754 JBA, 2013 WL 1087549, at *5 (D. Conn. Mar. 14, 2013) ("[A]s long as the causal link is strong enough, 'as a general rule, a government official's liability for causing an arrest is the same as for carrying it out.'" (quoting *Berg v. Cnty. of Allegheny,* 219 F.3d 261, 272 (3d Cir. 2000)). Instead, an officer may be held liable for false arrest where he caused the arrest, *see Goode,* 2013 WL 1087549, at *5, or was "involved in the decision to arrest [the] plaintiff," *Wong v. Yoo,* 649 F. Supp. 2d 34, 61 (E.D.N.Y. 2009) (rejecting argument that defendants "cannot be held liable for false arrest because they were not personally involved in plaintiff's arrest"). Here, a factual dispute exists over whether Vara and Buonora caused the arrest because plaintiff has presented evidence that Detective Barnych arrested him based on the false information provided by these officers.[7] (*See* Pl.'s 56.1 Resp. ¶ 15; Pl.'s 56.1 ¶¶ 56–57, 83, 86, 99, 103).

Second, a factual dispute exists over whether probable cause justified plaintiff's arrest. The Second Circuit has made clear that "[t]he existence of probable cause to arrest . . . is a complete defense to an action for false arrest." *Jenkins v. City of New York,* 478 F.3d 76, 84 (2d Cir. 2007) (quoting *Weyant,* 101 F.3d at 852) (citations omitted)). At the summary judgment stage, "[t]he question of whether or not probable cause existed may

be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers, or may require a trial if the facts are in dispute." *Weyant,* 101 F.3d at 852 (citations omitted).

Moreover, the Second Circuit has indicated that, "[i]n general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* at 852. The "validity of an arrest does not depend upon an ultimate finding of guilt or innocence." *Peterson v. Cnty. of Nassau,* 995 F. Supp. 305, 313 (E.D.N.Y. 1998) (citing *Pierson v. Ray,* 386 U.S. 547, 555 (1967), *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800 (1982)). "Rather, the court looks only to the information the arresting officer had at the time of the arrest." *Id.* (citing *Anderson v. Creighton,* 483 U.S. 635, 641 (1987)). Where probable cause does not otherwise exist, however, it cannot be manufactured by an officer's knowingly false statements. *See Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir. 1991) (holding that a magistrate judge's finding of probable cause will not immunize an arresting officer if the plaintiff shows that the officer "knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statement was necessary to the finding of probable cause"); *Weinstock v. Wilk,* 296 F. Supp. 2d 241, 247 (D. Conn. 2003) ("[P]laintiff can overcome this heavy,

---

[7] Detective Barnych is not a party to this action, and plaintiff's counsel indicated he would not be substituted for a John Doe defendant at oral argument. In any event, Detective Barnych would be entitled to qualified immunity for his role in plaintiff's arrest, as he was "permitted to rely on information conveyed by the other police officers at the precinct in determining

that there was probable cause to arrest [plaintiff]." *Hart v. City of N.Y.,* No. 11 CIV. 4678 RA, 2013 WL 6139648, at *4 (S.D.N.Y. Nov. 18, 2013) (citing *Panetta v. Crowley,* 460 F.3d 388, 395 (2d Cir. 2006)).

but not insurmountable burden by demonstrating that his right not to be arrested without probable cause was violated when the officer submitting the probable cause affidavit knowingly or intentionally, or with reckless disregard for the truth, made a false statement in his affidavit, or omitted material information, and that such false information was necessary to the finding of probable cause."); *Hibbard v. Gallivan*, No. 99-CV-0145E(F), 1999 WL 782174, at *1 (W.D.N.Y. Sept. 15, 1999) ("[A]n officer may not insulate himself from liability by procuring an arrest warrant based on false statements.").

Here, plaintiff has presented evidence that Detective Barnych arrested him on the basis of the false statements made by Vara and Buonora, *i.e.*, that they heard the sound of a gun hitting the pavement when plaintiff climbed over the fence and that they recovered the gun themselves. (*See* Pl.'s 56.1 Resp. ¶ 15; Pl.'s 56.1 ¶¶ 56–57, 83, 86, 99, 103.) Indeed, the charges were dropped when the DA's Office learned that these statements were false. (Defs.' 56.1 ¶ 18.) Given that Vara and Buonora have admitted that they made these statements knowing of their falsity, they cannot serve as the basis for a finding of probable cause with respect to Vara and Buonora. *See Golino*, 950 F.2d at 870; *Weinstock*, 296 F. Supp. 2d at 247; *Hibbard*, 1999 WL 782174, at *1. Thus, the question is whether the undisputed facts establish probable cause absent the false statements. *See, e.g., Colon v. Ludemann*, 283 F. Supp. 2d 747, 757 (D. Conn. 2003).

Defendants argue that probable cause existed because plaintiff fled the scene on foot after Vara administered the sobriety tests. (Defs.' Reply at 2.) Without more, however, a suspect's attempt to flee the scene is not sufficient to establish probable cause. *See People v. Bennett*, 170 A.D.2d 516, 516 (N.Y. App. Div. 1991) ("[T]he defendant's flight upon being approached by the officers

did not give rise to probable cause justifying arrest.") (collecting cases); *see also Dancy v. McGinley*, 843 F.3d 93, 112 (2d Cir. 2016) ("In New York, unless he is otherwise lawfully detained, an individual to whom a police officer addresses a question has a constitutional right not to respond. He may remain silent or walk or run away. His refusal to answer is not a crime. The failure to stop or cooperate by identifying oneself or answering questions cannot be the predicate for an arrest absent other circumstances constituting probable cause." (citations and brackets omitted)). Under the circumstances as alleged by plaintiff, moreover, a jury could find that his flight was not indicative of criminal activity but of fear for his safety, given the evidence that Vara was aggressive toward and threatened plaintiff. (*See* Pl.'s 56.1 ¶¶ 23, 25.)

Defendants further argue that, because Vara witnessed plaintiff speeding, probable cause existed to justify the stop, which in turn would justify the arrest. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.") A factual dispute exists, however, as to whether Vara had probable cause to stop plaintiff for speeding. Although Vara testified—and his arrest report indicates—that he stopped plaintiff for this reason, he admitted that he did not use a speed gun and that the stop was based solely on his observation of the vehicle. (Preston Decl., Ex. W, at 20–23.) Furthermore, Miles, a passenger in plaintiff's vehicle, testified at her deposition that Vara indicated he had pulled the car over for suspected drunk driving (*id.*,

Ex. X, at 18),[8] and there is no dispute Vara subsequently performed field sobriety tests on plaintiff (Defs.' 56.1 ¶ 5; Pl.'s 56.1 ¶ 22). Plaintiff and both passengers maintain that they had not been drinking on the night in question. (*See* Pl.'s 56.1 ¶¶ 12–15.) Thus, there is a factual dispute over whether Vara had probable cause for the stop. It follows that summary judgment is not warranted on the false arrest claims.[9]

### b. Malicious Prosecution

"Because there are no federal rules of decision for adjudicating § 1983 actions that are based upon claims of malicious prosecution, [courts] are required by 42 U.S.C. § 1988 to turn to state law—in this case, New York state law—for such rules." *Conway*, 750 F.2d at 214. "A malicious prosecution claim under New York law requires the plaintiff to prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Blake v. Race*, 487 F. Supp. 2d 187, 211 (E.D.N.Y. 2007) (quoting *Jocks v. Tavernier*, 316 F.3d

128, 136 (2d Cir. 2003)). Here, plaintiff has produced evidence to create a factual dispute as to each element.

First, it is well-settled that a police officer initiates a prosecution under the first element when he provides false information to a prosecutor who subsequently initiates a proceeding against the plaintiff based on that information. *See Costello v. Milano*, 20 F. Supp. 3d 406, 415 (S.D.N.Y. 2014) ("A police officer can also initiate a prosecution by creating material, false information and forwarding that information to a prosecutor or by withholding material information from a prosecutor.") (collecting cases). Thus, because plaintiff has introduced evidence that the DA's Office relied on the false statements made by Buonora and Vara when they brought charges against plaintiff (*see* Pl.'s 56.1 ¶¶ 56–57, 100–102), a factual dispute plainly exists on the first element.[10]

Second, New York law does not require a malicious prosecution plaintiff to prove his innocence, or even that the termination of the criminal proceeding was indicative of innocence. Instead, the plaintiff's burden is to

---

[8] Plaintiff, meanwhile, claims that Vara gave no reason for pulling him over at the time. (*See* Pl.'s 56.1 ¶ 20.)

[9] Defendants also argue that plaintiff is collaterally estopped from bringing his false arrest and false imprisonment claims because, according to defendants, this Court dismissed those claims in its earlier decision on defendants' motion to dismiss. (*See* Defs.' Mem. Supp. Mot. Sum. J., ECF No. 232-1 ("Defs.' Br."), at 1.) Defendants misread the earlier order. In that decision, this Court held that the officers were only entitled to absolute immunity under *Rehberg v. Paulk*, 132 S. Ct. 1497 (2012) for their alleged conduct in committing perjury before the grand jury and conspiring to present false testimony to the grand jury. *See Coggins*, 988 F. Supp. 2d at 243. The Court permitted the claims to move forward, however, to the extent they alleged false arrest and false imprisonment based on defendants' falsification of reports and fabrication of evidence in the course of the investigation. *See id.* at

244. It is these claims that survived defendants' motion to dismiss and which now survive their motion for summary judgment.

[10] Defendants argue that plaintiff cannot prevail on his malicious prosecution claim because "there is no evidence in the record to support the contention that prosecution was continued by the Office of the District Attorney after Police Officer Buonora admitted to lying to [the ADA]." (Defs.' Reply at 2.) The ADA's refusal to continue with the prosecution after learning of the false statements, however, does not absolve Vara, Buonora, or the County of liability for malicious prosecution, as this cause of action only requires a defendant to initiate the prosecution. *See Blake*, 487 F. Supp. 2d at 211 (first element only requires "initiation *or* continuation" of the prosecution) (emphasis added).

demonstrate a final termination that is not inconsistent with innocence. *See, e.g.*, *Cantalino v. Danner*, 754 N.E.2d 164, 168 (N.Y. 2001) ("[T]he question is whether, under the circumstances of each case, the disposition was inconsistent with the innocence of the accused."). As a general matter, "[d]ismissals that have been found to be inconsistent with innocence . . . fall into three categories: (1) misconduct on the part of the accused in preventing the trial from going forward, (2) charges dismissed or withdrawn pursuant to a compromise with the accused, and (3) charges dismissed or withdrawn out of mercy requested or accepted by the accused." *Armatas v. Maroulleti*, No. 08–CV–310 (SJF)(RER), 2010 WL 4340437, at *13 (E.D.N.Y. Oct. 19, 2010) (citations omitted). Here, there is no evidence that the dismissal falls into any of these categories. Instead, there is evidence that the case was dismissed when the false statements serving as the basis for the indictment came to light. Under these circumstances, a factual issue exists on whether the proceedings terminated in plaintiff's favor.

Third,

> [a]s to probable cause, the Second Circuit has noted that the presumption of probable cause created from a grand jury indictment "may be rebutted by evidence of various wrongful acts on the part of the police: If plaintiff is to succeed in his malicious prosecution action after he has been indicted, he must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."

*Blake*, 487 F. Supp. 2d at 211 (quoting *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006)). In this case, plaintiff has plainly created a disputed issue of material fact on this element because, as noted above, he has produced evidence that the prosecution was based on false statements made to the ADA by Vara and Buonora. Moreover, defendants' argument that probable cause existed even without these statements based on the gun Wilson found next to the fence is undermined by the fact that the charges were dismissed when the ADA learned of the false statements. In short, as with the false arrest claims, an issue of fact exists over whether the DA's Office had probable cause to initiate the prosecution in the absence of the officers' false statements.

Finally, in New York, "a jury may, but is not required to, infer the existence of actual malice from the fact that there was no probable cause to initiate the proceeding." *Cardoza v. City of N.Y.*, 139 A.D.3d 151, 164 (N.Y. App. Div. 2016) (quoting *Martin v. City of Albany*, 364 N.E.2d 1304, 1307 (N.Y. 1977)). It follows that, because there is a factual dispute over whether the DA's Office had probable cause to initiate the prosecution absent the false information, there is also a factual dispute as to malice. Accordingly, summary judgment on the malicious prosecution claims is denied.

### c. Abuse of Process

In order to establish liability for malicious abuse of process under Section 1983, a plaintiff must establish the claim's elements under state law as well as the deprivation of a constitutional right. *See Cook*, 41 F.3d at 79–80. A plaintiff may assert a malicious abuse of process claim where a defendant: "'(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse [or]

justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'" *Savino*, 331 F.3d at 76 (quoting *Cook*, 41 F.3d at 80); *see also Sullivan v. LaPlante*, 1:03 CV 359 (OGS), 2005 WL 1972555, at *3 (N.D.N.Y. Aug. 16, 2005) ("[A]buse of criminal process is actionable under § 1983 as a denial of procedural due process." (citing *Cook*, 41 F.3d at 80)); *Dickerson v. Monroe Cnty. Sheriff's Dep't*, 114 F. Supp. 2d 187, 192 (W.D.N.Y. 2000) ("'In the criminal context, malicious abuse of process is by definition a denial of procedural due process.'" (quoting *Cook*, 41 F.3d at 80)).

Here, for purposes of this motion, the parties only contest the third element. Plaintiff argues that Vara and Buonora had a "collateral motive" in that they desired revenge because he managed to escape from them on foot, citing evidence that Buonora shouted "Just shoot him in the back" as plaintiff fled and Vara made a comment about plaintiff's escape when Vara assaulted him at the precinct.[11] (Pl.'s Br. at 16.) Defendants respond that, because the precinct assault was not pled in the original complaint, the Court should disregard the evidence of it, and, in the absence of such evidence, the undisputed evidence shows that the officers took no offense at plaintiff's successful flight. (Defs.' Reply at 3.)

The Second Circuit has distinguished between "a 'malicious motive' and an 'improper purpose'; only the latter suffices to meet the 'collateral objective' prong of the abuse of process standard." *Hoffman v. Town of Southampton*, 893 F. Supp. 2d 438, 448 (E.D.N.Y. 2012) (citing *Savino*, 331 F.3d at

77 ("In order to state a claim for abuse of process, a plaintiff must establish that the defendants had an improper *purpose* in instigating the action. Improper motive is not enough." (brackets and ellipsis omitted))). As such, "it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Savino*, 331 F.3d at 77; *see also Coleman v. City of N.Y.*, 585 F. App'x 787, 788 (2d Cir. 2014) ("[R]etaliation for some offense will not suffice as a collateral motive for the purposes of an abuse of process claim."). In *Savino*, for example, the Second Circuit held that a plaintiff had not adduced evidence of a collateral objective where his evidence only showed that, "in instigating the criminal investigation that led to his indictment, defendants were retaliating against him for the embarrassment caused by the media reports of his allegedly exorbitant overtime pay." *Savino*, 331 F.3d at 77.

For similar reasons, in this case, plaintiff has only alleged a "malicious motive," not a "collateral objective." *See Hoffman*, 893 F. Supp. 2d at 448. Specifically, plaintiff's evidence, at best, shows that the officers "were retaliating against him for the embarrassment" he caused them by outrunning them earlier that day. *Savino*, 331 F.3d at 77. Under *Savino*, this plainly is insufficient to sustain a claim for abuse of process under New York law or Section 1983. Therefore, defendants' motion for summary judgment on the abuse of process claims is granted.

---

[11] Plaintiff also argues that his race played a role in defendants' actions (Defs.' Br. at 16–17), but, as discussed above, there is no evidence of racial discrimination on the part of the officers here.

### 3. Municipal Liability

Plaintiff alleges that the County is liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), for the constitutional violations discussed above. Defendants move for summary judgment on plaintiff's *Monell* claim, arguing that he has not satisfied the requirements for municipal liability to apply.

The Supreme Court has explained that a municipal entity may be held liable under Section 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." *Monell*, 436 U.S. at 694. "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citing *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). Instead, constitutional violations by government officials that are "persistent and widespread" can be "so permanent and well settled as to constitute a custom or usage with the force of law, and thereby generate municipal liability." *Sorlucco*, 971 F.2d at 870–71 (citing *Monell*, 436 U.S. at 691). However, a municipal entity may be held liable only where the entity itself commits a wrong; "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.

A municipality's failure to supervise its officers "can rise to the level of an actionable policy or custom where it amounts to 'deliberate indifference' to the constitutional rights of its citizens." *Hall v. Marshall*, 479 F. Supp. 2d 304, 315–16 (E.D.N.Y. 2007) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989) and *Thomas v. Roach*, 165 F.3d 137, 145 (2d Cir. 1999) ("A municipality may be liable under § 1983 . . . where the City's failure to supervise or discipline its officers amounts to a policy of deliberate indifference.")). As the Second Circuit has ex-

plained, "[t]o prove such deliberate indifference, the plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995). Furthermore, "[a]n obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Id.*; *see also Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 238 (2d Cir. 2004).

Plaintiff argues that his evidence establishes a policy or custom of indifference toward suspects' constitutional rights based on the County's failure to supervise its officers. Specifically, he highlights numerous civilian complaints in the record filed against Vara, several of which alleged that Vara stopped the driver without probable cause. (*See* Pl.'s 56.1 ¶¶ 64–82.) In one particular instance, Vara allegedly pulled a driver over and claimed he smelled alcohol on her breath, but, after the field sobriety test proved she was not intoxicated, he issued her a speeding ticket. (*Id.* ¶ 78.) Furthermore, plaintiff has submitted evidence that only one of these complaints resulted in an Internal Affairs investigation. (*See id.* ¶ 65.) In the other cases, a commanding officer merely reviewed each complaint and found that they warranted no further action. (*See, e.g.*, *id.* ¶¶ 66–68, 72–74, 76–77, 80–81.)

The Court concludes that this evidence is sufficient for plaintiff's *Monell* claim to survive summary judgment. Courts in the Second Circuit routinely hold that multiple civilian complaints against an officer regarding conduct similar to that exhibited toward a plaintiff is enough for a jury to find the requisite degree of indifference to support failure to supervise liability under *Monell*. *See, e.g.*, *Fiacco v. City of Rensselaer, N.Y.*, 783

F.2d 319, 331 (2d Cir. 1986) (holding that evidence supported jury verdict on *Monell* claim where it "showed that within the 22-month period preceding [plaintiff's] arrest, five complaints were made that City police officers had used excessive force, either in making arrests or in transporting or detaining those whom they had already arrested; four of the complaints came within the ten months preceding [plaintiff's] arrest"); *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 479 (E.D.N.Y. 2002) ("[D]rawing all reasonable inferences in favor of Davis, a jury could rationally conclude that the six remaining letters of complaints and criticisms demonstrate an obvious need for more or better supervision to protect against constitutional violations."). This is especially true where the County takes inadequate action to investigate the complaints. *See Fiacco*, 783 F.2d at 331 (evidence sufficient to support *Monell* liability where "[a]ny investigation of these charges was done by [the police chief] himself, for he never assigned anyone else to make an investigation"); *Davis*, 224 F. Supp. 2d at 479 (finding evidence sufficient on *Monell* claim where "the Village failed to conduct a meaningful investigation into any of the claims regarding Curtis' conduct").

Here, plaintiff's evidence creates a disputed factual issue over the County's failure to supervise officer Vara and to investigate complaints against its police officers. First, like in *Fiacco* and *Davis*, plaintiff has proffered evidence of multiple complaints against Vara. Specifically, civilians have complained on no less than five occasions that Vara was overly aggressive with them, wrongfully stopped them, or issued unfounded traffic tickets. (*See* Pl.'s 56.1 ¶¶ 65–67, 70–71, 76–78.) In addition, plaintiff's evidence suggests that NCPD's procedures do not allow for adequate investigations, as most complaints are simply reviewed at the command level rather than through Internal Affairs, and no disciplinary action is taken in response to most complaints. (*See id.* ¶¶ 66-–67, 68, 72, 77, 79–80.) Indeed, plaintiff's evidence indicates that Internal Affairs opened its investigation into the false statements at issue in this case only in response to prompting by the DA's Office. (*Id.* ¶ 91.) Furthermore, plaintiff has also produced evidence that NCPD does not adequately discipline its officers for the type of conduct at issue here, based on the lack of repercussions from the complaints that commanding officers deemed "undetermined" and the relatively lenient penalties Vara and Buonora suffered for their false statements in this case. (*See id.* ¶¶ 96–97 (Vara only penalized with reduction of ten vacation days); *id.* ¶¶ 109, 111 (Buonora suspended for one month without pay, lost 100 vacation days, and put on desk duty). Given this evidence, the Court concludes that plaintiff's municipal liability claim survives summary judgment. *See Fiacco*, 783 F.2d at 331; *Davis*, 224 F. Supp. 2d at 479.

## 4. Conspiracy

To sustain a claim under Section 1985 for conspiracy to deprive an individual of his federal civil rights, a plaintiff must show, *inter alia*, that the conspiracy was "motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (quoting *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 829 (1983)). Here, as discussed above, plaintiff's evidence does not provide a rational basis for a jury to find the existence of a racial motive on the part of Vara and Buonora, and, therefore, defendants are entitled to summary judgment on this claim as well.

### 5. Remaining State Law Claims

Defendants also move for summary judgment on some of plaintiff's other state law claims. Specifically, they argue that all the state law claims are procedurally barred by New York General Municipal Law ("GML") §§ 50-e and 50-i. In addition, they contest plaintiff's negligence and IIED claims on substantive grounds. As set forth below, the Court concludes that GML §§ 50-e and 50-i do not bar the state claims and that summary judgment is only warranted on the negligence claim, not the IIED claim.

#### a. State Procedural Requirements

Defendants argue that GML §§ 50-e and 50-i bar plaintiff's state law claims. State claims brought under state law in federal court are subject to state procedural rules. *See, e.g.*, *Felder v. Casey*, 487 U.S. 131, 141, (1988). Thus, New York County Law § 52 applies in this case and incorporates the statute of limitations and notice of claim requirements in GML §§ 50-e and 50-i. Section 50-i(1)(c) provides that a plaintiff must commence any action against a county for "personal injury" within one year and ninety days from the claim's accrual. *See Campbell v. City of New York*, 791 N.Y.S.2d 880, 882, (N.Y. 2005); *see, e.g.*, *Geslak v. Suffolk Cnty.*, No. 06 Civ. 251, 2008 WL 620732, at *2 (E.D.N.Y. Mar. 5, 2008) (applying § 50–i limitations period to state claim in federal court). Section 50-i(2) provides that "[t]his section shall be applicable notwithstanding any inconsistent provisions of law." Thus, courts hold that § 50-i(c) applies with respect to an action against a municipality or against a municipality's employee acting in the performance of her duties and within the scope of her employment when she committed the alleged tort—in which case the municipality must indemnify the individual and therefore is the real party in interest. *Ruggiero v. Phillips*, 739 N.Y.S.2d 797, 799–800 (N.Y. App.

Div. 2002) (citing *Clark v. City of Ithaca*, 652 N.Y.S.2d 819, 821 (N.Y. App. Div. 1997)). On the other hand, if the individual was not acting within the scope of her employment, then the seven-year statute of limitations in the N.Y. C.P.L.R. § 213-b applies. *Id.* (citing *Tumminello v. City of New York*, 622 N.Y.S.2d 714, 715 (N.Y. App. Div. 1995)).

Section 50-e requires that a notice of claim be filed within ninety days of the incident giving rise to the claim. Moreover, pursuant to § 50-i, a plaintiff must plead that: (1) a notice of claim was served; (2) at least thirty days elapsed since the notice of claim was filed and before the complaint was filed; and (3) in that time, the defendant neglected to or refused to adjust or satisfy the claim. *See Horvath v. Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006) (citing N.Y. Gen. Mun. Law § 50–i(1)). "Notice of claim requirements are construed strictly by New York state courts. Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793–94 (2d Cir. 1999) (citations omitted); *see Horvath*, 423 F. Supp. 2d at 423 ("Absent a showing of such a Notice of Claim, the complaint may be dismissed for failure to state a cause of action."). Accordingly, for the asserted state law claims, "[t]he failure to file a notice of claim is fatal unless the action has been brought in the public interest, such as a class action brought to protect civil rights, or a court has granted leave to serve late notice." *Pustilnik v. Hynes*, No. 99 Civ. 4087(JG), 2000 WL 914629, at *6 (E.D.N.Y. June 27, 2000) (citation omitted).

Defendants argue that the action must be dismissed because plaintiff failed to file a notice of claim as required under GML § 50-e and to sue within one year and ninety days from the claims' accrual. As this Court held in denying Buornora's motion to dismiss, however,

Coggins's allegations that the officers acted in concert to fabricate the charges and evidence, omit relevant facts from reports, and ensure his malicious prosecution plausibly suggest that the officers acted in their own personal interest—such as to avoid disciplinary action for their allegedly improper conduct—and not in the interest of the NCPD, in fabricating the evidence and charges.

*Coggins*, 988 F. Supp. 2d at 251. As discussed at length above, moreover, plaintiff has produced evidence to support these allegations. Correspondingly, a factual issue—namely whether the officers were acting within the scope of their employment—precludes summary judgment on the grounds of plaintiff's failure to comply with GML §§ 50-e and 50-i.

### b.  Negligence

Plaintiff brings various claims sounding in negligence based on his arrest and prosecution. (*See* TAC, ECF No. 178, at ¶¶ 179–83.) The Second Circuit has held, however, that, "[u]nder New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citing *Boose v. City of Rochester*, 421 N.Y.S.2d 740, 743 (N.Y. App. Div. 1979)). Indeed, plaintiff does not even contest defendant's argument that the negligence claim is barred for this reason. (*See generally* Pl.'s Br. (no argument on the negligence claim).) As such, because plaintiff's negligence claim is based on the officer's conduct "in effecting an arrest or initiating a prosecution," the Court concludes

that it is not cognizable under New York law. *See Bernard*, 25 F.3d at 102 (holding that district court properly denied negligence claim, which sought "damages for the breach of the alleged duty to protect [the plaintiff] against the unreasonable risk of being summarily arrested, detained, and denied his freedom of liberty when the agents collectively and wrongfully failed to accurately and properly verify and confirm plaintiff's identity" (brackets and ellipsis omitted)). Accordingly, defendants are entitled to summary judgment on this claim.

### c.  Intentional Infliction of Emotional Distress

In order to assert a valid claim for IIED under New York law, a plaintiff must demonstrate "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) (citing *Howell v. N.Y. Post* Co., 612 N.E.2d 699, 702 (N.Y. 1993)). Further, New York sets a high threshold for conduct that is "extreme and outrageous" enough to constitute IIED. *See id.* The conduct alleged must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985) (quoting *Fischer v. Maloney*, N.E.2d 1215, 1217 (N.Y. 1978)). In *Mejia v. City of N.Y.*, 119 F. Supp. 2d 232, 285 (E.D.N.Y. 2000), for example, the court denied summary judgment where the plaintiff's evidence indicated that an officer "falsely arrested, used excessive force against, and maliciously prosecuted" the plaintiffs. Specifically, the officer in that case "conspired to manufacture the evidence on which . . . a conviction would be based," used ethnic slurs against them, and ordered one of them strip searched. *Id.* at

285–86; *see also Gonzalez v. Bratton*, 147 F. Supp. 2d 180, 194 (S.D.N.Y. 2001) (collecting cases where police officers' conduct was deemed sufficient to support an IIED claim).

Here, for purposes of this motion, defendants only contest the first element, arguing that the officers' conduct was not extreme or outrageous enough to sustain a claim for IIED. If all of plaintiff's evidence is credited, the Court concludes that the evidence is sufficient for a rational jury to conclude that the officers "falsely arrested, used excessive force against, and maliciously prosecuted" plaintiff in a manner so outrageous that it could support IIED liability. *Mejia*, 119 F. Supp. 2d at 285. In particular, plaintiff has produced evidence that Vara and Buonora lied repeatedly in the course of the investigation and prosecution of plaintiff, that Vara grabbed plaintiff roughly during the traffic stop and threatened him physically, and that Buonora shouted to "Just shoot him in the back" as plaintiff fled. Under these circumstances, like in *Mejia*, plaintiff has adduced sufficient evidence of outrageous conduct to support his IIED claim. As such, defendants' motion for summary judgment is denied on that claim.

IV.    Conclusion

For the reasons set forth above, the Court denies plaintiff's motion to amend and grants in part and denies in part defendant's motion for summary judgment.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: May 26, 2017
Central Islip, NY

\*\*\*

Plaintiff is represented by Frederick K. Brewington and Cathryn A. Harris of the Law Offices of Frederick K. Brewington, 556 Peninsula Boulevard, Hempstead, NY 11550. Defendants are represented by Andrew K. Preston of Bee Ready Fishbein Hatter & Donovan LLP, 170 Old Country Road, Mineola, NY 11501, and Diane C. Petillo from the Office of the Nassau County Attorney, One West Street, Mineola, NY 11501.